# EXHIBIT A

**PARDALIS & NOHAVICKA LLP**
Anastasi Pardalis (357512021)
Joseph D. Nohavicka (pro hac vice forthcoming)
Israel Klein (pro hac vice forthcoming)
Eleni Melekou (pro hac vice forthcoming)
950 Third Avenue, 31st Floor
New York, NY 10022
(212) 213-8511
taso@pnlawyers.com
jdn@pnlawyers.com
israel@pnlawyers.com
eleni@pnlawyers.com

*Attorneys for Defendants Deleteme USA, LLC, Deleteme Europe Ltd, and Criton Tornaritis*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,

*Plaintiffs*,

-against-

DELETEME USA, LLC, DELETEME EUROPE LTD, CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,

*Defendants*.

**NOTICE OF REMOVAL**

Previously pending in the Superior Court of New Jersey, Essex County Docket No. ESX-L-005000-26

**PLEASE TAKE NOTICE** that Defendants DeleteMe USA, LLC, DeleteMe Europe Ltd, and Criton Tornaritis (collectively, "Defendants"), through their undersigned counsel, hereby give notice of the removal of the above-captioned action from the Superior Court of New Jersey, Law Division, Essex County, to the United States District

Court for the District of New Jersey, pursuant to 28 U.S.C. § 1441 and § 1446, as amended, and in accordance with 28 U.S.C. § 1332

In support of this Notice of Removal, Defendants respectfully state as follows:

**I. Nature of the Action and State Court Proceedings**

1. Plaintiffs commenced this civil action in the Superior Court of New Jersey, Law Division, Essex County, under Docket No. ESX-L-005000-26, by filing a Complaint on June 23, 2026.

2. The Complaint alleges claims under New Jersey's Daniel's Law, P.L. 2021, c. 371 (codified as amended at N.J.S.A. § 2C:20-31 et seq.), and seeks, *inter alia*, injunctive relief, statutory damages of not less than $1,000 per violation, punitive damages, attorneys' fees, and other relief.

3 While the Plaintiff contends that service of process has been made in accordance with the Hague Convention via postal channels, the Defendants deny having been properly served with process and all objections and defenses related to service of process and personal jurisdiction are maintained. No such objection or defense is waived. Under New Jersey civil practice rules, Defendants time to answer, move to dismiss, or otherwise respond to the Complaint has not yet begun to run. As a result, no Defendant's time to respond to the Complaint has expired. Defendants expressly reserve their rights under Fed. R. Civ. P. 81 to hereafter answer or present other defenses or objections in accordance with the Federal Rules of Civil Procedure. In any event, even had service

been properly made, the Defendants' time to appear, answer, or otherwise respond to the complaint has not expired.

**II. Grounds for Removal: Diversity Jurisdiction, 28 U.S.C. § 1332**

4. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 because it is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs. As a matter of law, and in pertinent part, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- citizens of a State and citizens or subjects of a foreign state. . ." 28 U.S.C. 1332(a)(2). Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441 and 1446.

a. Citizenship of Defendants.

5. DeleteMe USA, LLC is a limited liability company formed in Delaware. All members of DeleteMe USA, LLC are citizens of Cyprus. Accordingly, DeleteMe USA, LLC is a citizen of Cyprus. *GBForefront, L.P. v Forefront Mgt. Group, LLC*, 888 F.3d 29, 34 (3d Cir 2018), *quoting Zambelli Fireworks Mfg. Co., Inc. v Wood*, 592 F.3d 412, 420 (3d Cir 2010); ("a limited liability company is a citizen of all the states of its members"); *Lincoln Ben. Life Co. v AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir 2015), *quoting Zambelli, supra*; *Atlas Data Privacy Corp. v Blackbaud, Inc*., 757 F Supp 3d 605, 611 (D.N.J. 2024), *citing Zambelli, supra*.

6. The complaint alleges that DeleteMe Europe Ltd is a private limited company organized under the laws of Cyprus and is a citizen of Cyprus.

7. The complaint further alleges that Criton Tornaritis is a citizen of Cyprus.

8. As a matter of law, "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b).

b. Citizenship of Plaintiffs

9. The Complaint alleges that the individuals identified as Plaintiffs are residents of New Jersey.

10. The Complaint alleges that Atlas Data Privacy Corporation is a Delaware corporation with a principal place of business in Jersey City, New Jersey, within the District of New Jersey.

c. Amount in Controversy

11. Plaintiffs seek actual damages, statutory liquidated damages "not less than" $1,000 per violation, punitive damages, attorneys' fees, and broad injunctive relief, and allege approximately 6,626 assignors in addition to the individual plaintiffs. Accordingly, based on the alleged number of assignors, as to the assignors alone the Complaint alleges an amount in controversy of not less than $6,626,000 (6,626 assignors * $1,000.00).

12. Based on the Complaint's allegations and requested relief, the amount in controversy exceeds $75,000, exclusive of interest and costs.

d. Complete Diversity

13. In accordance with 28 U.S.C. § 1332(a)(2), complete diversity of citizenship exists because the Plaintiffs and Defendants are citizens of different states and foreign states. Furthermore, this action is removable because Defendants are not citizens of the state in which this action was commenced. See 28 U.S.C. § 1441(b)(2).

III. Venue

14. Venue is proper in the District of New Jersey under 28 U.S.C. §§ 110, 1441(a), and 1446(a), because the state action was filed in the Superior Court of New Jersey, Law Division, Essex County.

IV. Timeliness and Procedural Requirements

15. Defendants file this Notice of Removal before any proper service of process and thus before the time period for an answer expired, as measured under 28 U.S.C. § 1446(b). Defendants expressly deny that service of process has been properly effected to and without waiver of that defense. Likewise, the Defendants further deny the existence of personal jurisdiction in New Jersey as to any Defendant and maintain that defense as well.

16. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served or filed in the state action that are in Defendants' possession are attached as **<u>Exhibit A</u>**.[1]

---

1These filings were largely secured from the New Jersey eCourts website and were not received as the result of service.

17. All non fictitious Defendants consent to removal. To the extent any Defendant has not been properly served, consent is not required under 28 U.S.C. § 1446(b)(2)(A). Defendants reserve all objections to service and jurisdiction.

18. The Notice of Removal is properly directed to this Court pursuant to 28 U.S.C. § 1446(a) as the United States District Court for the District of New Jersey embraces the Superior Court of the State of New Jersey, where Plaintiffs' action was pending.

19 .Pursuant to 28 U.S.C. § 1446(d), promptly after filing this Notice, Defendants will give written notice to Plaintiffs and will file a Notice of Filing of Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Essex County, attaching this Notice and its exhibits.

V. Reservations and Defenses

18. The Defendants deny all liability and the adverse allegations in the Complaint. Defendants specifically deny that service of process has been made. Defendants further deny that Courts sitting in New Jersey have personal jurisdiction over them. Defendants reserve all defenses and objections to the complaint, and motions directed thereto, including under Federal Rule of Civil Procedure 12, and any defenses based on jurisdiction, venue, insufficiency sufficiency of process, forum, service, parties, standing, capacity to sue and be sued, and failure to state a claim. No statement herein shall be deemed a waiver of any defense.

VI. Prayer for Relief

20. Defendants request that this Court accept jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, that the state action be removed to this Court, and that this Court make all further orders as may be just and proper.

Dated: August 24, 2026

Respectfully submitted,

PARDALIS & NOHAVICKA, LLP

/s/ *Anastasi Pardalis*
Anastasi Pardalis (357512021)
Joseph D. Nohavicka (pro hac vice forthcoming)
Israel Klein (pro hac vice forthcoming)
Eleni Melekou (pro hac vice forthcoming)
950 Third Avenue, 31st Floor
New York, NY 10022
(212) 213-8511
taso@pnlawyers.com
jdn@pnlawyers.com
israel@pnlawyers.com
eleni@pnlawyers.com

*Attorneys for Defendants DeleteMe USA, LLC, DeleteMe Europe Ltd, and Criton Tornaritis*

Certificate of Service

I hereby certify that on August 24, 2026, I caused a true and correct copy of the foregoing Notice of Removal, together with all exhibits, to be served via email upon counsel for Plaintiffs, and same will be further served together with Notice of Filing a Notice of Removal via New Jersey eCourts.

PEM Law LLP
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn, Esq.
Jessica A. Merejo, Esq.
One Boland Drive, Suite 101
West Orange, New Jersey 07052
rparikh@pemlawfirm.com;
keinhorn@pemlawfirm.com;
jmerejo@pemlawfirm.com

/s/ *Anastasi Pardalis*
Anastasi Pardalis (357512021)

# EXHIBIT A

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Kathleen Barnett Einhorn, Esq. (040161992)
Jessica A. Merejo, Esq. (288592020)
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Scott Maloney, Justyna Maloney, and Patrick Colligan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br><br>v.<br><br>DELETEME USA, LLC, DELETEME EUROPE LTD, CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-________-26<br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as the assignee of individuals who are Covered Persons under Daniel's Law, along with Scott Maloney, Justyna Maloney, and Patrick Colligan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

**INTRODUCTION**

1. In these tumultuous times, it is critical that the most sensitive personal information of current and former public servants be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, prosecutors—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2. This Complaint seeks to protect those important rights against companies brokering data while choosing profit and commercial gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering home addresses and unpublished home telephone numbers without sufficient regard for the risks and consequences imposed upon individuals who serve (and have served) critical judicial and law enforcement roles. Even worse are companies like the defendants here who claim to protect the privacy and safety of individuals, but who actually aggregate and sell dossiers on those individuals who have lawfully requested that their information not be published or disclosed.

3. The Legislature and Governor unanimously agree that the basic safety of those who serve—and their families—must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of these public servants. Our judges, law enforcement officers, and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4. With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory scheme, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5. In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was murdered by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just 20 years old and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect them. By the time his mother, a Judge, came to the door to check on what happened, the killer had fled. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6. During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and he went to her home that day intending to kill her. Investigators eventually connected this attack with the same perpetrator's shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to the case that was pending before Daniel's mother.

7. Critically, the gunman was able to find the home addresses of his murder victims through the various people finder resources available on the Internet,[1] the same kind of data broker services at issue in this case.

**New Jersey Passes Daniel's Law in 2020**

8. In response to Daniel's murder, New Jersey swiftly enacted Daniel's Law in November 2020. P.L. 2020, c. 125 codified in N.J.S.A. 47:1A-1, et seq., N.J.S.A. 56:8-166.1, et seq., and N.J.S.A. 2C:20-31.1 Daniel's Law allows current and former public servants—including judges, law enforcement officers, and prosecutors—and their eligible family members (*i.e.*, "covered persons") to send written nondisclosure requests to data brokers. Once a ten-business day period following such a request has passed, the data broker is prohibited from disclosing or otherwise making available the name and home address or unpublished home telephone number of the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of judges and prosecutors.

9. Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." N.J.S.A. 56:8-166.1(a)(1), (d).

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

10. Data brokers must cease disclosure of this protected information within ten business days of receiving a written nondisclosure request from a covered person.

11. To facilitate the enforcement of Daniel's Law, the New Jersey Legislature expressly provided that an enforcement action could be brought by a covered person or by the covered person's assignee. N.J.S.A. 56:8-166.1(b).

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

12. U.S. Supreme Court Chief Justice John G. Roberts Jr. supported the adoption of a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety . . . [a] judicial system cannot and should not live in fear."[2]

13. The federal bill, which had broad bipartisan support in both the House and Senate, protected certain sensitive personal information of judges and their immediate family from disclosure by data brokers. It also allowed federal judges to redact their personal information displayed on federal government websites.

14. In December 2022, the U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

15. Despite these efforts, violence against judges, law enforcement officers, and prosecutors remains a continuing and serious threat. These public servants put their lives on the

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.

[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.

[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.

Case 2:26-cv-10140-HB Document 13-1 Filed 08/27/26 Page 7 of 23 PageID: 1391

line every day, which is clearly exhibited by the numerous horrific stories of violence beyond the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers while they were inside with their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5] On the contrary, the officers were targeted specifically because they chose to go into public service and protect their community.

16. In yet another targeted attack, a disgruntled litigant hunted down and killed a Maryland Judge at his home, after an adverse child custody ruling.[6] This killing followed a similar tragedy in Wisconsin in 2022, where the perpetrator killed a retired Wisconsin Circuit Court Judge out of spite for his handling of a criminal case in 2005.[7]

17. More recently, on June 14, 2025, a masked gunman posing as a law enforcement officer killed a Minnesota state lawmaker, her husband and their dog in their own home. It was later revealed that this gunman had visited four different lawmakers' homes on the night of the murders. Following an arrest, the FBI recovered several notebooks from the individual alleged to be the gunman. One of the notebooks contained a page titled "Finding People" and a list of data broker websites that allow users to search for home addresses, phone numbers, and other personal

---

[5] https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-on-home-of-new-jersey-police-officers-in-targeted-attack-chief-says/.
[6] https://www.cnn.com/2023/10/20/us/maryland-judge-killing-investigation-andrew-wilkinson/.
[7] https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/.

information.[8] Another notebook contained the names and personal information of 45 state and federal public officials residing in Minnesota.[9]

18. These violent incidents demonstrate the risk to public servants and their families resulting from the open sale and dissemination of their most personal information, including their home addresses and/or unpublished home telephone numbers. These incidents also demonstrate the risk to the broader community should public officials be denied their statutory privacy rights. The risk that one might be violently targeted at their home may disincentivize individuals from pursuing a career in public service. This undermines the public interest—as the State and federal governments have recognized in passing Daniel's Law and its federal counterpart.

## THE PARTIES

### The Individual Plaintiffs

19. Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source

[8] Affidavit of FBI Special Agent Terry Getsch, United States v. Boelter, No. 25-00376 (D. Minn. filed June 15, 2025) at 11. Each of the 14 data brokers mentioned in the alleged gunman's notebook had been sued by Atlas in February 2024 for violations of Daniel's Law. Despite now having been in Court for almost 2 years and being aware of their involvement in the murders in Minnesota, several of these data brokers remain noncompliant with Daniel's Law as of this filing.

[9] Id.

of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

20. The resulting video footage was selectively edited and posted to YouTube and TikTok. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

21. One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

22. Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police.

Responding officers arrested two men—who were armed—for unlawful possession of a firearm. Video surveillance captured by nearby houses showed the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were home at the time.

23. Plaintiff Detective PATRICK COLLIGAN ("Detective Colligan") is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. From June 2014 to April 2024, Detective Colligan served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

**Plaintiff Atlas and its Assignors**

24. Plaintiff ATLAS DATA PRIVACY CORPORATION ("Atlas") is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

25. As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 6,626 individuals who are all "Covered Persons" under Daniel's Law (together, the "Covered Persons" and each a "Covered Person"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

26. Each Covered Person is an (a) active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator in the Division of Child Protection and

Permanency, or prosecutor, as those terms are defined in N.J.S.A. 47:1A-1.1; or (b) immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, or prosecutor. Thus, each individual meets the definition of "covered person" set forth in both N.J.S.A. 56:8-166.1 and N.J.S.A. 2C:20-31.1.

27. Each Covered Person resides, works, previously resided or worked in New Jersey, or is a family member residing at the same address as such as a person, and has a claim or claims against Defendants for failing to comply with Daniel's Law.

28. As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or redisclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29. Defendants have not complied with the law by negligently, willfully, or recklessly continuing to disclose or redisclose on the Internet or the otherwise making available of protected information in violation of Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs).

30. In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas, in writing, as permitted under the statute. Such assignments expressly and "irrevocably assign to Atlas or a designated affiliate of Atlas (the 'Assignee') the exclusive right to civil enforcement of all claims" under Daniel's Law.

31. Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other Covered Persons. Atlas works with and

provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, has been to increase the safety and well-being of their members and their members' families by helping those members understand and assert the rights provided to them by the law.

32. Upon signing up for Atlas, a Covered Person is asked a series of questions to collect required personal information and qualify his or her eligibility under Daniel's Law. Once eligibility is confirmed, the Covered Person is shown a page explaining how the Atlas platform works:



33. AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each Covered Person receives his or her own AtlasMail account, with a unique inbox address (*e.g.*, john.doe23@atlasmail.com) for personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:




34. Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the Covered Person is then presented with a page on which he or she can review his or her home addresses and unpublished home telephone numbers, a nondisclosure request template, and a recommended list of data brokers to send notices to. On this page the Covered Person can choose whether or not to send nondisclosure requests. If the Covered Person chooses not to send a nondisclosure request to the recommended list, they can select individual

recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a nondisclosure request.




35. Any reply or response back from a data broker to the Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully-featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:


AtlasMail
Compose
Search in Mail
ALL MAIL
INBOX
SENT
ASSIGNMENT CONFIRMATIONS
John Doe
Data Subject Request - Redaction/nondisclosure Request
11:40 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
11:39 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
11:39 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
8:29 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
8:29 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
8:29 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
Jan 3
John Doe
Data Subject Request - Redaction/nondisclosure Request
Jan 3
John Doe
Data Subject Request - Redaction/nondisclosure Request
Jan 3
John Doe
Data Subject Request - Redaction/nondisclosure Request
Jan 3
1 2 3 4 5 ... 16



**Redaction/Nondisclosure Request Confirmation**

| | |
|---|---|
| **To** | john.doe23@atlasmail.com |
| **From** | privacy@exampledatabroker.com |
| **Date** | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.



36. With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.

37. Because this lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight, Atlas has not included the Covered Persons' personal information in this public filing. However, Atlas will work with the Court and Defendants to implement an appropriate protective order and then provide Defendants with the written

assignments and relevant information for each of the Covered Persons. Our courts have already approved this privacy-protecting approach.[10]

38. In order to facilitate the provision of the Covered Persons' relevant information to Defendants pursuant to an appropriate protective order, Plaintiffs will provide Defendants with a proposed Discovery Confidentiality Order/Protective Order following service of this Complaint and Defendants' entry of an appearance.

**Defendants**

39. Defendant DELETEME USA, LLC ("DeleteMe USA") is a Delaware corporation that has a registered agent, LEGALINC CORPORATE SERVICES INC., at 131 Continental Drive Suite 305, Newark, Delaware 19713 and transacts business within the State of New Jersey. DeleteMe USA discloses or rediscloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

40. Defendant DELETEME EUROPE LTD ("DeleteMe EU") is a private limited company in Cyprus that has a registered office address at Stasikratous 16, Nicosia 1065, Cyprus and transacts business within the State of New Jersey. DeleteMe EU discloses or rediscloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

41. Defendant CRITON TORNARITIS is the founder, direct and/or indirect owner and Chief Executive Officer of DeleteMe USA and DeleteMe EU (collectively, "DeleteMe").

---

[10] For example, the Court recently held in another Daniel's Law action that allegations similar to those asserted here pleaded "sufficient facts to show that the assignors are covered persons under Daniel's Law," and "in fact have standing," noting the anticipated production of Covered Persons' information pursuant to an appropriate protective order. Atlas Data Privacy Corp., v. Attom Data Solutions, LLC, et al., Docket No.: MER-L-273-24 (Law Div., June 20, 2024) (denying motion to dismiss).

42. Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by Defendants to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

43. Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. These websites include deleteme.com and cyberdeleteme.com and may include additional domains or subdomains (collectively, the "Defendants' Website")

44. In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons). The following is a redacted example of the detailed information provided by Defendants,[11] in violation of Daniel's Law:

[11] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.




<u>**Defendants' Deliberate Attempt To Hide Behind the Legitimate Business 'DeleteMe'**</u>

45. Neither DeleteMe nor Tornaritis nor any other Defendant is affiliated in any way with Abine, Inc., the company known colloquially as 'DeleteMe' in the United States with a website located at joindeleteme.com. Abine Inc. is a legitimate privacy services company that is focused on assisting individuals, including judges, prosecutors, law enforcement and the public, in suppressing their personal information from data broker sites through subscription services offered through its website, joindeleteme.com.

46. Upon information and belief, Defendants have attempted to exploit the positive public reputation and good will of Abine, Inc. and the services it offers via joindeleteme.com through customer confusion and deception, where Defendants make it appear as though they are the company offering the services offered by Abine Inc., while in reality Defendants function as a

data broker that purposefully disregards individual privacy rights and laws requiring the suppression or redaction of personal information.

**Defendant Tornaritis**

47. In addition to owning the DeleteMe entities, upon information and belief, Tornaritis is personally involved in DeleteMe's business and operations (including DeleteMe's email accounts, the Defendants' Websites, and marketing efforts) and intermingles his personal work with business work to an extent that there is little separation between the two.

48. As detailed below, Tornaritis was and is personally aware of the nondisclosure requests transmitted to DeleteMe by the Covered Persons identified herein. And Tornaritis personally willfully or reckless disclosed or redisclosed on the Internet or otherwise made available the protected information of the Covered Persons beyond the time period required for suppression by Daniel's Law by not only negligently or purposefully failing to act, but also in controlling and facilitating the operation of Defendants' Website as a site that purposefully violates a myriad of privacy laws including Daniel's Law.

49. Tornaritis was, at all times relevant to this matter, aware of the potential exposure to harassment, intimidation or risk to life or property that public servants such as the Covered Persons could face when their personal information, including home address or phone number, is available online through websites such as Defendants' Websites

50. In addition, Tornaritis owns, in his personal capacity, a US service mark for "DELETEME" (US Serial Number 87921449; US Registration Number 5647581) and a European Union mark for "DELETEME" (Filing Number 017647124) (together, the "DeleteMe Marks").

51. Despite this personal ownership, Tornaritis has used the same address as DeleteMe EU (Stasikratous 16, Nicosia 1065, Cyprus) as an address for service of official documents and records related to the DeleteMe Marks.

52. As part of his operational control over DeleteMe and Defendants' Websites, Tornaritis provided DeleteMe with use of the DeleteMe Marks to facilitate and further Defendants' efforts to misrepresent their data brokering activities and disregard of privacy laws, including Daniel's Law, by falsely making it appear as though Defendants' Websites offer privacy protection services to the public.

53. Indeed, Tornaritis has and continues to use the DeleteMe Marks to facilitate, promote, and lend credibility to Defendants duplicitous data brokering site. By leveraging these marks on Defendants' Websites for DeleteMe, Tornaritis has, upon information and belief, attempted to make Defendants appear legitimate, while personally and directly supporting and furthering the unlawful disclosure of home addresses and unpublished home telephone numbers of the Individual Plaintiffs and Covered Persons. Tornaritis's personal control over the DeleteMe Marks was not merely passive or incidental but was instrumental in the execution and perpetuation of unlawful disclosures.

54. In addition, Tornaritis has claimed in filings with the United States Patent and Trademark Office that the DeleteMe Marks are used in connection with providing "financial advice", "internet service" and "legal services" focused on assisting consumers remove their personal information from internet sites, when they do not. In fact, in such filings Tornaritis did not disclose that the DeleteMe Marks are actually used to provide open source intelligence and other data brokering services in violation of a number of privacy laws, including Daniel's Law.

55. Moreover, Tornaritis personally advertises Defendants' data brokering capabilities in providing access to individuals' personal information such as phone numbers.

56. For example, in March 2026 in response to a post titled "How I Investigate a Phone Number in Minutes" on the X social media platform (formerly known as Twitter), Tornaritis directed viewers to the Defendants' Website noting that users of the site have access to phone numbers and other aggregated data about those they are seeking information about. A true and correct screenshot of this post, last accessed on April 1, 2026, located at https://x.com/kritonis/status/2037035819081388169, is included on the left side of the following page.

57. In another social media post, Tornaritis responded to an Open Source Intelligence Newsletter identifying Internet tools used to find information on individuals by boasting that the Defendant Websites are the only ones that aggregate data from leaks to social media and more. A true and correct screenshot of this post, last accessed on April 1, 2026, located at https://x.com/kritonis/status/2037036207335457223, is included on the right side of the following page.

**The OSINT Newsletter**
@osintnewsletter

We've added 6 new tools to the OSINT Tools Library 🔍

@ipinfo - IP lookup (location, ISP, ownership)
@whoisxmlapi - domain ownership + config data
IntelligenceX - breached data & historical records search
@fofabot - discover exposed systems & services
Phishtank - verified phishing database
@wikimapia - user-driven global mapping

Explore them 👇



**The OSINT Newsletter** @osintnewsletter · Mar 18

🚨 Launching: The OSINT Tools Library

A curated, investigator-first directory of tools used in real cases.

→ Tools.OSINTNewsletter.com

We're building the largest and best maintained OSINT tools resource and need your help.

Reply and tag a tool we should add 👇




3 21 141 Mar 25, 2026 · **8.2K** Views

**Criton Tornaritis** @kritonis · Mar 26
I suggest looking at cyberdeleteme.com the only aggregate data in one report with ai analysis from the simple leak up to social media and more
0 0 1

**CyberSudo**
@Cyber_Sudo

How I Investigate a Phone Number in Minutes 📱🔎

Most people jump straight to paid tools,
but the smartest OSINT approach actually starts with something simple: Google search.

When I'm investigating a phone number, the first thing I do is generate **all possible number formats** so search engines can surface every trace tied to it.

Of course, it won't always give results,

but sometimes it reveals *more than you ever expected* ⚡

One of my favorite tools for this is a phone variant generator that creates multiple versions of the same number instantly.

Real case:
I once analyzed a suspicious contact number
After generating variants and searching them, I uncovered forum posts, a marketplace listing, and a linked account that revealed the identity behind it 🧠

My quick method:
🔎 Search the number on Google first
📁 Try all format variations
💾 Save each version different formats reveal different results

Best tool for generating variants → no-nonsense-intel.com/phone-variant-...

In the next post, I'll show you the next steps to investigate a phone number and what to do after the initial search 📱

———

P.S. ♻️ Repost if you found this helpful.

If you liked this post and would like to learn more methods and techniques to discover information about people, check out my OSINT Mastery course cybersudo.org/osint-mastery




2 31 216 Mar 24, 2026 · **10.5K** Views

**Criton Tornaritis** @kritonis · Mar 26
Try cyberdeleteme.com you get aggregate data connected with the number and more
0 0 0

58. In addition, it appears that, through publicly sourced material, Tornaritis is responsible for certain social media and marketing efforts of DeleteMe and he does so from his personal Android device. This belief is grounded in the following publicly available information:

a. Tornaritis has an account on the X social media platform (formerly known as Twitter) with the handle @kritonis, which he had 'verified' since May 2023, and which at times has noted verified access via the Cyprus Android mobile application.

b. Deleteme also has an account on the X social media platform (formerly known as Twitter) since May 2023 with the handle @deletemeco, which was 'verified' since June 2024, and which at times has noted verified access via the Cyprus Android mobile application.

c. While this would normally be unremarkable, Tornaritis has often almost immediately reposted tweets from Delete Me, which forms Plaintiffs' belief that he operates these social media accounts from a single device.

59. Tornaritis is well aware of the data broker activities of the Defendant Websites that he owns and/or controls, and which he markets through his personal social media page and through other means.

60. Tornaritis is also equally and personally responsible for Defendants' refusals to comply with Daniel's Law by continuing to disclose or otherwise make available Covered Persons' Protected Information after receipt of the nondisclosure requests.

61. Upon information and belief, Tornaritis received written nondisclosure requests from Covered Persons using AtlasMail to email accounts of Defendants that he has access and control over.

62. Rather than use his ownership and authority to ensure Defendants' compliance with Daniel's Law, Tornaritis took no action to comply with the requests, and/or purposefully ignored same.

63. In fact, instead of complying with those nondisclosure requests, Tornaritis sent an inquiry from his personal email account to Atlas seeking information about how he can obtain access to Atlas's privacy services.

64. Despite being an attorney in the Republic of Cyprus, Tornaritis never identified himself to Atlas, nor did he identify his ownership or control of DeleteMe.

65. Instead, Tornaritis transmitted this purposefully deceptive communication in an attempt to obtain access to the Atlas platform to fraudulently obtain more information about the nondisclosure requests he received from Covered Persons through the email accounts he controls or has access to with Defendants.

66. This attempt by Defendants (including Tornaritis) to infiltrate the business operations of Atlas was done purposefully.

67. And despite not being provided with such access and having received written nondisclosure requests from the Covered Persons, and being acutely aware of the risk of harm to life or property of the Covered Persons, Tornaritis took no actions to cease disclosure of their Protected Information.

68. Similarly, DeleteMe failed to suppress Covered Persons' Protected Information.

69. Defendants' failures in this regard were purposeful or reckless as to the rights of the Individual Plaintiffs and Covered Persons as well as the risks of harm or probability of an increase of risk of such harms to them.

**<u>JURISDICTION AND VENUE</u>**

70. This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

71. Defendants have purposefully directed their business activities towards New Jersey. Defendants have purposefully availed themselves of the privilege of conducting activities within New Jersey.

72. Daniel's Law was enacted to safeguard New Jersey residents who serve as public servants and their families (including Covered Persons) from the disclosure of their Protected Information by entities, like Defendants.

73. Defendants knowingly and intentionally disclosed or redisclosed on the Internet, or otherwise made available, Protected Information of New Jersey residents, such as the home addresses and unpublished home telephone numbers of Covered Persons, through affirmative acts and decisions regarding data handling, storage, and dissemination.

74. The disclosure of New Jersey residents' home addresses and unpublished home telephone numbers resulted from Defendants' intentional conduct, including decisions to transmit, publish, or otherwise make that information available, rather than from an inadvertent or purely accidental occurrence.

75. Defendants expressly aimed their conduct at New Jersey by disclosing the home addresses and unpublished home telephone numbers of New Jersey residents, knowing that the affected Covered Persons were located in New Jersey.

76. Defendants knew that the disclosed Protected Information specifically identified New Jersey residents, including their New Jersey home addresses, and that the disclosure would directly impact individuals within New Jersey.

77. Defendants' conduct was directed at New Jersey because the disclosed Protected Information enabled direct contact with, and intrusion into the privacy of, New Jersey residents at their homes and personal telephone numbers. The disclosure of Protected Information was targeted specifically to New Jersey, including New Jersey residential locations, and was not a generalized or untargeted release of anonymized data.

78. Defendants knew, or reasonably should have known, that the primary and foreseeable effects of disclosing New Jersey residents' home addresses and unpublished home telephone numbers would be felt in New Jersey, where those individuals reside.

79. Defendants understood that their disclosure would expose New Jersey residents to unwanted contact, harassment, safety risks, and invasion of privacy within New Jersey.

80. Defendants knew that any resulting emotional distress, privacy injury, and risk of physical or economic harm would be concentrated in New Jersey, where the affected individuals live.

81. Upon information and belief, Defendants also purposefully collected sensitive personal information and other data concerning residents of New Jersey from New Jersey public records; from New Jersey residents themselves; and from devices and browsers located in New Jersey that interacted with Defendants' websites, online services, and mobile applications, and businesses that operate within the State of New Jersey.

82. Accordingly, Plaintiffs' claims arise directly out of and relate to Defendants' forum-directed conduct.

83. Indeed, upon information and belief, in 2024, 2025, and 2026, Defendants have generated material revenue from sales to customers located in New Jersey and/or from the sale of personal information and other data of New Jersey residents to customers both inside and outside of New Jersey.

84. Daniel's Law was passed to protect public servants and their families from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

85. Accordingly, venue is proper pursuant to R. 4:3-2, in that Essex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

86. As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 codified as N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1, et seq.).

87. Daniel's Law prohibits data brokers from disclosing or redisclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

88. Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or redisclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

89. This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver,

transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

90. Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

91. Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

92. As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[12]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>
> (2) punitive damages upon proof of willful or reckless disregard of the law;
>
> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>
> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d. For the purposes of this section:
>
> . . . "Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include

[12] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed.

93. Starting on or about July 24, 2025, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

94. For example, a true and correct copy of the email directly from Plaintiff Officer Maloney (with personal information redacted) appears below:



**From** [redacted]@atlasmail.com
**To** support@deleteme.com
**Date** Wed, Jul 30, 2025 6:21 AM
**Subject** Data Subject Request - Redaction/nondisclosure Request

DeleteMe
2025-07-30

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Full Name: Justyna Maloney

Other Names or Variants (by which I am known or may be identified):
[redacted]

Home Phone Number:
[redacted]

Sincerely,
Justyna Maloney

95. Defendants negligently, willfully, or recklessly continue to disclose or redisclose on the Internet or otherwise make available the protected information of the Covered Persons beyond the time period required by Daniel's Law. Thus, Defendants' disclosure or redisclosure of protected information of the Covered Persons following the statutory period of ten (10) business days violates Daniel's Law.

96. Defendants, including DeleteMe, Tornaritis and those currently pled as Richard Roes 1-10 or ABC Company 1-10, are equally responsible for the negligent, purposeful and reckless acts and omissions alleged herein, particularly because they have not maintained separation and Tornaritis or others have dominance and control over DeleteMe, or they operate as alter egos in their operations and functions.

97. Indeed, even as of times recent to the date of this filing, Defendants negligently, purposefully or recklessly still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

98. All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs, who assert their claims directly in this action) have assigned in writing their claims against Defendants to Atlas. All of the assignments were completed in writing before the date of the filing of the initial Complaint.

99. Following the entry of a protective order filed in this Court and identification of any individuals with whom confidential information will be shared, Plaintiffs will provide under a confidential designation a full and complete list of the following:

a. Names of each of the 6,626 assignors referenced in paragraph 25; and

b. The factual basis for the person to be considered a "Covered Person" as defined in N.J.S.A. 56:8-166.1(d), that is, a judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, as those terms are identified in N.J.S.A. 47:1A-1.1 or prosecutor and any immediate family member residing in the household of individuals in these categories.

100. The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

**COUNT ONE**

**(Violation of Daniel's Law, N.J.S.A. 56:8-166.1)**

101. The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

102. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or redisclosure on the Internet or wherever Defendants otherwise made it available.

103. Defendants had an obligation under Daniel's Law to comply with the nondisclosure request within ten business days.

104. Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

105. Defendants negligently, willfully, or recklessly continue to disclose or redisclose on the Internet or otherwise make available information in violation of Daniel's Law, and in doing so each constitutes a separate violation under the law.

106. Defendants' continued disclosure in violation of Daniel's Law, despite having received notice as required under the statute, constitutes negligent, willful, or reckless disregard of the law.

107. As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered against Defendants and/or the Website as follows:

A. Ordering that Defendants and/or the Website immediately comply with Daniel's Law, and cease the disclosure of the Individual Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or redisclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants and/or the Website comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants and/or the Website to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants and/or the Website prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants and/or the Website as the Court deems equitable and just.

**COUNT TWO**

**(Violation of Daniel's Law, N.J.S.A. 2C:20-31.1)**

108. The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

109. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or redisclosure on the Internet or wherever Defendants otherwise made it available.

110. Tornaritis received those requests and was aware of them as demonstrated by his attempt to obtain access to Atlas's privacy platform.

111. Defendants had an obligation under N.J.S.A. 2C:20-31.1(b) to comply with the nondisclosure request within ten business days.

112. Defendants knew that not complying with the nondisclosure requests exposed the Covered Persons to harassment or risk of harm to life or property.

113. In fact, Defendants publicly (and falsely claim) that their services act as a "digital shield" and allows users to prevent fraud and theft or other harms to property proactively.

114. These inaccurate claims have also been forwarded by Tornaritis in his submissions to the Government related to the DeleteMe Marks.

115. Simply stated, Defendants have a variety of public pronouncements and statements on the Websites, the DeleteMe Marks applications, on social media and through other efforts that demonstrate that they are individually and collectively aware of the significant risks to life or property that result from accessibility to the home address or home phone number of individuals and that removal of such information from public or commercially available sources (like the Defendant Websites) mitigates such risk and reduces the probability of such harm occurring.

116. Tornaritis, DeleteMe USA, DeleteMe EU, Richard Roes 1-10 and ABC Companies 1-10 function together as an enterprise as defined under Chapter 20 of Title 2C of the New Jersey Statutes through, among other things, the use of the Websites (and domain names) and DeleteMe Marks.

117. Defendants' common purpose is to profit through the illicit and licit trade of personal information, while skirting their obligations under a myriad of privacy laws, including but not limited to Daniel's Law.

118. More specifically, Defendants are an identifiable association or entity, that work together for the common purpose of making individuals believe they are a privacy company when they in-fact are a data broker as set forth herein.

119. For example, Defendants falsely claim that they do not sell or misuse personal information, despite Tornaritis's direct encouragement online for people to utilize DeleteMe for such services.

120. Defendants' failure to suppress the Individual Plaintiffs' and Covered Persons' protected information is not only negligent but reckless, purposeful or willful.

121. Indeed, even as of the time recently preceding the date of this filing, Defendants still refuse to fully comply with N.J.S.A. 2C:20-31.1 and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

122. The unlawful activity of Defendants' enterprise occurs through a variety of interests including the Websites and DeleteMe Marks.

123. As a result of Defendants' failures to comply with the law, Plaintiffs have and continue to have risk of harm to person or property, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered pursuant to N.J.S.A. 2C:20-21(a) against Defendants and/or the Website as follows:

A. Entering a permanent injunction prohibiting DeleteMe, Tornaritis and any other Defendants' violations of N.J.S.A. 2C:20-31.1, and any actions in furtherance thereof, including, posting, reposting, publishing or republishing on the Internet, or otherwise making available the Protected Information of the Individual Plaintiffs and the Covered Persons wherever disclosed or otherwise made available;

B. Ordering a divestment by Defendants from interests, including assets or resources that perpetuate their enterprise in violation of N.J.S.A. 2C:20-31.1, including but not limited to the Website domains and DeleteMe Marks.

C. Ordering the dissolution or reorganization of Defendants' enterprise.

D. Ordering the forfeiture of Defendants' corporate charters or revocation of any certificate of authority in the public interest.

E. Imposing temporary orders, including restraints and prohibitions, in the interest of justice.

F. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

G. Awarding such other and further relief against Defendants, the DeleteMe Marks and/or the Websites as the Court deems equitable and just.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn, Esq.
Jessica A. Merejo, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

**DESIGNATION OF TRIAL COUNSEL**

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiff in this matter.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

**CERTIFICATION PURSUANT TO RULE 4:5-1**

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

**CERTIFICATION PURSUANT TO RULE 1:38-7(b)**

Pursuant to R. 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

# Civil Case Information Statement

## Case Details: ESSEX | Civil Part Docket# L-005000-26

**Case Caption:** ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L
**Case Initiation Date:** 06/23/2026
**Attorney Name:** RAJIV D PARIKH
**Firm Name:** PEM LAW LLP
**Address:** 1 BOLAND DR SUITE 101
WEST ORANGE NJ 07052
**Phone:** 9735775500
**Name of Party:** PLAINTIFF : ATLAS DATA PRIVACY CORPORATION
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** COMPLEX COMMERCIAL
**Document Type:** Complaint
**Jury Demand:** NONE
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: ATLAS DATA PRIVACY CORPORATION? NO**

**Are sexual abuse claims alleged by: Scott Maloney? NO**

**Are sexual abuse claims alleged by: JUSTYNA MALONEY? NO**

**Are sexual abuse claims alleged by: PATRICK COLLIGAN? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
Daniel's Law litigation

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/23/2026
Dated

/s/ RAJIV D PARIKH
Signed

**ESSEX COUNTY - CIVIL DIVISION**
**SUPERIOR COURT OF NJ**
**465 MARTIN LUTHER KING JR BLVD**
**NEWARK NJ 07102**

**TRACK ASSIGNMENT NOTICE**

**COURT TELEPHONE NO. (973) 776-9300**
**COURT HOURS 8:30 AM - 4:30 PM**

**DATE: JUNE 23, 2026**
**RE: ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L**
**DOCKET: ESX L -005000 26**

**THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 4.**

**DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.**
**FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.**

**THE MANAGING JUDGE ASSIGNED IS: HON STEPHEN L. PETRILLO**

**IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 002 AT: (973) 776-9300 EXT 56512.**

**IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.**
**PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.**

**ATTENTION:**

**ATT: RAJIV D. PARIKH**
**PEM LAW LLP**
**1 BOLAND DR**
**SUITE 101**
**WEST ORANGE NJ 07052**

**ECOURTS**

New Jersey Courts
Independence • Integrity • Fairness • Quality Service

Essex Vicinage

**Hon. Stephen L. Petrillo**
**Judge Superior Court**

Essex County Historic Courthouse
470 Martin Luther King Jr. Blvd., Room 402
Newark, New Jersey 07102

njcourts.gov • Tel: 973-776-9460 Fax: 973-424-2483

June 29, 2026

***Via ecourts:***
**PEM LAW LLP**
Rajiv D. Parikh, Esq.
One Boland Drive, Suite 101
West Orange, New Jersey 07052

**Re: ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L**
**DOCKET NO. ESX-L-005000-26**

Dear Counsel:

The referenced case has been filed as case type **508.** That designation presumptively assigns the case to the Complex Litigation Business Program ("CBLP"). The complaint has been preliminarily reviewed and the matter appears, at this time, to meet the criteria for inclusion in the CBLP. The following documents are attached:

1. **Case Management Guidelines**. The guidelines provide an overview of the CBLP including an explanation of the criteria for presumptive assignment and exclusion as well as the method of opting in to the CBLP. The Guidelines further describe the management of cases within the CBLP.

2. **Joint Proposed Discovery Plan.** Parties in CBLP matters are required to confer and develop a proposed discovery plan pursuant to R. 4: 103-2(b). The model Joint Proposed Discovery Plan provides information and background necessary for the court to exercise early and effective case management and to render litigation, particularly discovery, more predictable and efficient. It includes deadlines for written discovery, interrogatories and depositions, pretrial motions and the filing of expert and rebuttal reports. The Proposed Joint Discovery Plan also addresses bifurcation, mediation, binding arbitration and the scheduling of an interim status/settlement conference.

3. **Scheduling Order.** A scheduling order providing various discovery and trial deadlines, as well as limits on discovery, must be entered following the initial case management conference pursuant to R. 4: 103-3. This provides a template for that order.

4. **Electronic Discovery Stipulation and Order.** The Electronic Discovery Stipulation and Order governs discovery of Electronically Stored Information ("ESI") and covers preservation of ESI, custodians, search terms, production, and documents protected from discovery. Pursuant to R. 4: 103- 2(c), parties are required to advise

the court whether they anticipate any issues regarding disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.

5. **Clawback Stipulation and Order.** This model stipulation and order is used where the parties agree on a procedure to claw-back inadvertently disclosed privileged or work product materials through the exchange of certain electronically stored or electronically maintained information.

The CBLP case management guidelines, model forms, and model orders are posted on the Judiciary's Complex Business Litigation Program webpage (https://njcourts.gov/courts/civil/cblp.html). The model CBLP forms and model orders can be used without modification or can serve as the starting point for documents crafted to meet the needs of a particular business-related case and situation.

Please review these guidelines and familiarize yourself with the CBLP applicable court rules found at chapter XI of the Rules Governing Civil Practice in the Superior Court, Part IV. **These rules are distinct in certain key respects as regards motion practice and discovery and must be followed.**

After all parties have appeared, or after default has been entered as to absent parties, an initial case management conference shall be held. Discovery shall proceed as set forth by the CBLP court rules. It shall be the responsibility of the plaintiff's counsel to alert the court to the case's readiness for the initial conference and all counsel shall prepare for same as provided by R. 103-2.

All counsel are reminded to please ensure compliance with R. 4:102-1(b) on all filings.

Please be guided accordingly.

Very truly yours,

*Stephen L. Petrillo*

SLP/cac

# Complex Business Litigation Program (CBLP) Case Management Guidelines

## Overview

The Complex Business Litigation Program ("CBLP" or "the Program") is focused on business, commercial and construction cases with significant amounts in dispute or business or commercial cases involving complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial; significant interpretation of a business, commercial or construction statute; or involves other contentions of a complex business, commercial or construction nature.

### Eligibility

A case is assigned to the vicinage CBLP judge in the following situations:

**Threshold Damages**

The CBLP involves disputes with and between business entities where the claims, counterclaims, or third-party claims allege business, commercial or construction claims and an amount in controversy of at least $200,000.00, unless the court determines a lesser amount is acceptable.

**Self Designation**

Attorneys or parties completing the Civil Case Information Statement will self-designate actions as Complex Commercial (Case Type 508) or Complex Construction (Case Type 513). These case types will presumptively be assigned to the vicinage's CBLP judge for case management.

Complex Commercial (508) actions involve claims by, against, and among parties that arise out of business or commercial transactions and involve parties' exposure to potentially significant damage awards; or where the business or commercial claim involves complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial; significant interpretation of a business or commercial statute; or involves other contentions of a complex business - commercial nature.

Complex Construction (513) actions involve claims by, against, and among owners, contractors, subcontractors, fabricators and installers, architects, engineers, design and construction consultants, and other similar parties associated with a construction project that involves parties' exposure to potentially significant damage awards because of claimed design and construction defects, delay claims, or where the construction claim involves complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial. Complex construction does not include construction and professional payment and billing claims, change order claims, wrongful termination, quantum merit, construction lien or mechanics lien claims, unless associated with a complex construction claim as herein described.

Actions to establish a constructive trust or impose an equitable lien to satisfy damages are also cognizable in the CBLP, as are cases primarily seeking legal relief in which ancillary injunctive relief is sought. The CBLP encompasses both jury and non-jury matters.

CBLP judges handle cases arising from the following non-exclusive list of circumstances:

- non-consumer Uniform Commercial Code transactions;
- the purchase and sale of assets of businesses or assets of a business, including contract disputes and commercial landlord/tenant claims;
- non-consumer sales of goods or services by or to a business;
- non-consumer bank or brokerage accounts including loan, deposit, cash management, and investment accounts;
- purchase, sale, or lease of commercial personal property, or security interests therein;
- arising out of state securities laws;
- intellectual property disputes;
- business licensing agreement disputes;
- unfair competition disputes;
- sale, purchase of a business or purchase or sale of stock, assets or liabilities of a business;
- mergers and acquisitions disputes;
- franchisee/franchisor relationship and liabilities;
- business torts, including interference with prospective economic advantage, interference with contractual relations, tortious interference with business relationships, breach of implied covenant of good faith and fair dealing, fraud, fraud in the inducement, misrepresentation, and breach of fiduciary duty;
- liability or indemnity of managers (officers, directors, managers, trustees or members or partners functioning as managers) of corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises;
- Racketeer Influenced and Corrupt Organizations Act (RICO) claims;
- complex commercial construction disputes;
- other complex disputes of a business or commercial nature.

The CBLP retains the law and equity separation that was recognized in the 1947 Constitution. It does not encroach on the cases traditionally heard in General Equity. The CBLP does not include matters involving:

- internal affairs or governance disputes over management and/or control of business entities;
- dissolution or liquidation rights or obligation between or among owners (shareholders, partner, members);
- statutory and custodial receivership or actions seeking the appointment of special fiscal agents;
- restructuring of a business entity;
- shareholder derivative suits;
- actions to protect the interests of a business, such as non-compete agreements, trade secrets or restrictive covenant agreements.

Also excluded from CBLP are actions primarily involving consumers, labor organizations, personal, physical or mental injury; mechanics' lien actions, and condemnation proceedings. Following is a non-inclusive list of actions that generally are not handled by CBLP judges and are handled by judges regularly assigned to the Law Division, Civil Part:

- class action consumer claims;
- products liability actions;
- personal injury and wrongful death actions;
- commercial landlord verses consumer tenant actions;
- noncommercial real estate matters actions;
- actions by consumers against a business and businesses against consumers;
- enforcement of arbitration awards;
- condemnation actions;
- landlord-tenant matters involving summary dispossession;
- employment Law Against Discrimination actions;
- civil rights actions;
- professional malpractice actions;
- medical device litigation and pharmaceutical litigation;
- Multicounty Litigation (mass tort);
- environmental litigation including environmental insurance coverage actions;
- Conscientious Employee Protection Act actions;
- agreements relating to an individual or collective contract of employment;
- wrongful discharge actions;
- slander of title or product disparagement actions;
- fraudulent transfers under the Uniform Fraudulent Transfers Act;
- consumer residential construction actions.

**Opt-In Motion**
Parties may formally move before the CBLP judge for inclusion in the Program where a case is not presumptively assigned to the CBLP but involves complex business related issues and/or the amount in controversy is less than $200,000. Business or commercial disputes that involve complex factual or legal issues; a large number of parties; discovery issues such as managing large numbers of documents, multiple experts; is likely to have implications for business beyond the decision in the particular case; is likely to result in a significant interpretation of a business or commercial statute; or involves other contentions that the CBLP judge finds compelling may be assigned to the Complex Business Litigation Program. Such motions shall be granted for good cause shown.

**Complex Business Litigation Assignment Recommendation**
If, upon review, the Assignment Judge or the CBLP judge determines a case is appropriate for the CBLP, the judge may, *sua sponte*, assign it to the CBLP.

## Exclusion from CBLP

### Initial Case Review

The CBLP judge will review actions presumptively assigned to the CBLP to determine if the case is appropriate for the CBLP. If, after review, the CBLP judge determines that the complex nature of the action or the threshold damages claim amount is not established, the CBLP judge shall remove the case from the Program. The Assignment Judge may also conduct initial CBLP eligibility reviews. Cases removed from the CBLP by the Assignment Judge or the CBLP judge will be reassigned to the appropriate track for case management.

### Motion for Removal from the Program

Any party may move for removal from the CBLP on the grounds that the action does not meet the eligibility criteria.

# Guidelines

## Assignment of Judges

CBLP cases are assigned to a single judge that handles all aspects of the case, including discovery disputes, summary judgment and other motions, and trial.

## Court Rules

Cases assigned to the CBLP are governed by Part IV, Chapter XI ("Complex Commercial & Complex Construction Matters") of the New Jersey Rules of Court. Absent an express contradictory rule contained in Chapter XI, Parts I and IV of the Court Rules shall otherwise apply to any case in the CBLP.

## Pre-Case Management Conference Activity

Initial conference preparation is required pursuant to *Rules* 4:103-1 and 4:103-2, comparable to Federal Rule of Civil Procedure 26, to require attorneys to both meet with their clients as well as each other before a meeting with a judge.

The initial meetings between counsel and their clients will provide an understanding of the potential data and information at issue and the time required to accomplish full discovery. In conferring with counsel, attorneys should prepare a Joint Discovery Plan for all discovery as well as an Electronic Discovery Plan, both of which are to be provided to the Court in advance of the Initial Conference. Counsel should also advise the Court of any unresolved discovery issues.

Electronic discovery (eDiscovery): the attorneys should meet and confer to discuss form, scope preservation/destruction, and expense of production; method for asserting or preserving claims of privilege or of protection; confidentiality; and any other electronic discovery issues. The Electronic Discovery Plan should set forth the parties' agreements as to all eDiscovery.

## Initial Conferences

The case will be scheduled for an Initial Conference with the CLBP Judge[1]. At that Conference, counsel will meet with the Judge/other court representative to discuss assignment and scheduling of the case. If it is determined that it should not be in the CBLP, the case may be removed at that time. If the case remains in the CBLP, a comprehensive Scheduling Order, setting forth all discovery deadlines, will be entered at that time.

[1] Should the need arise, the utilization of other judicial staff such as law clerks and/or a designated statewide case manager should be considered for overseeing/conducting certain conferences for CBLP cases.

## Model Stipulations/Orders

The CBLP Internet website has the following model case management, discovery and protective orders:

Joint Proposed Discovery Plan;

Discovery Confidentiality Order (Appendix XXX to the Rules of Court);

Clawback Stipulation and Order;

Electronic Discovery Stipulation and Order; and

Scheduling Order.

## Contacting Chambers

At the time of the Initial Conference, the CBLP Judge should advise the parties the appropriate method(s) (phone, letter, email) and bases for contacting chambers. The CBLP Judge should also advise whether joint submissions will be required.

## Case Management/Status Conferences

As needed/requested by the parties (within reason). There, the parties will report their discovery progress and address any issues. Prior to such a conference a joint letter should be sent to the Court advising of the status of the case and the issues to be discussed at the Conference.

## Discovery and Motions

The Supreme Court has approved Court Rules to govern cases in the Program. Some aspects of discovery and motions in CBLP cases will be handled differently than other civil matters.

### Discovery

See *Rules* 4:104-1 through 4:104-9, which provide the timing, limits and confidentiality of discovery in CBLP matters. The Rules also address discovery disputes (*R.* 4:105-4). The parties should first "meet and confer" to try to resolve the issues. If an agreement cannot be reached, counsel should submit a letter to the court explaining the basis for the motion and requesting a telephone or in-court conference before the motion is made. The Rule provides a process to resolve the dispute if not resolved by the court conference.

### Motions

See *Rules* 4:105-1 through 4:105-9. These Rules seek to streamline and facilitate the motion practice while also addressing the complexity and need for ease and flexibility of litigants to seek and to obtain extensions. Discovery disputes should be handled as noted above and the Dispositive Motion schedule should be set forth in Joint Proposed Discovery Plan.

## Settlement and CDR

Any settlement conferences will be held at the CBLP judge's discretion. The CBLP judge will also advise whether a settlement conference memorandum is necessary as well as any content and formatting requirements.

CBLP cases are not part of the court's mandatory civil mediation and arbitration programs. However, the CBLP judge in each vicinage, as part of case management, should encourage the parties to engage in mediation or some type of dispute resolution to facilitate settlement.

## Pre-trial and Trial

All CBLP actions shall be pretried and the requirements of *Rule* 4:25 shall apply to the final pretrial conference, which should lead to the formulation of a trial plan, including a plan to facilitate the admission of evidence. With regard to trial exhibits, parties should prepare and submit Joint Exhibits to eliminate redundancy (it does not mean the parties are stipulating to its admissibility).

Model Stipulation and Order

Superior Court of New Jersey
Law Division, Civil Part
________________ County
Docket Number: L-________________________

________________________________________ Plaintiff(s),

v.

________________________________________ Defendant(s).

**Clawback Stipulation and Order**

WHEREAS, the Parties[1] believe that it will promote the efficient, just, and economical resolution of this Litigation to supplement the existing Discovery Confidentiality Order by entering into this stipulation and Order (the "Clawback Order") regarding the exchange of certain electronically stored information ("ESI"), any electronically stored or maintained information, documents, or things, or portion of any documents or things ("Discovery Materials"); and

WHEREAS, based upon a good faith belief that the procedures set forth in the Electronic Discovery Stipulation and Order (the "eDiscovery Order") are likely to generate a large volume of Discovery Materials;

WHEREAS, based on the anticipated number of relevant and/or responsive Discovery Materials that will be identified in this Litigation, the Parties have previously agreed upon certain delimiters, procedures and processes set forth in the eDiscovery Order which include, *inter alia,* agreeing to utilize agreed upon search terms, date ranges and custodians to more accurately identify potentially relevant Discovery Materials; and

WHEREAS, despite these methods used to cull-down the number of documents identified as potentially relevant, the Parties recognize that the volume of Discovery Materials that will be exchanged in this Litigation is of a magnitude that the inadvertent disclosure of Discovery Materials that are subject to a claim of attorney-client, work product and/or other applicable privilege or immunity, and/or protected pursuant to applicable state and/or federal privacy laws (collectively, "Privileged Discovery Materials"), as well as the disclosure of other materials irrelevant to this Litigation ("Irrelevant Materials") is possible; and

WHEREAS, the Parties believe that permitting the production of Discovery Materials pursuant to this Clawback Order will materially reduce the cost and duration of discovery, the attendant burdens on the Parties, and the need for judicial intervention; and

WHEREAS, although New Jersey has not adopted a rule of evidence similar to Federal Rule of Evidence 502,[2] the Parties understand and stipulate that disclosure of Privileged Discovery Materials pursuant

[1] Unless otherwise defined, capitalized terms herein have the meanings assigned in the "Discovery Confidentiality Order").
[2] Entitled "Attorney-Client Privilege and Work Product; Limitations on Waiver."

to this Clawback Order will not prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client, work product or other applicable privilege or immunity, under New Jersey law.

IT IS HEREBY STIPULATED, AGREED AND ORDERED:

1. Discovery Materials exchanged by the Parties in this Litigation is subject to and under the terms of this Clawback Order provided that the Party producing the Discovery Materials has made a good faith effort to prevent the inadvertent production of any Privileged Discovery Materials or Irrelevant Materials.

2. A Producing Party shall not be obligated to conduct a document-by-document review of the Discovery Material prior to its production in order to meet the good faith standard mentioned above; provided however, that a Producing Party utilized, at a minimum, the following best practices to avoid the inadvertent production of documents ("Best Practices"):
    a. Keyword search terms (e.g., the names of counsel and law firms for the Producing Party);
    b. Domain names; and
    c. Analytical software tools and/or other reasonable means to locate and exclude potentially Privileged Discovery Materials prior to the production of the Discovery Materials;

3. Any document that is not identified by using the above Best Practices is considered presumptively responsive/non-privileged and may be produced without performing a document-by-document review.

4. Any documents that are identified as being potentially privileged by using the above Best Practices shall be reviewed by the Producing Party and, if such material is responsive and non-objectionable, shall either be (i) produced (if such material is not deemed Privileged Discovery Material), or (ii) identified as privileged and placed onto the Producing Party's privilege log (if such material is deemed as Privileged Discovery Material), in the normal course of discovery, consistent with the Rules of this Court. If a Producing Party complies with Paragraphs 2 and 3 herein, such Producing Party shall be deemed to have implemented adequate precautions to prevent inadvertent disclosure of any Privileged Discovery Materials.

5. Disclosure of Privileged Discovery Materials in this Litigation, pursuant to this Clawback Order, shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any attorney-client, work product or other applicable privilege or immunity. Any Privileged Discovery Materials or Irrelevant Materials shall be deemed to have been inadvertently produced.
    a. A Party who receives any Discovery Materials that, upon review by such Party, appears on their face to be Privileged Discovery Materials shall: (i) refrain from any further examination or disclosure of such document pending confirmation by the Producing Party that such document is not Privileged Discovery Material; and (ii) provide reasonably prompt written notice to counsel

for the Producing Party that such document appears to be Privileged Discovery Material. Upon receiving a written notice contemplated by the preceding sentence, the Producing Party shall provide reasonably prompt written notice to the requesting Party indicating whether the document in question constitutes Inadvertent Production Material.

b. A Producing Party shall be obligated to make a reasonably prompt claim of inadvertent production upon the earlier of: (i) receiving notice under the preceding paragraph concerning such document, or (ii) otherwise becoming aware of the inadvertent production of such document. If a Producing Party complies with this paragraph, such Party shall be deemed to have acted timely and adequately to rectify any inadvertent disclosure of Privileged Discovery Materials.

c. The procedures set forth in Paragraph 9 of the Discovery Confidentiality Order shall apply to any Discovery Material which is claimed to be Inadvertent Production Material.

d. The Producing Party shall timely log any Discovery Material that is claimed to be Inadvertent Production Material, consistent with the Rules of Court.

6. Each Party shall have the right to demand the immediate return of any Irrelevant Material produced by such Party. After the documents are returned, the Parties agree to meet and confer in good faith to resolve any disputes that arise regarding the alleged Irrelevant Materials. The Party that is challenging the designation of potentially Irrelevant Material and is subject to destroy and/or return the documents at issue must also destroy and/or obtain from any Party or third party that was provided with the potentially Irrelevant Material until the issues are resolved through the meet and confer or by motion to the Court.

7. Nothing in this Clawback Order shall:

a. Require any Party to produce or disclose any Privileged Discovery Materials;

b. Require any Party to produce documents or data as Clawback Discovery Material;

c. Waive any Party's right to conduct limited pre-production review of Discovery Material prior to production of such materials;

d. Modify the Discovery Confidentiality Order, unless expressly stated herein;

e. Except as expressly stated herein, modify any prior agreements among the Parties concerning the conduct of discovery in this Litigation, including but not limited to agreements regarding the collection of Discovery Material from certain custodians or the use of search terms to identify potentially responsive documents; or

f. Prevent any Party from arguing that a waiver of an attorney-client, work product, or other applicable privilege or immunity has occurred from circumstances other than disclosure of Discovery Material pursuant to this Clawback Order.

8. The Parties agree that any violation of this Clawback Order shall result in irreparable harm for which there is no adequate remedy at law. The Parties further agree that any Party shall be entitled to injunctive relief to enforce the terms hereof. In addition, the Parties expressly acknowledge that the Court may, in its discretion, award such other and further relief as the Court may deem appropriate.

9. This Clawback Order applies only to Discovery Material produced by the Parties, and does not apply to Discovery Material produced by non-parties. In the event additional parties join or are joined in the Litigation, they shall not have access to Discovery Material until the newly-joined party, by its counsel, has executed and, at the request of any Party, filed with the Court its agreement to be fully bound by this Clawback Order.

10. The Parties agree to be bound by the terms of this Clawback Order pending the entry of this Clawback Order by the Court, and any violation of its terms shall be subject to the same sanctions and penalties as if this Clawback Order has been entered by the Court. Notwithstanding the foregoing, the Parties shall not be obligated to provide any Discovery Material prior to entry of this Clawback Order by the Court, unless the production of such Discovery Material is expressly required by another Order of the Court.

11. Subject to any applicable Rule of Court, the provisions of this Clawback Order shall, absent written permission of the Producing Party or further Order of the Court, continue to be binding throughout and after the conclusion of the Litigation, including without limitation any appeals therefrom.

12. Nothing in this Clawback Stipulation and Order shall preclude any Party from seeking judicial relief, upon notice to the Parties, with regard to any provision hereof.

13. This Clawback Stipulation and Order may be executed by PDF or conformed signature and may be executed in one or more counterparts, each of which shall be deemed to constitute an original, but all of which together shall constitute but one agreement.

Dated: ____________________ ____________________________
Counsel for Plaintiff

Dated: ____________________ ____________________________
Counsel for Defendant

**IT IS SO ORDERED.**

Dated: ____________________ ____________________________
J.S.C.

Model Stipulation and Order

Superior Court of New Jersey
Law Division, Civil Part
_______________ County
Docket Number: L-_______________________

_______________________________________
Plaintiff(s),

v.

_______________________________________
Defendant(s).

**Electronic Discovery Stipulation and Order**

1. **Purpose**
This Order (the "eDiscovery Order") will govern discovery of Electronically Stored Information ("ESI") and any electronically stored or maintained information in this case as a supplement to the Rules of Court, the Complex Business Litigation Program's Guidelines, and any other applicable Orders and Rules.

2. **Cooperation**
The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the discovery and production of ESI and any electronically stored or maintained documents.

3. **Liaison**
The Parties have designated liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI and/or electronic documents ("eDiscovery Liaison"). Each eDiscovery Liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI and/or electronic documents in this matter. The Parties will rely on the eDiscovery Liaison, as needed, to confer about ESI and/or electronic documents and to help resolve disputes without court intervention. The following individuals are the designated as the eDiscovery Liaison for this litigation:

Plaintiff(s) [with contact information]:

Defendant(s) [with contact information]:

4. **Preservation**
By signing this eDiscovery Order, the Parties certify that they have taken reasonable steps to preserve all ESI and electronically stored documents. Additionally, the Parties have discussed their preservation obligations and needs as litigation progresses and agree that preservation of potentially relevant ESI and electronically stored documents will be reasonable and proportionate. To reduce the costs and burdens of preservation, and to ensure proper ESI and/or electronically stored information is preserved, the Parties agree that:

a) They have exchanged a list of custodians, the types of ESI and/or electronically stored information they believe should be preserved, or general job titles or descriptions of custodians, for whom they believe ESI and/or electronically stored information should be preserved, e.g., "HR head," "scientist," "marketing manager," etc…;

b) In addition to the previously preserved ESI and/or electronically stored information, the Parties agree that any ESI created or received between _______ and _______ will be preserved for the custodians and/or for those individuals who meet the general job titles or descriptions of custodians provided by the opposing party;

c) They have agreed/will agree on the number of custodians per party for whom ESI and/or electronically stored information will be preserved;

d) Data sources that are not reasonably accessible because of undue burden or cost and ESI from these sources will be preserved but not searched, reviewed, or produced: [e.g., backup media of [named] system, systems no longer in use that cannot be accessed];

e) Among the sources of data the Parties agree are not reasonably accessible, the Parties agree not to preserve the following: [e.g., backup media created before _______, digital voicemail, instant messaging, automatically saved versions of documents];

f) Any data sources, ESI and/or electronically stored information that has or potentially could have been destroyed is listed below and has been divulged to the opposing party;

Plaintiff(s) Preservation Issues (if any):

Defendant(s) Preservation Issues (if any):

g) In addition to the agreements above, the Parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: ______

**5. Custodians**

The Parties agree that in providing *R.* 4:103-1 Initial Disclosures, or earlier if appropriate, they have met and conferred about methods to search ESI in order to identify data sources that are likely to contain relevant documents. The Parties have agreed to _____ custodians and/or data sources each for the purposes of this litigation. Those custodians and/or data sources are listed below. The Parties shall add or remove custodians as reasonably necessary.

Plaintiff(s) Custodians and/or Data Sources:

Defendant(s) Custodians and/or Data Sources:

**6. Search Terms**

The Parties have agreed upon the following search terms:

Plaintiff(s) Search Terms:

Defendant(s) Search Terms:

In the event that any of the search terms return _______ documents or more, the Parties agree that the search term is per se overly broad and will work to create a more tailored search term.

**7. Production**

The Parties agree to run the appropriate de-duplication program prior to any production to reduce the number of duplicate documents. The Parties further agree to the Production Format set forth in Exhibit "A", which is attached hereto and incorporated as part of the eDiscovery Order, for all ESI and/or electronically stored information exchanged in this litigation.

The Parties agree to electronically Bates label documents as follows:

Plaintiff(s) Bates Designation:

Defendant(s) Bates Designation:

**8. Phasing (Rolling) Production**
When a party propounds discovery requests pursuant to proposed *R.* 4:104-5, the Parties agree to phase the production of ESI (*i.e.* produce the documents on a rolling basis), and the initial production will be from the above-agreed upon custodians and data sources.

Following the initial production, the Parties will continue to prioritize the order of subsequent productions.

**9. Documents Protected From Discovery**
Although New Jersey has not adopted a rule of evidence similar to Federal Rule of Evidence 502 (Attorney-Client Privilege and Work Product; Limitations on Waiver), the Parties understand and stipulate that disclosure of Privileged Discovery Materials pursuant to this Stipulation and Order as well as any Clawback or other Order will not prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client, work product or other applicable privilege or immunity, under New Jersey law.

For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case, or in any other Federal or State proceeding.

Communications involving trial counsel that post-date the filing of the Complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**10. Modification**
This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED,** through Counsel of Record

Dated: ____________________ ____________________________________
Counsel for Plaintiff

Dated: ____________________ ____________________________________
Counsel for Defendant

**IT IS SO ORDERED** that the foregoing Agreement is approved.

Dated: ____________________ ____________________________________
J.S.C.

Model Form

Superior Court of New Jersey
Law Division, Civil Part
_______________ County
Docket Number: L-_______________

_______________________________
Plaintiff(s),

v.

**Joint Proposed Discovery Plan**

_______________________________
Defendant(s).

1. Set forth the name of each attorney appearing, the firm name, address and telephone number and email address of each, designating the party represented.

2. Set forth a brief description of the case, including the causes of action and defenses asserted.

3. Have settlement discussions taken place? ☐ Yes ☐ No

4. The Parties ☐ have ☐ have not met pursuant to *R.* 4:103-2.

5. The Parties ☐ have ☐ have not exchanged the information required by *R.* 4:103-1(a)(1). If not, state the reason therefor.

6. Explain any problems in connection with completing the disclosures required by *R.* 4:103-1(a)(1).

7. The Parties ☐ have ☐ have not conducted discovery other than the above disclosures. If so, describe.

8. Proposed joint discovery plan:
   a) Discovery is needed on the following subjects: ________
   b) Discovery ☐ should ☐ should not be conducted in phases or be limited to particular issues. Explain:
   c) Proposed schedule:
      1) *R.* 4:103-1 Disclosures ________.
      2) Service of initial written discovery ________.
      3) Maximum of ________ Interrogatories and ________ document requests by each party to each other party. NOTE: Parties are to provide rolling privilege logs within ten (10) days after each production.
      4) Maximum of ________ depositions to be taken by each party.
      5) Motions to amend pleadings or to add Parties to be filed by ________.
      6) Motions to resolve any privilege log disputes to be filed by ________.
      7) Factual discovery to be completed by ________.

8) Plaintiff's expert report(s) due on ________.

9) Defendant's expert report(s) due on ________.

10) Any rebuttal reports due on ________.

11) Expert depositions to be completed by ________.

12) Discovery end date: ________.

13) Dispositive motions to be served within ________ days of discovery end date.

d) Set forth any special discovery mechanism or procedure requested.

e) A pretrial conference may take place on ________.

f) Trial Date: ________ ☐ Jury Trial ☐ Non-Jury Trial

9. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? If "Yes", please explain. ☐ Yes ☐ No

10. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? ☐ Yes ☐ No

If "Yes", how will electronic discovery or data be disclosed or produced?

Describe any agreements reached by the Parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

11. Do you anticipate entry of a Discovery Confidentiality Order? See *R.* 4:104-6 and Appendix XXX. ☐ Yes ☐ No

12. Do you anticipate any discovery problem(s) not listed above? If "Yes", describe: ☐ Yes ☐ No

13. Is this case appropriate for bifurcation? ☐ Yes ☐ No

14. Is the case appropriate for mediation? ☐ Yes ☐ No

15. Do the parties consent to binding arbitration? ☐ Yes ☐ No

16. An interim status/settlement conference (with client representatives having settlement authority in attendance), shall be held on ________.

17. Identify any other issues to address at the Scheduling Conference.

______________________________ ______________
Attorney(s) for Plaintiff(s) Date

______________________________ ______________________________ ______________
Attorney(s) for Defendant(s) Name of client Date

Model Order

Superior Court of New Jersey
Law Division, Civil Part
_______________ County
Docket Number: L-____________________

______________________________________
Plaintiff(s),

v.

**Scheduling Order**

______________________________________
Defendant(s).

This matter having come before the Court for an Initial Conference, and for good cause shown,

It is, on this ____ day of ______________, 20___, **ORDERED** as follows:

(1) *R.* 4:103-1 Disclosures of the parties must be served on all parties no later than fourteen (14) days from the date of the Initial Conference.

(2) Service of initial written discovery to be completed by ________.

(3) Maximum of ____ Interrogatories and document requests by each party to each other party (if other than the limits set forth in *R.* 4:104-4).

(4) Maximum of ____ depositions to be taken by each party (if other than the limits set forth in *R.* 4:104-3).

(5) Motions to amend pleadings or to add parties to be filed by ________.

(6) Motions to resolve any privilege log disputes to be filed by ________.

(7) Factual discovery to be completed by ________.

(8) Plaintiff's expert report(s) due on ________.

(9) Defendant's expert report(s) due on ________.

(10) Any rebuttal reports due on ________.

(11) Expert depositions to be completed by ________.

(12) Discovery end date: ________.

(13) Dispositive motions to be served within ____ days of discovery end date.

(14) Tentative Status Conference Date (if necessary): ________.

(15) Tentative Pre-Trial Conference Date: ________.

(16) Tentative Trial Date: ________.

Dated: ____________________ ______________________________________ J.S.C.

NOTE: The parties may agree to set and/or modify interim deadlines without court approval, provided that any such change will not have any impact on the discovery end date.

NOTE: The setting of the Tentative Trial Date, above, does not implicate the "exceptional circumstances" standard of *R.* 4:24-1(c), and discovery extensions may be considered for good cause shown.

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br>v.<br><br>DELETEME USA, LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**AFFIDAVIT OF SERVICE AS TO DEFENDANT DELETEME EUROPE LTD.** |

I, Thomas R. Kraft, of full age, hereby certify and attest as follows:

1. I am an attorney duly licensed to practice law in the State of New Jersey and an Associate with PEM Law LLP, attorneys for plaintiffs, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*; Scott Maloney; Justyna Maloney; and Patrick Colligan (collectively, "Plaintiffs") in the above-captioned matter. And therefore, I have personal knowledge of the facts set forth in this Affidavit of Service.

2. On June 23, 2026, Plaintiffs commenced this action against defendants DeleteMe USA, LLC; DeleteME Europe, Ltd., and Criton Tornaritis (collectively, "Defendants") for

continuing violations of Daniel's Law, codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq., as of the time of filing.

3. As set forth in the Affidavit of Diligent Inquiry to be filed on the docket, Plaintiffs effectuated service upon Defendant DeleteME Europe, Ltd. in accordance with the Republic of Cyprus' elections under Hague Service Convention Article 10(a) (service via postal channels).

4. On July 7, 2026, Plaintiffs directed service of process upon Defendant DeleteMe Europe Ltd. via UPS International mail (signature required), certified mail, and regular mail at the following address:

DeleteME Europe Ltd.
Stasikratous, 16, Floor 7,
Flat/Office 701
1065 Nicosia, Cyprus

5. Service via UPS International was successfully delivered on July 10, 2026. A true and accurate copy of the UPS International mailing label and proof of delivery are jointly annexed hereto as "**Exhibit A**".

6. Specifically, the following documents were served on July 10, 2026: (1) Summons; (2) Complaint; (3) Case Information Sheet; (4) Track Assignment Notice; (5) Document Preservation Notice; (6) Plaintiffs' First Request for the Production of Documents; (7) Plaintiffs' First Set of Interrogatories; (8) June 29, 2026 Complex Business Litigation Program Assignment; and (9) June 29, 2026 Complex Business Litigation Program Guidelines. A true and accurate copy of the July 10, 2026 service packet is annexed hereto as "**Exhibit B**".

7. Based upon the foregoing reasons, Plaintiffs respectfully submit that service of process upon Defendant DeleteME Europe Ltd. was effectuated via international mail on July 10, 2026, and is valid pursuant to Article 10(a) of the Hague Service Convention and R. 4:4-4(b)(1)(B)-(C).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: *<u>/s/Thomas R. Kraft</u>*
THOMAS R. KRAFT

Dated: July 16, 2026

Enc.

# EXHIBIT A

# View/Print Label

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialogue box that appears. Note: If your browser does not support this function, select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a scheduled Pickup**
   - Your driver will pickup your shipment(s) as usual.

   **Customers without a scheduled Pickup**
   - Schedule a Pickup on ups.com to have a UPS driver pickup all of your packages.
   - Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. To find the location nearest you, please visit the 'Locations' Quick link at ups.com.

UPS Access Point™
CVS STORE # 10087
265 PROSPECT AVE
WEST ORANGE NJ 07052-4205

UPS Access Point™
THE UPS STORE
623 EAGLE ROCK AVE
WEST ORANGE NJ 07052-2948

UPS Access Point™
CVS STORE # 2813
217 MAIN ST
WEST ORANGE NJ 07052-5645

FOLD HERE

DAWN PEKAR
9735775500
DAWN PEKAR
1 BOLAND DRIVE
WEST ORANGE NJ 07052
UNITED STATES

1.0 LBS LTR 1 OF 1
SHP#: H460 073S YNN
SHP WT: 1 LBS
DATE: 07 JUL 2026

**SHIP TO:**
DELETEME EUROPE LTD
973-577-5500
DELETEME EUROPE LTD.
FLAT/OFFICE 701
16 STASIKRATOUS
**1065 NICOSIA**
**CYPRUS**

**CYP 712 1-00**

**UPS SAVER 1P**
TRACKING #: 1Z H46 007 D9 0350 5737

BILLING: P/P
SIGNATURE REQUIRED
DESC: documents

**EDI-DOC**

XOL 26.06.01 NV45 28.0A 07/2026*

# Proof of delivery

Dear customer,
This notification constitutes proof of delivery for the shipment listed below.

**Bill of lading number**
1ZH46007D903505737

**Service**
UPS Worldwide Saver®

**Additional information**
Signature required

**Delivered on**
10/07/2026 10:39

**Delivered to**
NICOSIA, CY

**Sent / Charged on**
07/07/2026

**Received from**
Yiota

Best regards,
UPS

Tracking results provided by UPS as of 07/16/2026 4:25 PM EST

# EXHIBIT B

PEM LAW LLP

**Thomas R. Kraft, Esq.**
**Associate**
tkraft@pemlawfirm.com
*Office:* +1 973.577.5500
*Direct:* +1 973.567.7455

July 6, 2026

**VIA INTERNATIONAL MAIL, CERTIFIED MAIL, & REGULAR MAIL**
DeleteME Europe Ltd.
Stasikratous, 16, Floor 7,
Flat/Office 701
1065 Nicosia, Cyprus

**Re:** ***Atlas Data Privacy Corporation, et al. v. DeleteME USA, LLC, et al.,***
**Docket No.: ESX-L-5000-26**

Dear Sir/Madam:

This firm represents Atlas Data Privacy Corporation, as *assignee of individuals who are Covered Persons* and the Individual Plaintiffs identified in the Complaint in the above-referenced matter. Enclosed for service pursuant to R. 4:4-4(b)(1)(B) and R. 4:4-4(b)(1)(C), please find the following:

1. Summons;
2. Complaint;
3. Case Information Statement;
4. Track Assignment Notice;
5. Document Preservation Letter;
6. Plaintiffs First Request for Production of Documents;
7. Plaintiffs First Set of Interrogatories;
8. June 29, 2026 Complex Business Litigation Assignment; and
9. June 29, 2026 Complex Business Litigation Guidelines.

Please contact the undersigned at your earliest convenience.

Very Truly Yours,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: */s/Thomas R. Kraft*
THOMAS R. KRAFT

TRK/
Enc.

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br>v.<br><br>DELETEME USA LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**SUMMONS** |

**FROM THE STATE OF NEW JERSEY TO:**

To the Defendants Named Above: DeleteME Europe Ltd.

The plaintiffs named above (and identified in the enclosed Complaint) have filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A

telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages, or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal services Offices and Lawyer Referral services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

*/s/Thomas R. Kraft*
THOMAS R. KRAFT

*/s/Michelle M. Smith*
MICHELLE M. SMITH
Clerk of the Superior Court

Dated: July 6, 2026

**VIA INTERNATIONAL MAIL, CERTIFIED MAIL, & REGULAR MAIL**
DeleteME Europe Ltd.
Stasikratous, 16, Floor 7,
Flat/Office 701
1065 Nicosia, Cyprus

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Kathleen Barnett Einhorn, Esq. (040161992)
Jessica A. Merejo, Esq. (288592020)
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Scott Maloney, Justyna Maloney, and Patrick Colligan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br><br>v.<br><br>DELETEME USA, LLC, DELETEME EUROPE LTD, CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-________-26<br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as the assignee of individuals who are Covered Persons under Daniel's Law, along with Scott Maloney, Justyna Maloney, and Patrick Colligan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

**INTRODUCTION**

1. In these tumultuous times, it is critical that the most sensitive personal information of current and former public servants be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, prosecutors—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2. This Complaint seeks to protect those important rights against companies brokering data while choosing profit and commercial gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering home addresses and unpublished home telephone numbers without sufficient regard for the risks and consequences imposed upon individuals who serve (and have served) critical judicial and law enforcement roles. Even worse are companies like the defendants here who claim to protect the privacy and safety of individuals, but who actually aggregate and sell dossiers on those individuals who have lawfully requested that their information not be published or disclosed.

3. The Legislature and Governor unanimously agree that the basic safety of those who serve—and their families—must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of these public servants. Our judges, law enforcement officers, and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4. With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory scheme, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5. In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was murdered by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just 20 years old and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect them. By the time his mother, a Judge, came to the door to check on what happened, the killer had fled. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6. During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and he went to her home that day intending to kill her. Investigators eventually connected this attack with the same perpetrator's shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to the case that was pending before Daniel's mother.

7. Critically, the gunman was able to find the home addresses of his murder victims through the various people finder resources available on the Internet,[1] the same kind of data broker services at issue in this case.

**New Jersey Passes Daniel's Law in 2020**

8. In response to Daniel's murder, New Jersey swiftly enacted Daniel's Law in November 2020. P.L. 2020, c. 125 codified in N.J.S.A. 47:1A-1, et seq., N.J.S.A. 56:8-166.1, et seq., and N.J.S.A. 2C:20-31.1 Daniel's Law allows current and former public servants—including judges, law enforcement officers, and prosecutors—and their eligible family members (*i.e.*, "covered persons") to send written nondisclosure requests to data brokers. Once a ten-business day period following such a request has passed, the data broker is prohibited from disclosing or otherwise making available the name and home address or unpublished home telephone number of the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of judges and prosecutors.

9. Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." N.J.S.A. 56:8-166.1(a)(1), (d).

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

10. Data brokers must cease disclosure of this protected information within ten business days of receiving a written nondisclosure request from a covered person.

11. To facilitate the enforcement of Daniel's Law, the New Jersey Legislature expressly provided that an enforcement action could be brought by a covered person or by the covered person's assignee. N.J.S.A. 56:8-166.1(b).

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

12. U.S. Supreme Court Chief Justice John G. Roberts Jr. supported the adoption of a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety . . . [a] judicial system cannot and should not live in fear."[2]

13. The federal bill, which had broad bipartisan support in both the House and Senate, protected certain sensitive personal information of judges and their immediate family from disclosure by data brokers. It also allowed federal judges to redact their personal information displayed on federal government websites.

14. In December 2022, the U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

15. Despite these efforts, violence against judges, law enforcement officers, and prosecutors remains a continuing and serious threat. These public servants put their lives on the

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.

line every day, which is clearly exhibited by the numerous horrific stories of violence beyond the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers while they were inside with their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5] On the contrary, the officers were targeted specifically because they chose to go into public service and protect their community.

16. In yet another targeted attack, a disgruntled litigant hunted down and killed a Maryland Judge at his home, after an adverse child custody ruling.[6] This killing followed a similar tragedy in Wisconsin in 2022, where the perpetrator killed a retired Wisconsin Circuit Court Judge out of spite for his handling of a criminal case in 2005.[7]

17. More recently, on June 14, 2025, a masked gunman posing as a law enforcement officer killed a Minnesota state lawmaker, her husband and their dog in their own home. It was later revealed that this gunman had visited four different lawmakers' homes on the night of the murders. Following an arrest, the FBI recovered several notebooks from the individual alleged to be the gunman. One of the notebooks contained a page titled "Finding People" and a list of data broker websites that allow users to search for home addresses, phone numbers, and other personal

---

[5] https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-on-home-of-new-jersey-police-officers-in-targeted-attack-chief-says/.

[6] https://www.cnn.com/2023/10/20/us/maryland-judge-killing-investigation-andrew-wilkinson/.

[7] https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/.

information.[8] Another notebook contained the names and personal information of 45 state and federal public officials residing in Minnesota.[9]

18. These violent incidents demonstrate the risk to public servants and their families resulting from the open sale and dissemination of their most personal information, including their home addresses and/or unpublished home telephone numbers. These incidents also demonstrate the risk to the broader community should public officials be denied their statutory privacy rights. The risk that one might be violently targeted at their home may disincentivize individuals from pursuing a career in public service. This undermines the public interest—as the State and federal governments have recognized in passing Daniel's Law and its federal counterpart.

## THE PARTIES

### The Individual Plaintiffs

19. Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source

---

[8] Affidavit of FBI Special Agent Terry Getsch, United States v. Boelter, No. 25-00376 (D. Minn. filed June 15, 2025) at 11. Each of the 14 data brokers mentioned in the alleged gunman's notebook had been sued by Atlas in February 2024 for violations of Daniel's Law. Despite now having been in Court for almost 2 years and being aware of their involvement in the murders in Minnesota, several of these data brokers remain noncompliant with Daniel's Law as of this filing.

[9] Id.

of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

20. The resulting video footage was selectively edited and posted to YouTube and TikTok. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

21. One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

22. Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police.

Responding officers arrested two men—who were armed—for unlawful possession of a firearm. Video surveillance captured by nearby houses showed the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were home at the time.

23. Plaintiff Detective PATRICK COLLIGAN ("Detective Colligan") is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. From June 2014 to April 2024, Detective Colligan served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

**Plaintiff Atlas and its Assignors**

24. Plaintiff ATLAS DATA PRIVACY CORPORATION ("Atlas") is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

25. As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 6,626 individuals who are all "Covered Persons" under Daniel's Law (together, the "Covered Persons" and each a "Covered Person"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

26. Each Covered Person is an (a) active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator in the Division of Child Protection and

Permanency, or prosecutor, as those terms are defined in N.J.S.A. 47:1A-1.1; or (b) immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, or prosecutor. Thus, each individual meets the definition of "covered person" set forth in both N.J.S.A. 56:8-166.1 and N.J.S.A. 2C:20-31.1.

27. Each Covered Person resides, works, previously resided or worked in New Jersey, or is a family member residing at the same address as such as a person, and has a claim or claims against Defendants for failing to comply with Daniel's Law.

28. As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or redisclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29. Defendants have not complied with the law by negligently, willfully, or recklessly continuing to disclose or redisclose on the Internet or the otherwise making available of protected information in violation of Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs).

30. In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas, in writing, as permitted under the statute. Such assignments expressly and "irrevocably assign to Atlas or a designated affiliate of Atlas (the 'Assignee') the exclusive right to civil enforcement of all claims" under Daniel's Law.

31. Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other Covered Persons. Atlas works with and

provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, has been to increase the safety and well-being of their members and their members' families by helping those members understand and assert the rights provided to them by the law.

32. Upon signing up for Atlas, a Covered Person is asked a series of questions to collect required personal information and qualify his or her eligibility under Daniel's Law. Once eligibility is confirmed, the Covered Person is shown a page explaining how the Atlas platform works:



33. AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each Covered Person receives his or her own AtlasMail account, with a unique inbox address (*e.g.*, john.doe23@atlasmail.com) for personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:




34. Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the Covered Person is then presented with a page on which he or she can review his or her home addresses and unpublished home telephone numbers, a nondisclosure request template, and a recommended list of data brokers to send notices to. On this page the Covered Person can choose whether or not to send nondisclosure requests. If the Covered Person chooses not to send a nondisclosure request to the recommended list, they can select individual

recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a nondisclosure request.




35. Any reply or response back from a data broker to the Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully-featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:


AtlasMail
Compose
Search in Mail
ALL MAIL
INBOX
SENT
ASSIGNMENT CONFIRMATIONS
John Doe
Data Subject Request - Redaction/nondisclosure Request
11:40 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
11:39 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
11:39 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
8:29 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
8:29 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
8:29 PM
John Doe
Data Subject Request - Redaction/nondisclosure Request
Jan 3
John Doe
Data Subject Request - Redaction/nondisclosure Request
Jan 3
John Doe
Data Subject Request - Redaction/nondisclosure Request
Jan 3
John Doe
Data Subject Request - Redaction/nondisclosure Request
Jan 3
1 2 3 4 5 ... 16

**Redaction/Nondisclosure Request Confirmation**

**To** john.doe23@atlasmail.com
**From** privacy@exampledatabroker.com
**Date** Fri, Jan 26, 2024 8:14 PM

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply Forward

36. With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.

37. Because this lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight, Atlas has not included the Covered Persons' personal information in this public filing. However, Atlas will work with the Court and Defendants to implement an appropriate protective order and then provide Defendants with the written

assignments and relevant information for each of the Covered Persons. Our courts have already approved this privacy-protecting approach.[10]

38. In order to facilitate the provision of the Covered Persons' relevant information to Defendants pursuant to an appropriate protective order, Plaintiffs will provide Defendants with a proposed Discovery Confidentiality Order/Protective Order following service of this Complaint and Defendants' entry of an appearance.

**Defendants**

39. Defendant DELETEME USA, LLC ("DeleteMe USA") is a Delaware corporation that has a registered agent, LEGALINC CORPORATE SERVICES INC., at 131 Continental Drive Suite 305, Newark, Delaware 19713 and transacts business within the State of New Jersey. DeleteMe USA discloses or rediscloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

40. Defendant DELETEME EUROPE LTD ("DeleteMe EU") is a private limited company in Cyprus that has a registered office address at Stasikratous 16, Nicosia 1065, Cyprus and transacts business within the State of New Jersey. DeleteMe EU discloses or rediscloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

41. Defendant CRITON TORNARITIS is the founder, direct and/or indirect owner and Chief Executive Officer of DeleteMe USA and DeleteMe EU (collectively, "DeleteMe").

---

[10] For example, the Court recently held in another Daniel's Law action that allegations similar to those asserted here pleaded "sufficient facts to show that the assignors are covered persons under Daniel's Law," and "in fact have standing," noting the anticipated production of Covered Persons' information pursuant to an appropriate protective order. Atlas Data Privacy Corp., v. Attom Data Solutions, LLC, et al., Docket No.: MER-L-273-24 (Law Div., June 20, 2024) (denying motion to dismiss).

42. Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by Defendants to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

43. Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. These websites include deleteme.com and cyberdeleteme.com and may include additional domains or subdomains (collectively, the "Defendants' Website")

44. In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons). The following is a redacted example of the detailed information provided by Defendants,[11] in violation of Daniel's Law:

[11] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.




**<u>Defendants' Deliberate Attempt To Hide Behind the Legitimate Business 'DeleteMe'</u>**

45. Neither DeleteMe nor Tornaritis nor any other Defendant is affiliated in any way with Abine, Inc., the company known colloquially as 'DeleteMe' in the United States with a website located at joindeleteme.com. Abine Inc. is a legitimate privacy services company that is focused on assisting individuals, including judges, prosecutors, law enforcement and the public, in suppressing their personal information from data broker sites through subscription services offered through its website, joindeleteme.com.

46. Upon information and belief, Defendants have attempted to exploit the positive public reputation and good will of Abine, Inc. and the services it offers via joindeleteme.com through customer confusion and deception, where Defendants make it appear as though they are the company offering the services offered by Abine Inc., while in reality Defendants function as a

data broker that purposefully disregards individual privacy rights and laws requiring the suppression or redaction of personal information.

**<u>Defendant Tornaritis</u>**

47. In addition to owning the DeleteMe entities, upon information and belief, Tornaritis is personally involved in DeleteMe's business and operations (including DeleteMe's email accounts, the Defendants' Websites, and marketing efforts) and intermingles his personal work with business work to an extent that there is little separation between the two.

48. As detailed below, Tornaritis was and is personally aware of the nondisclosure requests transmitted to DeleteMe by the Covered Persons identified herein. And Tornaritis personally willfully or reckless disclosed or redisclosed on the Internet or otherwise made available the protected information of the Covered Persons beyond the time period required for suppression by Daniel's Law by not only negligently or purposefully failing to act, but also in controlling and facilitating the operation of Defendants' Website as a site that purposefully violates a myriad of privacy laws including Daniel's Law.

49. Tornaritis was, at all times relevant to this matter, aware of the potential exposure to harassment, intimidation or risk to life or property that public servants such as the Covered Persons could face when their personal information, including home address or phone number, is available online through websites such as Defendants' Websites

50. In addition, Tornaritis owns, in his personal capacity, a US service mark for "DELETEME" (US Serial Number 87921449; US Registration Number 5647581) and a European Union mark for "DELETEME" (Filing Number 017647124) (together, the "DeleteMe Marks").

51. Despite this personal ownership, Tornaritis has used the same address as DeleteMe EU (Stasikratous 16, Nicosia 1065, Cyprus) as an address for service of official documents and records related to the DeleteMe Marks.

52. As part of his operational control over DeleteMe and Defendants' Websites, Tornaritis provided DeleteMe with use of the DeleteMe Marks to facilitate and further Defendants' efforts to misrepresent their data brokering activities and disregard of privacy laws, including Daniel's Law, by falsely making it appear as though Defendants' Websites offer privacy protection services to the public.

53. Indeed, Tornaritis has and continues to use the DeleteMe Marks to facilitate, promote, and lend credibility to Defendants duplicitous data brokering site. By leveraging these marks on Defendants' Websites for DeleteMe, Tornaritis has, upon information and belief, attempted to make Defendants appear legitimate, while personally and directly supporting and furthering the unlawful disclosure of home addresses and unpublished home telephone numbers of the Individual Plaintiffs and Covered Persons. Tornaritis's personal control over the DeleteMe Marks was not merely passive or incidental but was instrumental in the execution and perpetuation of unlawful disclosures.

54. In addition, Tornaritis has claimed in filings with the United States Patent and Trademark Office that the DeleteMe Marks are used in connection with providing "financial advice", "internet service" and "legal services" focused on assisting consumers remove their personal information from internet sites, when they do not. In fact, in such filings Tornaritis did not disclose that the DeleteMe Marks are actually used to provide open source intelligence and other data brokering services in violation of a number of privacy laws, including Daniel's Law.

55. Moreover, Tornaritis personally advertises Defendants' data brokering capabilities in providing access to individuals' personal information such as phone numbers.

56. For example, in March 2026 in response to a post titled "How I Investigate a Phone Number in Minutes" on the X social media platform (formerly known as Twitter), Tornaritis directed viewers to the Defendants' Website noting that users of the site have access to phone numbers and other aggregated data about those they are seeking information about. A true and correct screenshot of this post, last accessed on April 1, 2026, located at https://x.com/kritonis/status/2037035819081388169, is included on the left side of the following page.

57. In another social media post, Tornaritis responded to an Open Source Intelligence Newsletter identifying Internet tools used to find information on individuals by boasting that the Defendant Websites are the only ones that aggregate data from leaks to social media and more. A true and correct screenshot of this post, last accessed on April 1, 2026, located at https://x.com/kritonis/status/2037036207335457223, is included on the right side of the following page.

The OSINT Newsletter
@osintnewsletter

We've added 6 new tools to the OSINT Tools Library 🔍

@ipinfo - IP lookup (location, ISP, ownership)
@whoisxmlapi - domain ownership + config data
IntelligenceX - breached data & historical records search
@fofabot - discover exposed systems & services
Phishtank - verified phishing database
@wikimapia - user-driven global mapping

Explore them 👇



The OSINT Newsletter
@osintnewsletter · Mar 18

🚨 Launching: The OSINT Tools Library

A curated, investigator-first directory of tools used in real cases.

→ Tools.OSINTNewsletter.com

We're building the largest and best maintained OSINT tools resource and need your help.

Reply and tag a tool we should add 👇




3 21 141 Mar 25, 2026 · 8.2K Views

Criton Tornaritis @kritonis · Mar 26
I suggest looking at cyberdeleteme.com the only aggregate data in one report with ai analysis from the simple leak up to social media and more
0 0 1

CyberSudo
@Cyber_Sudo

How I Investigate a Phone Number in Minutes 📱🔎

Most people jump straight to paid tools,
but the smartest OSINT approach actually starts with something simple: Google search.

When I'm investigating a phone number, the first thing I do is generate **all possible number formats** so search engines can surface every trace tied to it.

Of course, it won't always give results,

but sometimes it reveals *more than you ever expected* ⚡

One of my favorite tools for this is a phone variant generator that creates multiple versions of the same number instantly.

Real case:
I once analyzed a suspicious contact number
After generating variants and searching them, I uncovered forum posts, a marketplace listing, and a linked account that revealed the identity behind it 🧠

My quick method:
🔎 Search the number on Google first
📁 Try all format variations
💾 Save each version different formats reveal different results

Best tool for generating variants → no-nonsense-intel.com/phone-variant-...

In the next post, I'll show you the next steps to investigate a phone number and what to do after the initial search 📱

———

P.S. ♻️ Repost if you found this helpful.

If you liked this post and would like to learn more methods and techniques to discover information about people, check out my OSINT Mastery course cybersudo.org/osint-mastery




2 31 216 Mar 24, 2026 · 10.5K Views

Criton Tornaritis @kritonis · Mar 26
Try cyberdeleteme.com you get aggregate data connected with the number and more
0 0 0

58. In addition, it appears that, through publicly sourced material, Tornaritis is responsible for certain social media and marketing efforts of DeleteMe and he does so from his personal Android device. This belief is grounded in the following publicly available information:

a. Tornaritis has an account on the X social media platform (formerly known as Twitter) with the handle @kritonis, which he had ‘verified’ since May 2023, and which at times has noted verified access via the Cyprus Android mobile application.

b. Deleteme also has an account on the X social media platform (formerly known as Twitter) since May 2023 with the handle @deletemeco, which was ‘verified’ since June 2024, and which at times has noted verified access via the Cyprus Android mobile application.

c. While this would normally be unremarkable, Tornaritis has often almost immediately reposted tweets from Delete Me, which forms Plaintiffs’ belief that he operates these social media accounts from a single device.

59. Tornaritis is well aware of the data broker activities of the Defendant Websites that he owns and/or controls, and which he markets through his personal social media page and through other means.

60. Tornaritis is also equally and personally responsible for Defendants’ refusals to comply with Daniel’s Law by continuing to disclose or otherwise make available Covered Persons’ Protected Information after receipt of the nondisclosure requests.

61. Upon information and belief, Tornaritis received written nondisclosure requests from Covered Persons using AtlasMail to email accounts of Defendants that he has access and control over.

62. Rather than use his ownership and authority to ensure Defendants' compliance with Daniel's Law, Tornaritis took no action to comply with the requests, and/or purposefully ignored same.

63. In fact, instead of complying with those nondisclosure requests, Tornaritis sent an inquiry from his personal email account to Atlas seeking information about how he can obtain access to Atlas's privacy services.

64. Despite being an attorney in the Republic of Cyprus, Tornaritis never identified himself to Atlas, nor did he identify his ownership or control of DeleteMe.

65. Instead, Tornaritis transmitted this purposefully deceptive communication in an attempt to obtain access to the Atlas platform to fraudulently obtain more information about the nondisclosure requests he received from Covered Persons through the email accounts he controls or has access to with Defendants.

66. This attempt by Defendants (including Tornaritis) to infiltrate the business operations of Atlas was done purposefully.

67. And despite not being provided with such access and having received written nondisclosure requests from the Covered Persons, and being acutely aware of the risk of harm to life or property of the Covered Persons, Tornaritis took no actions to cease disclosure of their Protected Information.

68. Similarly, DeleteMe failed to suppress Covered Persons' Protected Information.

69. Defendants' failures in this regard were purposeful or reckless as to the rights of the Individual Plaintiffs and Covered Persons as well as the risks of harm or probability of an increase of risk of such harms to them.

**JURISDICTION AND VENUE**

70. This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

71. Defendants have purposefully directed their business activities towards New Jersey. Defendants have purposefully availed themselves of the privilege of conducting activities within New Jersey.

72. Daniel’s Law was enacted to safeguard New Jersey residents who serve as public servants and their families (including Covered Persons) from the disclosure of their Protected Information by entities, like Defendants.

73. Defendants knowingly and intentionally disclosed or redisclosed on the Internet, or otherwise made available, Protected Information of New Jersey residents, such as the home addresses and unpublished home telephone numbers of Covered Persons, through affirmative acts and decisions regarding data handling, storage, and dissemination.

74. The disclosure of New Jersey residents’ home addresses and unpublished home telephone numbers resulted from Defendants’ intentional conduct, including decisions to transmit, publish, or otherwise make that information available, rather than from an inadvertent or purely accidental occurrence.

75. Defendants expressly aimed their conduct at New Jersey by disclosing the home addresses and unpublished home telephone numbers of New Jersey residents, knowing that the affected Covered Persons were located in New Jersey.

76. Defendants knew that the disclosed Protected Information specifically identified New Jersey residents, including their New Jersey home addresses, and that the disclosure would directly impact individuals within New Jersey.

77. Defendants' conduct was directed at New Jersey because the disclosed Protected Information enabled direct contact with, and intrusion into the privacy of, New Jersey residents at their homes and personal telephone numbers. The disclosure of Protected Information was targeted specifically to New Jersey, including New Jersey residential locations, and was not a generalized or untargeted release of anonymized data.

78. Defendants knew, or reasonably should have known, that the primary and foreseeable effects of disclosing New Jersey residents' home addresses and unpublished home telephone numbers would be felt in New Jersey, where those individuals reside.

79. Defendants understood that their disclosure would expose New Jersey residents to unwanted contact, harassment, safety risks, and invasion of privacy within New Jersey.

80. Defendants knew that any resulting emotional distress, privacy injury, and risk of physical or economic harm would be concentrated in New Jersey, where the affected individuals live.

81. Upon information and belief, Defendants also purposefully collected sensitive personal information and other data concerning residents of New Jersey from New Jersey public records; from New Jersey residents themselves; and from devices and browsers located in New Jersey that interacted with Defendants' websites, online services, and mobile applications, and businesses that operate within the State of New Jersey.

82. Accordingly, Plaintiffs' claims arise directly out of and relate to Defendants' forum-directed conduct.

83. Indeed, upon information and belief, in 2024, 2025, and 2026, Defendants have generated material revenue from sales to customers located in New Jersey and/or from the sale of personal information and other data of New Jersey residents to customers both inside and outside of New Jersey.

84. Daniel's Law was passed to protect public servants and their families from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

85. Accordingly, venue is proper pursuant to R. 4:3-2, in that Essex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

**FACTS COMMON TO ALL COUNTS**

86. As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 codified as N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1, et seq.).

87. Daniel's Law prohibits data brokers from disclosing or redisclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

88. Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or redisclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

89. This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver,

transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

90. Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

91. Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

92. As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[12]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d. For the purposes of this section:
>
>> . . . "Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include

[12] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed.

93. Starting on or about July 24, 2025, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

94. For example, a true and correct copy of the email directly from Plaintiff Officer Maloney (with personal information redacted) appears below:

**From** [redacted]@atlasmail.com
**To** support@deleteme.com
**Date** Wed, Jul 30, 2025 6:21 AM
**Subject** Data Subject Request - Redaction/nondisclosure Request

DeleteMe
2025-07-30

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Full Name: Justyna Maloney

Other Names or Variants (by which I am known or may be identified):
[redacted]

Home Phone Number:
[redacted]

Sincerely,
Justyna Maloney

95. Defendants negligently, willfully, or recklessly continue to disclose or redisclose on the Internet or otherwise make available the protected information of the Covered Persons beyond the time period required by Daniel's Law. Thus, Defendants' disclosure or redisclosure of protected information of the Covered Persons following the statutory period of ten (10) business days violates Daniel's Law.

96. Defendants, including DeleteMe, Tornaritis and those currently pled as Richard Roes 1-10 or ABC Company 1-10, are equally responsible for the negligent, purposeful and reckless acts and omissions alleged herein, particularly because they have not maintained separation and Tornaritis or others have dominance and control over DeleteMe, or they operate as alter egos in their operations and functions.

97. Indeed, even as of times recent to the date of this filing, Defendants negligently, purposefully or recklessly still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

98. All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs, who assert their claims directly in this action) have assigned in writing their claims against Defendants to Atlas. All of the assignments were completed in writing before the date of the filing of the initial Complaint.

99. Following the entry of a protective order filed in this Court and identification of any individuals with whom confidential information will be shared, Plaintiffs will provide under a confidential designation a full and complete list of the following:

a. Names of each of the 6,626 assignors referenced in paragraph 25; and

b. The factual basis for the person to be considered a "Covered Person" as defined in N.J.S.A. 56:8-166.1(d), that is, a judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, as those terms are identified in N.J.S.A. 47:1A-1.1 or prosecutor and any immediate family member residing in the household of individuals in these categories.

100. The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

**COUNT ONE**

**(Violation of Daniel's Law, N.J.S.A. 56:8-166.1)**

101. The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

102. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or redisclosure on the Internet or wherever Defendants otherwise made it available.

103. Defendants had an obligation under Daniel's Law to comply with the nondisclosure request within ten business days.

104. Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

105. Defendants negligently, willfully, or recklessly continue to disclose or redisclose on the Internet or otherwise make available information in violation of Daniel's Law, and in doing so each constitutes a separate violation under the law.

106. Defendants' continued disclosure in violation of Daniel's Law, despite having received notice as required under the statute, constitutes negligent, willful, or reckless disregard of the law.

107. As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered against Defendants and/or the Website as follows:

A. Ordering that Defendants and/or the Website immediately comply with Daniel's Law, and cease the disclosure of the Individual Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or redisclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants and/or the Website comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants and/or the Website to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants and/or the Website prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants and/or the Website as the Court deems equitable and just.

**COUNT TWO**

**(Violation of Daniel's Law, N.J.S.A. 2C:20-31.1)**

108. The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

109. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or redisclosure on the Internet or wherever Defendants otherwise made it available.

110. Tornaritis received those requests and was aware of them as demonstrated by his attempt to obtain access to Atlas's privacy platform.

111. Defendants had an obligation under N.J.S.A. 2C:20-31.1(b) to comply with the nondisclosure request within ten business days.

112. Defendants knew that not complying with the nondisclosure requests exposed the Covered Persons to harassment or risk of harm to life or property.

113. In fact, Defendants publicly (and falsely claim) that their services act as a "digital shield" and allows users to prevent fraud and theft or other harms to property proactively.

114. These inaccurate claims have also been forwarded by Tornaritis in his submissions to the Government related to the DeleteMe Marks.

115. Simply stated, Defendants have a variety of public pronouncements and statements on the Websites, the DeleteMe Marks applications, on social media and through other efforts that demonstrate that they are individually and collectively aware of the significant risks to life or property that result from accessibility to the home address or home phone number of individuals and that removal of such information from public or commercially available sources (like the Defendant Websites) mitigates such risk and reduces the probability of such harm occurring.

116. Tornaritis, DeleteMe USA, DeleteMe EU, Richard Roes 1-10 and ABC Companies 1-10 function together as an enterprise as defined under Chapter 20 of Title 2C of the New Jersey Statutes through, among other things, the use of the Websites (and domain names) and DeleteMe Marks.

117. Defendants' common purpose is to profit through the illicit and licit trade of personal information, while skirting their obligations under a myriad of privacy laws, including but not limited to Daniel's Law.

118. More specifically, Defendants are an identifiable association or entity, that work together for the common purpose of making individuals believe they are a privacy company when they in-fact are a data broker as set forth herein.

119. For example, Defendants falsely claim that they do not sell or misuse personal information, despite Tornaritis's direct encouragement online for people to utilize DeleteMe for such services.

120. Defendants' failure to suppress the Individual Plaintiffs' and Covered Persons' protected information is not only negligent but reckless, purposeful or willful.

121. Indeed, even as of the time recently preceding the date of this filing, Defendants still refuse to fully comply with N.J.S.A. 2C:20-31.1 and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

122. The unlawful activity of Defendants' enterprise occurs through a variety of interests including the Websites and DeleteMe Marks.

123. As a result of Defendants' failures to comply with the law, Plaintiffs have and continue to have risk of harm to person or property, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered pursuant to N.J.S.A. 2C:20-21(a) against Defendants and/or the Website as follows:

A. Entering a permanent injunction prohibiting DeleteMe, Tornaritis and any other Defendants' violations of N.J.S.A. 2C:20-31.1, and any actions in furtherance thereof, including, posting, reposting, publishing or republishing on the Internet, or otherwise making available the Protected Information of the Individual Plaintiffs and the Covered Persons wherever disclosed or otherwise made available;

B. Ordering a divestment by Defendants from interests, including assets or resources that perpetuate their enterprise in violation of N.J.S.A. 2C:20-31.1, including but not limited to the Website domains and DeleteMe Marks.

C. Ordering the dissolution or reorganization of Defendants' enterprise.

D. Ordering the forfeiture of Defendants' corporate charters or revocation of any certificate of authority in the public interest.

E. Imposing temporary orders, including restraints and prohibitions, in the interest of justice.

F. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

G. Awarding such other and further relief against Defendants, the DeleteMe Marks and/or the Websites as the Court deems equitable and just.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: *<u>/s/ Rajiv D. Parikh</u>*
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn, Esq.
Jessica A. Merejo, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

## <u>DESIGNATION OF TRIAL COUNSEL</u>

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiff in this matter.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: *<u>/s/ Rajiv D. Parikh</u>*
RAJIV D. PARIKH

**CERTIFICATION PURSUANT TO RULE 4:5-1**

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

**CERTIFICATION PURSUANT TO RULE 1:38-7(b)**

Pursuant to R. 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

# Civil Case Information Statement

## Case Details: ESSEX | Civil Part Docket# L-005000-26

**Case Caption:** ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L

**Case Initiation Date:** 06/23/2026

**Attorney Name:** RAJIV D PARIKH

**Firm Name:** PEM LAW LLP

**Address:** 1 BOLAND DR SUITE 101
WEST ORANGE NJ 07052

**Phone:** 9735775500

**Name of Party:** PLAINTIFF : ATLAS DATA PRIVACY CORPORATION

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: ATLAS DATA PRIVACY CORPORATION? NO**

**Are sexual abuse claims alleged by: Scott Maloney? NO**

**Are sexual abuse claims alleged by: JUSTYNA MALONEY? NO**

**Are sexual abuse claims alleged by: PATRICK COLLIGAN? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
Daniel's Law litigation

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/23/2026 — Dated

/s/ RAJIV D PARIKH — Signed

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK NJ 07102

**TRACK ASSIGNMENT NOTICE**

COURT TELEPHONE NO. (973) 776-9300
COURT HOURS 8:30 AM - 4:30 PM

DATE: JUNE 23, 2026
RE: ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L
DOCKET: ESX L -005000 26

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS: HON STEPHEN L. PETRILLO

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 002
AT: (973) 776-9300 EXT 56512.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.

ATTENTION:

ATT: RAJIV D. PARIKH
PEM LAW LLP
1 BOLAND DR
SUITE 101
WEST ORANGE NJ 07052

ECOURTS

PEM LAW LLP

**Thomas R. Kraft, Esq.**
**Associate**
tkraft@pemlawfirm.com
*Office:* +1 973.577.5500
*Direct:* +1 973.567.7455

July 6, 2026

**VIA INTERNATIONAL MAIL, CERTIFIED MAIL, & REGULAR MAIL**
DeleteME Europe Ltd.
Stasikratous, 16, Floor 7,
Flat/Office 701
1065 Nicosia, Cyprus

**Re:** ***Atlas Data Privacy Corporation, et al. v. DeleteME USA, LLC, et al.,***
**Docket No.: ESX-L-5000-26**
**Document Preservation Letter**

Dear Sir/Madam:

We represent Atlas Data Privacy Corporation and the Individual Plaintiffs ("Plaintiffs") identified in the enclosed complaint ("Complaint") and summons asserting claims under Daniel's Law, enacted in November 2020 (P.L. 2020, c. 125), codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq. ("Daniel's Law") against the defendants (collectively, the "Defendants") in the above-captioned matter.

The purpose of this letter (the "Notice") is to remind Defendants of their present and ongoing obligations to preserve and retain all materials potentially relevant to any of the allegations made by Plaintiffs in the Complaint (the "Dispute").

This includes without limitation hard copies and electronically stored information ("ESI"), such as emails, text messages, messages on instant messaging platforms, and materials stored in or transferred via cloud storage.

This document preservation notice should be read broadly consistent with Defendants' obligations under R.4:18-1 and all other applicable rules governing preservation and discovery.

Pursuant to Defendants' preservation obligations, Defendants must immediately take steps to preserve all hard copy documents and ESI relevant to the Dispute, including without limitation:

(a) suspending Defendants' data destruction and backup tape recycling policies;

(b) suspending any overwriting or update processes related to any ESI unless a copy of each version is maintained;

(c) preserving relevant software, including legacy software (unless an exact copy or mirror image is made and stored) and hardware that is no longer in service but was in service during any part of the relevant time period (back to the

PEM LAW LLP

enactment of Daniel's Law), and CSV source or other version control repositories;

(a) retaining and preserving necessary information to access, review and reconstruct (if necessary) relevant electronic data, including identification codes and passwords, decryption applications, decompression software, reconstruction software, network access codes, manuals, and user instructions;

(b) retaining and preserving all ESI related to the Dispute on personal devices (including for example and without limitation computers, phones, and tablets used by Defendants' employees, contractors, and agents);

(c) retaining and preserving all Slack, WhatsApp, Viber, Signal, Telegram, and other instant messages and chats (including without limitation changing default settings on instant message programs to ensure those records are preserved);

(a) any other reasonable steps necessary to prevent the destruction, loss, override or modification of relevant data either intentionally or inadvertently, such as through implementation of Defendants' document retention policies

This list is not exhaustive, and Defendants have independent obligations to identify and preserve all relevant information. All ESI must be preserved intact and without modification.

The following is a non-exhaustive list of relevant information that should be preserved (with documents defined broadly to include without limitation all communications, including emails, text messages, and other communications):

- All documents concerning any of the allegations in the Complaint.
- All documents concerning Daniel's Law.
- All documents concerning Atlas.
- All documents concerning any of the Individual Plaintiffs.
- All documents concerning this litigation.
- All documents concerning any Written Nondisclosure Request(s) (as defined in N.J.S.A. § 56:8-166.2).
- All documents concerning Defendants' receipt of any Written Nondisclosure

Requests.

- All documents concerning Defendants' response to any Written Nondisclosure Requests.

- All documents concerning Defendants' analysis of any Written Nondisclosure Requests.

- All documents concerning the disclosure of any home address and/or unpublished home telephone numbers, including without limitation on the website(s) identified in the Complaint after the receipt of any Written Nondisclosure Requests.

- All documents concerning Defendants' compliance process in connection with any Written Nondisclosure Requests, including Defendants' failure to comply.

This preservation should include all data and records relevant to assessing Defendants' compliance with Daniel's Law following the receipt of any Written Nondisclosure Requests, including for example data and records demonstrating any Defendant (or other responsible entity or individual) disclosing or re-disclosing on the Internet (including without limitation with the identified website(s)) or otherwise making available the home address and/or unpublished home telephone numbers of any person who sent any Written Nondisclosure Request. Plaintiffs expect that Defendants will preserve data and records concerning each and every violation of Daniel's Law, both for purposes of calculating statutory damages and for purposes of evaluating injunctive relief.

This list is not exhaustive, and Defendants each must conduct an investigation and preserve all information potentially relevant to the Dispute, including all information from any individual who has documents potentially relevant to the Dispute.

Defendants must also take reasonable steps to preserve all hard copy documents and ESI relevant to the Dispute that are not in their possession but are in their custody or control. Documents and ESI in the possession of non-parties that is within Defendants' custody or control must also be preserved intact and without modification.

Preservation of ESI includes preservation not only of the electronic information itself (whether stored online, offline, in a cloud-based server or in other electronic storage, or on any computers, handheld devices, tablets, cell phones or other devices, whether or not in Defendants' possession), but also of relevant related data, including without limitation:

(a) active, archived and deleted copies of electronic information, such as e-mails, voicemails, text messages, instant messages (for example, Slack

ESX-L-005000-26 07/16/2026 5:03:13 PM Pg 55 of 92 Trans ID: LCV20261879858
Case 1:26-cv-10945-IB Document 1-3 Filed 08/25/26 Page 123 of 332 PageID: 298



messages), calendars, diaries, word processing files, spreadsheets, PDFs, JPEGs, PowerPoint presentations, Google Drive files, Dropbox files, videoconferencing (e.g., Zoom) recordings and files, temporary internet files, cookies, and .ZIP files, among others;

(b) databases, including Dropbox, Box, Planbox, Visual Studio Team Services, Amazon RDS, Google Cloud, Microsoft Access or Azure, and SQL systems;

(c) metadata about the electronically stored information, including the date that it was created and last modified, and the individual(s) that created and modified it.

This list is not exhaustive, and Defendants must preserve all information potentially relevant to the Dispute. Defendants' failure to preserve relevant ESI may constitute spoliation of evidence and subject Defendants to monetary and other sanctions. Plaintiffs reserve all rights in connection with any spoliation by Defendants. We trust that Defendants will preserve all relevant hard copy documents and ESI for the duration of the Dispute.

Please also maintain records of Defendants' efforts to comply with their preservation obligations. If a dispute arises out of Defendants' failure to preserve documents, Plaintiffs will rely on this letter as evidence of their request and reminder of Defendants' preservation obligations.

Thank you for your cooperation. If you have questions, please contact me.

Very Truly Yours,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: *<u>/s/Thomas R. Kraft</u>*
THOMAS R. KRAFT

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br>v.<br><br>DELETEME USA LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**PLAINTIFFS' FIRST REQUEST TO DEFENDANT FOR PRODUCTION OF DOCUMENTS** |

**PLEASE TAKE NOTICE** that the undersigned attorneys for Plaintiffs hereby demand that each Defendant produce and/or permit Plaintiffs or someone acting on Plaintiffs' behalf to inspect and copy the following designated documents at the offices of PEM Law LLP, within the manner and within the time prescribed by the Rules of Court of the State of New Jersey.

Very Truly Yours,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: */s/Thomas R. Kraft*
THOMAS R. KRAFT

Dated: July 6, 2026

**INSTRUCTIONS**

A. If you assert a privilege or work-product immunity as a ground for non-production of any document requested, please produce all documents over which you are not asserting any such privilege or immunity, and in addition, set forth as to each document over which a privilege is claimed:

(1) the date of the document;

(2) the type of document (e.g., letter, memorandum, chart, etc.);

(3) the names and addresses of all authors and recipients of the document and the employer and business or legal title of each author or recipient;

(4) a detailed explanation of why the privilege or immunity is deemed applicable, including sufficient facts for the Court to make a full determination of whether your assertion is valid; and

(5) the present location of the document and the name and address of its custodian.

B. This Request for Production shall be deemed continuing so as to require supplemental responses if you obtain or discover additional documents between the time your responses are served and the time of trial.

C. In producing documents in compliance with this Request, produce all documents which are available to you, including documents in the custody, possession or control of your attorney or investigators for your attorney, and not merely such documents known to exist to your own personal knowledge. If you do not comply in full with the following Request for Production due to the non-existence of the documents(s) sought, so state in writing, specifying the reason for your inability to produce such documents(s).

D. In producing documents in compliance with this Request, collate and identify each

document by the numbered Request(s) for Production to which each document is produced. If any particular document produced is responsive to more than one numbered Request for Production, identify each numbered Request to which said document is responsive.

## DEFINITIONS

A. "And" and "or" as used herein shall have the same meaning, that is, the disjunctive meaning of "or." The listing of terms separated by commas, semi-colons, the word "and" or the word "or" shall be deemed to require a response to each and every term listed.

B. "Atlas" means Atlas Data Privacy Corporation ("Atlas") who is a Plaintiff and assignee of individuals who are covered persons under Daniel's Law as further alleged in the Complaint.

C. "Daniel's Law" means the law enacted in November 2020 (P.L. 2020, c. 125), codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq. ("Daniel's Law") which prohibits online data brokers from selling, publishing, and distributing the home address and unpublished home telephone numbers ("Protected Information") of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.

D. "Defendant" refers to each and every defendant identified in the Complaint and shall also include any and all agents, officers, directors, attorneys, employees, contractors, predecessors in interest, parents, subsidiaries, affiliates, assigns, successors, and representatives of any/all of them, or other persons acting on its respective or collective behalf.

E. "Describe," "set forth" and "state" all mean to state the substance of the event, circumstances, facts, communications, representation, conversation, meeting, transaction,

occasion or other occurrence in question; the date, time, place and identity of all persons present thereat or participating therein; that which each such person said and did; the approximate duration of such occurrence; the method or means of communications employed; the identity of all documents relating thereto; and the identity of all persons having knowledge of such occurrence; as well as the date and means when and whereby such knowledge was first acquired, setting forth the underlying facts rather than ultimate conclusions.

F. "Document" or "documents" means the original and any identical or non-identical copy, regardless of origin or location, of any written, reported, filmed, magnetically stored, or graphic matter, or record of any type or description, whether produced, reproduced or producible on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media, including but not limited to emails, memoranda, notes, minutes, records, photographs, computer programs, correspondence, telegrams, diaries, bookkeeping entries, specifications, source code, object code, flow charts, financial statement, charts, studies, reports, graphs, statements, notebooks, handwritten notes, applications, feasibility studies, agreements, books, pamphlets, periodicals, appointment calendars, notes, records and recordings of oral conversations, work papers, and also including but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copy sent or received, or otherwise, and drafts, which are in the possession, custody or control of the present or former agents, officers, directors, representatives, employees, or attorneys of Defendant, or all persons acting on Defendant's behalf, including documents at any time in the possession, custody or control of such individuals or entities who are known by Defendant to exist. Include also any catalog, brochure or any other data compilations from which information can be obtained and translated if necessary, or any other written, recorded, stored, transcribed, punched, taped, filed or graphic matter however produced or reproduced, to which Defendant has or have had access.

G. "Identify," or "identification" mean, when used in reference to:

(1) a natural person, his or her:

(a) full name;

(b) present or last known home address (including street name and number, city or town, state, zip code, and telephone number);

(c) present or last known business address (including street name and number, city or town, state, zip code, and telephone number);

(d) present or last known occupation, position, business affiliation, and job description;

(e) occupation, position, business affiliation, and job description at the time relevant to the particular interrogatory being answered.

(2) a company, corporation, association, partnership or legal entity other than a natural person:

(a) its full name;

(b) a description of the type of organization or entity;

(c) the full address (including street name and number, city or town, state, zip code, and telephone number) of its principal place of business;

(d) the jurisdiction of incorporation or organization.

(3) a document:

(a) its description (for example, letter, memorandum, report);

(b) its title (e.g., letter, memorandum, telegram, chart, etc.)

(c) its date;

(d) the number of pages thereof;

(e) its subject;

(f) the identity of its author, signatory or signatories, and any person who participated in its preparation;

(g) the identity of its addressee or recipient;

(h) the identity of each person to whom copies were sent and each person by whom copies were received;

(i) its present location; and

(j) the identity of its present custodian.

(If any such document was, but is no longer, in the possession of or subject to the control of Defendant, state what disposition was made of it and when).

(4) a communication or statement:

(a) the date and time when it occurred;

(b) the place where it occurred;

(c) the complete substance of the communication;

(d) the identity of each person; (1) to whom such communication was made; (2) by whom such communication was made; and (3) who was present when such communication was made;

(e) if by telephone: (1) the identity of each person: (i) who made each telephone call; and (ii) who participated in each call; and (2) the place where each person participating in the telephone call was located;

(f) the identity of all documents memorializing, referring to or relating in any way to the subject of the communication.

H. "Individual Plaintiffs" means the Plaintiffs identified in the Complaint other than Atlas and shall include any and all agents, officers, directors, attorneys, employees, and other persons acting on its behalf.

I. "Plaintiffs" means the Plaintiffs identified in the Complaint and shall include any and all agents, officers, directors, attorneys, employees, and other persons acting on its behalf.

J. "Person" means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

K. "Written Nondisclosure Request(s)" means any request pursuant to Daniel's Law (N.J.S.A. § 56:8-166.1, et seq.) to refrain from disclosing, re-disclosing, or otherwise making available Protected Information and/or remove protected information from the Internet or where otherwise made available.

L. "You" and "Your" refers to each Defendant responding to these requests, with the term Defendant broadly defined above.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. Any and all documents concerning any of the allegations in the Complaint.

2. Any and all documents concerning Daniel's Law.

3. Any and all documents concerning Atlas.

4. Any and all documents concerning any of the Individual Plaintiffs.

5. Any and all documents concerning this litigation.

6. Any and all documents concerning any Written Nondisclosure Requests.

7. Any and all documents concerning Defendant's receipt of any Written Nondisclosure Requests.

8. Any and all documents concerning Defendant's response to any Written Nondisclosure Requests.

9. Any and all documents concerning Defendant's analysis of any Written Nondisclosure Requests.

10. Any and all communications and documents regarding communications with any of the Individual Plaintiffs, Atlas, or any other Covered Person.

11. Any and all documents concerning the disclosure of any home address and/or unpublished home telephone numbers, including without limitation on the website(s) identified in the Complaint after the receipt of any Written Nondisclosure Requests.

12. Any and all documents concerning Defendant's compliance process in connection with any Written Nondisclosure Requests, including Defendant's failure to comply.

**CERTIFICATION**

I hereby certify on behalf of _______________ that I have reviewed the document production requests and that I have made or caused to be made a good faith search for documents responsive to the requests. I further certify that as of this date, to the best of my knowledge and information, the production is complete and accurate based on ( ) my personal knowledge and/or ( ) information provided by others. I acknowledge my continuing obligation to make good faith effort to identify additional documents that are responsive to the request and to promptly serve a supplemental written response and production of such documents, as appropriate, as I become aware of them.

________________________________

DATED: ___________

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br>v.<br><br>DELETEME USA LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT** |

**PLEASE TAKE NOTICE** that the undersigned attorneys for Plaintiffs hereby request that Defendant answers the following Interrogatories within the manner and within the time prescribed by the Rules of this Court of the State of New Jersey.

Very Truly Yours,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: */s/Thomas R. Kraft*
THOMAS R. KRAFT

Dated: July 6, 2026

**INSTRUCTIONS**

A. If any Interrogatory is not answered in full, state the precise reason for failing to complete the answer. If a legal objection is made with respect to any Interrogatory, you should set forth the specific reasons for such objection. If your response to all or part of any Interrogatory is incomplete or not known at the time your initial response is made, please (a) include an explicit statement to that effect in your response, designating that it is incomplete and providing the reasons or grounds for any omissions or refusals or inabilities to complete the response; (b) furnish the information that is known or available; and (c) respond to the Interrogatory by amended or supplemental response in writing under oath within 20 days of the date on which the supplemental information becomes known or available.

B. If you are withholding information requested by any Interrogatory or any portion of an Interrogatory upon a claim that it is privileged or subject to protection as trial preparation material, pursuant to R. 4:10-2(e), make the claim expressly in your written response, identifying the privilege or protection you are claiming, and provide sufficient information about the documents, communications, information, or other items not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable all parties to assess the applicability of the privilege or protection, including identifying the following information in a separate privilege log:

(1) the nature of the privilege or protection claimed;

(2) a statement of the basis for the claim of privilege or protection;

(3) whether, as to the information requested, (i) any document exists, and/or (ii) any oral communications took place;

(4) a description of the document, oral communication, or other item/information, including:

(a) For documents: (i) the type of document, *e.g.*, letter or memorandum or e-mail; (ii) the general subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation; (iii) the date of the document; (iv) the author of the document, the addressees of the document, and any other recipients, including each person who was sent or shown blind or carbon copies of the such, or has had access to or custody of such, and, where not apparent, the relationship of the author, addressees, and recipients to each other; and (v) the number of pages, attachments, and appendices;

(b) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication; and

(c) The present custodian of the document, oral communication, or other item/information.

C. In answering these interrogatories, furnish all information which is available to you, including non-privileged information in the possession of your attorneys, representatives, or investigators for your attorneys, and not merely such information known of your personal knowledge. If you cannot answer the following Interrogatories in full after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions. This means:

(1) When answering the following Interrogatories, provide any and all

information either in your possession, under your control, within your dominion, or available to you, regardless of whether this information is in your personal possession, or is possessed by your agents, servants, employees, independent contractors, representatives, or others with whom you have or had a relationship and are capable of deriving information, documents, or materials; and

(2) If you do not have personal knowledge of the information contained in any of your answered to the below Interrogatories, you should state that your answer is not verified by personal knowledge and identify the person(s) from whom the information was obtained or, if the source of the information is documentary, provide a full description of the documents, including the location thereof.

D. If any answers to these Interrogatories are made based on information that was not within your personal knowledge, provide the name and address of every person from whom you received such information.

E. Where an interrogatory calls for identification of any paper, you are to attach a copy of such paper to your answers to these Interrogatories in addition to providing a written response to the Interrogatory, pursuant to R. 4:17-4, and you are to provide an explicit reference to each Interrogatory to which each document(s) is responsive.

F. These Interrogatories are to be continuing until the date of trial and any information secured subsequent to the filing of your answers, which would have been included in the answers had it been known or available, is required to be supplied by filing further and supplemental answers.

G. Pursuant to R. 4:17-7, if you obtain information that renders your answers to these interrogatories incomplete or inaccurate, you must serve amended answers not later than twenty (20) days prior to the end of the discovery period.

H. The fact that another party produced information requested in any particular Interrogatory, or that the requested information or similar or identical information is available from another source, or that the requesting party already has knowledge of the matter on which it is seeking discovery, does not relieve Plaintiff of his obligation to produce his response to each Interrogatory herein.

## DEFINITIONS

A. "And" and "or" as used herein shall have the same meaning, that is, the disjunctive meaning of "or." The listing of terms separated by commas, semi-colons, the word "and" or the word "or" shall be deemed to require a response to each and every term listed.

B. "Atlas" means Atlas Data Privacy Corporation ("Atlas") who is a Plaintiff and assignee of individuals who are covered persons under Daniel's Law as further alleged in the Complaint.

C. "Daniel's Law" means the law enacted in November 2020 (P.L. 2020, c. 125), codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq. ("Daniel's Law") which prohibits online data brokers from selling, publishing, and distributing the home address and unpublished home telephone number ("Protected Information") of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.

D. "Defendant" refers to any defendant identified in the Complaint and shall include any and all agents, officers, directors, attorneys, employees, contractors, predecessors in interest, parents, subsidiaries, affiliates, assigns, successors, and representatives of any/all of them, or other persons acting on its respective or collective behalf.

E. "Describe," "set forth" and "state" all mean to state the substance of the event, circumstances, facts, communications, representation, conversation, meeting, transaction,

occasion or other occurrence in question; the date, time, place and identity of all persons present thereat or participating therein; that which each such person said and did; the approximate duration of such occurrence; the method or means of communications employed; the identity of all documents relating thereto; and the identity of all persons having knowledge of such occurrence; as well as the date and means when and whereby such knowledge was first acquired, setting forth the underlying facts rather than ultimate conclusions.

F. "Document" or "documents" means the original and any identical or non-identical copy, regardless of origin or location, of any written, reported, filmed, magnetically stored, or graphic matter, or record of any type or description, whether produced, reproduced or producible on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media, including but not limited to emails, memoranda, notes, minutes, records, photographs, computer programs, correspondence, telegrams, diaries, bookkeeping entries, specifications, source code, object code, flow charts, financial statement, charts, studies, reports, graphs, statements, notebooks, handwritten notes, applications, feasibility studies, agreements, books, pamphlets, periodicals, appointment calendars, notes, records and recordings of oral conversations, work papers, and also including but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copy sent or received, or otherwise, and drafts, which are in the possession, custody or control of the present or former agents, officers, directors, representatives, employees, or attorneys of Defendant, or all persons acting on Defendant's behalf, including documents at any time in the possession, custody or control of such individuals or entities who are known by Defendant to exist. Include also any catalog, brochure or any other data compilations from which information can be obtained and translated if necessary, or any other written, recorded, stored, transcribed, punched, taped, filed or graphic matter however produced or reproduced, to which Defendant has or have had access.

G. "Identify," or "identification" mean, when used in reference to:

(1) a natural person, his or her:

(a) full name;

(b) present or last known home address (including street name and number, city or town, state, zip code, and telephone number);

(c) present or last known business address (including street name and number, city or town, state, zip code, and telephone number);

(d) present or last known occupation, position, business affiliation, and job description;

(e) occupation, position, business affiliation, and job description at the time relevant to the particular interrogatory being answered.

(2) a company, corporation, association, partnership or legal entity other than a natural person:

(a) its full name;

(b) a description of the type of organization or entity;

(c) the full address (including street name and number, city or town, state, zip code, and telephone number) of its principal place of business;

(d) the jurisdiction of incorporation or organization.

(3) a document:

(a) its description (for example, letter, memorandum, report);

(b) its title (e.g., letter, memorandum, telegram, chart, etc.)

(c) its date;

(d) the number of pages thereof;

(e) its subject;

(f) the identity of its author, signatory or signatories, and any person who participated in its preparation;

(g) the identity of its addressee or recipient;

(h) the identity of each person to whom copies were sent and each person by whom copies were received;

(i) its present location; and

(j) the identity of its present custodian.

(If any such document was, but is no longer, in the possession of or subject to the control of Defendant, state what disposition was made of it and when).

(4) a communication or statement:

(a) the date and time when it occurred;

(b) the place where it occurred;

(c) the complete substance of the communication;

(d) the identity of each person; (1) to whom such communication was made; (2) by whom such communication was made; and (3) who was present when such communication was made;

(e) if by telephone: (1) the identity of each person: (i) who made each telephone call; and (ii) who participated in each call; and (2) the place where each person participating in the telephone call was located;

(f) the identity of all documents memorializing, referring to or relating in any way to the subject of the communication.

H. "Individual Plaintiffs" means the Plaintiffs identified in the Complaint other than Atlas and shall include any and all agents, officers, directors, attorneys, employees, and other persons acting on its behalf.

I. "Plaintiff" means the Plaintiffs identified in the Complaint and shall include any and all agents, officers, directors, attorneys, employees, and other persons acting on its behalf.

J. "Persons" means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

K. "Written Nondisclosure Requests" means any request pursuant to Daniel's Law (N.J.S.A. § 56:8-166.1, et seq.) to refrain from disclosing, re-disclosing, or otherwise making available protected information and/or remove protected information from the Internet or where otherwise made available.

L. "You" and "Your" refers to each Defendant responding to these interrogatories, with the term Defendant broadly defined above.

**INTERROGATORIES**

1. Please provide detailed information regarding all persons (including all companies and individuals, with contact information) that since receiving any Written Nondisclosure Requests, have had any ownership, controlling interest, or agency over each of the websites listed in Plaintiffs' Complaint.

2. Please identify every source of home addresses and/or unpublished home telephone numbers that you own, have a controlling interest in, or otherwise have any agency over, including without limitation all such Internet websites (by name and URL) and any other way in which such information is made available.

3. Please describe in detail all ways in which you have obtained (and in the future obtain) and have disclosed or made available (and in the future disclose or make available) any

home addresses or unpublished home telephone numbers, including without limitation by identifying all upstream and downstream sources and recipients of such data including, but not limited to any websites, URLs, databases, entities, and individuals.

**CERTIFICATION**

I hereby certify that the foregoing answers to answers to interrogatories are true. I am aware that if any of the following statements made by me are willfully false, I am subject to punishment.

I hereby certify that the copies of any documents annexed hereto and provided herein are exact copies; that the existence of any other documents are unknown to me, and if such become later known or available, I shall serve them promptly on the propounding party.

________________________________

DATED: ____________

New Jersey Courts
Independence • Integrity • Fairness • Quality Service

Essex Vicinage

**Hon. Stephen L. Petrillo**
**Judge Superior Court**

Essex County Historic Courthouse
470 Martin Luther King Jr. Blvd., Room 402
Newark, New Jersey 07102

njcourts.gov • Tel: 973-776-9460 Fax: 973-424-2483

June 29, 2026

***Via ecourts:***
**PEM LAW LLP**
Rajiv D. Parikh, Esq.
One Boland Drive, Suite 101
West Orange, New Jersey 07052

**Re: ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L**
**DOCKET NO. ESX-L-005000-26**

Dear Counsel:

The referenced case has been filed as case type **508.** That designation presumptively assigns the case to the Complex Litigation Business Program ("CBLP"). The complaint has been preliminarily reviewed and the matter appears, at this time, to meet the criteria for inclusion in the CBLP. The following documents are attached:

1. **Case Management Guidelines**. The guidelines provide an overview of the CBLP including an explanation of the criteria for presumptive assignment and exclusion as well as the method of opting in to the CBLP. The Guidelines further describe the management of cases within the CBLP.

2. **Joint Proposed Discovery Plan.** Parties in CBLP matters are required to confer and develop a proposed discovery plan pursuant to R. 4: 103-2(b). The model Joint Proposed Discovery Plan provides information and background necessary for the court to exercise early and effective case management and to render litigation, particularly discovery, more predictable and efficient. It includes deadlines for written discovery, interrogatories and depositions, pretrial motions and the filing of expert and rebuttal reports. The Proposed Joint Discovery Plan also addresses bifurcation, mediation, binding arbitration and the scheduling of an interim status/settlement conference.

3. **Scheduling Order.** A scheduling order providing various discovery and trial deadlines, as well as limits on discovery, must be entered following the initial case management conference pursuant to R. 4: 103-3. This provides a template for that order.

4. **Electronic Discovery Stipulation and Order.** The Electronic Discovery Stipulation and Order governs discovery of Electronically Stored Information ("ESI") and covers preservation of ESI, custodians, search terms, production, and documents protected from discovery. Pursuant to R. 4: 103- 2(c), parties are required to advise

the court whether they anticipate any issues regarding disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.

5. **<u>Clawback Stipulation and Order.</u>** This model stipulation and order is used where the parties agree on a procedure to claw-back inadvertently disclosed privileged or work product materials through the exchange of certain electronically stored or electronically maintained information.

The CBLP case management guidelines, model forms, and model orders are posted on the Judiciary's Complex Business Litigation Program webpage (https://njcourts.gov/courts/civil/cblp.html). The model CBLP forms and model orders can be used without modification or can serve as the starting point for documents crafted to meet the needs of a particular business-related case and situation.

Please review these guidelines and familiarize yourself with the CBLP applicable court rules found at chapter XI of the Rules Governing Civil Practice in the Superior Court, Part IV. **These rules are distinct in certain key respects as regards motion practice and discovery and must be followed.**

After all parties have appeared, or after default has been entered as to absent parties, an initial case management conference shall be held. Discovery shall proceed as set forth by the CBLP court rules. It shall be the responsibility of the plaintiff's counsel to alert the court to the case's readiness for the initial conference and all counsel shall prepare for same as provided by <u>R</u>. 103-2.

All counsel are reminded to please ensure compliance with <u>R</u>. 4:102-1(b) on all filings.

Please be guided accordingly.

Very truly yours,

*Stephen L. Petrillo*

SLP/cac

# Complex Business Litigation Program (CBLP) Case Management Guidelines

## Overview

The Complex Business Litigation Program ("CBLP" or "the Program") is focused on business, commercial and construction cases with significant amounts in dispute or business or commercial cases involving complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial; significant interpretation of a business, commercial or construction statute; or involves other contentions of a complex business, commercial or construction nature.

### Eligibility

A case is assigned to the vicinage CBLP judge in the following situations:

**Threshold Damages**
The CBLP involves disputes with and between business entities where the claims, counterclaims, or third-party claims allege business, commercial or construction claims and an amount in controversy of at least $200,000.00, unless the court determines a lesser amount is acceptable.

**Self Designation**
Attorneys or parties completing the Civil Case Information Statement will self-designate actions as Complex Commercial (Case Type 508) or Complex Construction (Case Type 513). These case types will presumptively be assigned to the vicinage's CBLP judge for case management.

Complex Commercial (508) actions involve claims by, against, and among parties that arise out of business or commercial transactions and involve parties' exposure to potentially significant damage awards; or where the business or commercial claim involves complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial; significant interpretation of a business or commercial statute; or involves other contentions of a complex business - commercial nature.

Complex Construction (513) actions involve claims by, against, and among owners, contractors, subcontractors, fabricators and installers, architects, engineers, design and construction consultants, and other similar parties associated with a construction project that involves parties' exposure to potentially significant damage awards because of claimed design and construction defects, delay claims, or where the construction claim involves complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial. Complex construction does not include construction and professional payment and billing claims, change order claims, wrongful termination, quantum merit, construction lien or mechanics lien claims, unless associated with a complex construction claim as herein described.

Actions to establish a constructive trust or impose an equitable lien to satisfy damages are also cognizable in the CBLP, as are cases primarily seeking legal relief in which ancillary injunctive relief is sought. The CBLP encompasses both jury and non-jury matters.

CBLP judges handle cases arising from the following non-exclusive list of circumstances:

- non-consumer Uniform Commercial Code transactions;
- the purchase and sale of assets of businesses or assets of a business, including contract disputes and commercial landlord/tenant claims;
- non-consumer sales of goods or services by or to a business;
- non-consumer bank or brokerage accounts including loan, deposit, cash management, and investment accounts;
- purchase, sale, or lease of commercial personal property, or security interests therein;
- arising out of state securities laws;
- intellectual property disputes;
- business licensing agreement disputes;
- unfair competition disputes;
- sale, purchase of a business or purchase or sale of stock, assets or liabilities of a business;
- mergers and acquisitions disputes;
- franchisee/franchisor relationship and liabilities;
- business torts, including interference with prospective economic advantage, interference with contractual relations, tortious interference with business relationships, breach of implied covenant of good faith and fair dealing, fraud, fraud in the inducement, misrepresentation, and breach of fiduciary duty;
- liability or indemnity of managers (officers, directors, managers, trustees or members or partners functioning as managers) of corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises;
- Racketeer Influenced and Corrupt Organizations Act (RICO) claims;
- complex commercial construction disputes;
- other complex disputes of a business or commercial nature.

The CBLP retains the law and equity separation that was recognized in the 1947 Constitution. It does not encroach on the cases traditionally heard in General Equity. The CBLP does not include matters involving:

- internal affairs or governance disputes over management and/or control of business entities;
- dissolution or liquidation rights or obligation between or among owners (shareholders, partner, members);
- statutory and custodial receivership or actions seeking the appointment of special fiscal agents;
- restructuring of a business entity;
- shareholder derivative suits;
- actions to protect the interests of a business, such as non-compete agreements, trade secrets or restrictive covenant agreements.

Also excluded from CBLP are actions primarily involving consumers, labor organizations, personal, physical or mental injury; mechanics' lien actions, and condemnation proceedings. Following is a non-inclusive list of actions that generally are not handled by CBLP judges and are handled by judges regularly assigned to the Law Division, Civil Part:

- class action consumer claims;
- products liability actions;
- personal injury and wrongful death actions;
- commercial landlord verses consumer tenant actions;
- noncommercial real estate matters actions;
- actions by consumers against a business and businesses against consumers;
- enforcement of arbitration awards;
- condemnation actions;
- landlord-tenant matters involving summary dispossession;
- employment Law Against Discrimination actions;
- civil rights actions;
- professional malpractice actions;
- medical device litigation and pharmaceutical litigation;
- Multicounty Litigation (mass tort);
- environmental litigation including environmental insurance coverage actions;
- Conscientious Employee Protection Act actions;
- agreements relating to an individual or collective contract of employment;
- wrongful discharge actions;
- slander of title or product disparagement actions;
- fraudulent transfers under the Uniform Fraudulent Transfers Act;
- consumer residential construction actions.

**Opt-In Motion**
Parties may formally move before the CBLP judge for inclusion in the Program where a case is not presumptively assigned to the CBLP but involves complex business related issues and/or the amount in controversy is less than $200,000. Business or commercial disputes that involve complex factual or legal issues; a large number of parties; discovery issues such as managing large numbers of documents, multiple experts; is likely to have implications for business beyond the decision in the particular case; is likely to result in a significant interpretation of a business or commercial statute; or involves other contentions that the CBLP judge finds compelling may be assigned to the Complex Business Litigation Program. Such motions shall be granted for good cause shown.

**Complex Business Litigation Assignment Recommendation**
If, upon review, the Assignment Judge or the CBLP judge determines a case is appropriate for the CBLP, the judge may, *sua sponte*, assign it to the CBLP.

## Exclusion from CBLP

### Initial Case Review

The CBLP judge will review actions presumptively assigned to the CBLP to determine if the case is appropriate for the CBLP. If, after review, the CBLP judge determines that the complex nature of the action or the threshold damages claim amount is not established, the CBLP judge shall remove the case from the Program. The Assignment Judge may also conduct initial CBLP eligibility reviews. Cases removed from the CBLP by the Assignment Judge or the CBLP judge will be reassigned to the appropriate track for case management.

### Motion for Removal from the Program

Any party may move for removal from the CBLP on the grounds that the action does not meet the eligibility criteria.

# Guidelines

## Assignment of Judges

CBLP cases are assigned to a single judge that handles all aspects of the case, including discovery disputes, summary judgment and other motions, and trial.

## Court Rules

Cases assigned to the CBLP are governed by Part IV, Chapter XI ("Complex Commercial & Complex Construction Matters") of the New Jersey Rules of Court. Absent an express contradictory rule contained in Chapter XI, Parts I and IV of the Court Rules shall otherwise apply to any case in the CBLP.

## Pre-Case Management Conference Activity

Initial conference preparation is required pursuant to *Rules* 4:103-1 and 4:103-2, comparable to Federal Rule of Civil Procedure 26, to require attorneys to both meet with their clients as well as each other before a meeting with a judge.

The initial meetings between counsel and their clients will provide an understanding of the potential data and information at issue and the time required to accomplish full discovery. In conferring with counsel, attorneys should prepare a Joint Discovery Plan for all discovery as well as an Electronic Discovery Plan, both of which are to be provided to the Court in advance of the Initial Conference. Counsel should also advise the Court of any unresolved discovery issues.

Electronic discovery (eDiscovery): the attorneys should meet and confer to discuss form, scope preservation/destruction, and expense of production; method for asserting or preserving claims of privilege or of protection; confidentiality; and any other electronic discovery issues. The Electronic Discovery Plan should set forth the parties' agreements as to all eDiscovery.

## Initial Conferences

The case will be scheduled for an Initial Conference with the CLBP Judge[1]. At that Conference, counsel will meet with the Judge/other court representative to discuss assignment and scheduling of the case. If it is determined that it should not be in the CBLP, the case may be removed at that time. If the case remains in the CBLP, a comprehensive Scheduling Order, setting forth all discovery deadlines, will be entered at that time.

[1] Should the need arise, the utilization of other judicial staff such as law clerks and/or a designated statewide case manager should be considered for overseeing/conducting certain conferences for CBLP cases.

## Model Stipulations/Orders

The CBLP Internet website has the following model case management, discovery and protective orders:

Joint Proposed Discovery Plan;

Discovery Confidentiality Order (Appendix XXX to the Rules of Court);

Clawback Stipulation and Order;

Electronic Discovery Stipulation and Order; and

Scheduling Order.

## Contacting Chambers

At the time of the Initial Conference, the CBLP Judge should advise the parties the appropriate method(s) (phone, letter, email) and bases for contacting chambers. The CBLP Judge should also advise whether joint submissions will be required.

## Case Management/Status Conferences

As needed/requested by the parties (within reason). There, the parties will report their discovery progress and address any issues. Prior to such a conference a joint letter should be sent to the Court advising of the status of the case and the issues to be discussed at the Conference.

## Discovery and Motions

The Supreme Court has approved Court Rules to govern cases in the Program. Some aspects of discovery and motions in CBLP cases will be handled differently than other civil matters.

### Discovery

See *Rules* 4:104-1 through 4:104-9, which provide the timing, limits and confidentiality of discovery in CBLP matters. The Rules also address discovery disputes (*R.* 4:105-4). The parties should first "meet and confer" to try to resolve the issues. If an agreement cannot be reached, counsel should submit a letter to the court explaining the basis for the motion and requesting a telephone or in-court conference before the motion is made. The Rule provides a process to resolve the dispute if not resolved by the court conference.

### Motions

See *Rules* 4:105-1 through 4:105-9. These Rules seek to streamline and facilitate the motion practice while also addressing the complexity and need for ease and flexibility of litigants to seek and to obtain extensions. Discovery disputes should be handled as noted above and the Dispositive Motion schedule should be set forth in Joint Proposed Discovery Plan.

## Settlement and CDR

Any settlement conferences will be held at the CBLP judge's discretion. The CBLP judge will also advise whether a settlement conference memorandum is necessary as well as any content and formatting requirements.

CBLP cases are not part of the court's mandatory civil mediation and arbitration programs. However, the CBLP judge in each vicinage, as part of case management, should encourage the parties to engage in mediation or some type of dispute resolution to facilitate settlement.

## Pre-trial and Trial

All CBLP actions shall be pretried and the requirements of *Rule* 4:25 shall apply to the final pretrial conference, which should lead to the formulation of a trial plan, including a plan to facilitate the admission of evidence. With regard to trial exhibits, parties should prepare and submit Joint Exhibits to eliminate redundancy (it does not mean the parties are stipulating to its admissibility).

Model Stipulation and Order

Superior Court of New Jersey
Law Division, Civil Part
________________ County
Docket Number: L-________________________

________________________________________
Plaintiff(s),

v.

________________________________________
Defendant(s).

## Clawback Stipulation and Order

WHEREAS, the Parties[1] believe that it will promote the efficient, just, and economical resolution of this Litigation to supplement the existing Discovery Confidentiality Order by entering into this stipulation and Order (the "Clawback Order") regarding the exchange of certain electronically stored information ("ESI"), any electronically stored or maintained information, documents, or things, or portion of any documents or things ("Discovery Materials"); and

WHEREAS, based upon a good faith belief that the procedures set forth in the Electronic Discovery Stipulation and Order (the "eDiscovery Order") are likely to generate a large volume of Discovery Materials;

WHEREAS, based on the anticipated number of relevant and/or responsive Discovery Materials that will be identified in this Litigation, the Parties have previously agreed upon certain delimiters, procedures and processes set forth in the eDiscovery Order which include, *inter alia,* agreeing to utilize agreed upon search terms, date ranges and custodians to more accurately identify potentially relevant Discovery Materials; and

WHEREAS, despite these methods used to cull-down the number of documents identified as potentially relevant, the Parties recognize that the volume of Discovery Materials that will be exchanged in this Litigation is of a magnitude that the inadvertent disclosure of Discovery Materials that are subject to a claim of attorney-client, work product and/or other applicable privilege or immunity, and/or protected pursuant to applicable state and/or federal privacy laws (collectively, "Privileged Discovery Materials"), as well as the disclosure of other materials irrelevant to this Litigation ("Irrelevant Materials") is possible; and

WHEREAS, the Parties believe that permitting the production of Discovery Materials pursuant to this Clawback Order will materially reduce the cost and duration of discovery, the attendant burdens on the Parties, and the need for judicial intervention; and

WHEREAS, although New Jersey has not adopted a rule of evidence similar to Federal Rule of Evidence 502,[2] the Parties understand and stipulate that disclosure of Privileged Discovery Materials pursuant

[1] Unless otherwise defined, capitalized terms herein have the meanings assigned in the "Discovery Confidentiality Order").
[2] Entitled "Attorney-Client Privilege and Work Product; Limitations on Waiver."

to this Clawback Order will not prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client, work product or other applicable privilege or immunity, under New Jersey law.

IT IS HEREBY STIPULATED, AGREED AND ORDERED:

1. Discovery Materials exchanged by the Parties in this Litigation is subject to and under the terms of this Clawback Order provided that the Party producing the Discovery Materials has made a good faith effort to prevent the inadvertent production of any Privileged Discovery Materials or Irrelevant Materials.

2. A Producing Party shall not be obligated to conduct a document-by-document review of the Discovery Material prior to its production in order to meet the good faith standard mentioned above; provided however, that a Producing Party utilized, at a minimum, the following best practices to avoid the inadvertent production of documents ("Best Practices"):

   a. Keyword search terms (e.g., the names of counsel and law firms for the Producing Party);

   b. Domain names; and

   c. Analytical software tools and/or other reasonable means to locate and exclude potentially Privileged Discovery Materials prior to the production of the Discovery Materials;

3. Any document that is not identified by using the above Best Practices is considered presumptively responsive/non-privileged and may be produced without performing a document-by-document review.

4. Any documents that are identified as being potentially privileged by using the above Best Practices shall be reviewed by the Producing Party and, if such material is responsive and non-objectionable, shall either be (i) produced (if such material is not deemed Privileged Discovery Material), or (ii) identified as privileged and placed onto the Producing Party's privilege log (if such material is deemed as Privileged Discovery Material), in the normal course of discovery, consistent with the Rules of this Court. If a Producing Party complies with Paragraphs 2 and 3 herein, such Producing Party shall be deemed to have implemented adequate precautions to prevent inadvertent disclosure of any Privileged Discovery Materials.

5. Disclosure of Privileged Discovery Materials in this Litigation, pursuant to this Clawback Order, shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any attorney-client, work product or other applicable privilege or immunity. Any Privileged Discovery Materials or Irrelevant Materials shall be deemed to have been inadvertently produced.

   a. A Party who receives any Discovery Materials that, upon review by such Party, appears on their face to be Privileged Discovery Materials shall: (i) refrain from any further examination or disclosure of such document pending confirmation by the Producing Party that such document is not Privileged Discovery Material; and (ii) provide reasonably prompt written notice to counsel

for the Producing Party that such document appears to be Privileged Discovery Material. Upon receiving a written notice contemplated by the preceding sentence, the Producing Party shall provide reasonably prompt written notice to the requesting Party indicating whether the document in question constitutes Inadvertent Production Material.

b. A Producing Party shall be obligated to make a reasonably prompt claim of inadvertent production upon the earlier of: (i) receiving notice under the preceding paragraph concerning such document, or (ii) otherwise becoming aware of the inadvertent production of such document. If a Producing Party complies with this paragraph, such Party shall be deemed to have acted timely and adequately to rectify any inadvertent disclosure of Privileged Discovery Materials.

c. The procedures set forth in Paragraph 9 of the Discovery Confidentiality Order shall apply to any Discovery Material which is claimed to be Inadvertent Production Material.

d. The Producing Party shall timely log any Discovery Material that is claimed to be Inadvertent Production Material, consistent with the Rules of Court.

6. Each Party shall have the right to demand the immediate return of any Irrelevant Material produced by such Party. After the documents are returned, the Parties agree to meet and confer in good faith to resolve any disputes that arise regarding the alleged Irrelevant Materials. The Party that is challenging the designation of potentially Irrelevant Material and is subject to destroy and/or return the documents at issue must also destroy and/or obtain from any Party or third party that was provided with the potentially Irrelevant Material until the issues are resolved through the meet and confer or by motion to the Court.

7. Nothing in this Clawback Order shall:

   a. Require any Party to produce or disclose any Privileged Discovery Materials;
   b. Require any Party to produce documents or data as Clawback Discovery Material;
   c. Waive any Party's right to conduct limited pre-production review of Discovery Material prior to production of such materials;
   d. Modify the Discovery Confidentiality Order, unless expressly stated herein;
   e. Except as expressly stated herein, modify any prior agreements among the Parties concerning the conduct of discovery in this Litigation, including but not limited to agreements regarding the collection of Discovery Material from certain custodians or the use of search terms to identify potentially responsive documents; or
   f. Prevent any Party from arguing that a waiver of an attorney-client, work product, or other applicable privilege or immunity has occurred from circumstances other than disclosure of Discovery Material pursuant to this Clawback Order.

8. The Parties agree that any violation of this Clawback Order shall result in irreparable harm for which there is no adequate remedy at law. The Parties further agree that any Party shall be entitled to injunctive relief to enforce the terms hereof. In addition, the Parties expressly acknowledge that the Court may, in its discretion, award such other and further relief as the Court may deem appropriate.

9. This Clawback Order applies only to Discovery Material produced by the Parties, and does not apply to Discovery Material produced by non-parties. In the event additional parties join or are joined in the Litigation, they shall not have access to Discovery Material until the newly-joined party, by its counsel, has executed and, at the request of any Party, filed with the Court its agreement to be fully bound by this Clawback Order.

10. The Parties agree to be bound by the terms of this Clawback Order pending the entry of this Clawback Order by the Court, and any violation of its terms shall be subject to the same sanctions and penalties as if this Clawback Order has been entered by the Court. Notwithstanding the foregoing, the Parties shall not be obligated to provide any Discovery Material prior to entry of this Clawback Order by the Court, unless the production of such Discovery Material is expressly required by another Order of the Court.

11. Subject to any applicable Rule of Court, the provisions of this Clawback Order shall, absent written permission of the Producing Party or further Order of the Court, continue to be binding throughout and after the conclusion of the Litigation, including without limitation any appeals therefrom.

12. Nothing in this Clawback Stipulation and Order shall preclude any Party from seeking judicial relief, upon notice to the Parties, with regard to any provision hereof.

13. This Clawback Stipulation and Order may be executed by PDF or conformed signature and may be executed in one or more counterparts, each of which shall be deemed to constitute an original, but all of which together shall constitute but one agreement.

Dated: ____________________ ____________________________________
Counsel for Plaintiff

Dated: ____________________ ____________________________________
Counsel for Defendant

**IT IS SO ORDERED.**

Dated: ____________________ ____________________________________
J.S.C.

Model Stipulation and Order

Superior Court of New Jersey
Law Division, Civil Part
________________ County
Docket Number: L-________________________

________________________________________
Plaintiff(s),

v.

________________________________________
Defendant(s).

**Electronic Discovery Stipulation and Order**

1. **Purpose**
This Order (the "eDiscovery Order") will govern discovery of Electronically Stored Information ("ESI") and any electronically stored or maintained information in this case as a supplement to the Rules of Court, the Complex Business Litigation Program's Guidelines, and any other applicable Orders and Rules.

2. **Cooperation**
The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the discovery and production of ESI and any electronically stored or maintained documents.

3. **Liaison**
The Parties have designated liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI and/or electronic documents ("eDiscovery Liaison"). Each eDiscovery Liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI and/or electronic documents in this matter. The Parties will rely on the eDiscovery Liaison, as needed, to confer about ESI and/or electronic documents and to help resolve disputes without court intervention. The following individuals are the designated as the eDiscovery Liaison for this litigation:

Plaintiff(s) [with contact information]:

Defendant(s) [with contact information]:

4. **Preservation**
By signing this eDiscovery Order, the Parties certify that they have taken reasonable steps to preserve all ESI and electronically stored documents. Additionally, the Parties have discussed their preservation obligations and needs as litigation progresses and agree that preservation of potentially relevant ESI and electronically stored documents will be reasonable and proportionate. To reduce the costs and burdens of preservation, and to ensure proper ESI and/or electronically stored information is preserved, the Parties agree that:

a) They have exchanged a list of custodians, the types of ESI and/or electronically stored information they believe should be preserved, or general job titles or descriptions of custodians, for whom they believe ESI and/or electronically stored information should be preserved, e.g., "HR head," "scientist," "marketing manager," etc…;

b) In addition to the previously preserved ESI and/or electronically stored information, the Parties agree that any ESI created or received between _______ and _______ will be preserved for the custodians and/or for those individuals who meet the general job titles or descriptions of custodians provided by the opposing party;

c) They have agreed/will agree on the number of custodians per party for whom ESI and/or electronically stored information will be preserved;

d) Data sources that are not reasonably accessible because of undue burden or cost and ESI from these sources will be preserved but not searched, reviewed, or produced: [e.g., backup media of [named] system, systems no longer in use that cannot be accessed];

e) Among the sources of data the Parties agree are not reasonably accessible, the Parties agree not to preserve the following: [e.g., backup media created before _______, digital voicemail, instant messaging, automatically saved versions of documents];

f) Any data sources, ESI and/or electronically stored information that has or potentially could have been destroyed is listed below and has been divulged to the opposing party;

Plaintiff(s) Preservation Issues (if any):

Defendant(s) Preservation Issues (if any):

g) In addition to the agreements above, the Parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: ______

**5. Custodians**

The Parties agree that in providing *R.* 4:103-1 Initial Disclosures, or earlier if appropriate, they have met and conferred about methods to search ESI in order to identify data sources that are likely to contain relevant documents. The Parties have agreed to _____ custodians and/or data sources each for the purposes of this litigation. Those custodians and/or data sources are listed below. The Parties shall add or remove custodians as reasonably necessary.

Plaintiff(s) Custodians and/or Data Sources:

Defendant(s) Custodians and/or Data Sources:

**6. Search Terms**

The Parties have agreed upon the following search terms:

Plaintiff(s) Search Terms:

Defendant(s) Search Terms:

In the event that any of the search terms return _______ documents or more, the Parties agree that the search term is per se overly broad and will work to create a more tailored search term.

**7. Production**

The Parties agree to run the appropriate de-duplication program prior to any production to reduce the number of duplicate documents. The Parties further agree to the Production Format set forth in Exhibit "A", which is attached hereto and incorporated as part of the eDiscovery Order, for all ESI and/or electronically stored information exchanged in this litigation.

The Parties agree to electronically Bates label documents as follows:

Plaintiff(s) Bates Designation:

Defendant(s) Bates Designation:

**8. Phasing (Rolling) Production**
When a party propounds discovery requests pursuant to proposed *R.* 4:104-5, the Parties agree to phase the production of ESI (*i.e.* produce the documents on a rolling basis), and the initial production will be from the above-agreed upon custodians and data sources.

Following the initial production, the Parties will continue to prioritize the order of subsequent productions.

**9. Documents Protected From Discovery**
Although New Jersey has not adopted a rule of evidence similar to Federal Rule of Evidence 502 (Attorney-Client Privilege and Work Product; Limitations on Waiver), the Parties understand and stipulate that disclosure of Privileged Discovery Materials pursuant to this Stipulation and Order as well as any Clawback or other Order will not prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client, work product or other applicable privilege or immunity, under New Jersey law.

For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case, or in any other Federal or State proceeding.

Communications involving trial counsel that post-date the filing of the Complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**10. Modification**
This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED,** through Counsel of Record

Dated: ____________________ ____________________________________
Counsel for Plaintiff

Dated: ____________________ ____________________________________
Counsel for Defendant

**IT IS SO ORDERED** that the foregoing Agreement is approved.

Dated: ____________________ ____________________________________
J.S.C.

Model Form

Superior Court of New Jersey
Law Division, Civil Part
__________________ County
Docket Number: L-_________________________

______________________________________________
Plaintiff(s),

v.

______________________________________________
Defendant(s).

**Joint Proposed Discovery Plan**

1. Set forth the name of each attorney appearing, the firm name, address and telephone number and email address of each, designating the party represented.

2. Set forth a brief description of the case, including the causes of action and defenses asserted.

3. Have settlement discussions taken place? ☐ Yes ☐ No

4. The Parties ☐ have ☐ have not met pursuant to *R.* 4:103-2.

5. The Parties ☐ have ☐ have not exchanged the information required by *R.* 4:103-1(a)(1). If not, state the reason therefor.

6. Explain any problems in connection with completing the disclosures required by *R.* 4:103-1(a)(1).

7. The Parties ☐ have ☐ have not conducted discovery other than the above disclosures. If so, describe.

8. Proposed joint discovery plan:
   a) Discovery is needed on the following subjects: ________
   b) Discovery ☐ should ☐ should not be conducted in phases or be limited to particular issues. Explain:
   c) Proposed schedule:
      1) *R.* 4:103-1 Disclosures ________.
      2) Service of initial written discovery ________.
      3) Maximum of ________ Interrogatories and ________ document requests by each party to each other party. NOTE: Parties are to provide rolling privilege logs within ten (10) days after each production.
      4) Maximum of ________ depositions to be taken by each party.
      5) Motions to amend pleadings or to add Parties to be filed by ________.
      6) Motions to resolve any privilege log disputes to be filed by ________.
      7) Factual discovery to be completed by ________.

8) Plaintiff's expert report(s) due on ________.

9) Defendant's expert report(s) due on ________.

10) Any rebuttal reports due on ________.

11) Expert depositions to be completed by ________.

12) Discovery end date: ________.

13) Dispositive motions to be served within ________ days of discovery end date.

d) Set forth any special discovery mechanism or procedure requested.

e) A pretrial conference may take place on ________.

f) Trial Date: ________ ☐ Jury Trial ☐ Non-Jury Trial

9. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? If "Yes", please explain. ☐ Yes ☐ No

10. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? ☐ Yes ☐ No

If "Yes", how will electronic discovery or data be disclosed or produced?

Describe any agreements reached by the Parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

11. Do you anticipate entry of a Discovery Confidentiality Order? See *R.* 4:104-6 and Appendix XXX. ☐ Yes ☐ No

12. Do you anticipate any discovery problem(s) not listed above? If "Yes", describe: ☐ Yes ☐ No

13. Is this case appropriate for bifurcation? ☐ Yes ☐ No

14. Is the case appropriate for mediation? ☐ Yes ☐ No

15. Do the parties consent to binding arbitration? ☐ Yes ☐ No

16. An interim status/settlement conference (with client representatives having settlement authority in attendance), shall be held on ________.

17. Identify any other issues to address at the Scheduling Conference.

______________________________ ________________
Attorney(s) for Plaintiff(s) Date

______________________________ ______________________________ ________________
Attorney(s) for Defendant(s) Name of client Date

Model Order

Superior Court of New Jersey
Law Division, Civil Part
________________ County
Docket Number: L-_______________________

________________________________________
Plaintiff(s),

v.

________________________________________
Defendant(s).

## Scheduling Order

This matter having come before the Court for an Initial Conference, and for good cause shown,

It is, on this ____ day of ________________, 20___, **ORDERED** as follows:

(1) *R.* 4:103-1 Disclosures of the parties must be served on all parties no later than fourteen (14) days from the date of the Initial Conference.

(2) Service of initial written discovery to be completed by _________.

(3) Maximum of ____ Interrogatories and document requests by each party to each other party (if other than the limits set forth in *R.* 4:104-4).

(4) Maximum of ____ depositions to be taken by each party (if other than the limits set forth in *R.* 4:104-3).

(5) Motions to amend pleadings or to add parties to be filed by _________.

(6) Motions to resolve any privilege log disputes to be filed by _________.

(7) Factual discovery to be completed by _________.

(8) Plaintiff's expert report(s) due on _________.

(9) Defendant's expert report(s) due on _________.

(10) Any rebuttal reports due on _________.

(11) Expert depositions to be completed by _________.

(12) Discovery end date: _________.

(13) Dispositive motions to be served within ____ days of discovery end date.

(14) Tentative Status Conference Date (if necessary): _________.

(15) Tentative Pre-Trial Conference Date: _________.

(16) Tentative Trial Date: _________.

Dated: ______________________

______________________________________
J.S.C.

NOTE: The parties may agree to set and/or modify interim deadlines without court approval, provided that any such change will not have any impact on the discovery end date.

NOTE: The setting of the Tentative Trial Date, above, does not implicate the "exceptional circumstances" standard of *R.* 4:24-1(c), and discovery extensions may be considered for good cause shown.

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br>v.<br><br>DELETEME USA, LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**AFFIDAVIT OF SERVICE AS TO DEFENDANT CRITON TORNARITIS** |

I, Thomas R. Kraft, of full age, hereby certify and attest as follows:

1. I am an attorney duly licensed to practice law in the State of New Jersey and an Associate with PEM Law LLP, attorneys for plaintiffs, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*; Scott Maloney; Justyna Maloney; and Patrick Colligan (collectively, "Plaintiffs") in the above-captioned matter. And therefore, I have personal knowledge of the facts set forth in this Affidavit of Service.

2. On June 23, 2026, Plaintiffs commenced this action against defendants DeleteMe USA, LLC; DeleteME Europe, Ltd., and Criton Tornaritis (collectively, "Defendants") for

continuing violations of Daniel's Law, codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq., as of the time of filing.

3. As set forth in the Affidavit of Diligent Inquiry to be filed on the docket, Plaintiffs effectuated service upon Defendant Criton Tornaritis in accordance with the Republic of Cyprus' elections under Hague Service Convention Article 10(a) (service via postal channels).

4. On July 7, 2026, Plaintiffs directed service of process upon Defendant Criton Tornaritis via UPS International mail (signature required), certified mail, and regular mail at the following address:

Criton Tornaritis
Stasikratous, 16, Floor 7,
Flat/Office 701
1065 Nicosia, Cyprus

5. Service via UPS International was successfully delivered on July 10, 2026. A true and accurate copy of the UPS International mailing label and proof of delivery are jointly annexed hereto as "**Exhibit A**".

6. Specifically, the following documents were served on July 10, 2026: (1) Summons; (2) Complaint; (3) Case Information Sheet; (4) Track Assignment Notice; (5) Document Preservation Notice; (6) Plaintiffs' First Request for the Production of Documents; (7) Plaintiffs' First Set of Interrogatories; (8) June 29, 2026 Complex Business Litigation Program Assignment; and (9) June 29, 2026 Complex Business Litigation Program Guidelines. A true and accurate copy of the July 10, 2026 service packet is annexed hereto as "**Exhibit B**".

7. Based upon the foregoing reasons, Plaintiffs respectfully submit that service of process upon Defendant Criton Tornaritis was effectuated via international mail on July 10, 2026, and is valid pursuant to Article 10(a) of the Hague Service Convention and R. 4:4-4(b)(1)(B)-(C).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: */s/Thomas R. Kraft*
THOMAS R. KRAFT

Dated: July 16, 2026

Enc.

# EXHIBIT A

# View/Print Label

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialogue box that appears. Note: If your browser does not support this function, select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a scheduled Pickup**
   - Your driver will pickup your shipment(s) as usual.

   **Customers without a scheduled Pickup**
   - Schedule a Pickup on ups.com to have a UPS driver pickup all of your packages.
   - Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. To find the location nearest you, please visit the 'Locations' Quick link at ups.com.

UPS Access Point™
CVS STORE # 10087
265 PROSPECT AVE
WEST ORANGE NJ 07052-4205

UPS Access Point™
THE UPS STORE
623 EAGLE ROCK AVE
WEST ORANGE NJ 07052-2948

UPS Access Point™
CVS STORE # 2813
217 MAIN ST
WEST ORANGE NJ 07052-5645

FOLD HERE

---

DAWN PEKAR
9735775500
DAWN PEKAR
1 BOLAND DRIVE
WEST ORANGE NJ 07052
UNITED STATES

**1.0 LBS LTR** **1 OF 1**
SHP#: H460 07DG TBF
SHP WT: 1 LBS
DATE: 07 JUL 2026

**SHIP TO:**
CRITON TORNARITIS
973-577-5500
CRITON TORNARITIS
FLAT/OFFICE 701
STASIKRATOUS, 16, FLOOR 7
**1065 NICOSIA**
**CYPRUS**

**CYP 712 1-00**

**UPS SAVER** **1P**
TRACKING #: 1Z H46 007 D9 3370 6740

BILLING: P/P
SIGNATURE REQUIRED
DESC: documents

**EDI-DOC**

XOL 26.06.01 NV45 28.0A 07/2026*

# Proof of delivery

Dear customer,
This notification constitutes proof of delivery for the shipment listed below.

**Bill of lading number**
1ZH46007D933706740

**Service**
UPS Worldwide Saver®

**Additional information**
Signature required

**Delivered on**
10/07/2026 10:38

**Delivered to**
NICOSIA, CY

**Sent / Charged on**
07/07/2026

**Received from**
Yiota

Best regards,
UPS

Tracking results provided by UPS as of 07/16/2026 4:36 PM EST

# EXHIBIT B

**PEM LAW LLP**

**Thomas R. Kraft, Esq.**
**Associate**
tkraft@pemlawfirm.com
*Office:* +1 973.577.5500
*Direct:* +1 973.567.7455

July 6, 2026

**VIA INTERNATIONAL MAIL, CERTIFIED MAIL, & REGULAR MAIL**
Criton Tornaritis
Stasikratous, 16, Floor 7,
Flat/Office 701
1065 Nicosia, Cyprus

**Re:** ***Atlas Data Privacy Corporation, et al. v. DeleteME USA, LLC, et al.*, Docket No.: ESX-L-5000-26**

Dear Sir/Madam:

This firm represents Atlas Data Privacy Corporation, a*s assignee of individuals who are Covered Persons* and the Individual Plaintiffs identified in the Complaint in the above-referenced matter. Enclosed for service pursuant to R. 4:4-4(b)(1)(B) and R. 4:4-4(b)(1)(C), please find the following:

1. Summons;
2. Complaint;
3. Case Information Statement;
4. Track Assignment Notice;
5. Document Preservation Letter;
6. Plaintiffs First Request for Production of Documents;
7. Plaintiffs First Set of Interrogatories;
8. June 29, 2026 Complex Business Litigation Assignment; and
9. June 29, 2026 Complex Business Litigation Guidelines.

Please contact the undersigned at your earliest convenience.

Very Truly Yours,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: */s/Thomas R. Kraft*
THOMAS R. KRAFT

TRK/
Enc.

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br>v.<br><br>DELETEME USA LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**SUMMONS** |

**FROM THE STATE OF NEW JERSEY TO:**

To the Defendants Named Above: Criton Tornaritis

The plaintiffs named above (and identified in the enclosed Complaint) have filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A

telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages, or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal services Offices and Lawyer Referral services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

*/s/Thomas R. Kraft*
THOMAS R. KRAFT

*/s/Michelle M. Smith*
MICHELLE M. SMITH
Clerk of the Superior Court

Dated: July 6, 2026

**VIA INTERNATIONAL MAIL, CERTIFIED MAIL, & REGULAR MAIL**
Criton Tornaritis
Stasikratous, 16, Floor 7,
Flat/Office 701
1065 Nicosia, Cyprus

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Kathleen Barnett Einhorn, Esq. (040161992)
Jessica A. Merejo, Esq. (288592020)
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Scott Maloney, Justyna Maloney, and Patrick Colligan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br><br>v.<br><br>DELETEME USA, LLC, DELETEME EUROPE LTD, CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-________-26<br><br>**<u>CIVIL ACTION</u>**<br><br>**COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as the assignee of individuals who are Covered Persons under Daniel's Law, along with Scott Maloney, Justyna Maloney, and Patrick Colligan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1. In these tumultuous times, it is critical that the most sensitive personal information of current and former public servants be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, prosecutors—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2. This Complaint seeks to protect those important rights against companies brokering data while choosing profit and commercial gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering home addresses and unpublished home telephone numbers without sufficient regard for the risks and consequences imposed upon individuals who serve (and have served) critical judicial and law enforcement roles. Even worse are companies like the defendants here who claim to protect the privacy and safety of individuals, but who actually aggregate and sell dossiers on those individuals who have lawfully requested that their information not be published or disclosed.

3. The Legislature and Governor unanimously agree that the basic safety of those who serve—and their families—must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of these public servants. Our judges, law enforcement officers, and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4. With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory scheme, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5. In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was murdered by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just 20 years old and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect them. By the time his mother, a Judge, came to the door to check on what happened, the killer had fled. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6. During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and he went to her home that day intending to kill her. Investigators eventually connected this attack with the same perpetrator's shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to the case that was pending before Daniel's mother.

7. Critically, the gunman was able to find the home addresses of his murder victims through the various people finder resources available on the Internet,[1] the same kind of data broker services at issue in this case.

**New Jersey Passes Daniel's Law in 2020**

8. In response to Daniel's murder, New Jersey swiftly enacted Daniel's Law in November 2020. P.L. 2020, c. 125 codified in N.J.S.A. 47:1A-1, et seq., N.J.S.A. 56:8-166.1, et seq., and N.J.S.A. 2C:20-31.1 Daniel's Law allows current and former public servants—including judges, law enforcement officers, and prosecutors—and their eligible family members (*i.e.*, "covered persons") to send written nondisclosure requests to data brokers. Once a ten-business day period following such a request has passed, the data broker is prohibited from disclosing or otherwise making available the name and home address or unpublished home telephone number of the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of judges and prosecutors.

9. Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." N.J.S.A. 56:8-166.1(a)(1), (d).

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

10. Data brokers must cease disclosure of this protected information within ten business days of receiving a written nondisclosure request from a covered person.

11. To facilitate the enforcement of Daniel's Law, the New Jersey Legislature expressly provided that an enforcement action could be brought by a covered person or by the covered person's assignee. N.J.S.A. 56:8-166.1(b).

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

12. U.S. Supreme Court Chief Justice John G. Roberts Jr. supported the adoption of a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety . . . [a] judicial system cannot and should not live in fear."[2]

13. The federal bill, which had broad bipartisan support in both the House and Senate, protected certain sensitive personal information of judges and their immediate family from disclosure by data brokers. It also allowed federal judges to redact their personal information displayed on federal government websites.

14. In December 2022, the U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

15. Despite these efforts, violence against judges, law enforcement officers, and prosecutors remains a continuing and serious threat. These public servants put their lives on the

---

2 https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.

3 https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.

4 https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.

line every day, which is clearly exhibited by the numerous horrific stories of violence beyond the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers while they were inside with their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5] On the contrary, the officers were targeted specifically because they chose to go into public service and protect their community.

16. In yet another targeted attack, a disgruntled litigant hunted down and killed a Maryland Judge at his home, after an adverse child custody ruling.[6] This killing followed a similar tragedy in Wisconsin in 2022, where the perpetrator killed a retired Wisconsin Circuit Court Judge out of spite for his handling of a criminal case in 2005.[7]

17. More recently, on June 14, 2025, a masked gunman posing as a law enforcement officer killed a Minnesota state lawmaker, her husband and their dog in their own home. It was later revealed that this gunman had visited four different lawmakers' homes on the night of the murders. Following an arrest, the FBI recovered several notebooks from the individual alleged to be the gunman. One of the notebooks contained a page titled "Finding People" and a list of data broker websites that allow users to search for home addresses, phone numbers, and other personal

---

[5] https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-on-home-of-new-jersey-police-officers-in-targeted-attack-chief-says/.

[6] https://www.cnn.com/2023/10/20/us/maryland-judge-killing-investigation-andrew-wilkinson/.

[7] https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/.

information.[8] Another notebook contained the names and personal information of 45 state and federal public officials residing in Minnesota.[9]

18. These violent incidents demonstrate the risk to public servants and their families resulting from the open sale and dissemination of their most personal information, including their home addresses and/or unpublished home telephone numbers. These incidents also demonstrate the risk to the broader community should public officials be denied their statutory privacy rights. The risk that one might be violently targeted at their home may disincentivize individuals from pursuing a career in public service. This undermines the public interest—as the State and federal governments have recognized in passing Daniel's Law and its federal counterpart.

## THE PARTIES

### The Individual Plaintiffs

19. Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source

---

[8] Affidavit of FBI Special Agent Terry Getsch, United States v. Boelter, No. 25-00376 (D. Minn. filed June 15, 2025) at 11. Each of the 14 data brokers mentioned in the alleged gunman's notebook had been sued by Atlas in February 2024 for violations of Daniel's Law. Despite now having been in Court for almost 2 years and being aware of their involvement in the murders in Minnesota, several of these data brokers remain noncompliant with Daniel's Law as of this filing.

[9] Id.

of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

20. The resulting video footage was selectively edited and posted to YouTube and TikTok. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

21. One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

22. Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police.

Responding officers arrested two men—who were armed—for unlawful possession of a firearm. Video surveillance captured by nearby houses showed the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were home at the time.

23. Plaintiff Detective PATRICK COLLIGAN ("Detective Colligan") is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. From June 2014 to April 2024, Detective Colligan served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

**Plaintiff Atlas and its Assignors**

24. Plaintiff ATLAS DATA PRIVACY CORPORATION ("Atlas") is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

25. As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 6,626 individuals who are all "Covered Persons" under Daniel's Law (together, the "Covered Persons" and each a "Covered Person"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

26. Each Covered Person is an (a) active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator in the Division of Child Protection and

Permanency, or prosecutor, as those terms are defined in N.J.S.A. 47:1A-1.1; or (b) immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, or prosecutor. Thus, each individual meets the definition of "covered person" set forth in both N.J.S.A. 56:8-166.1 and N.J.S.A. 2C:20-31.1.

27. Each Covered Person resides, works, previously resided or worked in New Jersey, or is a family member residing at the same address as such as a person, and has a claim or claims against Defendants for failing to comply with Daniel's Law.

28. As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or redisclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29. Defendants have not complied with the law by negligently, willfully, or recklessly continuing to disclose or redisclose on the Internet or the otherwise making available of protected information in violation of Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs).

30. In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas, in writing, as permitted under the statute. Such assignments expressly and "irrevocably assign to Atlas or a designated affiliate of Atlas (the 'Assignee') the exclusive right to civil enforcement of all claims" under Daniel's Law.

31. Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other Covered Persons. Atlas works with and

provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, has been to increase the safety and well-being of their members and their members' families by helping those members understand and assert the rights provided to them by the law.

32. Upon signing up for Atlas, a Covered Person is asked a series of questions to collect required personal information and qualify his or her eligibility under Daniel's Law. Once eligibility is confirmed, the Covered Person is shown a page explaining how the Atlas platform works:



33. AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each Covered Person receives his or her own AtlasMail account, with a unique inbox address (*e.g.*, john.doe23@atlasmail.com) for personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:




34. Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the Covered Person is then presented with a page on which he or she can review his or her home addresses and unpublished home telephone numbers, a nondisclosure request template, and a recommended list of data brokers to send notices to. On this page the Covered Person can choose whether or not to send nondisclosure requests. If the Covered Person chooses not to send a nondisclosure request to the recommended list, they can select individual

recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a nondisclosure request.




35. Any reply or response back from a data broker to the Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully-featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:



AtlasMail

Compose

Search in Mail

ALL MAIL | INBOX | SENT | ASSIGNMENT CONFIRMATIONS

| | | |
|---|---|---|
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:40 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |

< 1 2 3 4 5 ... 16 >

**Redaction/Nondisclosure Request Confirmation**

**To** john.doe23@atlasmail.com
**From** privacy@exampledatabroker.com
**Date** Fri, Jan 26, 2024 8:14 PM

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply Forward

36. With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.

37. Because this lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight, Atlas has not included the Covered Persons' personal information in this public filing. However, Atlas will work with the Court and Defendants to implement an appropriate protective order and then provide Defendants with the written

assignments and relevant information for each of the Covered Persons. Our courts have already approved this privacy-protecting approach.[10]

38. In order to facilitate the provision of the Covered Persons' relevant information to Defendants pursuant to an appropriate protective order, Plaintiffs will provide Defendants with a proposed Discovery Confidentiality Order/Protective Order following service of this Complaint and Defendants' entry of an appearance.

**Defendants**

39. Defendant DELETEME USA, LLC ("DeleteMe USA") is a Delaware corporation that has a registered agent, LEGALINC CORPORATE SERVICES INC., at 131 Continental Drive Suite 305, Newark, Delaware 19713 and transacts business within the State of New Jersey. DeleteMe USA discloses or rediscloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

40. Defendant DELETEME EUROPE LTD ("DeleteMe EU") is a private limited company in Cyprus that has a registered office address at Stasikratous 16, Nicosia 1065, Cyprus and transacts business within the State of New Jersey. DeleteMe EU discloses or rediscloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

41. Defendant CRITON TORNARITIS is the founder, direct and/or indirect owner and Chief Executive Officer of DeleteMe USA and DeleteMe EU (collectively, "DeleteMe").

---

[10] For example, the Court recently held in another Daniel's Law action that allegations similar to those asserted here pleaded "sufficient facts to show that the assignors are covered persons under Daniel's Law," and "in fact have standing," noting the anticipated production of Covered Persons' information pursuant to an appropriate protective order. Atlas Data Privacy Corp., v. Attom Data Solutions, LLC, et al., Docket No.: MER-L-273-24 (Law Div., June 20, 2024) (denying motion to dismiss).

42. Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by Defendants to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

43. Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. These websites include deleteme.com and cyberdeleteme.com and may include additional domains or subdomains (collectively, the "Defendants' Website")

44. In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons). The following is a redacted example of the detailed information provided by Defendants,[11] in violation of Daniel's Law:

[11] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.




**Defendants' Deliberate Attempt To Hide Behind the Legitimate Business 'DeleteMe'**

45. Neither DeleteMe nor Tornaritis nor any other Defendant is affiliated in any way with Abine, Inc., the company known colloquially as 'DeleteMe' in the United States with a website located at joindeleteme.com. Abine Inc. is a legitimate privacy services company that is focused on assisting individuals, including judges, prosecutors, law enforcement and the public, in suppressing their personal information from data broker sites through subscription services offered through its website, joindeleteme.com.

46. Upon information and belief, Defendants have attempted to exploit the positive public reputation and good will of Abine, Inc. and the services it offers via joindeleteme.com through customer confusion and deception, where Defendants make it appear as though they are the company offering the services offered by Abine Inc., while in reality Defendants function as a

data broker that purposefully disregards individual privacy rights and laws requiring the suppression or redaction of personal information.

**Defendant Tornaritis**

47. In addition to owning the DeleteMe entities, upon information and belief, Tornaritis is personally involved in DeleteMe's business and operations (including DeleteMe's email accounts, the Defendants' Websites, and marketing efforts) and intermingles his personal work with business work to an extent that there is little separation between the two.

48. As detailed below, Tornaritis was and is personally aware of the nondisclosure requests transmitted to DeleteMe by the Covered Persons identified herein. And Tornaritis personally willfully or reckless disclosed or redisclosed on the Internet or otherwise made available the protected information of the Covered Persons beyond the time period required for suppression by Daniel's Law by not only negligently or purposefully failing to act, but also in controlling and facilitating the operation of Defendants' Website as a site that purposefully violates a myriad of privacy laws including Daniel's Law.

49. Tornaritis was, at all times relevant to this matter, aware of the potential exposure to harassment, intimidation or risk to life or property that public servants such as the Covered Persons could face when their personal information, including home address or phone number, is available online through websites such as Defendants' Websites

50. In addition, Tornaritis owns, in his personal capacity, a US service mark for "DELETEME" (US Serial Number 87921449; US Registration Number 5647581) and a European Union mark for "DELETEME" (Filing Number 017647124) (together, the "DeleteMe Marks").

51. Despite this personal ownership, Tornaritis has used the same address as DeleteMe EU (Stasikratous 16, Nicosia 1065, Cyprus) as an address for service of official documents and records related to the DeleteMe Marks.

52. As part of his operational control over DeleteMe and Defendants' Websites, Tornaritis provided DeleteMe with use of the DeleteMe Marks to facilitate and further Defendants' efforts to misrepresent their data brokering activities and disregard of privacy laws, including Daniel's Law, by falsely making it appear as though Defendants' Websites offer privacy protection services to the public.

53. Indeed, Tornaritis has and continues to use the DeleteMe Marks to facilitate, promote, and lend credibility to Defendants duplicitous data brokering site. By leveraging these marks on Defendants' Websites for DeleteMe, Tornaritis has, upon information and belief, attempted to make Defendants appear legitimate, while personally and directly supporting and furthering the unlawful disclosure of home addresses and unpublished home telephone numbers of the Individual Plaintiffs and Covered Persons. Tornaritis's personal control over the DeleteMe Marks was not merely passive or incidental but was instrumental in the execution and perpetuation of unlawful disclosures.

54. In addition, Tornaritis has claimed in filings with the United States Patent and Trademark Office that the DeleteMe Marks are used in connection with providing "financial advice", "internet service" and "legal services" focused on assisting consumers remove their personal information from internet sites, when they do not. In fact, in such filings Tornaritis did not disclose that the DeleteMe Marks are actually used to provide open source intelligence and other data brokering services in violation of a number of privacy laws, including Daniel's Law.

55. Moreover, Tornaritis personally advertises Defendants' data brokering capabilities in providing access to individuals' personal information such as phone numbers.

56. For example, in March 2026 in response to a post titled "How I Investigate a Phone Number in Minutes" on the X social media platform (formerly known as Twitter), Tornaritis directed viewers to the Defendants' Website noting that users of the site have access to phone numbers and other aggregated data about those they are seeking information about. A true and correct screenshot of this post, last accessed on April 1, 2026, located at https://x.com/kritonis/status/2037035819081388169, is included on the left side of the following page.

57. In another social media post, Tornaritis responded to an Open Source Intelligence Newsletter identifying Internet tools used to find information on individuals by boasting that the Defendant Websites are the only ones that aggregate data from leaks to social media and more. A true and correct screenshot of this post, last accessed on April 1, 2026, located at https://x.com/kritonis/status/2037036207335457223, is included on the right side of the following page.

**The OSINT Newsletter** @osintnewsletter

We've added 6 new tools to the OSINT Tools Library 🔍

@ipinfo - IP lookup (location, ISP, ownership)
@whoisxmlapi - domain ownership + config data
IntelligenceX - breached data & historical records search
@fofabot - discover exposed systems & services
Phishtank - verified phishing database
@wikimapia - user-driven global mapping

Explore them 👇




**The OSINT Newsletter** @osintnewsletter · Mar 18

🚨 Launching: The OSINT Tools Library

A curated, investigator-first directory of tools used in real cases.

→ Tools.OSINTNewsletter.com

We're building the largest and best maintained OSINT tools resource and need your help.

Reply and tag a tool we should add 👇




3 · 21 · 141 · Mar 25, 2026 · **8.2K** Views

**Criton Tornaritis** @kritonis · Mar 26
I suggest looking at cyberdeleteme.com the only aggregate data in one report with ai analysis from the simple leak up to social media and more
0 · 0 · 1

**CyberSudo** @Cyber_Sudo

How I Investigate a Phone Number in Minutes 📱🔎

Most people jump straight to paid tools,
but the smartest OSINT approach actually starts with something simple: Google search.

When I'm investigating a phone number, the first thing I do is generate **all possible number formats** so search engines can surface every trace tied to it.

Of course, it won't always give results,

but sometimes it reveals *more than you ever expected* ⚡

One of my favorite tools for this is a phone variant generator that creates multiple versions of the same number instantly.

Real case:
I once analyzed a suspicious contact number
After generating variants and searching them, I uncovered forum posts, a marketplace listing, and a linked account that revealed the identity behind it 🧠

My quick method:
🔎 Search the number on Google first
📁 Try all format variations
💾 Save each version different formats reveal different results

Best tool for generating variants → no-nonsense-intel.com/phone-variant-...

In the next post, I'll show you the next steps to investigate a phone number and what to do after the initial search 📱

———

P.S. ♻️ Repost if you found this helpful.

If you liked this post and would like to learn more methods and techniques to discover information about people, check out my OSINT Mastery course cybersudo.org/osint-mastery




2 · 31 · 216 · Mar 24, 2026 · **10.5K** Views

**Criton Tornaritis** @kritonis · Mar 26
Try cyberdeleteme.com you get aggregate data connected with the number and more
0 · 0 · 0

58. In addition, it appears that, through publicly sourced material, Tornaritis is responsible for certain social media and marketing efforts of DeleteMe and he does so from his personal Android device. This belief is grounded in the following publicly available information:

a. Tornaritis has an account on the X social media platform (formerly known as Twitter) with the handle @kritonis, which he had 'verified' since May 2023, and which at times has noted verified access via the Cyprus Android mobile application.

b. Deleteme also has an account on the X social media platform (formerly known as Twitter) since May 2023 with the handle @deletemeco, which was 'verified' since June 2024, and which at times has noted verified access via the Cyprus Android mobile application.

c. While this would normally be unremarkable, Tornaritis has often almost immediately reposted tweets from Delete Me, which forms Plaintiffs' belief that he operates these social media accounts from a single device.

59. Tornaritis is well aware of the data broker activities of the Defendant Websites that he owns and/or controls, and which he markets through his personal social media page and through other means.

60. Tornaritis is also equally and personally responsible for Defendants' refusals to comply with Daniel's Law by continuing to disclose or otherwise make available Covered Persons' Protected Information after receipt of the nondisclosure requests.

61. Upon information and belief, Tornaritis received written nondisclosure requests from Covered Persons using AtlasMail to email accounts of Defendants that he has access and control over.

62. Rather than use his ownership and authority to ensure Defendants' compliance with Daniel's Law, Tornaritis took no action to comply with the requests, and/or purposefully ignored same.

63. In fact, instead of complying with those nondisclosure requests, Tornaritis sent an inquiry from his personal email account to Atlas seeking information about how he can obtain access to Atlas's privacy services.

64. Despite being an attorney in the Republic of Cyprus, Tornaritis never identified himself to Atlas, nor did he identify his ownership or control of DeleteMe.

65. Instead, Tornaritis transmitted this purposefully deceptive communication in an attempt to obtain access to the Atlas platform to fraudulently obtain more information about the nondisclosure requests he received from Covered Persons through the email accounts he controls or has access to with Defendants.

66. This attempt by Defendants (including Tornaritis) to infiltrate the business operations of Atlas was done purposefully.

67. And despite not being provided with such access and having received written nondisclosure requests from the Covered Persons, and being acutely aware of the risk of harm to life or property of the Covered Persons, Tornaritis took no actions to cease disclosure of their Protected Information.

68. Similarly, DeleteMe failed to suppress Covered Persons' Protected Information.

69. Defendants' failures in this regard were purposeful or reckless as to the rights of the Individual Plaintiffs and Covered Persons as well as the risks of harm or probability of an increase of risk of such harms to them.

## JURISDICTION AND VENUE

70. This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

71. Defendants have purposefully directed their business activities towards New Jersey. Defendants have purposefully availed themselves of the privilege of conducting activities within New Jersey.

72. Daniel's Law was enacted to safeguard New Jersey residents who serve as public servants and their families (including Covered Persons) from the disclosure of their Protected Information by entities, like Defendants.

73. Defendants knowingly and intentionally disclosed or redisclosed on the Internet, or otherwise made available, Protected Information of New Jersey residents, such as the home addresses and unpublished home telephone numbers of Covered Persons, through affirmative acts and decisions regarding data handling, storage, and dissemination.

74. The disclosure of New Jersey residents' home addresses and unpublished home telephone numbers resulted from Defendants' intentional conduct, including decisions to transmit, publish, or otherwise make that information available, rather than from an inadvertent or purely accidental occurrence.

75. Defendants expressly aimed their conduct at New Jersey by disclosing the home addresses and unpublished home telephone numbers of New Jersey residents, knowing that the affected Covered Persons were located in New Jersey.

76. Defendants knew that the disclosed Protected Information specifically identified New Jersey residents, including their New Jersey home addresses, and that the disclosure would directly impact individuals within New Jersey.

77. Defendants' conduct was directed at New Jersey because the disclosed Protected Information enabled direct contact with, and intrusion into the privacy of, New Jersey residents at their homes and personal telephone numbers. The disclosure of Protected Information was targeted specifically to New Jersey, including New Jersey residential locations, and was not a generalized or untargeted release of anonymized data.

78. Defendants knew, or reasonably should have known, that the primary and foreseeable effects of disclosing New Jersey residents' home addresses and unpublished home telephone numbers would be felt in New Jersey, where those individuals reside.

79. Defendants understood that their disclosure would expose New Jersey residents to unwanted contact, harassment, safety risks, and invasion of privacy within New Jersey.

80. Defendants knew that any resulting emotional distress, privacy injury, and risk of physical or economic harm would be concentrated in New Jersey, where the affected individuals live.

81. Upon information and belief, Defendants also purposefully collected sensitive personal information and other data concerning residents of New Jersey from New Jersey public records; from New Jersey residents themselves; and from devices and browsers located in New Jersey that interacted with Defendants' websites, online services, and mobile applications, and businesses that operate within the State of New Jersey.

82. Accordingly, Plaintiffs' claims arise directly out of and relate to Defendants' forum-directed conduct.

83. Indeed, upon information and belief, in 2024, 2025, and 2026, Defendants have generated material revenue from sales to customers located in New Jersey and/or from the sale of personal information and other data of New Jersey residents to customers both inside and outside of New Jersey.

84. Daniel's Law was passed to protect public servants and their families from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

85. Accordingly, venue is proper pursuant to R. 4:3-2, in that Essex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

**FACTS COMMON TO ALL COUNTS**

86. As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 codified as N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1, et seq.).

87. Daniel's Law prohibits data brokers from disclosing or redisclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

88. Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or redisclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

89. This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver,

transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

90. Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

91. Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

92. As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[12]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
> > (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
> >
> > (2) punitive damages upon proof of willful or reckless disregard of the law;
> >
> > (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
> >
> > (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d. For the purposes of this section:
>
> > . . . "Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include

[12] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed.

93. Starting on or about July 24, 2025, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

94. For example, a true and correct copy of the email directly from Plaintiff Officer Maloney (with personal information redacted) appears below:

**From** [redacted]@atlasmail.com
**To** support@deleteme.com
**Date** Wed, Jul 30, 2025 6:21 AM
**Subject** Data Subject Request - Redaction/nondisclosure Request

DeleteMe
2025-07-30

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Full Name: Justyna Maloney

Other Names or Variants (by which I am known or may be identified):
[redacted]

Home Phone Number:
[redacted]

Sincerely,
Justyna Maloney

95. Defendants negligently, willfully, or recklessly continue to disclose or redisclose on the Internet or otherwise make available the protected information of the Covered Persons beyond the time period required by Daniel's Law. Thus, Defendants' disclosure or redisclosure of protected information of the Covered Persons following the statutory period of ten (10) business days violates Daniel's Law.

96. Defendants, including DeleteMe, Tornaritis and those currently pled as Richard Roes 1-10 or ABC Company 1-10, are equally responsible for the negligent, purposeful and reckless acts and omissions alleged herein, particularly because they have not maintained separation and Tornaritis or others have dominance and control over DeleteMe, or they operate as alter egos in their operations and functions.

97. Indeed, even as of times recent to the date of this filing, Defendants negligently, purposefully or recklessly still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

98. All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs, who assert their claims directly in this action) have assigned in writing their claims against Defendants to Atlas. All of the assignments were completed in writing before the date of the filing of the initial Complaint.

99. Following the entry of a protective order filed in this Court and identification of any individuals with whom confidential information will be shared, Plaintiffs will provide under a confidential designation a full and complete list of the following:

a. Names of each of the 6,626 assignors referenced in paragraph 25; and

b. The factual basis for the person to be considered a "Covered Person" as defined in N.J.S.A. 56:8-166.1(d), that is, a judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, as those terms are identified in N.J.S.A. 47:1A-1.1 or prosecutor and any immediate family member residing in the household of individuals in these categories.

100. The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

**COUNT ONE**

**(Violation of Daniel's Law, N.J.S.A. 56:8-166.1)**

101. The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

102. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or redisclosure on the Internet or wherever Defendants otherwise made it available.

103. Defendants had an obligation under Daniel's Law to comply with the nondisclosure request within ten business days.

104. Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

105. Defendants negligently, willfully, or recklessly continue to disclose or redisclose on the Internet or otherwise make available information in violation of Daniel's Law, and in doing so each constitutes a separate violation under the law.

106. Defendants' continued disclosure in violation of Daniel's Law, despite having received notice as required under the statute, constitutes negligent, willful, or reckless disregard of the law.

107. As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered against Defendants and/or the Website as follows:

A. Ordering that Defendants and/or the Website immediately comply with Daniel's Law, and cease the disclosure of the Individual Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or redisclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants and/or the Website comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants and/or the Website to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants and/or the Website prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants and/or the Website as the Court deems equitable and just.

**COUNT TWO**

**(Violation of Daniel's Law, N.J.S.A. 2C:20-31.1)**

108. The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

109. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or redisclosure on the Internet or wherever Defendants otherwise made it available.

110. Tornaritis received those requests and was aware of them as demonstrated by his attempt to obtain access to Atlas's privacy platform.

111. Defendants had an obligation under N.J.S.A. 2C:20-31.1(b) to comply with the nondisclosure request within ten business days.

112. Defendants knew that not complying with the nondisclosure requests exposed the Covered Persons to harassment or risk of harm to life or property.

113. In fact, Defendants publicly (and falsely claim) that their services act as a "digital shield" and allows users to prevent fraud and theft or other harms to property proactively.

114. These inaccurate claims have also been forwarded by Tornaritis in his submissions to the Government related to the DeleteMe Marks.

115. Simply stated, Defendants have a variety of public pronouncements and statements on the Websites, the DeleteMe Marks applications, on social media and through other efforts that demonstrate that they are individually and collectively aware of the significant risks to life or property that result from accessibility to the home address or home phone number of individuals and that removal of such information from public or commercially available sources (like the Defendant Websites) mitigates such risk and reduces the probability of such harm occurring.

116. Tornaritis, DeleteMe USA, DeleteMe EU, Richard Roes 1-10 and ABC Companies 1-10 function together as an enterprise as defined under Chapter 20 of Title 2C of the New Jersey Statutes through, among other things, the use of the Websites (and domain names) and DeleteMe Marks.

117. Defendants' common purpose is to profit through the illicit and licit trade of personal information, while skirting their obligations under a myriad of privacy laws, including but not limited to Daniel's Law.

118. More specifically, Defendants are an identifiable association or entity, that work together for the common purpose of making individuals believe they are a privacy company when they in-fact are a data broker as set forth herein.

119. For example, Defendants falsely claim that they do not sell or misuse personal information, despite Tornaritis's direct encouragement online for people to utilize DeleteMe for such services.

120. Defendants' failure to suppress the Individual Plaintiffs' and Covered Persons' protected information is not only negligent but reckless, purposeful or willful.

121. Indeed, even as of the time recently preceding the date of this filing, Defendants still refuse to fully comply with N.J.S.A. 2C:20-31.1 and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

122. The unlawful activity of Defendants' enterprise occurs through a variety of interests including the Websites and DeleteMe Marks.

123. As a result of Defendants' failures to comply with the law, Plaintiffs have and continue to have risk of harm to person or property, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered pursuant to N.J.S.A. 2C:20-21(a) against Defendants and/or the Website as follows:

A. Entering a permanent injunction prohibiting DeleteMe, Tornaritis and any other Defendants' violations of N.J.S.A. 2C:20-31.1, and any actions in furtherance thereof, including, posting, reposting, publishing or republishing on the Internet, or otherwise making available the Protected Information of the Individual Plaintiffs and the Covered Persons wherever disclosed or otherwise made available;

B. Ordering a divestment by Defendants from interests, including assets or resources that perpetuate their enterprise in violation of N.J.S.A. 2C:20-31.1, including but not limited to the Website domains and DeleteMe Marks.

C. Ordering the dissolution or reorganization of Defendants' enterprise.

D. Ordering the forfeiture of Defendants' corporate charters or revocation of any certificate of authority in the public interest.

E. Imposing temporary orders, including restraints and prohibitions, in the interest of justice.

F. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

G. Awarding such other and further relief against Defendants, the DeleteMe Marks and/or the Websites as the Court deems equitable and just.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn, Esq.
Jessica A. Merejo, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

**DESIGNATION OF TRIAL COUNSEL**

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiff in this matter.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

**CERTIFICATION PURSUANT TO RULE 4:5-1**

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

**CERTIFICATION PURSUANT TO RULE 1:38-7(b)**

Pursuant to R. 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

# Civil Case Information Statement

## Case Details: ESSEX | Civil Part Docket# L-005000-26

**Case Caption:** ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L
**Case Initiation Date:** 06/23/2026
**Attorney Name:** RAJIV D PARIKH
**Firm Name:** PEM LAW LLP
**Address:** 1 BOLAND DR SUITE 101
WEST ORANGE NJ 07052
**Phone:** 9735775500
**Name of Party:** PLAINTIFF : ATLAS DATA PRIVACY CORPORATION
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** COMPLEX COMMERCIAL
**Document Type:** Complaint
**Jury Demand:** NONE
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: ATLAS DATA PRIVACY CORPORATION? NO**

**Are sexual abuse claims alleged by: Scott Maloney? NO**

**Are sexual abuse claims alleged by: JUSTYNA MALONEY? NO**

**Are sexual abuse claims alleged by: PATRICK COLLIGAN? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
Daniel's Law litigation

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>06/23/2026</u>
Dated

<u>/s/ RAJIV D PARIKH</u>
Signed

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK NJ 07102

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (973) 776-9300
COURT HOURS 8:30 AM - 4:30 PM

DATE: JUNE 23, 2026
RE: ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L
DOCKET: ESX L -005000 26

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS: HON STEPHEN L. PETRILLO

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 002
AT: (973) 776-9300 EXT 56512.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.

ATTENTION:

ATT: RAJIV D. PARIKH
PEM LAW LLP
1 BOLAND DR
SUITE 101
WEST ORANGE NJ 07052

ECOURTS

PEM LAW LLP

**Thomas R. Kraft, Esq.**
**Associate**
tkraft@pemlawfirm.com
*Office:* +1 973.577.5500
*Direct:* +1 973.567.7455

July 6, 2026

**VIA INTERNATIONAL MAIL, CERTIFIED MAIL, & REGULAR MAIL**
Criton Tornaritis
Stasikratous, 16, Floor 7,
Flat/Office 701
1065 Nicosia, Cyprus

**Re:** ***Atlas Data Privacy Corporation, et al. v. DeleteME USA, LLC, et al.,***
**Docket No.: ESX-L-5000-26**
**Document Preservation Letter**

Dear Sir/Madam:

We represent Atlas Data Privacy Corporation and the Individual Plaintiffs ("Plaintiffs") identified in the enclosed complaint ("Complaint") and summons asserting claims under Daniel's Law, enacted in November 2020 (P.L. 2020, c. 125), codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq. ("Daniel's Law") against the defendants (collectively, the "Defendants") in the above-captioned matter.

The purpose of this letter (the "Notice") is to remind Defendants of their present and ongoing obligations to preserve and retain all materials potentially relevant to any of the allegations made by Plaintiffs in the Complaint (the "Dispute").

This includes without limitation hard copies and electronically stored information ("ESI"), such as emails, text messages, messages on instant messaging platforms, and materials stored in or transferred via cloud storage.

This document preservation notice should be read broadly consistent with Defendants' obligations under R.4:18-1 and all other applicable rules governing preservation and discovery.

Pursuant to Defendants' preservation obligations, Defendants must immediately take steps to preserve all hard copy documents and ESI relevant to the Dispute, including without limitation:

(a) suspending Defendants' data destruction and backup tape recycling policies;

(b) suspending any overwriting or update processes related to any ESI unless a copy of each version is maintained;

(c) preserving relevant software, including legacy software (unless an exact copy or mirror image is made and stored) and hardware that is no longer in service but was in service during any part of the relevant time period (back to the

PEM LAW LLP

enactment of Daniel's Law), and CSV source or other version control repositories;

(a) retaining and preserving necessary information to access, review and reconstruct (if necessary) relevant electronic data, including identification codes and passwords, decryption applications, decompression software, reconstruction software, network access codes, manuals, and user instructions;

(b) retaining and preserving all ESI related to the Dispute on personal devices (including for example and without limitation computers, phones, and tablets used by Defendants' employees, contractors, and agents);

(c) retaining and preserving all Slack, WhatsApp, Viber, Signal, Telegram, and other instant messages and chats (including without limitation changing default settings on instant message programs to ensure those records are preserved);

(a) any other reasonable steps necessary to prevent the destruction, loss, override or modification of relevant data either intentionally or inadvertently, such as through implementation of Defendants' document retention policies

This list is not exhaustive, and Defendants have independent obligations to identify and preserve all relevant information. All ESI must be preserved intact and without modification.

The following is a non-exhaustive list of relevant information that should be preserved (with documents defined broadly to include without limitation all communications, including emails, text messages, and other communications):

- All documents concerning any of the allegations in the Complaint.
- All documents concerning Daniel's Law.
- All documents concerning Atlas.
- All documents concerning any of the Individual Plaintiffs.
- All documents concerning this litigation.
- All documents concerning any Written Nondisclosure Request(s) (as defined in N.J.S.A. § 56:8-166.2).
- All documents concerning Defendants' receipt of any Written Nondisclosure

PEM LAW LLP

Requests.

- All documents concerning Defendants' response to any Written Nondisclosure Requests.

- All documents concerning Defendants' analysis of any Written Nondisclosure Requests.

- All documents concerning the disclosure of any home address and/or unpublished home telephone numbers, including without limitation on the website(s) identified in the Complaint after the receipt of any Written Nondisclosure Requests.

- All documents concerning Defendants' compliance process in connection with any Written Nondisclosure Requests, including Defendants' failure to comply.

This preservation should include all data and records relevant to assessing Defendants' compliance with Daniel's Law following the receipt of any Written Nondisclosure Requests, including for example data and records demonstrating any Defendant (or other responsible entity or individual) disclosing or re-disclosing on the Internet (including without limitation with the identified website(s)) or otherwise making available the home address and/or unpublished home telephone numbers of any person who sent any Written Nondisclosure Request. Plaintiffs expect that Defendants will preserve data and records concerning each and every violation of Daniel's Law, both for purposes of calculating statutory damages and for purposes of evaluating injunctive relief.

This list is not exhaustive, and Defendants each must conduct an investigation and preserve all information potentially relevant to the Dispute, including all information from any individual who has documents potentially relevant to the Dispute.

Defendants must also take reasonable steps to preserve all hard copy documents and ESI relevant to the Dispute that are not in their possession but are in their custody or control. Documents and ESI in the possession of non-parties that is within Defendants' custody or control must also be preserved intact and without modification.

Preservation of ESI includes preservation not only of the electronic information itself (whether stored online, offline, in a cloud-based server or in other electronic storage, or on any computers, handheld devices, tablets, cell phones or other devices, whether or not in Defendants' possession), but also of relevant related data, including without limitation:

(a) active, archived and deleted copies of electronic information, such as e-mails, voicemails, text messages, instant messages (for example, Slack

PEM LAW LLP

messages), calendars, diaries, word processing files, spreadsheets, PDFs, JPEGs, PowerPoint presentations, Google Drive files, Dropbox files, videoconferencing (e.g., Zoom) recordings and files, temporary internet files, cookies, and .ZIP files, among others;

(b) databases, including Dropbox, Box, Planbox, Visual Studio Team Services, Amazon RDS, Google Cloud, Microsoft Access or Azure, and SQL systems;

(c) metadata about the electronically stored information, including the date that it was created and last modified, and the individual(s) that created and modified it.

This list is not exhaustive, and Defendants must preserve all information potentially relevant to the Dispute. Defendants' failure to preserve relevant ESI may constitute spoliation of evidence and subject Defendants to monetary and other sanctions. Plaintiffs reserve all rights in connection with any spoliation by Defendants. We trust that Defendants will preserve all relevant hard copy documents and ESI for the duration of the Dispute.

Please also maintain records of Defendants' efforts to comply with their preservation obligations. If a dispute arises out of Defendants' failure to preserve documents, Plaintiffs will rely on this letter as evidence of their request and reminder of Defendants' preservation obligations.

Thank you for your cooperation. If you have questions, please contact me.

Very Truly Yours,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: *<u>/s/Thomas R. Kraft</u>*
THOMAS R. KRAFT

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br>v.<br><br>DELETEME USA LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**PLAINTIFFS' FIRST REQUEST TO DEFENDANT FOR PRODUCTION OF DOCUMENTS** |

**PLEASE TAKE NOTICE** that the undersigned attorneys for Plaintiffs hereby demand that each Defendant produce and/or permit Plaintiffs or someone acting on Plaintiffs' behalf to inspect and copy the following designated documents at the offices of PEM Law LLP, within the manner and within the time prescribed by the Rules of Court of the State of New Jersey.

Very Truly Yours,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: */s/Thomas R. Kraft*
THOMAS R. KRAFT

Dated: July 6, 2026

# INSTRUCTIONS

A. If you assert a privilege or work-product immunity as a ground for non-production of any document requested, please produce all documents over which you are not asserting any such privilege or immunity, and in addition, set forth as to each document over which a privilege is claimed:

(1) the date of the document;

(2) the type of document (e.g., letter, memorandum, chart, etc.);

(3) the names and addresses of all authors and recipients of the document and the employer and business or legal title of each author or recipient;

(4) a detailed explanation of why the privilege or immunity is deemed applicable, including sufficient facts for the Court to make a full determination of whether your assertion is valid; and

(5) the present location of the document and the name and address of its custodian.

B. This Request for Production shall be deemed continuing so as to require supplemental responses if you obtain or discover additional documents between the time your responses are served and the time of trial.

C. In producing documents in compliance with this Request, produce all documents which are available to you, including documents in the custody, possession or control of your attorney or investigators for your attorney, and not merely such documents known to exist to your own personal knowledge. If you do not comply in full with the following Request for Production due to the non-existence of the documents(s) sought, so state in writing, specifying the reason for your inability to produce such documents(s).

D. In producing documents in compliance with this Request, collate and identify each

document by the numbered Request(s) for Production to which each document is produced. If any particular document produced is responsive to more than one numbered Request for Production, identify each numbered Request to which said document is responsive.

**DEFINITIONS**

A. "And" and "or" as used herein shall have the same meaning, that is, the disjunctive meaning of "or." The listing of terms separated by commas, semi-colons, the word "and" or the word "or" shall be deemed to require a response to each and every term listed.

B. "Atlas" means Atlas Data Privacy Corporation ("Atlas") who is a Plaintiff and assignee of individuals who are covered persons under Daniel's Law as further alleged in the Complaint.

C. "Daniel's Law" means the law enacted in November 2020 (P.L. 2020, c. 125), codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq. ("Daniel's Law") which prohibits online data brokers from selling, publishing, and distributing the home address and unpublished home telephone numbers ("Protected Information") of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.

D. "Defendant" refers to each and every defendant identified in the Complaint and shall also include any and all agents, officers, directors, attorneys, employees, contractors, predecessors in interest, parents, subsidiaries, affiliates, assigns, successors, and representatives of any/all of them, or other persons acting on its respective or collective behalf.

E. "Describe," "set forth" and "state" all mean to state the substance of the event, circumstances, facts, communications, representation, conversation, meeting, transaction,

occasion or other occurrence in question; the date, time, place and identity of all persons present thereat or participating therein; that which each such person said and did; the approximate duration of such occurrence; the method or means of communications employed; the identity of all documents relating thereto; and the identity of all persons having knowledge of such occurrence; as well as the date and means when and whereby such knowledge was first acquired, setting forth the underlying facts rather than ultimate conclusions.

F. "Document" or "documents" means the original and any identical or non-identical copy, regardless of origin or location, of any written, reported, filmed, magnetically stored, or graphic matter, or record of any type or description, whether produced, reproduced or producible on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media, including but not limited to emails, memoranda, notes, minutes, records, photographs, computer programs, correspondence, telegrams, diaries, bookkeeping entries, specifications, source code, object code, flow charts, financial statement, charts, studies, reports, graphs, statements, notebooks, handwritten notes, applications, feasibility studies, agreements, books, pamphlets, periodicals, appointment calendars, notes, records and recordings of oral conversations, work papers, and also including but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copy sent or received, or otherwise, and drafts, which are in the possession, custody or control of the present or former agents, officers, directors, representatives, employees, or attorneys of Defendant, or all persons acting on Defendant's behalf, including documents at any time in the possession, custody or control of such individuals or entities who are known by Defendant to exist. Include also any catalog, brochure or any other data compilations from which information can be obtained and translated if necessary, or any other written, recorded, stored, transcribed, punched, taped, filed or graphic matter however produced or reproduced, to which Defendant has or have had access.

G. "Identify," or "identification" mean, when used in reference to:

(1) a natural person, his or her:

(a) full name;

(b) present or last known home address (including street name and number, city or town, state, zip code, and telephone number);

(c) present or last known business address (including street name and number, city or town, state, zip code, and telephone number);

(d) present or last known occupation, position, business affiliation, and job description;

(e) occupation, position, business affiliation, and job description at the time relevant to the particular interrogatory being answered.

(2) a company, corporation, association, partnership or legal entity other than a natural person:

(a) its full name;

(b) a description of the type of organization or entity;

(c) the full address (including street name and number, city or town, state, zip code, and telephone number) of its principal place of business;

(d) the jurisdiction of incorporation or organization.

(3) a document:

(a) its description (for example, letter, memorandum, report);

(b) its title (e.g., letter, memorandum, telegram, chart, etc.)

(c) its date;

(d) the number of pages thereof;

(e) its subject;

(f) the identity of its author, signatory or signatories, and any person who participated in its preparation;

(g) the identity of its addressee or recipient;

(h) the identity of each person to whom copies were sent and each person by whom copies were received;

(i) its present location; and

(j) the identity of its present custodian.

(If any such document was, but is no longer, in the possession of or subject to the control of Defendant, state what disposition was made of it and when).

(4) a communication or statement:

(a) the date and time when it occurred;

(b) the place where it occurred;

(c) the complete substance of the communication;

(d) the identity of each person; (1) to whom such communication was made; (2) by whom such communication was made; and (3) who was present when such communication was made;

(e) if by telephone: (1) the identity of each person: (i) who made each telephone call; and (ii) who participated in each call; and (2) the place where each person participating in the telephone call was located;

(f) the identity of all documents memorializing, referring to or relating in any way to the subject of the communication.

H. “Individual Plaintiffs” means the Plaintiffs identified in the Complaint other than Atlas and shall include any and all agents, officers, directors, attorneys, employees, and other persons acting on its behalf.

I. “Plaintiffs” means the Plaintiffs identified in the Complaint and shall include any and all agents, officers, directors, attorneys, employees, and other persons acting on its behalf.

J. “Person” means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

K. “Written Nondisclosure Request(s)” means any request pursuant to Daniel’s Law (N.J.S.A. § 56:8-166.1, et seq.) to refrain from disclosing, re-disclosing, or otherwise making available Protected Information and/or remove protected information from the Internet or where otherwise made available.

L. “You” and “Your” refers to each Defendant responding to these requests, with the term Defendant broadly defined above.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. Any and all documents concerning any of the allegations in the Complaint.

2. Any and all documents concerning Daniel's Law.

3. Any and all documents concerning Atlas.

4. Any and all documents concerning any of the Individual Plaintiffs.

5. Any and all documents concerning this litigation.

6. Any and all documents concerning any Written Nondisclosure Requests.

7. Any and all documents concerning Defendant's receipt of any Written Nondisclosure Requests.

8. Any and all documents concerning Defendant's response to any Written Nondisclosure Requests.

9. Any and all documents concerning Defendant's analysis of any Written Nondisclosure Requests.

10. Any and all communications and documents regarding communications with any of the Individual Plaintiffs, Atlas, or any other Covered Person.

11. Any and all documents concerning the disclosure of any home address and/or unpublished home telephone numbers, including without limitation on the website(s) identified in the Complaint after the receipt of any Written Nondisclosure Requests.

12. Any and all documents concerning Defendant's compliance process in connection with any Written Nondisclosure Requests, including Defendant's failure to comply.

**CERTIFICATION**

I hereby certify on behalf of ______________ that I have reviewed the document production requests and that I have made or caused to be made a good faith search for documents responsive to the requests. I further certify that as of this date, to the best of my knowledge and information, the production is complete and accurate based on ( ) my personal knowledge and/or ( ) information provided by others. I acknowledge my continuing obligation to make good faith effort to identify additional documents that are responsive to the request and to promptly serve a supplemental written response and production of such documents, as appropriate, as I become aware of them.

______________________________

DATED: __________

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br>v.<br><br>DELETEME USA LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT** |

**PLEASE TAKE NOTICE** that the undersigned attorneys for Plaintiffs hereby request that Defendant answers the following Interrogatories within the manner and within the time prescribed by the Rules of this Court of the State of New Jersey.

Very Truly Yours,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: */s/Thomas R. Kraft*
THOMAS R. KRAFT

Dated: July 6, 2026

# INSTRUCTIONS

A. If any Interrogatory is not answered in full, state the precise reason for failing to complete the answer. If a legal objection is made with respect to any Interrogatory, you should set forth the specific reasons for such objection. If your response to all or part of any Interrogatory is incomplete or not known at the time your initial response is made, please (a) include an explicit statement to that effect in your response, designating that it is incomplete and providing the reasons or grounds for any omissions or refusals or inabilities to complete the response; (b) furnish the information that is known or available; and (c) respond to the Interrogatory by amended or supplemental response in writing under oath within 20 days of the date on which the supplemental information becomes known or available.

B. If you are withholding information requested by any Interrogatory or any portion of an Interrogatory upon a claim that it is privileged or subject to protection as trial preparation material, pursuant to R. 4:10-2(e), make the claim expressly in your written response, identifying the privilege or protection you are claiming, and provide sufficient information about the documents, communications, information, or other items not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable all parties to assess the applicability of the privilege or protection, including identifying the following information in a separate privilege log:

(1) the nature of the privilege or protection claimed;

(2) a statement of the basis for the claim of privilege or protection;

(3) whether, as to the information requested, (i) any document exists, and/or (ii) any oral communications took place;

(4) a description of the document, oral communication, or other item/information, including:

(a) For documents: (i) the type of document, *e.g.*, letter or memorandum or e-mail; (ii) the general subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation; (iii) the date of the document; (iv) the author of the document, the addressees of the document, and any other recipients, including each person who was sent or shown blind or carbon copies of the such, or has had access to or custody of such, and, where not apparent, the relationship of the author, addressees, and recipients to each other; and (v) the number of pages, attachments, and appendices;

(b) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication; and

(c) The present custodian of the document, oral communication, or other item/information.

C. In answering these interrogatories, furnish all information which is available to you, including non-privileged information in the possession of your attorneys, representatives, or investigators for your attorneys, and not merely such information known of your personal knowledge. If you cannot answer the following Interrogatories in full after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions. This means:

(1) When answering the following Interrogatories, provide any and all

information either in your possession, under your control, within your dominion, or available to you, regardless of whether this information is in your personal possession, or is possessed by your agents, servants, employees, independent contractors, representatives, or others with whom you have or had a relationship and are capable of deriving information, documents, or materials; and

(2) If you do not have personal knowledge of the information contained in any of your answered to the below Interrogatories, you should state that your answer is not verified by personal knowledge and identify the person(s) from whom the information was obtained or, if the source of the information is documentary, provide a full description of the documents, including the location thereof.

D. If any answers to these Interrogatories are made based on information that was not within your personal knowledge, provide the name and address of every person from whom you received such information.

E. Where an interrogatory calls for identification of any paper, you are to attach a copy of such paper to your answers to these Interrogatories in addition to providing a written response to the Interrogatory, pursuant to R. 4:17-4, and you are to provide an explicit reference to each Interrogatory to which each document(s) is responsive.

F. These Interrogatories are to be continuing until the date of trial and any information secured subsequent to the filing of your answers, which would have been included in the answers had it been known or available, is required to be supplied by filing further and supplemental answers.

G. Pursuant to R. 4:17-7, if you obtain information that renders your answers to these interrogatories incomplete or inaccurate, you must serve amended answers not later than twenty (20) days prior to the end of the discovery period.

H. The fact that another party produced information requested in any particular Interrogatory, or that the requested information or similar or identical information is available from another source, or that the requesting party already has knowledge of the matter on which it is seeking discovery, does not relieve Plaintiff of his obligation to produce his response to each Interrogatory herein.

**DEFINITIONS**

A. "And" and "or" as used herein shall have the same meaning, that is, the disjunctive meaning of "or." The listing of terms separated by commas, semi-colons, the word "and" or the word "or" shall be deemed to require a response to each and every term listed.

B. "Atlas" means Atlas Data Privacy Corporation ("Atlas") who is a Plaintiff and assignee of individuals who are covered persons under Daniel's Law as further alleged in the Complaint.

C. "Daniel's Law" means the law enacted in November 2020 (P.L. 2020, c. 125), codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq. ("Daniel's Law") which prohibits online data brokers from selling, publishing, and distributing the home address and unpublished home telephone number ("Protected Information") of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.

D. "Defendant" refers to any defendant identified in the Complaint and shall include any and all agents, officers, directors, attorneys, employees, contractors, predecessors in interest, parents, subsidiaries, affiliates, assigns, successors, and representatives of any/all of them, or other persons acting on its respective or collective behalf.

E. "Describe," "set forth" and "state" all mean to state the substance of the event, circumstances, facts, communications, representation, conversation, meeting, transaction,

occasion or other occurrence in question; the date, time, place and identity of all persons present thereat or participating therein; that which each such person said and did; the approximate duration of such occurrence; the method or means of communications employed; the identity of all documents relating thereto; and the identity of all persons having knowledge of such occurrence; as well as the date and means when and whereby such knowledge was first acquired, setting forth the underlying facts rather than ultimate conclusions.

F. "Document" or "documents" means the original and any identical or non-identical copy, regardless of origin or location, of any written, reported, filmed, magnetically stored, or graphic matter, or record of any type or description, whether produced, reproduced or producible on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media, including but not limited to emails, memoranda, notes, minutes, records, photographs, computer programs, correspondence, telegrams, diaries, bookkeeping entries, specifications, source code, object code, flow charts, financial statement, charts, studies, reports, graphs, statements, notebooks, handwritten notes, applications, feasibility studies, agreements, books, pamphlets, periodicals, appointment calendars, notes, records and recordings of oral conversations, work papers, and also including but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copy sent or received, or otherwise, and drafts, which are in the possession, custody or control of the present or former agents, officers, directors, representatives, employees, or attorneys of Defendant, or all persons acting on Defendant's behalf, including documents at any time in the possession, custody or control of such individuals or entities who are known by Defendant to exist. Include also any catalog, brochure or any other data compilations from which information can be obtained and translated if necessary, or any other written, recorded, stored, transcribed, punched, taped, filed or graphic matter however produced or reproduced, to which Defendant has or have had access.

G. "Identify," or "identification" mean, when used in reference to:

(1) a natural person, his or her:

(a) full name;

(b) present or last known home address (including street name and number, city or town, state, zip code, and telephone number);

(c) present or last known business address (including street name and number, city or town, state, zip code, and telephone number);

(d) present or last known occupation, position, business affiliation, and job description;

(e) occupation, position, business affiliation, and job description at the time relevant to the particular interrogatory being answered.

(2) a company, corporation, association, partnership or legal entity other than a natural person:

(a) its full name;

(b) a description of the type of organization or entity;

(c) the full address (including street name and number, city or town, state, zip code, and telephone number) of its principal place of business;

(d) the jurisdiction of incorporation or organization.

(3) a document:

(a) its description (for example, letter, memorandum, report);

(b) its title (e.g., letter, memorandum, telegram, chart, etc.)

(c) its date;

(d) the number of pages thereof;

(e) its subject;

(f) the identity of its author, signatory or signatories, and any person who participated in its preparation;

(g) the identity of its addressee or recipient;

(h) the identity of each person to whom copies were sent and each person by whom copies were received;

(i) its present location; and

(j) the identity of its present custodian.

(If any such document was, but is no longer, in the possession of or subject to the control of Defendant, state what disposition was made of it and when).

(4) a communication or statement:

(a) the date and time when it occurred;

(b) the place where it occurred;

(c) the complete substance of the communication;

(d) the identity of each person; (1) to whom such communication was made; (2) by whom such communication was made; and (3) who was present when such communication was made;

(e) if by telephone: (1) the identity of each person: (i) who made each telephone call; and (ii) who participated in each call; and (2) the place where each person participating in the telephone call was located;

(f) the identity of all documents memorializing, referring to or relating in any way to the subject of the communication.

H. "Individual Plaintiffs" means the Plaintiffs identified in the Complaint other than Atlas and shall include any and all agents, officers, directors, attorneys, employees, and other persons acting on its behalf.

I. "Plaintiff" means the Plaintiffs identified in the Complaint and shall include any and all agents, officers, directors, attorneys, employees, and other persons acting on its behalf.

J. "Persons" means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

K. "Written Nondisclosure Requests" means any request pursuant to Daniel's Law (N.J.S.A. § 56:8-166.1, et seq.) to refrain from disclosing, re-disclosing, or otherwise making available protected information and/or remove protected information from the Internet or where otherwise made available.

L. "You" and "Your" refers to each Defendant responding to these interrogatories, with the term Defendant broadly defined above.

**INTERROGATORIES**

1. Please provide detailed information regarding all persons (including all companies and individuals, with contact information) that since receiving any Written Nondisclosure Requests, have had any ownership, controlling interest, or agency over each of the websites listed in Plaintiffs' Complaint.

2. Please identify every source of home addresses and/or unpublished home telephone numbers that you own, have a controlling interest in, or otherwise have any agency over, including without limitation all such Internet websites (by name and URL) and any other way in which such information is made available.

3. Please describe in detail all ways in which you have obtained (and in the future obtain) and have disclosed or made available (and in the future disclose or make available) any

home addresses or unpublished home telephone numbers, including without limitation by identifying all upstream and downstream sources and recipients of such data including, but not limited to any websites, URLs, databases, entities, and individuals.

**CERTIFICATION**

I hereby certify that the foregoing answers to answers to interrogatories are true. I am aware that if any of the following statements made by me are willfully false, I am subject to punishment.

I hereby certify that the copies of any documents annexed hereto and provided herein are exact copies; that the existence of any other documents are unknown to me, and if such become later known or available, I shall serve them promptly on the propounding party.

________________________________

DATED: ____________

New Jersey Courts
Independence • Integrity • Fairness • Quality Service

Essex Vicinage

**Hon. Stephen L. Petrillo**
**Judge Superior Court**

Essex County Historic Courthouse
470 Martin Luther King Jr. Blvd., Room 402
Newark, New Jersey 07102

njcourts.gov • Tel: 973-776-9460 Fax: 973-424-2483

June 29, 2026

***Via ecourts:***
**PEM LAW LLP**
Rajiv D. Parikh, Esq.
One Boland Drive, Suite 101
West Orange, New Jersey 07052

**Re: ATLAS DATA PRIVACY C ORPORATIO VS DELETEME USA L**
**DOCKET NO. ESX-L-005000-26**

Dear Counsel:

The referenced case has been filed as case type **508.** That designation presumptively assigns the case to the Complex Litigation Business Program ("CBLP"). The complaint has been preliminarily reviewed and the matter appears, at this time, to meet the criteria for inclusion in the CBLP. The following documents are attached:

1. **Case Management Guidelines**. The guidelines provide an overview of the CBLP including an explanation of the criteria for presumptive assignment and exclusion as well as the method of opting in to the CBLP. The Guidelines further describe the management of cases within the CBLP.

2. **Joint Proposed Discovery Plan.** Parties in CBLP matters are required to confer and develop a proposed discovery plan pursuant to R. 4: 103-2(b). The model Joint Proposed Discovery Plan provides information and background necessary for the court to exercise early and effective case management and to render litigation, particularly discovery, more predictable and efficient. It includes deadlines for written discovery, interrogatories and depositions, pretrial motions and the filing of expert and rebuttal reports. The Proposed Joint Discovery Plan also addresses bifurcation, mediation, binding arbitration and the scheduling of an interim status/settlement conference.

3. **Scheduling Order.** A scheduling order providing various discovery and trial deadlines, as well as limits on discovery, must be entered following the initial case management conference pursuant to R. 4: 103-3. This provides a template for that order.

4. **Electronic Discovery Stipulation and Order.** The Electronic Discovery Stipulation and Order governs discovery of Electronically Stored Information ("ESI") and covers preservation of ESI, custodians, search terms, production, and documents protected from discovery. Pursuant to R. 4: 103- 2(c), parties are required to advise

the court whether they anticipate any issues regarding disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.

5. **Clawback Stipulation and Order.** This model stipulation and order is used where the parties agree on a procedure to claw-back inadvertently disclosed privileged or work product materials through the exchange of certain electronically stored or electronically maintained information.

The CBLP case management guidelines, model forms, and model orders are posted on the Judiciary's Complex Business Litigation Program webpage (https://njcourts.gov/courts/civil/cblp.html). The model CBLP forms and model orders can be used without modification or can serve as the starting point for documents crafted to meet the needs of a particular business-related case and situation.

Please review these guidelines and familiarize yourself with the CBLP applicable court rules found at chapter XI of the Rules Governing Civil Practice in the Superior Court, Part IV. **These rules are distinct in certain key respects as regards motion practice and discovery and must be followed.**

After all parties have appeared, or after default has been entered as to absent parties, an initial case management conference shall be held. Discovery shall proceed as set forth by the CBLP court rules. It shall be the responsibility of the plaintiff's counsel to alert the court to the case's readiness for the initial conference and all counsel shall prepare for same as provided by R. 103-2.

All counsel are reminded to please ensure compliance with R. 4:102-1(b) on all filings.

Please be guided accordingly.

Very truly yours,

*Stephen L. Petrillo*

SLP/cac

# Complex Business Litigation Program (CBLP) Case Management Guidelines

## Overview

The Complex Business Litigation Program ("CBLP" or "the Program") is focused on business, commercial and construction cases with significant amounts in dispute or business or commercial cases involving complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial; significant interpretation of a business, commercial or construction statute; or involves other contentions of a complex business, commercial or construction nature.

### Eligibility

A case is assigned to the vicinage CBLP judge in the following situations:

**Threshold Damages**
The CBLP involves disputes with and between business entities where the claims, counterclaims, or third-party claims allege business, commercial or construction claims and an amount in controversy of at least $200,000.00, unless the court determines a lesser amount is acceptable.

**Self Designation**
Attorneys or parties completing the Civil Case Information Statement will self-designate actions as Complex Commercial (Case Type 508) or Complex Construction (Case Type 513). These case types will presumptively be assigned to the vicinage's CBLP judge for case management.

Complex Commercial (508) actions involve claims by, against, and among parties that arise out of business or commercial transactions and involve parties' exposure to potentially significant damage awards; or where the business or commercial claim involves complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial; significant interpretation of a business or commercial statute; or involves other contentions of a complex business - commercial nature.

Complex Construction (513) actions involve claims by, against, and among owners, contractors, subcontractors, fabricators and installers, architects, engineers, design and construction consultants, and other similar parties associated with a construction project that involves parties' exposure to potentially significant damage awards because of claimed design and construction defects, delay claims, or where the construction claim involves complex factual or legal issues; a large number of separately represented parties; potential numerous pre-trial motions raising difficult or novel legal issues; case management of a large number of lay and expert witnesses or a substantial amount of documentary evidence (including electronically stored information); substantial time required to complete the trial. Complex construction does not include construction and professional payment and billing claims, change order claims, wrongful termination, quantum merit, construction lien or mechanics lien claims, unless associated with a complex construction claim as herein described.

Actions to establish a constructive trust or impose an equitable lien to satisfy damages are also cognizable in the CBLP, as are cases primarily seeking legal relief in which ancillary injunctive relief is sought. The CBLP encompasses both jury and non-jury matters.

CBLP judges handle cases arising from the following non-exclusive list of circumstances:

- non-consumer Uniform Commercial Code transactions;
- the purchase and sale of assets of businesses or assets of a business, including contract disputes and commercial landlord/tenant claims;
- non-consumer sales of goods or services by or to a business;
- non-consumer bank or brokerage accounts including loan, deposit, cash management, and investment accounts;
- purchase, sale, or lease of commercial personal property, or security interests therein;
- arising out of state securities laws;
- intellectual property disputes;
- business licensing agreement disputes;
- unfair competition disputes;
- sale, purchase of a business or purchase or sale of stock, assets or liabilities of a business;
- mergers and acquisitions disputes;
- franchisee/franchisor relationship and liabilities;
- business torts, including interference with prospective economic advantage, interference with contractual relations, tortious interference with business relationships, breach of implied covenant of good faith and fair dealing, fraud, fraud in the inducement, misrepresentation, and breach of fiduciary duty;
- liability or indemnity of managers (officers, directors, managers, trustees or members or partners functioning as managers) of corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises;
- Racketeer Influenced and Corrupt Organizations Act (RICO) claims;
- complex commercial construction disputes;
- other complex disputes of a business or commercial nature.

The CBLP retains the law and equity separation that was recognized in the 1947 Constitution. It does not encroach on the cases traditionally heard in General Equity. The CBLP does not include matters involving:

- internal affairs or governance disputes over management and/or control of business entities;
- dissolution or liquidation rights or obligation between or among owners (shareholders, partner, members);
- statutory and custodial receivership or actions seeking the appointment of special fiscal agents;
- restructuring of a business entity;
- shareholder derivative suits;
- actions to protect the interests of a business, such as non-compete agreements, trade secrets or restrictive covenant agreements.

Also excluded from CBLP are actions primarily involving consumers, labor organizations, personal, physical or mental injury; mechanics' lien actions, and condemnation proceedings. Following is a non-inclusive list of actions that generally are not handled by CBLP judges and are handled by judges regularly assigned to the Law Division, Civil Part:

- class action consumer claims;
- products liability actions;
- personal injury and wrongful death actions;
- commercial landlord verses consumer tenant actions;
- noncommercial real estate matters actions;
- actions by consumers against a business and businesses against consumers;
- enforcement of arbitration awards;
- condemnation actions;
- landlord-tenant matters involving summary dispossession;
- employment Law Against Discrimination actions;
- civil rights actions;
- professional malpractice actions;
- medical device litigation and pharmaceutical litigation;
- Multicounty Litigation (mass tort);
- environmental litigation including environmental insurance coverage actions;
- Conscientious Employee Protection Act actions;
- agreements relating to an individual or collective contract of employment;
- wrongful discharge actions;
- slander of title or product disparagement actions;
- fraudulent transfers under the Uniform Fraudulent Transfers Act;
- consumer residential construction actions.

**Opt-In Motion**
Parties may formally move before the CBLP judge for inclusion in the Program where a case is not presumptively assigned to the CBLP but involves complex business related issues and/or the amount in controversy is less than $200,000. Business or commercial disputes that involve complex factual or legal issues; a large number of parties; discovery issues such as managing large numbers of documents, multiple experts; is likely to have implications for business beyond the decision in the particular case; is likely to result in a significant interpretation of a business or commercial statute; or involves other contentions that the CBLP judge finds compelling may be assigned to the Complex Business Litigation Program. Such motions shall be granted for good cause shown.

**Complex Business Litigation Assignment Recommendation**
If, upon review, the Assignment Judge or the CBLP judge determines a case is appropriate for the CBLP, the judge may, *sua sponte*, assign it to the CBLP.

## Exclusion from CBLP

### Initial Case Review

The CBLP judge will review actions presumptively assigned to the CBLP to determine if the case is appropriate for the CBLP. If, after review, the CBLP judge determines that the complex nature of the action or the threshold damages claim amount is not established, the CBLP judge shall remove the case from the Program. The Assignment Judge may also conduct initial CBLP eligibility reviews. Cases removed from the CBLP by the Assignment Judge or the CBLP judge will be reassigned to the appropriate track for case management.

### Motion for Removal from the Program

Any party may move for removal from the CBLP on the grounds that the action does not meet the eligibility criteria.

# Guidelines

## Assignment of Judges

CBLP cases are assigned to a single judge that handles all aspects of the case, including discovery disputes, summary judgment and other motions, and trial.

## Court Rules

Cases assigned to the CBLP are governed by Part IV, Chapter XI ("Complex Commercial & Complex Construction Matters") of the New Jersey Rules of Court. Absent an express contradictory rule contained in Chapter XI, Parts I and IV of the Court Rules shall otherwise apply to any case in the CBLP.

## Pre-Case Management Conference Activity

Initial conference preparation is required pursuant to *Rules* 4:103-1 and 4:103-2, comparable to Federal Rule of Civil Procedure 26, to require attorneys to both meet with their clients as well as each other before a meeting with a judge.

The initial meetings between counsel and their clients will provide an understanding of the potential data and information at issue and the time required to accomplish full discovery. In conferring with counsel, attorneys should prepare a Joint Discovery Plan for all discovery as well as an Electronic Discovery Plan, both of which are to be provided to the Court in advance of the Initial Conference. Counsel should also advise the Court of any unresolved discovery issues.

Electronic discovery (eDiscovery): the attorneys should meet and confer to discuss form, scope preservation/destruction, and expense of production; method for asserting or preserving claims of privilege or of protection; confidentiality; and any other electronic discovery issues. The Electronic Discovery Plan should set forth the parties' agreements as to all eDiscovery.

## Initial Conferences

The case will be scheduled for an Initial Conference with the CLBP Judge[1]. At that Conference, counsel will meet with the Judge/other court representative to discuss assignment and scheduling of the case. If it is determined that it should not be in the CBLP, the case may be removed at that time. If the case remains in the CBLP, a comprehensive Scheduling Order, setting forth all discovery deadlines, will be entered at that time.

---

[1] Should the need arise, the utilization of other judicial staff such as law clerks and/or a designated statewide case manager should be considered for overseeing/conducting certain conferences for CBLP cases.

## Model Stipulations/Orders

The CBLP Internet website has the following model case management, discovery and protective orders:

Joint Proposed Discovery Plan;

Discovery Confidentiality Order (Appendix XXX to the Rules of Court);

Clawback Stipulation and Order;

Electronic Discovery Stipulation and Order; and

Scheduling Order.

## Contacting Chambers

At the time of the Initial Conference, the CBLP Judge should advise the parties the appropriate method(s) (phone, letter, email) and bases for contacting chambers. The CBLP Judge should also advise whether joint submissions will be required.

## Case Management/Status Conferences

As needed/requested by the parties (within reason). There, the parties will report their discovery progress and address any issues. Prior to such a conference a joint letter should be sent to the Court advising of the status of the case and the issues to be discussed at the Conference.

## Discovery and Motions

The Supreme Court has approved Court Rules to govern cases in the Program. Some aspects of discovery and motions in CBLP cases will be handled differently than other civil matters.

### Discovery

See *Rules* 4:104-1 through 4:104-9, which provide the timing, limits and confidentiality of discovery in CBLP matters. The Rules also address discovery disputes (*R.* 4:105-4). The parties should first "meet and confer" to try to resolve the issues. If an agreement cannot be reached, counsel should submit a letter to the court explaining the basis for the motion and requesting a telephone or in-court conference before the motion is made. The Rule provides a process to resolve the dispute if not resolved by the court conference.

### Motions

See *Rules* 4:105-1 through 4:105-9. These Rules seek to streamline and facilitate the motion practice while also addressing the complexity and need for ease and flexibility of litigants to seek and to obtain extensions. Discovery disputes should be handled as noted above and the Dispositive Motion schedule should be set forth in Joint Proposed Discovery Plan.

## Settlement and CDR

Any settlement conferences will be held at the CBLP judge's discretion. The CBLP judge will also advise whether a settlement conference memorandum is necessary as well as any content and formatting requirements.

CBLP cases are not part of the court's mandatory civil mediation and arbitration programs. However, the CBLP judge in each vicinage, as part of case management, should encourage the parties to engage in mediation or some type of dispute resolution to facilitate settlement.

## Pre-trial and Trial

All CBLP actions shall be pretried and the requirements of *Rule* 4:25 shall apply to the final pretrial conference, which should lead to the formulation of a trial plan, including a plan to facilitate the admission of evidence. With regard to trial exhibits, parties should prepare and submit Joint Exhibits to eliminate redundancy (it does not mean the parties are stipulating to its admissibility).

Model Stipulation and Order

Superior Court of New Jersey
Law Division, Civil Part
_______________ County
Docket Number: L-______________________

______________________________________
Plaintiff(s),

v.

______________________________________
Defendant(s).

**Clawback Stipulation and Order**

WHEREAS, the Parties[1] believe that it will promote the efficient, just, and economical resolution of this Litigation to supplement the existing Discovery Confidentiality Order by entering into this stipulation and Order (the "Clawback Order") regarding the exchange of certain electronically stored information ("ESI"), any electronically stored or maintained information, documents, or things, or portion of any documents or things ("Discovery Materials"); and

WHEREAS, based upon a good faith belief that the procedures set forth in the Electronic Discovery Stipulation and Order (the "eDiscovery Order") are likely to generate a large volume of Discovery Materials;

WHEREAS, based on the anticipated number of relevant and/or responsive Discovery Materials that will be identified in this Litigation, the Parties have previously agreed upon certain delimiters, procedures and processes set forth in the eDiscovery Order which include, *inter alia,* agreeing to utilize agreed upon search terms, date ranges and custodians to more accurately identify potentially relevant Discovery Materials; and

WHEREAS, despite these methods used to cull-down the number of documents identified as potentially relevant, the Parties recognize that the volume of Discovery Materials that will be exchanged in this Litigation is of a magnitude that the inadvertent disclosure of Discovery Materials that are subject to a claim of attorney-client, work product and/or other applicable privilege or immunity, and/or protected pursuant to applicable state and/or federal privacy laws (collectively, "Privileged Discovery Materials"), as well as the disclosure of other materials irrelevant to this Litigation ("Irrelevant Materials") is possible; and

WHEREAS, the Parties believe that permitting the production of Discovery Materials pursuant to this Clawback Order will materially reduce the cost and duration of discovery, the attendant burdens on the Parties, and the need for judicial intervention; and

WHEREAS, although New Jersey has not adopted a rule of evidence similar to Federal Rule of Evidence 502,[2] the Parties understand and stipulate that disclosure of Privileged Discovery Materials pursuant

[1] Unless otherwise defined, capitalized terms herein have the meanings assigned in the "Discovery Confidentiality Order").
[2] Entitled "Attorney-Client Privilege and Work Product; Limitations on Waiver."

to this Clawback Order will not prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client, work product or other applicable privilege or immunity, under New Jersey law.

IT IS HEREBY STIPULATED, AGREED AND ORDERED:

1. Discovery Materials exchanged by the Parties in this Litigation is subject to and under the terms of this Clawback Order provided that the Party producing the Discovery Materials has made a good faith effort to prevent the inadvertent production of any Privileged Discovery Materials or Irrelevant Materials.

2. A Producing Party shall not be obligated to conduct a document-by-document review of the Discovery Material prior to its production in order to meet the good faith standard mentioned above; provided however, that a Producing Party utilized, at a minimum, the following best practices to avoid the inadvertent production of documents ("Best Practices"):
   a. Keyword search terms (e.g., the names of counsel and law firms for the Producing Party);
   b. Domain names; and
   c. Analytical software tools and/or other reasonable means to locate and exclude potentially Privileged Discovery Materials prior to the production of the Discovery Materials;

3. Any document that is not identified by using the above Best Practices is considered presumptively responsive/non-privileged and may be produced without performing a document-by-document review.

4. Any documents that are identified as being potentially privileged by using the above Best Practices shall be reviewed by the Producing Party and, if such material is responsive and non-objectionable, shall either be (i) produced (if such material is not deemed Privileged Discovery Material), or (ii) identified as privileged and placed onto the Producing Party's privilege log (if such material is deemed as Privileged Discovery Material), in the normal course of discovery, consistent with the Rules of this Court. If a Producing Party complies with Paragraphs 2 and 3 herein, such Producing Party shall be deemed to have implemented adequate precautions to prevent inadvertent disclosure of any Privileged Discovery Materials.

5. Disclosure of Privileged Discovery Materials in this Litigation, pursuant to this Clawback Order, shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any attorney-client, work product or other applicable privilege or immunity. Any Privileged Discovery Materials or Irrelevant Materials shall be deemed to have been inadvertently produced.
   a. A Party who receives any Discovery Materials that, upon review by such Party, appears on their face to be Privileged Discovery Materials shall: (i) refrain from any further examination or disclosure of such document pending confirmation by the Producing Party that such document is not Privileged Discovery Material; and (ii) provide reasonably prompt written notice to counsel

for the Producing Party that such document appears to be Privileged Discovery Material. Upon receiving a written notice contemplated by the preceding sentence, the Producing Party shall provide reasonably prompt written notice to the requesting Party indicating whether the document in question constitutes Inadvertent Production Material.

b. A Producing Party shall be obligated to make a reasonably prompt claim of inadvertent production upon the earlier of: (i) receiving notice under the preceding paragraph concerning such document, or (ii) otherwise becoming aware of the inadvertent production of such document. If a Producing Party complies with this paragraph, such Party shall be deemed to have acted timely and adequately to rectify any inadvertent disclosure of Privileged Discovery Materials.

c. The procedures set forth in Paragraph 9 of the Discovery Confidentiality Order shall apply to any Discovery Material which is claimed to be Inadvertent Production Material.

d. The Producing Party shall timely log any Discovery Material that is claimed to be Inadvertent Production Material, consistent with the Rules of Court.

6. Each Party shall have the right to demand the immediate return of any Irrelevant Material produced by such Party. After the documents are returned, the Parties agree to meet and confer in good faith to resolve any disputes that arise regarding the alleged Irrelevant Materials. The Party that is challenging the designation of potentially Irrelevant Material and is subject to destroy and/or return the documents at issue must also destroy and/or obtain from any Party or third party that was provided with the potentially Irrelevant Material until the issues are resolved through the meet and confer or by motion to the Court.

7. Nothing in this Clawback Order shall:

a. Require any Party to produce or disclose any Privileged Discovery Materials;

b. Require any Party to produce documents or data as Clawback Discovery Material;

c. Waive any Party's right to conduct limited pre-production review of Discovery Material prior to production of such materials;

d. Modify the Discovery Confidentiality Order, unless expressly stated herein;

e. Except as expressly stated herein, modify any prior agreements among the Parties concerning the conduct of discovery in this Litigation, including but not limited to agreements regarding the collection of Discovery Material from certain custodians or the use of search terms to identify potentially responsive documents; or

f. Prevent any Party from arguing that a waiver of an attorney-client, work product, or other applicable privilege or immunity has occurred from circumstances other than disclosure of Discovery Material pursuant to this Clawback Order.

8. The Parties agree that any violation of this Clawback Order shall result in irreparable harm for which there is no adequate remedy at law. The Parties further agree that any Party shall be entitled to injunctive relief to enforce the terms hereof. In addition, the Parties expressly acknowledge that the Court may, in its discretion, award such other and further relief as the Court may deem appropriate.

9. This Clawback Order applies only to Discovery Material produced by the Parties, and does not apply to Discovery Material produced by non-parties. In the event additional parties join or are joined in the Litigation, they shall not have access to Discovery Material until the newly-joined party, by its counsel, has executed and, at the request of any Party, filed with the Court its agreement to be fully bound by this Clawback Order.

10. The Parties agree to be bound by the terms of this Clawback Order pending the entry of this Clawback Order by the Court, and any violation of its terms shall be subject to the same sanctions and penalties as if this Clawback Order has been entered by the Court. Notwithstanding the foregoing, the Parties shall not be obligated to provide any Discovery Material prior to entry of this Clawback Order by the Court, unless the production of such Discovery Material is expressly required by another Order of the Court.

11. Subject to any applicable Rule of Court, the provisions of this Clawback Order shall, absent written permission of the Producing Party or further Order of the Court, continue to be binding throughout and after the conclusion of the Litigation, including without limitation any appeals therefrom.

12. Nothing in this Clawback Stipulation and Order shall preclude any Party from seeking judicial relief, upon notice to the Parties, with regard to any provision hereof.

13. This Clawback Stipulation and Order may be executed by PDF or conformed signature and may be executed in one or more counterparts, each of which shall be deemed to constitute an original, but all of which together shall constitute but one agreement.

Dated: ____________________ ____________________
Counsel for Plaintiff

Dated: ____________________ ____________________
Counsel for Defendant

**IT IS SO ORDERED.**

Dated: ____________________ ____________________
J.S.C.

Model Stipulation and Order

Superior Court of New Jersey
Law Division, Civil Part
_______________ County
Docket Number: L-______________________

_______________________________________
Plaintiff(s),

v.

_______________________________________
Defendant(s).

**Electronic Discovery**
**Stipulation and Order**

1. **Purpose**
This Order (the "eDiscovery Order") will govern discovery of Electronically Stored Information ("ESI") and any electronically stored or maintained information in this case as a supplement to the Rules of Court, the Complex Business Litigation Program's Guidelines, and any other applicable Orders and Rules.

2. **Cooperation**
The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the discovery and production of ESI and any electronically stored or maintained documents.

3. **Liaison**
The Parties have designated liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI and/or electronic documents ("eDiscovery Liaison"). Each eDiscovery Liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI and/or electronic documents in this matter. The Parties will rely on the eDiscovery Liaison, as needed, to confer about ESI and/or electronic documents and to help resolve disputes without court intervention. The following individuals are the designated as the eDiscovery Liaison for this litigation:

Plaintiff(s) [with contact information]:

Defendant(s) [with contact information]:

4. **Preservation**
By signing this eDiscovery Order, the Parties certify that they have taken reasonable steps to preserve all ESI and electronically stored documents. Additionally, the Parties have discussed their preservation obligations and needs as litigation progresses and agree that preservation of potentially relevant ESI and electronically stored documents will be reasonable and proportionate. To reduce the costs and burdens of preservation, and to ensure proper ESI and/or electronically stored information is preserved, the Parties agree that:

a) They have exchanged a list of custodians, the types of ESI and/or electronically stored information they believe should be preserved, or general job titles or descriptions of custodians, for whom they believe ESI and/or electronically stored information should be preserved, e.g., "HR head," "scientist," "marketing manager," etc…;

b) In addition to the previously preserved ESI and/or electronically stored information, the Parties agree that any ESI created or received between _______ and _______ will be preserved for the custodians and/or for those individuals who meet the general job titles or descriptions of custodians provided by the opposing party;

c) They have agreed/will agree on the number of custodians per party for whom ESI and/or electronically stored information will be preserved;

d) Data sources that are not reasonably accessible because of undue burden or cost and ESI from these sources will be preserved but not searched, reviewed, or produced: [e.g., backup media of [named] system, systems no longer in use that cannot be accessed];

e) Among the sources of data the Parties agree are not reasonably accessible, the Parties agree not to preserve the following: [e.g., backup media created before _______, digital voicemail, instant messaging, automatically saved versions of documents];

f) Any data sources, ESI and/or electronically stored information that has or potentially could have been destroyed is listed below and has been divulged to the opposing party;

Plaintiff(s) Preservation Issues (if any):

Defendant(s) Preservation Issues (if any):

g) In addition to the agreements above, the Parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: ______

**5. Custodians**

The Parties agree that in providing *R.* 4:103-1 Initial Disclosures, or earlier if appropriate, they have met and conferred about methods to search ESI in order to identify data sources that are likely to contain relevant documents. The Parties have agreed to _____ custodians and/or data sources each for the purposes of this litigation. Those custodians and/or data sources are listed below. The Parties shall add or remove custodians as reasonably necessary.

Plaintiff(s) Custodians and/or Data Sources:

Defendant(s) Custodians and/or Data Sources:

**6. Search Terms**

The Parties have agreed upon the following search terms:

Plaintiff(s) Search Terms:

Defendant(s) Search Terms:

In the event that any of the search terms return _______ documents or more, the Parties agree that the search term is per se overly broad and will work to create a more tailored search term.

**7. Production**

The Parties agree to run the appropriate de-duplication program prior to any production to reduce the number of duplicate documents. The Parties further agree to the Production Format set forth in Exhibit "A", which is attached hereto and incorporated as part of the eDiscovery Order, for all ESI and/or electronically stored information exchanged in this litigation.

The Parties agree to electronically Bates label documents as follows:

Plaintiff(s) Bates Designation:

Defendant(s) Bates Designation:

**8. Phasing (Rolling) Production**

When a party propounds discovery requests pursuant to proposed *R.* 4:104-5, the Parties agree to phase the production of ESI (*i.e.* produce the documents on a rolling basis), and the initial production will be from the above-agreed upon custodians and data sources.

Following the initial production, the Parties will continue to prioritize the order of subsequent productions.

**9. Documents Protected From Discovery**

Although New Jersey has not adopted a rule of evidence similar to Federal Rule of Evidence 502 (Attorney-Client Privilege and Work Product; Limitations on Waiver), the Parties understand and stipulate that disclosure of Privileged Discovery Materials pursuant to this Stipulation and Order as well as any Clawback or other Order will not prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client, work product or other applicable privilege or immunity, under New Jersey law.

For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case, or in any other Federal or State proceeding.

Communications involving trial counsel that post-date the filing of the Complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**10. Modification**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED,** through Counsel of Record

Dated: ____________________ ________________________________________
Counsel for Plaintiff

Dated: ____________________ ________________________________________
Counsel for Defendant

**IT IS SO ORDERED** that the foregoing Agreement is approved.

Dated: ____________________ ________________________________________
J.S.C.

Model Form

Superior Court of New Jersey
Law Division, Civil Part
_______________ County
Docket Number: L-_______________________

_______________________________________ Plaintiff(s),

v.

_______________________________________ Defendant(s).

**Joint Proposed Discovery Plan**

1. Set forth the name of each attorney appearing, the firm name, address and telephone number and email address of each, designating the party represented.

2. Set forth a brief description of the case, including the causes of action and defenses asserted.

3. Have settlement discussions taken place? ☐ Yes ☐ No

4. The Parties ☐ have ☐ have not met pursuant to *R.* 4:103-2.

5. The Parties ☐ have ☐ have not exchanged the information required by *R.* 4:103-1(a)(1). If not, state the reason therefor.

6. Explain any problems in connection with completing the disclosures required by *R.* 4:103-1(a)(1).

7. The Parties ☐ have ☐ have not conducted discovery other than the above disclosures. If so, describe.

8. Proposed joint discovery plan:
   a) Discovery is needed on the following subjects: ________
   b) Discovery ☐ should ☐ should not be conducted in phases or be limited to particular issues. Explain:

   c) Proposed schedule:
      1) *R.* 4:103-1 Disclosures ________.
      2) Service of initial written discovery ________.
      3) Maximum of ________ Interrogatories and ________ document requests by each party to each other party. NOTE: Parties are to provide rolling privilege logs within ten (10) days after each production.
      4) Maximum of ________ depositions to be taken by each party.
      5) Motions to amend pleadings or to add Parties to be filed by ________.
      6) Motions to resolve any privilege log disputes to be filed by ________.
      7) Factual discovery to be completed by ________.

8) Plaintiff's expert report(s) due on ________.

9) Defendant's expert report(s) due on ________.

10) Any rebuttal reports due on ________.

11) Expert depositions to be completed by ________.

12) Discovery end date: ________.

13) Dispositive motions to be served within ________ days of discovery end date.

d) Set forth any special discovery mechanism or procedure requested.

e) A pretrial conference may take place on ________.

f) Trial Date: ________ ☐ Jury Trial ☐ Non-Jury Trial

9. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? If "Yes", please explain. ☐ Yes ☐ No

10. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? ☐ Yes ☐ No

If "Yes", how will electronic discovery or data be disclosed or produced?

Describe any agreements reached by the Parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

11. Do you anticipate entry of a Discovery Confidentiality Order? See *R.* 4:104-6 and Appendix XXX. ☐ Yes ☐ No

12. Do you anticipate any discovery problem(s) not listed above? If "Yes", describe: ☐ Yes ☐ No

13. Is this case appropriate for bifurcation? ☐ Yes ☐ No

14. Is the case appropriate for mediation? ☐ Yes ☐ No

15. Do the parties consent to binding arbitration? ☐ Yes ☐ No

16. An interim status/settlement conference (with client representatives having settlement authority in attendance), shall be held on ________.

17. Identify any other issues to address at the Scheduling Conference.

______________________________ ______________
Attorney(s) for Plaintiff(s) Date

______________________________ ______________________________ ______________
Attorney(s) for Defendant(s) Name of client Date

Model Order

Superior Court of New Jersey
Law Division, Civil Part
________________ County
Docket Number: L-________________________

________________________________________
Plaintiff(s),

v.

**Scheduling Order**

________________________________________
Defendant(s).

This matter having come before the Court for an Initial Conference, and for good cause shown,

It is, on this ____ day of ______________, 20___, **ORDERED** as follows:

(1) *R.* 4:103-1 Disclosures of the parties must be served on all parties no later than fourteen (14) days from the date of the Initial Conference.

(2) Service of initial written discovery to be completed by ________.

(3) Maximum of ____ Interrogatories and document requests by each party to each other party (if other than the limits set forth in *R.* 4:104-4).

(4) Maximum of ____ depositions to be taken by each party (if other than the limits set forth in *R.* 4:104-3).

(5) Motions to amend pleadings or to add parties to be filed by ________.

(6) Motions to resolve any privilege log disputes to be filed by ________.

(7) Factual discovery to be completed by ________.

(8) Plaintiff's expert report(s) due on ________.

(9) Defendant's expert report(s) due on ________.

(10) Any rebuttal reports due on ________.

(11) Expert depositions to be completed by ________.

(12) Discovery end date: ________.

(13) Dispositive motions to be served within ____ days of discovery end date.

(14) Tentative Status Conference Date (if necessary): ________.

(15) Tentative Pre-Trial Conference Date: ________.

(16) Tentative Trial Date: ________.

Dated: ____________________

________________________________________
J.S.C.

NOTE: The parties may agree to set and/or modify interim deadlines without court approval, provided that any such change will not have any impact on the discovery end date.

NOTE: The setting of the Tentative Trial Date, above, does not implicate the "exceptional circumstances" standard of *R.* 4:24-1(c), and discovery extensions may be considered for good cause shown.

Promulgated by Directive #01-19 (01/31/2019), CN 12373

Job # 16407865
Ref # 20260716175716

# Affidavit of Process Server

In The Superior Court of New Jersey in and for Essex County, Law Division
(NAME OF COURT)

Atlas Data Privacy Corporation, as assignee of indiviuals who are covered persons, et al., VS Deleteme USA LLC, et al., ESX-L-5000-26
PLAINTIFF/PETITIONER DEFENDANT/RESPONDENT CASE NUMBER

**I Sharlene Brooks, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized to perform said service.**

**Service:** I served DeleteME USA, LLC
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) Letter Dated July 16, 2026; Summons; Complaint; Case Information Statement; Track Assignment Notice; Certifications; Document Preservation Letter; First Request for Production of Documents; First Set of Interrogatories; Case Management Guidelines; Clawback Stipulation and Order (Received Jul 20, 2026 at 2:09pm EDT)

by leaving with Kay Pearsall, Corporate Specialist authorized to accept
NAME/RELATIONSHIP/TITLE

Service Address: LegalInc Corporate Services, Inc. 131 Continental Drive, Suite 305, Newark, DE 19713

On Mon, Jul 20 2026 AT 03:47 PM
DATE TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on ____________
DATE

from ____________
CITY STATE ZIP

**Manner of Service:**

☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of 18 and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☒ **Corporate:** By personally delivering copies to the person named above.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.
☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ **Unknown at Address** ☐ **Moved, Left no Forwarding** ☐ **Service Cancelled by Litigant** ☐ **Unable to Serve in Timely Fashion**
☐ **Address Does Not Exist** ☐ **Other** ____________

**Description of Person Served Based Upon the Undersigned's Perception:**
Age: 50 Sex: Female Race: African American Height: 5'6" Weight: 200 Hair: Brown Other:

Date: July 21, 2026

Sharlene Brooks
SIGNATURE OF PROCESS SERVER

Subscribed and sworn before me a Notary Public of the State of Delaware on July 21, 2026 (Date)

Kimberly J. Ryan
SIGNATURE OF NOTARY PUBLIC
NOTARY PUBLIC for the State of Delaware

KIMBERLY J. RYAN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires March 31, 2028

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Jessica A. Merejo, Esq. (288592020)
Thomas R. Kraft, Esq. (384852022)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
jmerejo@pemlawfirm.com
tkraft@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br><br>v.<br><br>DELETEME USA, LLC, DELETEME EUROPE LTD., CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-5000-26<br><br>**CIVIL ACTION**<br><br>**CERTIFICATION OF DILIGENT INQUIRY PURSUANT TO R. 4:4-5** |

I, Thomas R. Kraft, Esq., of full age, hereby certify and attest as follows:

1. I am an attorney duly licensed to practice law in the State of New Jersey and an Associate with PEM Law LLP, attorneys for plaintiffs, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*; Scott Maloney; Justyna Maloney; and Patrick Colligan (collectively, "Plaintiffs"), in the above-captioned matter against defendants DeleteMe USA, LLC, DeleteMe Europe Ltd., and Criton Tornaritis (collectively, "Defendants"). Therefore, I am familiar with the facts and proceedings of this action.

2. On June 23, 2026, Plaintiffs commenced this action against Defendants for violations of Daniel's Law, codified at N.J.S.A. § 56:8-166.1, et seq., as well as N.J.S.A. §§ 2C:20-31.1 and 47:1A-1.1, 47:1B-1, et seq., as of the time of filing.

3. On July 10, 2026, Plaintiffs served Defendant DeleteMe Europe Ltd. in accordance with the Republic of Cyprus' elections under Article 10(a) of the Hague Service Convention (service via postal channels) at Stasikratous 16, Floor 7, Flat/Office 701, 1065 Nicosia, Cyprus. See Tr. I.D. LCV20261879858.

4. Also on July 10, Plaintiffs served Defendant Criton Tornaritis in accordance with the Republic of Cyprus' elections under Article 10(a) of the Hague Service Convention (service via postal channels) at Stasikratous 16, Floor 7, Flat/Office 701, 1065 Nicosia, Cyprus. See Tr. I.D. LCV20261879886.

5. On July 20, 2026, Plaintiffs served Defendant DeleteMe USA, LLC's registered agent, Legalinc. Corporate Services, Inc., located at 131 Continental Drive, Suite 305, Newark, Delaware 19713. See Tr. I.D. LCV20262094751.

6. Our firm conducted research to search for and locate a valid address or registered agent where service of the Summons and Complaint could be properly effectuated upon Defendants.

7. That research included a series of methodical and good faith steps to identify a physical location or other contact information associated with Defendants pursuant to the requirements of R. 4:4-4, R. 4:4-4(b)(1)(B)-(C), and related provisions of the New Jersey Rules of Court. These searches, as set forth in further detail below, included, a review of: (a) Internet searches on search sites such as Google; (b) corporate entity record searches for the online corporations databases maintained by the State of New Jersey, State of Delaware, and Republic of

Cyprus; (c) the United States Patent and Trademark Office; (d) PACER; and (e) other publicly available sources.

8. The search process was guided by the following considerations: (a) Defendants own and/or operate an online business through the websites deleteme.com and cyber.deleteme.com, which appear to offer commercial services to consumers nationwide, including consumers in New Jersey; and (b) no registered agent or principal place of business address exists within the State of New Jersey.

9. Inquiries were also conducted to include governmental databases and publicly available sources in jurisdictions reasonably connected to Defendants' business or digital presence. A true and accurate copy of the home pages for the websites deleteme.com and cyber.deleteme.com[1], captured via PageVault[2], are attached hereto as "**Exhibit A**" and "**Exhibit B**" respectively.

10. More specifically, the following steps were undertaken as part of the diligent inquiry conducted by our firm:

a. **Website Review – DeleteMe.com:** On July 7, 2026, our firm reviewed the website, deleteme.com, including the posted terms and conditions, privacy policy, and contact information to determine any agent or other address to which service could be attempted on all Defendants. This review identified "Deleteme USA LLC, 1111B S.

---

[1] Plaintiffs note that the majority of the hyperlinks found on cyber.deleteme.com redirect to deleteme.com and as such, no corresponding contact, about, privacy policy, or terms of services pages were found.

[2] Plaintiffs respectfully submit that PageVault is an online third-party vendor that captures screenshots of webpages as locked, unchangeable PDF files. Each PageVault PDF provides specific dated and timestamped access information for each capture, which includes the identity of the PageVault user as well as precise metrics as to where, when, and how such information was captured.

Governors Avenue, Suite 40073, Dover, Delaware 19904" and "Deleteme Europe Ltd., 16 Stasikratous, Nicosia, 1065, Cyprus" on the contact page as addresses to effectuate service upon Defendants DeleteMe USA and DeleteMe Europe. The terms and conditions page likewise identifies their respective jurisdictions of incorporation as Delaware and Cyprus. True and correct copies of the deleteme.com "About", "Contact" and "Terms and Conditions" and "Privacy Policy" pages, captured via PageVault on August 18, 2026, are jointly annexed hereto as "**Exhibit C**".

b. **Website Review – Cyber.DeleteMe.com:** Also on July 7, 2026, our firm reviewed the website, cyber.deleteme.com, including the posted terms and conditions, privacy policy, and contact information to determine any agent or other address to which service could be attempted on all Defendants. This review confirmed that these individual pages redirect users to the corresponding page on deleteme.com, as set forth above.

c. **Internet Search for New Jersey Presence:** On July 7, 2026, internet searches on google.com were also conducted to determine whether Defendants had any business address, contact information, or physical location in the State of New Jersey. These searches included reviews of search engine results, directory listing, and mentions of Defendants in connection with New Jersey consumers. No connections or addresses were found.

d. **New Jersey Corporate Entity Search:** In order to ascertain whether there were any possible addresses for service of process within New Jersey, on July 7, 2026, our firm conducted a search of the business entity registry maintained by the New Jersey Department of Treasury: Division of Revenue & Enterprise Services. No registration under

the name "DeleteMe" was located. A true and correct copy of the search results is annexed hereto as **Exhibit D**.

e. **Delaware Corporate Entity Search**: On July 7, 2026, a search of the Delaware Department of State, Division of Corporations database was conducted for "DeleteMe" to determine whether Defendants had a registered agent in Delaware. The search returned the following registered agent and address for Defendant: Legalinc Corporate Services, Inc., 131 Continental Drive, Suite 305, Newark, Delaware 19713. A true and correct copy of the search results, captured via PageVault on August 18, 2026, is annexed hereto as **Exhibit E**.

f. **Cyprus Corporate Entity Search**: On July 7, 2026, a search of the Department of Registrar of Companies and Intellectual Property maintained by the Republic of Cyprus was conducted for "DeleteMe" to determine whether Defendants have and maintain an office and registered agent in Cyprus. The search returned identified "DeleteMe Europe Ltd, Stasikratous 16, Floor 7, Flat/Office 701, 1065 Nicosia, Cyprus" and listed Defendant Criton Tornaritis as the Director and Secretary of the company. A true and correct copy of the search results, captured via PageVault on August 18, 2026, is annexed hereto as **Exhibit F**.

g. **United States Patent and Trademark Office ("USPTO"):** On July 7, 2026, our firm reviewed the USPTO's online trademark database to determine whether the Defendants or any associated brands were subject to any federal trademark filings. These records often identify an applicant's physical address and corporate affiliations. The phrase "deleteme" identified a wordmark for "DeleteMe" in relation to "[d]ata management subscription services" registered to "Abine, Inc., 1 Marina Park Drive, Suite 1410, Boston,

Massachusetts 02210" and an additional wordmark for "DELETEME" in relation to "financial advice and consultancy services", "legal services", and "Internet service provider services" registered to Criton Tornaritis, 16 Stasikratous, 6th Floor, Nicosia, Cyprus". True and accurate copies of the search results, captured via PageVault on August 18, 2026, are annexed hereto as "**Exhibit G**" and "**Exhibit H**" respectively.

h. **Pacer Search:** On August 18, 2026, a search was also conducted on PACER for "deleteme" and "tornaritis". However, no results were returned. True and accurate copies of the search results are jointly annexed hereto as "**Exhibit I**".

11. Based upon the cumulative results of the foregoing inquiries, our firm was unable to identify any registered agent or principal place of business for any of the Defendants within the State of New Jersey.

12. Accordingly, on behalf of Plaintiffs, our legal team directed service of process as follows:

**VIA UPS INTERNATIONAL**
**DeleteMe Europe Ltd.**
Stasikratous 16
Floor 7, Flat/Office 701
1065 Nicosia, Cyprus

**Criton Tornaritis**
Stasikratous 16
Floor 7, Flat/Office 701
1065 Nicosia, Cyprus

**VIA PROCESS SERVER**
**DeleteMe USA, LLC**
c/o Registered Agent, Legalinc Corporate Services, Inc.
131 Continental Drive, Suite 305
Newark, Delaware 19713

13. Specifically, the following documents were included for service: (1) Summons; (2) Complaint; (3) Case Information Sheet; (4) Track Assignment Notice; (5) Document Preservation

Notice; (6) Plaintiffs' First Request for the Production of Documents; (7) Plaintiffs' First Set of Interrogatories; (8) June 29, 2026 Complex Business Litigation Program Assignment; and (9) June 29, 2026 Complex Business Litigation Program Guidelines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: */s/Thomas R. Kraft*
THOMAS R. KRAFT

Dated: August 18, 2026

Enc.

# EXHIBIT A

Page Vault

| | |
|---|---|
| Document title: | Delete Your Personal Data Online \| deleteme.com |
| Capture URL: | https://deleteme.com/ |
| Page loaded at (UTC): | Tue, 18 Aug 2026 20:03:53 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 20:03:57 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 5 |
| Capture ID: | kqDJ9AfUKbYmPHRuZUC1Jd |
| Display Name: | tkraft |

PDF REFERENCE #: 3sy5ZPyYjLPgtRDCDpBfwK

deleteme Account Dashboard

# Delete Your Digital Past, **Secure Your Future**

Find where your personal information is exposed online, and let us help remove it. Scan data brokers, search engines, data breaches, the dark web, and other online sources.

Your free scan includes the reports
**Data Broker Exposure | Dark Web & Breach Exposure | Digital Footprint**

example@email.com **Scan**

By starting the scan, you agree to our terms and conditions. Click to expand.

✓ 100% free scan ✓ No Credit Card Required ✓ Free Privacy & Dark Web Reports

- **CyberDeleteme Intelligence Platform** — no subscriptions; no commitments; simply pay as you go
- **Data Broker Removals** — eliminate your personal data from hundreds of data brokers
- **Complete Digital Footprint Report** — see exactly where your data lives
- **Data Breach Removals** — clean up compromised records
- **Search Engine Removals** — reduce your visibility in search results
- **Start my Quiz** — Quick questions about your Digital Footprint exposure to data brokers

## Our Partners

At **deleteme.com**, we believe privacy is stronger when trusted partners come together. That's why we collaborate with leading global providers in cybersecurity, compliance, and digital protection to bring you exclusive partner offers.

NordVPN Proton IPVANISH 1Password

## CyberDeleteme is your one-stop shop for cyber intelligence.

That helps you uncover your online exposure across emails, domains, IPs, social media, company names, the dark web, and data leaks with advanced cyber intelligence.

**No subscriptions. No commitments. Pay only for what you use.**
Your personal and business digital footprint is public; find it before criminals do

Scan as Professional



## Getting started is as easy as 1, 2, 3

In today's world, rapid technological advancements have made it easier than ever for data brokerage firms to collect and store personal information. This growing availability of data puts individuals at greater risk of privacy breaches and fraud. Here's how we help you take back control in three simple steps.

✓ Free Registration ✓ No credit card needed ✓ 2 free reports included

① **Sign up and submit a request**
Create an account on our platform; registration is free, and no credit card is required. You'll instantly get two free

② **Confirm your service request**
Review your request or order to ensure accuracy and confirm the details. Make a payment.

③ **Track your request progress**
Log in to your account/dashboard to monitor the progress of your request. Our team will process your

**Sign up and submit a request**

Create an account on our platform; registration is free, and no credit card is required. You'll instantly get two free reports: a Breach Report and a Data Broker & Internet Research Report, so you can see exactly where your personal information is exposed.

**Confirm your service request**

Review your request or order to ensure accuracy and confirm the details. Make a payment, and we will begin the full-service removal process and start working on your request.

**Track your request progress**

Log in to your account/dashboard to monitor the progress of your request. Our team will process your application manually and automatically, and your status will be updated as we complete the service.

## Why choose deleteme.com

deleteme.com leads the industry in removals by combining legal authority, advanced technology, global compliance, and dark email alerts. Our proprietary platform delivers the most advanced digital footprint mapping for individuals and companies, covering phones, emails, addresses, usernames, leaks, breaches, news, brokers, and social media.

Every finding is accompanied by AI-generated analysis and customizable reports through our advanced Ask AI tool.



### Our advantage

Custom removals from the most complex and challenging websites

- Advanced digital footprint scans: Comprehensive Internet and Dark Web scans, with AI-powered analysis included in every report.
- Reduced scams and identity theft risk: Proactively minimize your exposure and safeguard your personal information.
- Clean, intuitive dashboard: Track your progress and manage your privacy easily with our user-friendly platform.

## How can we help?

Explore detailed answers to the most commonly asked questions about our platform, features, integrations.

What happens after I sign up for deleteme? +

What services does deleteme offer? +

How much does a deleteme subscription cost? +

Does deleteme have a family plan? +

How can I track the progress of my data removal request? +

Can deleteme remove my information from all platforms? +

How can I track the progress of my data removal request? +

Can deleteme remove my information from all platforms? +

Is ongoing monitoring available? +

Does deleteme remove information from the dark web? +

What is deleteme AI and Ask AI? +

What can you ask AI on your reports? +

Can you delete a Google search URL for me? +

Does deleteme.com offer services for businesses? +

## Take control of your data today. Let's get started!

**Ready to take back control of your personal data on the dark web?**
deleteme.com scans, detects, and helps remove your exposed information from high-risk sources fast, secure, and hassle-free.

Get started now



**Company**

- Who We Are
- Careers
- Online Reviews
- Partners
- Submit Request

**Individual Online Scans**

- Digital Footprint
- OneSearch Dark Web Exposure

**Legal**

- Terms & Conditions
- Privacy Policy
- Cookie Policy
- Refund and Chargeback Policy
- Searches of Your Own Personal Data
- Searches Relating to Third Parties
- Trademark Transparency
- Data Privacy Center

**Resources**

- Account Dashboard
- Opt-out Guides
- Help Center
- Case Studies
- Blog
- News

**Partner with us**

- Ask for Partnership

What ...

What can you ask AI on your reports? +

Can you delete a Google search URL for me? +

Does deleteme.com offer services for businesses? +

## Take control of your data today. Let's get started!

**Ready to take back control of your personal data on the dark web?**
deleteme.com scans, detects, and helps remove your exposed information from high-risk sources fast, secure, and hassle-free.

Get started now

**Company**

Who We Are
Careers
Online Reviews
Partners
Submit Request

**Individual Online Scans**

Digital Footprint
OneSearch Dark Web Exposure
Search Engine

**Individual Removals**

Data Brokers
Search Engine
Data Breach
Custom Removals

**Legal**

Terms & Conditions
Privacy Policy
Cookie Policy
Refund and Chargeback Policy
Searches of Your Own Personal Data
Searches Relating to Third Parties
Trademark Transparency
Data Privacy Center

**Resources**

Account Dashboard
Opt-out Guides
Help Center
Case Studies
Blog
News

**Partner with us**

Ask for Partnership

Copyright deleteme™ All Rights Reserved.

# EXHIBIT B

| | |
|---|---|
| Document title: | Get Secure Checking Digital Footprint Solutions \| CyberDeleteme |
| Capture URL: | https://cyber.deleteme.com/ |
| Page loaded at (UTC): | Tue, 18 Aug 2026 20:39:07 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 20:39:15 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 8 |
| Capture ID: | 8rhKj39v3AXYR7HEZ1XCbE |
| Display Name: | tkraft |

Join **14,541+** other happy customers

# Cyber Services & Compliance Services

Discover & Control Your Digital Footprint

OneSearch Email | Digital Footprint | Email - DF | Phone - DF | Domain Scan

Enter your email here | Start Free Search

**We don't have monthly or yearly subscriptions. All our services are pay-as-you-go.**

CyberDeleteme is not a data broker. Searches are performed only at the customer's request after a service is selected and the required search details are provided. CyberDeleteme is not a consumer reporting agency, and its reports may not be used for employment, credit, insurance, tenant screening, licensing, or other eligibility decisions. Ask AI and Reports generate informational reports and analysis based solely on your scan results and do not provide legal or professional advice.

## Create a Free Account

Register securely now in seconds to unlock your personalized privacy dashboard - no credit card required.




## Discover Your Digital Footprint

Discover and control your digital footprint using just a name, email, or phone number to see what's exposed online. Our OneSearch Email Scan checks the dark web for breaches, leaks, credentials, and stealer logs.

Online presence | Data privacy | Personal data
Data Brokers | Digital identity | Digital traces
Online presence | Data privacy | Personal data

## Concierge

We help remove your personal information from search engine results, eliminate data from breach and collection sites, and handle complex custom removals from even the most challenging websites.




## Maintain Control

We monitor your digital footprint to keep your personal data private, with real-time alerts so you can act fast and stay protected, informed, and in control of your online presence.



In today's connected world, your online presence plays a critical role in both personal and professional security. Checking digital footprint is no longer optional — it's essential. Cyber DeleteMe offers advanced solutions designed to help individuals and businesses understand, manage, and protect their digital identity.

Every interaction online leaves a trace, from social media activity to public records and data broker listings. Without proper monitoring, this information can be misused, leading to privacy risks, identity theft, or reputational damage. That's why regularly checking your digital footprint is a key step toward maintaining control over your personal and business data.

Our platform specializes in comprehensive Cyber Services that identify where your information is exposed across the web. We scan multiple sources, including search engines, databases, and third-party platforms, to provide a complete overview of your digital presence. This allows you to take proactive steps to reduce exposure and improve security.

In addition to monitoring, we offer tailored Compliance Services to help organizations meet regulatory requirements related to data protection and privacy. Businesses must ensure they are compliant with evolving data laws, and our solutions are designed to simplify that process. From risk assessment to data removal strategies, we support companies in maintaining secure and compliant operations.

BENEFITS

# Explore Our Services

Innovative tools and powerful insights designed to elevate your business

### OneSearch Email Scan

Scan your email for breaches and leaks on the dark web. Quickly detect and secure compromised credentials to protect your business's digital footprint and prevent unauthorized access.

Learn More

### Digital Footprint

Discover your digital presence with our detailed Internet Footprint Report. Uncover the data you leave behind online and take control. Understand your internet trail and protect your privacy.

Learn More

### Domain Scan

Our dark web domain analysis continuously monitors leaked credentials and sensitive data linked to your domain, helping you detect exposure early and take swift action to reduce potential risk.

Learn More

### Stealer Logs

Protect your business from risks linked to stealer logs containing sensitive data - like credentials, financial details, and system info - often traded on the dark web.

Learn More

### Data Breaches

Find out if your email or password is compromised. Our scan detects dark web leaks and data breaches to help you protect your personal and financial information.

Learn More

### Privacy Meter

A streamlined tool for efficient data protection impact assessments. Get accurate, quantitative insights into privacy risks with our advanced auditing solution.

Learn More

credentials, financial details, and system info - often traded on the dark web.

Learn More

leaks and data breaches to help you protect your personal and financial information.

Learn More

accurate, quantitative insights into privacy risks with our advanced auditing solution.

Learn More

Digital Footprint | Company Scan | Infostealers | Stolen Cards | Digital Footprint | Company Scan | Executive Search

Data Brokers | Court | Sanction | Credentials | IP Reputation | Executive Search | Data Breaches

WHAT ARE YOU WAITING FOR

# Take Control of Your Digital You

Every search, post and share shapes your online story. See what the internet really knows about you - and own your narrative.

REVEAL MY DIGITAL FOOTPRINT

PRICING & BUNDLES

# Pricing

No Credit Card, Hidden Fees, or Annual Contract, Pay only for what you need - no monthly subscriptions. Create an account in less than a minute and start searching for real data from live API calls.

No Credit Card, Hidden Fees, or Annual Contract, Pay only for what you need - no monthly subscriptions.
Create an account in less than a minute and start searching for real data from live API calls.

Individual Company

| | | |
|---|---|---|
| Basic<br>$19.99<br>Credits Included: 20 | Bronze<br>$49.99<br>Credits Included: 51 | Silver<br>$99.99<br>Credits Included: 104 |
| Gold<br>$199.99<br>Credits Included: 211 | Platinum<br>$299.99<br>Credits Included: 321 | Diamond<br>$499.99<br>Credits Included: 543 |

## Need data removal?

Need to remove your personal data from the internet? Explore our removal services Pricing to see transparent, pay-as-you-go options for search engine removals, breach cleanups, and custom takedown requests. Take control of your digital presence today.

Removal Services Pricing

COMPARISON

# Why deleteme Stands Out

See how we compare against others in the same services

| CYBER by deleteme | Others |
|---|---|
| ✓ Effortless global collaboration | ✗ Limited global collaboration |

- Effortless global collaboration
- Highly scalable & flexible solutions
- Advanced dashboard control
- Built-in data-driven analytics
- User-friendly & intuitive design

- Limited global collaboration
- Rigid and non-scalable options
- Basic dashboard functionalities
- Lack of advanced analytics
- Outdated and complex interfaces

API INTEGRATIONS

# Secure Your Data with Our Powerful API

Your All-in-One Toolkit for Cyber Threat Detection and Prevention

### Real-Time Protection

Get instant alerts on email breaches and compromised credentials as they happen.

### Deep Data Leak Investigations

Run advanced scans for stolen cards, leaked data, stealer logs, and exposed digital assets.

### Comprehensive Coverage

From IP and domain scans to PEP & AML checks, our API helps you assess risk across every endpoint.

### Built for Integration

Easily integrate with your systems using our RESTful JSON API—designed for personal and enterprise-level security.

AI-DRIVEN EFFICIENCY

# Be in Control of Your Data

We offer a range of tools to monitor your digital footprint and we put you in control of your data.

### Effortless Integration

Your data is synced in real-time across devices, ensuring you stay connected and informed - online or offline.

Learn More

### Secure & Scalable

Enterprise-grade encryption protects your information, while flexible tools adapt to your business needs.

Learn More

### Actionable Insights

Leverage AI-powered analytics to identify trends, predict outcomes, and optimize your workflow effortlessly.

Learn More

Smart Analytics Real-Time Collaboration Task Prioritization

FAQ'S SECTION

# Some Common FAQ's

Get answers to your questions and learn about our services

- What is checking digital footprint?
- Why is checking digital footprint important?
- What currency are prices listed in?
- What is the minimum credit purchase?
- How do credits work?
- Do credits expire?

FAQ'S SECTION

# Some Common FAQ's

Get answers to your questions and learn about our services

- What is checking digital footprint?
- Why is checking digital footprint important?
- What currency are prices listed in?
- What is the minimum credit purchase?
- How do credits work?
- Do credits expire?
- Are there any setup or hidden fees?
- Which payment methods do you accept?
- What will appear on my bank statement?
- How can I view the price of each solution?

**Company**

Who we are
Careers
Online Reviews
Contact us

**Legal**

Terms & Conditions
Privacy Policy
Cookie Policy
Trademarks & Copyright
CCPA and NV Privacy Requests
GDPR Privacy Requests
Do Not Sell My Personal Information

**Resources**

News
Pricing
API
Help Center
Opt-out Guides
Blog
Data Advocacy
White Label Solutions

Deleteme 2026 © All rights reserved

# EXHIBIT C

Page Vault

| | |
|---|---|
| Document title: | About deleteme \| Online Privacy Specialists |
| Capture URL: | https://deleteme.com/about |
| Page loaded at (UTC): | Tue, 18 Aug 2026 20:05:03 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 20:05:07 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 4 |
| Capture ID: | 7hyHg54yYFkvxjeB2ifpLe |
| Display Name: | tkraft |

## The Company

### Protecting Your Privacy. Securing Your Digital Footprint.

**deleteme** is a global privacy and digital exposure platform dedicated to helping individuals, families, professionals, executives, and businesses identify, monitor, and reduce their online exposure. Our ecosystem provides advanced privacy intelligence, digital footprint analysis, dark web monitoring, data broker removals, and AI-powered reporting to help you better understand and manage your online presence.

**deleteme.com** offers flexible privacy solutions through **subscriptions** for ongoing monitoring and protection, as well as **one-time online reports** for customers who need a single assessment without a subscription.



## Our Story

Founded by Criton Tornaritis, an accomplished attorney, member of the Board of Directors of World Trade Center Cyprus, and President of the Cyprus Chess Federation.

With extensive experience in private and business information, Criton Tornaritis established this service with a primary mission: to help individuals enhance and preserve their digital footprint while offering internet removal services from the most challenging websites.

### Our services include:

- Digital Footprint Reports
- Dark Web & Data Breach Scans and Removals
- Data Broker Removal Services
- Search Engine & Custom Removals
- Executive & Business Privacy Solutions
- AI-Powered Privacy Intelligence Reports

### The deleteme Ecosystem

The deleteme ecosystem includes:
- **deleteme.com** – Subscription-based privacy monitoring, one-time digital footprint reports, and online removal services.
- **CyberDeleteme** – Pay-as-you-go privacy intelligence, dark web monitoring, AI-powered investigations, and advanced cybersecurity scans.
- **AlfaCredit.com** – Credit and financial intelligence solutions.

Together, these platforms provide comprehensive privacy, cybersecurity, and digital intelligence solutions for individuals and organizations worldwide.

### Our Commitment to Privacy

deleteme is **not a data broker** and does not maintain or commercially distribute databases of personal information. Reports are generated solely in response to customer-initiated searches using publicly available information, licensed third-party sources, and lawful cybersecurity intelligence.

deleteme is **not** a Consumer Reporting Agency under the U.S. Fair Credit Reporting Act (FCRA). Its reports are provided for informational purposes only and must **not** be used for employment, credit, insurance, tenant screening, licensing, or other eligibility decisions.

Our AI-powered **Ask AI** and reporting tools analyze only your scan results to generate privacy insights and informational reports. They do not

intelligence.

deleteme is **not** a Consumer Reporting Agency under the U.S. Fair Credit Reporting Act (FCRA). Its reports are provided for informational purposes only and must **not** be used for employment, credit, insurance, tenant screening, licensing, or other eligibility decisions.

Our AI-powered **Ask AI** and reporting tools analyze only your scan results to generate privacy insights and informational reports. They do not provide legal, financial, or professional advice.

### Why Choose deleteme?

Annual subscriptions for continuous privacy monitoring

- One-time reports available online
- Pay-as-you-go scans through CyberDeleteme
- Advanced AI-powered privacy intelligence
- Dark web and digital footprint monitoring
- Data broker and online information removal
- Executive and business privacy solutions
- GDPR- and privacy-focused approach
- Global coverage across public, deep web, and dark web sources

At deleteme, our mission is to help individuals and businesses discover, understand, protect, and reduce their digital exposure while providing industry-leading tools to safeguard privacy in an increasingly connected world.

## How can we help?

Explore detailed answers to the most commonly asked questions about our platform, features, integrations.

What happens after I sign up for deleteme? +

What services does deleteme offer? +

How much does a deleteme subscription cost? +

Does deleteme have a family plan? +

How can I track the progress of my data removal request? +

Can deleteme remove my information from all platforms? +

Is ongoing monitoring available? +

Does deleteme remove information from the dark web? +

What is deleteme AI and Ask AI? +

What can you ask AI on your reports? +

Can you delete a Google search URL for me? +

How can I track the progress of my data removal request? +

Can deleteme remove my information from all platforms? +

Is ongoing monitoring available? +

Does deleteme remove information from the dark web? +

What is deleteme AI and Ask AI? +

What can you ask AI on your reports? +

Can you delete a Google search URL for me? +

Does deleteme.com offer services for businesses? +



Copyright deleteme™ All Rights Reserved.

| | |
|---|---|
| Document title: | Contact deleteme.com \| Privacy Support |
| Capture URL: | https://deleteme.com/contact |
| Page loaded at (UTC): | Tue, 18 Aug 2026 20:06:09 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 20:06:11 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 3 |
| Capture ID: | fVYYSHeoRrBBBMXKqkpCbL |
| Display Name: | tkraft |

deleteme Account Dashboard

## Submit a request

First Name *

John

Last Name *

Smith

Subject *

Select your inquiry

Email *

Enter your email

Phone number

+1 234 567

Message *

Leave your message

Submit

For live support and answers to your questions, please visit our deleteme Help Center, where our support team and knowledge base are available 24/7 to assist you.

## Get in touch

**USA Office**

Deleteme USA LLC
1111B S Governors Avenue #40073
Dover, DE 19904
United States

**Europe Office**

Deleteme Europe Ltd
16 Stasikratous
Nicosia, 1065
Cyprus

**WhatsApp Customer Support** +357 94 096 983

**Company**

Who We Are
Careers
Online Reviews
Partners

**Legal**

Terms & Conditions
Privacy Policy
Cookie Policy
Refund and Chargeback Policy

**Resources**

Account Dashboard
Opt-out Guides
Help Center
Case Studies

Message

Leave your message

Submit

For live support and answers to your questions, please visit our deleteme Help Center, where our support team and knowledge base are available 24/7 to assist you.

## Get in touch

### USA Office

Deleteme USA LLC
1111B S Governors Avenue #40073
Dover, DE 19904
United States

### Europe Office

Deleteme Europe Ltd
16 Stasikratous
Nicosia, 1065
Cyprus

**WhatsApp Customer Support** +357 94 096 983

**Company**

Who We Are
Careers
Online Reviews
Partners
Submit Request

**Individual Online Scans**

Digital Footprint
OneSearch Dark Web Exposure
Search Engine

**Individual Removals**

Data Brokers
Search Engine
Data Breach
Custom Removals

**Legal**

Terms & Conditions
Privacy Policy
Cookie Policy
Refund and Chargeback Policy
Searches of Your Own Personal Data
Searches Relating to Third Parties
Trademark Transparency
Data Privacy Center

**Resources**

Account Dashboard
Opt-out Guides
Help Center
Case Studies
Blog
News

**Partner with us**

Ask for Partnership

Copyright deleteme™ All Rights Reserved.

| | |
|---|---|
| Document title: | Delete Your Personal Data Online \| Terms & Conditions |
| Capture URL: | https://deleteme.com/terms-and-conditions |
| Page loaded at (UTC): | Tue, 18 Aug 2026 20:07:55 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 20:07:58 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 12 |
| Capture ID: | uJmn95CPj2zJR2Sd61yyRk |
| Display Name: | tkraft |

# Terms and Conditions

Effective Date: July 16, 2026

Deleteme provides digital privacy assistance services designed to help users manage publicly available personal information, essential to autonomy and the protection of human dignity. Services include
Our websites deleteme.com, cyberdeleteme.com, cyber.deleteme.com, databrokers.deleteme.com, or any other website on the deleteme ecosystem hereafter described as deleteme

**Deleteme Is Not a Data Broker.** Searches are initiated **only at the customer's request** after the customer selects a specific product and provides the relevant search details. Deleteme ecosystem is **Not a Consumer Report, prohibited for Eligibility**

**Decisions**
Deleteme is not a Consumer Reporting Agency as defined by the Fair Credit Reporting Act (15 U.S.C. §1681a(f)). Reports may not be used for employment decisions, tenant screening, insurance underwriting, credit eligibility, licensing, governmental benefits, or any other purpose governed by the Fair Credit Reporting Act or substantially similar state laws.
Deleteme retrieves and processes information solely to perform the requested service and retains it only as described in its Privacy Notice and as required for service delivery, security, legal compliance, and dispute resolution.
These Terms and Conditions form a legally binding agreement between you and Deleteme and govern your access to, use of, and purchase of all Deleteme websites, platforms, digital content, digital services, professional services, subscriptions, prepaid credits, reports, monitoring tools, removal services, and related support.
By creating an account, accessing or using the Services, submitting a search or removal request, purchasing a product, activating credits, or continuing to use the Services, you confirm that you have read, understood, and agreed to these Terms, together with the Privacy Notice, Refund and Chargeback Policy, and any service-specific terms presented at checkout.
You further confirm that you are at least 18 years old, have legal capacity to enter into this Agreement, and, where acting for another person, company, or client, possess valid and verifiable authority to do so.
Deleteme provides privacy-related technology, digital reports, monitoring, research, and removal assistance. Certain Services depend on information supplied by you and on the actions, policies, systems, and decisions of independent third parties. Deleteme will perform the Services described in the applicable order confirmation but does not guarantee that any third party will remove, suppress, modify, or permanently prevent the reappearance of information.
Please read these Terms carefully before using the Services. If you do not agree to them, you must not access, purchase, or use any Deleteme product or service. Nothing in these Terms limits any mandatory consumer or statutory rights that cannot lawfully be excluded.

Deleteme provides
**Digital Content** means completed reports, downloadable files, generated results, analyses, and other content supplied electronically.
**Digital Services** means ongoing scanning, monitoring, dashboard access, automated tools, alerts, opt-out submission delivery begins, and other electronically provided services.
**Professional Services** means human-led removal requests, investigations, manual research, custom removals, and communications with third parties.
Deleteme assists users in submitting opt-out and removal requests to third-party platforms. Removal outcomes depend entirely on third-party policies and cannot be guaranteed. It's a site that provides information on privacy laws in multiple countries to educate users better.
Find out how you can get your name, images and other online information removed from the leading expose websites – i.e. websites dedicated to exposing infidelity online.
Our products consist exclusively of digital Content delivered electronically (download links, portal access, or email). No physical products are shipped
deleteme.com assists in removing personal information from publicly available people search database websites, which gather information from existing public records.
deleteme provides customized digital reports and related digital services, delivered electronically (download link, portal access, or email). These are intangible digital goods.
Deleting personal information online is important, especially when it comes to People finder or person search websites. These sites pull people's personal details from public databases and compromise people's privacy by making it available online. We have solutions to get online information removed from people database sites.
Please read these Terms of Use (the" Terms") very carefully as they apply to your use of this website (www.deleteme.com) (the "**Website**") and govern any use of or purchases of products and services provided by Deleteme (the "**Company**"). By accessing or using the website located at https://www.deleteme.com (the "site"), or by enrolling in or purchasing Services through this site or by phone, or by continuing to accept Services after reviewing the Terms, you represent that you're 18 years old or older. You cannot use Deleteme if you're under 18 or if you're using it for someone under 18, Minors may, only use the Services through a parent or legal guardian acting on their behalf. you are agreeing to these Terms and concluding a

(the "**Website**") and govern any use of or purchases of products and services provided by Deleteme (the "**Company**"). By accessing or using the website located at https://www.deleteme.com (the "site"), or by enrolling in or purchasing Services through this site or by phone, or by continuing to accept Services after reviewing the Terms, you represent that you're 18 years old or older. You cannot use Deleteme if you're under 18 or if you're using it for someone under 18, Minors may, only use the Services through a parent or legal guardian acting on their behalf, you are agreeing to these Terms and concluding a legally binding contract with Deleteme (the "Agreement").

This Agreement defines the relationship between Deleteme and you ("you", "your", the "client"). If you are entering into this Agreement on behalf of a company or other legal entity, you also represent that you have the authority to bind such entity to these terms, in which case the terms "you", "your" or "client" shall refer to such entity. If you do not have such authority or do not agree with these terms, you must not accept this Agreement and may not use the Deleteme site or its services.

**Children.** The Services are not directed to children under 13 and we do not knowingly collect personal information from children under 13.

**OUR SERVICES**

deleteme provides online privacy-related products and services ("Services"). The Services are described on the individual pages for each Service, which can be accessed at https://www.deleteme.com. We may, at our discretion, periodically change the description or Content of our Services in order to reflect changes to the Service offerings and features, including, without limitation, to reflect enhanced capabilities, changes in the service terms, changes in regulatory requirements, and/or any other modification intended to improve the efficacy of the Services or better address a perceived need among our customers.

deleteme provides **customized digital reports** and related digital services, delivered electronically (download link, portal access, or email). These are **intangible digital goods**. The Report is considered delivered and consumed once delivery begins or access is provid**ed** and for

For **digital reports/content**, loss of withdrawal upon commencement, following express consent and acknowledgment.

For **services**, immediate commencement is requested; where the consumer withdraws before full performance, the consumer may owe a proportionate amount for work actually performed where applicable.

After the service has been fully performed with the required consent and acknowledgment, the withdrawal right may be lost where legally permitted

You represent and warrant that while using the Services:

1. All information provided by you will be accurate to the best of your knowledge and truthful,
2. You will not use or provide any fraudulent, misleading or inaccurate information, and

iii. You are not impersonating any person and do not falsely state or otherwise misrepresent your affiliation with any person.

If you provide any information that is or that we suspect is untrue, inaccurate, not current or incomplete, we have the right to suspend or terminate your use of the Services and refuse any and all current or future use of the Services.

You agree Also:

1. To provide the information required for the provision of the Services, including scanned copies of your valid driver's license or state ID card, Power of Attorney and
2. To respond promptly to requests for information and content approvals.

You understand that the results of the Services are in direct correlation with the promptness and completeness of the information you provided us.

Identity documents are processed solely for verification purposes and stored securely in accordance with our Privacy Policy and GDPR requirements and according our Privacy Policy

Identity Verification Materials. We request identity documents only where required to submit opt-out requests to third parties. We encourage redaction of non-required fields being accepted by the third party. We store verification materials securely and delete or irreversibly redact them within 360 days after verification unless retention is required by law or dispute defense.

Your Consent and Authorization. You consent to and authorize us:

- To use the information, you have provided to us, including personally identifying information (personal data), to search the Internet, and to find and manage the removal of your information from third-party websites, including submitting opt-out requests.
- To contact third parties, including data brokers, aggregators of personally identifying information and other parties who publish your personal information,
- To create online accounts (solely for automated opt-out processing, scanning and never for independent activity or personal use) with the aforementioned third parties in your name for the sole purpose of providing the Services to you, and
- We are to take the actions described above on your behalf and identify us as acting on your behalf.

You agree to the **Terms of Service**, **Refund & Chargeback Policy**, and **Privacy Notice**:

- **At Registration** – You confirm Agreement to all Terms and Policies by creating an account.
- **At Checkout** – You must tick a required consent checkbox confirming:
  - your request for **immediate delivery** of digital Content, and
  - your acknowledgment that once delivery begins, you **lose your statutory withdrawal right** (EU law) or **refund entitlement except as provided in this Policy** (U.S. law).

**Authorized Use, Third-Party Searches and Prohibited Conduct**

By accessing or using Deleteme, cyber.deleteme.com, cyberdeleteme.com, alfacredit.com or any related website, you represent, warrant, and agree that:

1. **Lawful purpose and authorized subject.** You will use the Services only for a legitimate and lawful purpose and only in

**entitlement except as provided in this Policy** (U.S. law).

**Authorized Use, Third-Party Searches and Prohibited Conduct**

By accessing or using Deleteme, cyber.deleteme.com, cyberdeleteme.com, alfacredit.com or any related website, you represent, warrant, and agree that:

1. **Lawful purpose and authorized subject.** You will use the Services only for a legitimate and lawful purpose and only in relation to:

a. yourself;

b. a business that you own, control, represent, or are authorized to investigate;

c. a client who has expressly authorized you to act on their behalf; or

d. another person or entity where you have a valid legal basis and all authority required by applicable law.

2. **Authority to act.** Before searching for, submitting information about, purchasing Services for, or requesting action concerning another person, you must possess valid and verifiable authority to do so. This may include the person's informed consent, a written power of attorney, a contractual mandate, lawful parental or guardianship authority, a court order, statutory authority, or another legally sufficient basis.

3. **Compliance with applicable law.** You are solely responsible for ensuring that your collection, submission, search, access, use, disclosure, and retention of personal information complies with all applicable laws, including United States federal and state privacy, consumer-protection, anti-stalking, anti-harassment, identity-theft, computer-access, and protected-address laws, as well as the GDPR and other applicable European or national data-protection laws.

4. **Prohibited purposes.** You must not use the Services, directly or indirectly, to:

a. stalk, harass, threaten, intimidate, exploit, impersonate, or unlawfully monitor another person;

b. engage in doxxing, identity theft, fraud, discrimination, unlawful surveillance, or unauthorized profiling;

c. locate, disclose, verify, republish, or misuse protected residential addresses, telephone numbers, family information, or other protected personal information;

d. circumvent a suppression, redaction, confidentiality, protective-order, or opt-out restriction, including protections applicable under New Jersey Daniel's Law;

e. interfere with another person's privacy, safety, employment, housing, insurance, credit, legal rights, or access to services;

f. create, engineer, manufacture, solicit, or artificially generate a legal claim, complaint, statutory violation, damages demand, or chargeback through searches or transactions conducted primarily for that purpose; or

g. assist another person in carrying out any prohibited activity.

Nothing in this clause prohibits a genuine, properly authorized investigation, the good-faith exercise of legal rights, or lawful reporting to a court, regulator, law-enforcement agency, or other competent authority.

5. **Bulk, automated, and speculative searches.** You must not conduct bulk, repetitive, automated, scraped, random, exploratory, or speculative searches concerning multiple individuals unless Deleteme has provided prior written authorization and you possess a documented lawful basis for every person searched.

The ability of the platform to process a search does not constitute Deleteme's approval of the search or confirmation that the user has lawful authority.

6. **Proof of authority.** At any time, Deleteme may require reasonable evidence of your identity, lawful purpose, professional capacity, relationship to the subject, and authority to act. Evidence may include consent records, engagement letters, powers of attorney, client instructions, court documents, professional credentials, or other supporting documentation.

You must provide the requested evidence promptly and must not submit false, incomplete, altered, expired, or misleading documents.

7. **Agents, attorneys and investigators.** Attorneys, investigators, data-protection representatives, removal agents, consultants, and other professional users must:

a. enter into any separate professional-account agreement required by Deleteme;

b. maintain a current, customer-specific authorization record for every person or entity searched;

c. ensure that each search falls within the scope and duration of that authorization;

d. maintain records sufficient to demonstrate the lawful basis and purpose of each search; and

e. provide those records to Deleteme upon reasonable request.

A general engagement, broad business relationship, unverified representation, anticipated claim, or speculative investigative interest does not, by itself, establish authority to search a particular individual.

8. **Deleteme's protective measures.** Where Deleteme reasonably suspects unauthorized access, misuse, unlawful conduct, excessive searching, false representations, security risk, or breach of these Terms, Deleteme may, to the extent permitted by law:

a. delay or refuse a search or transaction;

b. require additional verification;

c. restrict platform functions or search volumes;

d. suspend or terminate the relevant account;

e. cancel unperformed orders and issue any refund required by law;

f. preserve relevant account, consent, transaction, access, and search records; and

g. report suspected unlawful activity to affected persons, payment providers, regulators, law-enforcement authorities, or other competent bodies where legally permitted or required.

Deleteme may take these measures without prior notice where notice could compromise security, an investigation, evidence preservation, legal compliance, or the rights and safety of another person.

9. **Responsibility and indemnification.** You remain responsible for searches and activities performed through your account by you or by persons you authorize. To the fullest extent permitted by applicable law, you will indemnify and hold Deleteme harmless from third-party claims, liabilities, penalties, losses, and reasonable legal costs arising from your unauthorized or

Deleteme may take these measures without prior notice where notice could compromise security, an investigation, evidence preservation, legal compliance, or the rights and safety of another person.

9. **Responsibility and indemnification.** You remain responsible for searches and activities performed through your account by you or by persons you authorize. To the fullest extent permitted by applicable law, you will indemnify and hold Deleteme harmless from third-party claims, liabilities, penalties, losses, and reasonable legal costs arising from your unauthorized or unlawful searches, false claims of authority, misuse of personal information, or material breach of this section.

This indemnification does not apply to the extent that a claim results from Deleteme's own fraud, wilful misconduct, or liability that cannot lawfully be excluded.

10. **Mandatory rights.** Nothing in this section prevents a person from exercising a genuine statutory right, pursuing a good-faith legal claim, reporting suspected illegality, or using the Services under valid legal authority. Nothing limits rights or liabilities that cannot lawfully be excluded under applicable United States or European law.

**OUR DIGITAL PRODUCTS**

Our products consist exclusively of digital Content delivered electronically (Consent is logged with timestamp, IP, and version of Terms accepted. Download links, portal access, or email). No physical products are shipped.

**License, Not Ownership**

Because reports are intellectual property:

Upon purchase, you receive a non-exclusive, non-transferable license to use the digital Report for personal or internal business use only. You do not acquire any ownership or intellectual property rights in the Content.

**Non-Transferability**

Prevent resale of credits or reports:

Digital reports and credits are personal to the purchaser and may not be resold, transferred, or shared without our prior written consent.

**Delivery**

Report: generated and made available in the customer's authenticated dashboard, sent to the registered email or downloaded.

Credits: visibly credited to the customer account and available for use.

Removal service: work commences when the first documented search, review, submission or third-party communication occurs.

Monitoring/Alert: access begins when monitoring is activated.

Custom service: delivery according to milestones in the order confirmation.

**PAYMENT TERMS**

The price payable by you is the price stated in the Purchase Receipt or applicable purchasing documentation (or, if no such price is specified, the price is set out in our then-current standard published price list). Our prices are exclusive of taxes, duties, levies, tariffs, and other governmental charges (including, without limitation, VAT or local country taxes) (collectively, "Taxes"). If we issue an invoice to you, all invoices are payable within 30 days of the invoice date unless specified differently in the invoice or purchasing documentation. You are responsible for payment of all Taxes and any related interest and/or penalties resulting from any payments made to us, other than any taxes based on deleteme net income. All amounts are payable and charged at the beginning when registering and accepting the email confirmation or of the applicable subscription term. You will not receive a refund for the fees you have already paid for your current Service or subscription period.

**Will be a fee for your paid subscriptions.** If you're using one of our paid services, you acknowledge that you're registering for a recurring subscription, which will be automatically billed at the end of the subscription billing cycle.

**Automatic Renewal (Subscriptions).** Subscriptions renew automatically unless canceled. Before purchase, we display the renewal price, billing frequency, and cancellation method in a clear and conspicuous manner, and you provide affirmative consent. You may cancel at any time in your account settings or by contacting support. Cancellation takes effect at the end of the current billing period unless required otherwise by law. This provision applies exclusively to subscription-based services and does not apply to any other products or services, including the purchase of credits, individual reports, or other one-time services.

**CHARGEBACKS AND REFUNDS POLICY**

This Refund and Chargeback Policy ("Policy") applies to purchases made through **deleteme.com, cyberdeleteme.com, cyber.deleteme.com**, and **alfacredit.com** (collectively, the "Services").

In this Policy, "deleteme," "we," "us," and "our" refer to the deleteme entity identified as the seller at checkout or on the applicable invoice.

By placing an order, purchasing or activating credits, requesting immediate performance, or accessing a report or service, you confirm that you have read, understood, and accepted this Policy.

**1. Digital Products and Immediate Performance**

deleteme provides customized digital reports, prepaid credits, online access, investigations, removal and opt-out services, and related digital services. These products and services are supplied electronically through an online account, portal access, download link, email, credit allocation, or another electronic method. Once digital delivery begins, credits are activated or used, or the service is fully performed, I may lose my right of withdrawal to the extent permitted by law.

Where permitted by applicable law, you expressly:

1. Request that delivery or performance begin immediately after payment and before the expiry of any statutory withdrawal

and related digital services. These products and services are supplied electronically through an online account, portal access, download link, email, credit allocation, or another electronic method. Once digital delivery begins, credits are activated or used, or the service is fully performed, I may lose my right of withdrawal to the extent permitted by law.

Where permitted by applicable law, you expressly:

1. Request that delivery or performance begin immediately after payment and before the expiry of any statutory withdrawal period;
2. Consent to the immediate supply of digital content and commencement of the service; and
3. Acknowledge that, once supply or performance begins, you may lose your statutory right of withdrawal to the extent permitted by applicable law.

A digital report is considered delivered once it is made available in your account or portal or through a download link or email.

Credits are considered delivered once posted to your account.

A service is considered commenced once deleteme begins processing the request, conducting searches, generating a report, allocating resources, submitting removal or opt-out requests, or otherwise performing the purchased work.

**2. General Rule**

Except where a refund is required by applicable law or expressly allowed under Section 3, all purchases are final once:

- A digital report has been generated, delivered, made available, accessed, or downloaded;
- Credits have been activated, redeemed, applied to a report or service request, or otherwise used;
- Performance of a customized, investigative, removal, opt-out, monitoring, or other service has begun; or
- deleteme has allocated resources or incurred costs in performing the order.

No refund is due merely because the customer:

- Changes their mind;
- No longer requires the service;
- Fails to access or use an available report;
- Is dissatisfied with information accurately obtained and presented in accordance with the purchased service description; or
- Does not achieve an outcome controlled by a third party.

**3. When a Refund May Be Approved**

Subject to verification and applicable law, deleteme may approve a full or proportionate refund only in the following circumstances.

**3.1 Duplicate Charge or Billing Error**

The same transaction was charged more than once, or the amount charged differs from the amount authorized at checkout. Any verified duplicate or excess amount will be refunded.

**3.2 Non-Delivery**

No report was delivered or made available, no credits were posted, and the purchased service was not commenced within the agreed timeframe, provided that:

- You notified deleteme of the issue;
- You supplied the information reasonably required to locate and verify the order; and
- deleteme was unable to deliver, correct, repeat, or complete performance within a reasonable period after receiving notice.

**3.3 Incorrect Report or Material Clerical Error**

deleteme delivered a report materially different from the report ordered because of a verified clerical or processing error, and deleteme is unable to correct or replace it within a reasonable period.

**3.4 Unauthorized Transaction**

The payment instrument was used without the cardholder's authorization. The cardholder should promptly contact the card issuer and deleteme. We will cooperate with the card issuer and payment processor in investigating the transaction.

**4. When Refunds Are Not Available**

Except where required by applicable law, no refund will be issued in any of the following circumstances:

- A report has been generated, delivered, made available, accessed, or downloaded;
- Credits have been redeemed, applied, consumed, or used in whole or in part;
- The customer changes their mind after delivery, credit activation, or commencement of performance;
- The customer provided inaccurate, incomplete, outdated, or insufficient information;
- A search or report produces limited, negative, no, or unexpected results, provided the purchased search or service was performed;
- The customer does not access, download, review, or use a report or service made available to them;
- An unused credit expires in accordance with an expiry term clearly disclosed at the time of purchase;
- A third party rejects, delays, ignores, limits, or later reverses a removal, suppression, de-indexing, correction, or opt-out request; or
- The requested result depends on a data broker, website, search engine, publisher, platform, authority, or another third party outside deleteme's control.

**5. Prepaid Credits**

Credits constitute digital content once posted to the customer's account.

Once any credits from a credit purchase have been redeemed, allocated, applied, or used, the purchase becomes non-refundable, except to the extent that a different result is required by mandatory law. The credits have maximum validity one year after can expire.

No refund is available for expired credits where the applicable expiry was clearly disclosed at the time of purchase.

Credits constitute digital content once posted to the customer's account.

Once any credits from a credit purchase have been redeemed, allocated, applied, or used, the purchase becomes non-refundable, except to the extent that a different result is required by mandatory law. The credits have maximum validity one year after can expire.

No refund is available for expired credits where the applicable expiry was clearly disclosed at the time of purchase.

**6. Removal and Opt-Out Services**

deleteme does not own or control third-party data brokers, websites, search engines, publishers, platforms, databases, or other content sources.

Accordingly, deleteme cannot guarantee that a third party will accept, complete, or permanently honor a removal, suppression, correction, de-indexing, or opt-out request.

For a purchased removal or opt-out service, deleteme's obligation is to perform the work described in the applicable service description. This may include submitting requests, recording their status, and completing any stated follow-up actions.

Where deleteme has performed the purchased work, the fee is earned and is not refundable merely because:

- The requested removal or suppression is unsuccessful;
- A third party refuses or ignores the request;
- Completion takes longer than expected because of a third party;
- Content or data remains available from another source; or
- Content or data reappears or is republished after a removal or opt-out.

If deleteme materially fails to perform the service it agreed to provide, the customer's remedy will be, at deleteme's option and subject to applicable law:

- Correction;
- Re-performance;
- Completion of the service;
- A service credit; or
- A proportionate refund for the unperformed portion.

**7. EU/EEA Consumer Withdrawal Rights**

An EU/EEA consumer may have a statutory right to withdraw from a distance contract within 14 days, subject to applicable exceptions.

For digital content not supplied on a tangible medium, the right of withdrawal may be lost once supply begins where the consumer has:

1. Expressly consented to immediate supply during the withdrawal period;
2. Acknowledged that the right of withdrawal will be lost; and
3. Received the legally required confirmation of the contract.

For services, where the consumer expressly requests immediate performance during the withdrawal period, the consumer may be required to pay a proportionate amount for the service supplied before withdrawal.

The withdrawal right may be lost after the service has been fully performed where the conditions required by applicable law have been satisfied.

Nothing in this Policy excludes or restricts any consumer right that cannot lawfully be waived or limited.

**8. Refund Request Procedure**

Before initiating a payment dispute, the customer should contact deleteme through **[insert support portal or email]** and provide:

- The customer's full name and account email;
- The order or invoice number;
- The transaction date and amount;
- The reason for the request; and
- Any supporting documents or screenshots.

deleteme must be given a reasonable opportunity to investigate the issue and, where appropriate, deliver, correct, replace, repeat, or complete the purchased product or service.

This procedure does not prevent a customer from exercising any non-waivable statutory right or right available through their card issuer.

Approved refunds will be returned, where practicable, to the original payment method. Processing times may depend on the payment provider and the customer's financial institution.

**9. Chargebacks and Payment Disputes**

A chargeback is not a substitute for the refund procedure where the transaction was authorized and the purchased product or service was properly supplied.

If a customer initiates a chargeback or payment dispute, deleteme may contest it and submit relevant evidence to the payment processor, card network, issuing bank, or another competent body.

Evidence may include:

- The order confirmation, invoice, and transaction record;
- The service description and price displayed at purchase;
- The version of this Policy and other terms accepted at checkout;
- The customer's express request for immediate performance and acknowledgment concerning withdrawal rights;
- Timestamps, IP address, device, browser, authentication, and account records;
- Records showing when credits were posted, allocated, redeemed, or consumed;
- Report-generation, portal-access, download, and email-delivery records;

- The version of this Policy and other terms accepted at checkout;
- The customer's express request for immediate performance and acknowledgment concerning withdrawal rights;
- Timestamps, IP address, device, browser, authentication, and account records;
- Records showing when credits were posted, allocated, redeemed, or consumed;
- Report-generation, portal-access, download, and email-delivery records;
- Records of searches, work performed, removal or opt-out submissions, status updates, and follow-ups;
- Communications with the customer; and
- Relevant prior undisputed transactions or account activity, where permitted.

Submitting a chargeback does not cancel the customer's contractual obligations or create an automatic entitlement to a refund.

If a chargeback is rejected, reversed, withdrawn, or decided in deleteme's favor, the original amount remains due to the extent permitted by law.

deleteme may suspend access to accounts, credits, reports, subscriptions, or pending services while a chargeback is investigated. Access may remain suspended until the dispute is resolved and all lawfully due amounts are paid.

**10. Recovery of Amounts Due**

To the extent permitted by applicable law and the payment authorization given at checkout, deleteme may recover any unpaid amount arising from a failed, reversed, recalled, or successfully contested payment by:

- Requesting payment from the customer;
- Charging the payment method validly authorized for the transaction or subscription;
- Setting off the amount against any customer credit or balance where legally permitted;
- Suspending or terminating access to paid services; or
- Commencing lawful collection or legal proceedings.

The customer may also be responsible for reasonable and documented recovery costs, payment-processor fees, chargeback fees, court costs, and legal costs, but only to the extent recoverable under applicable law or awarded by a court or another competent authority.

**11. Records and Evidence**

deleteme may retain records reasonably necessary to:

- Process payments;
- Administer refunds;
- Prevent and investigate fraud;
- Respond to chargebacks;
- Establish delivery or performance; and
- Comply with legal obligations.

Such records may include:

- Consent and policy-acceptance records;
- Order and transaction records;
- Account and authentication information;
- IP address, device, browser, date, and time records;
- Report-generation and delivery records;
- Portal access and download records;
- Credit allocation and usage records;
- Customer communications; and
- Records of services performed.

Records will be retained for the period reasonably necessary for these purposes and in accordance with applicable data-protection and record-retention requirements.

**12. Mandatory Rights and Priority**

This Policy must be interpreted consistently with applicable consumer-protection law and binding payment-network rules. If any provision conflicts with a non-waivable statutory right, that right will prevail, and the remaining provisions will continue to apply to the fullest extent permitted by law.

**13. Contact**

Refund requests and payment questions must be submitted through:
https://deleteme.com/contact

**AUTHORIZATION TO RECOVER AMOUNTS DUE**

If a Card is overdrawn (i.e. the total amount of any transactions posted to a Card is greater than the original Card value), or the charge to fund a successfully used Card fails to process, you authorize Deleteme.com and our Financial Institution Partners to take any of the following actions to recover the remaining amounts from you:

1. Debit the credit/debit card or bank account linked to your paid subscription.
2. Debit any of your other Cards with a remaining balance.
3. Suspend your paid subscription and require your immediate payment; or
4. Engage in collection efforts;

**REGISTRATION FOR OUR FREE SERVICES**

When you sign up for free Services, create user accounts, and/or purchase paid Services, you agree to the specific terms of Service established for each type of Service. The specific terms for each type of Service are set forth below.
PLEASE REVIEW THEM CAREFULLY:

**REGISTRATION FOR OUR FREE SERVICES**

When you sign up for free Services, create user accounts, and/or purchase paid Services, you agree to the specific terms of Service established for each type of Service. The specific terms for each type of Service are set forth below.

PLEASE REVIEW THEM CAREFULLY:

Privacy Policy

Cookie policy

**USER ACCOUNTS AND PASSWORDS**

Certain features or services offered on or through the Site may require you to open an account (including setting up a deleteme account and/or password(s)). You are entirely responsible for maintaining the confidentiality of the information you hold for your account, including your login ID and password, and for any and all activity that occurs under your account as a result of your failing to keep this information secure and confidential. You agree to notify us immediately of any unauthorized use of your account or password or any other any other breaches of security. deleteme cannot and will not be liable for any loss or damage from your failure to comply with this security obligation.

**SUPPLEMENTAL TERMS FOR DELETEME PERSONAL OR BUSINESS REMOVER**

In addition to this Agreement, deleting, removal, or opt-out of Personal or Business Removal services is subject to these additional terms and conditions as may be amended from time to time.

**Data Broker Description**

Data Brokers are companies that collect and sell personal data to third parties (each a "Data Broker Site"). Data Brokers may publish certain personal data about you ("Third Party Data"). Data Brokers can get your personal data in different ways. Examples are when you make purchases, when you have shown interest in a product or service, public records, online activities, and agreements with other companies or third parties.

1. **Limited authority to act on your behalf**

To remove your Third-Party Data, an opt-out request must be made to these Data Broker, websites or search engines that publishes your personal or business data. In order to make the removal request, we may need to interact with Data Broker Sites or other websites on your behalf. You expressly authorize us to act as your, limited, personal representative in order to submit opt-out requests to Data Broker Sites and other websites by (i) obtaining information on your behalf; (ii) submitting the limited personal data needed for the opt-out request to the Data Broker Sites and web sites; (iii) communicating with the Data Broker Sites or other third parties on your behalf; (iv) agreeing to applicable terms and conditions imposed by these Data Broker Sites and other web sites; (v) completing, signing, or executing documents for the Deleteme service on your behalf; and (vi) taking other actions that we believe are reasonably necessary to complete an opt-out request from a Data Broker Site or other websites or to carry out this deleteme service.

Deleteme acts solely as a technical service facilitator and not as a legal agent, attorney, or fiduciary. Authorization is strictly limited to submission of opt-out requests and does not create an agency or attorney-client relationship.

1. **No guarantee**

Data Brokers and other websites are not owned, operated by, or affiliated with deleteme; we are not responsible for their actions or inactions. Because we cannot control the actions or inactions of Data Brokers, websites in general, and third parties, you expressly agree that we will not be liable to you under any circumstances for any actions or inactions of these Data Brokers, websites and third parties. We are not a credit repair organization as defined under federal or state law, including the Credit Repair Organizations Act.

Not all of your personal data will be found, or deleteme effectiveness may be limited because (i) a Data Broker or the website may hold your personal data in a database not available for scanning; or (ii) your online personal data is not present in the database; or (ii) a Data Broker or website may have multiple databases and may acquire and aggregate personal data about you on an ongoing basis which makes it extremely difficult to find your personal or business data since direct identifiers have been removed

Not all opt-out/removal requests will be honored completely or be done equally because (i) not all Data Brokers and websites, or search engines have the same type of opt-out/removal options; or (ii) the Data Broker, website, or search engine may not have the ability to locate all of your personal data eligible for an opt-out; or (iii) despite the opt-out request, the Data Broker, website or search engine may still keep your personal data; or (iv) there may be circumstances where Data Broker, website or search engine may simply ignore your opt-out/remove request.

A single opt-out/removal will not prevent future use of your personal data by a Data Broker, website or search engine because: (i) despite the Data Broker, website or search engine's best efforts, they may miss some of your personal data; or (ii) the personal or business data used and stored by the Data Broker, website or search engine was collected after they honored your opt-out request. As an example, the Data Broker, website or search engine may have bought new data from another third party after they honored your request; or (iii) some Data Broker, website or search engine may continuously purchase and aggregate data, which means a single opt-out/removal won't be a "one and done' process.

Refund eligibility is governed exclusively by applicable consumer protection law. Where digital performance has begun following express consumer consent, statutory withdrawal rights are waived as permitted by Directive 2011/83/EU.

In case of no success, removal is not refunded or Chargeback. **No Guarantee of Third-Party Outcomes.** Deleteme cannot guarantee removal or suppression because third-party sites control outcomes.

**Our Performance Commitment.** Deleteme will (a) submit opt-out/removal requests according to the plan you purchased, (b) provide a status log or report of requests made, and (c) perform follow-ups as described in the Service description. If we fail to perform these commitments, your remedies are as set out in the Refund Policy and any mandatory consumer law.

in case of no success, removal is not refunded or chargeback. **No Guarantee of Third-Party Outcomes.** Deleteme cannot guarantee removal or suppression because third-party sites control outcomes.

**Our Performance Commitment.** Deleteme will (a) submit opt-out/removal requests according to the plan you purchased, (b) provide a status log or report of requests made, and (c) perform follow-ups as described in the Service description. If we fail to perform these commitments, your remedies are as set out in the Refund Policy and any mandatory consumer law.

**SITE CONTENT**

All information and Content available on this website (collectively, "Content") is protected by copyright and other intellectual property laws. The Content and Website is owned by Deleteme. The Content is intended for personal and non-commercial use only. Any use of the Content not expressly permitted by these Terms of Use is a breach of these Terms of Use and may violate copyright, trademark, and other laws.

Your use of the website and all Content is on an "as is" basis, at your own risk, and we do not make and expressly disclaim any express or implied warranties, representations or endorsements whatsoever (including without limitation warranties of title or non-infringement, or the implied warranties of merchantability or fitness for a particular purpose) with regard to the Website or the Content.

You may only use or reproduce the Content for your own personal and non-commercial use. The following activities are prohibited: (l) using any robot, spider or other automatic device, or a manual process, to monitor or copy web pages or the Content contained in the Site or for any other unauthorized purpose without our prior expressed written permission; (m) using any device, software or routine to interfere or attempt to interfere with the proper working of the Site; (n) decompiling, reverse engineering, disassembling or otherwise attempting to obtain the source code for the Software; or (o) taking any action that imposes an unreasonable or disproportionately large load on Deleteme's hardware and software infrastructure (collectively, "Prohibited Activities").

**COPYRIGHT**

We respect the intellectual property of others and ask that users of our Site and Services do the same. In connection with our Site and Services, we have adopted and implemented a policy respecting copyright law that provides for the removal of any infringing materials and for the termination, in appropriate circumstances, of users of our Site and Services who are repeat infringers of intellectual property rights, including copyrights. If you believe that one of our users is, through the use of our Site and Services, unlawfully infringing copyright(s) in a work, and you wish to have the allegedly infringing material removed, the following information in the form of a written notification must be provided to our designated Copyright Agent:

1. Your physical or electronic signature.
2. Identification of the copyrighted work(s) that you claim to have been infringed.
3. Identification of the material on our services that you claim is infringing and that you request us to remove.
4. Sufficient information to permit us to locate such material.
5. Your address, telephone number, and email address.
6. A statement that you have a good faith belief that use of the objectionable material is not authorized by the copyright owner, its agent, or under the law; and
7. A statement that the information in the notification is accurate, and under penalty of perjury, that you are either the owner of the copyright that has allegedly been infringed or that you are authorized to act on behalf of the copyright owner. Please note that any misrepresentation of material fact (falsities) in a written notification automatically subjects the complaining party to liability for any damages, costs and attorney's fees incurred by us in connection with the written notification and allegation of copyright infringement

The copyright of the name www.deleteme.com (including without limitation all text, graphics and computer code relating thereto or associated therewith) and all other intellectual property and proprietary rights therein belongs to www.deleteme.com trade name register in Cyprus and all rights are reserved. Permission is given for the downloading and temporary storage of one or more of these pages for the sole purpose of viewing them on a stand-alone personal computer or monitor. Permanent copying or storage of any of these pages (or any part thereof) or the re-distribution thereof by any means is not permitted.

**INDEMNITY**

You agree to indemnify, hold harmless and defend us, our officers, directors, employees, agents, and third-party suppliers or affiliates, at your expense, against any and all third-party claims, actions, proceedings, and suits brought against us or any of our officers, directors, employees, agents, third-party suppliers or affiliates, and pay all related liabilities, damages, settlements, penalties, fines, costs or expenses (including, without limitation, reasonable attorneys' fees and other litigation expenses) incurred by us or any of our officers, directors, employees, agents, third-party suppliers or affiliates, arising out of or relating to: (a) your breach of any term or condition of this Agreement; (b) your fraudulent or malicious use of the Services; (c) your violation of applicable laws, rules or regulations in connection with the Services; (d) our use of any content or information, including Client Materials or Reviewer Information, you provide to us; or (e) the disclosure of your relationship with us. In such a case, we will provide you with written or electronic notice of such claim, suit or action. You shall cooperate as fully as reasonably required in the defense of any claim. We reserve the right, at our own expense, to assume the exclusive defense and control of any matter subject to your indemnification.

**MODIFYING AND TERMINATING OUR SERVICES**

We are constantly changing and improving our Services. We may add or remove functionalities or services or features and suspend or stop a Service altogether.

This provision applies exclusively to subscription-based services and does not apply to any other products or services, including the purchase of credits, individual reports, or other one-time services.

**MODIFYING AND TERMINATING OUR SERVICES**

We are constantly changing and improving our Services. We may add or remove functionalities or services or features and suspend or stop a Service altogether.

This provision applies exclusively to subscription-based services and does not apply to any other products or services, including the purchase of credits, individual reports, or other one-time services.

We believe that you own your data and preserving your access to such data is important. If we discontinue a Service, where reasonably possible, we will give you reasonable advance notice and a chance to get information out of that Service.

**LIMITATION OF LIABILITY**

**Types of Damages.**

NEITHER WE, NOR OUR THIRD PARTY SUPPLIERS, WILL BE LIABLE TO YOU OR ANY THIRD-PARTY CLAIMANT FOR ANY INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL (INCLUDING, WITHOUT LIMITATION, LOST PROFITS, LOST DATA OR LOSS OF GOODWILL), OR INCIDENTAL DAMAGES, WHETHER BASED ON A CLAIM OR ACTION OF CONTRACT, WARRANTY, NEGLIGENCE, STRICT LIABILITY, OR OTHER TORT, BREACH OF ANY STATUTORY DUTY, INDEMNITY OR CONTRIBUTION, OR OTHERWISE, EVEN IF WE OR OUR THIRD PARTY SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH LIABILITY

**AMOUNT OF DAMAGES**

OUR MAXIMUM LIABILITY ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS AGREEMENT SHALL NOT EXCEED THE GREATER OF (A) THE FEES YOU HAVE PAID TO US PURSUANT TO THE ORDER THAT IS THE SUBJECT OF THE CLAIM DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE CLAIM, OR (B) 100 euro or US $150.00. THE EXISTENCE OF ONE OR MORE CLAIMS WILL NOT INCREASE OUR LIABILITY. IN NO EVENT SHALL OUR SUPPLIERS HAVE ANY LIABILITY ARISING OUT OF OR IN ANY WAY

**TRANSPARENCY, CONTACT & COMPLAINTS (DSA-STYLE BEST PRACTICE)**

**Business Identity & Contact.** The Services are provided by **Deleteme Europe Ltd, of Nicosia, Cyprus and Deleteme Usa of Delaware, USA,** hereafter ("Deleteme", "we", "us"). You may contact us. Where required by law, our designated legal contact for notices at contact us.

**Notices and Complaints.** We aim to handle complaints in a fair, timely, and transparent manner. We acknowledge receipt of customer complaints within 8 **business days** and use commercially reasonable efforts to provide a substantive response within 19 **business days**. Complex matters may require additional time; if so, we will inform you of the reason for delay and provide an updated expected timeframe. Complaints may be submitted through our support portal or by email, and should include your email account, order/reference number, and a brief description of the issue.

**Reporting Unlawful Content.** If the Website allows users to submit, upload, or publish content (e.g., reviews, comments, files, or other materials) ("User Content"), any person may report content that they believe is unlawful or infringes rights by sending a notice contact us. To help us act efficiently, reports should include: (i) a clear explanation of why the content is unlawful, (ii) the exact URL/location of the content, (iii) the reporter's name and contact details (unless prohibited by law), and (iv) any supporting documentation. We will review reports promptly and may remove or restrict access to content where required or appropriate under applicable law. We may request additional information to verify the report.

**No Waiver of Rights.** Nothing in this section limits any statutory rights that cannot be excluded under applicable consumer protection, privacy, or other mandatory laws.

**FORCE MAJEURE**

**Force Majeure** deleteme shall not be liable for any delay, interruption, or failure to perform the Services where such delay or failure results from events beyond its reasonable control ("Force Majeure Event"). Force Majeure Events include, without limitation: internet or telecommunications outages; cloud infrastructure or hosting failures; cyberattacks, malware, ransomware, or security incidents; failures, shutdowns, or restrictions imposed by third-party platforms or APIs; actions or inactions of data brokers or external websites; changes in laws or regulatory requirements; government actions, sanctions, embargoes, or export controls; war, terrorism, civil unrest, or political instability; natural disasters; extreme weather; labor disputes; power failures; or other events outside deleteme's operational control.

During a Force Majeure Event, deleteme's obligations are suspended for the duration of the event and any reasonable recovery period. Deleteme will use commercially reasonable efforts to mitigate the impact and resume Services as soon as practicable.

A Force Majeure Event does not constitute a breach of this Agreement and does not create liability for damages, penalties, or service credits. Nothing in this clause limits rights that cannot be excluded under applicable consumer protection law. Where mandatory law requires, consumers retain any non-waivable statutory rights.

**GOVERNING LAW**

This Agreement shall be governed by and construed under the laws of Cyprus.

**HOW TO CONTACT US**

If you have any questions or concerns about the privacy policy for deleteme.com or its implementation, you may contact us.

If at any time you decide that we should no longer hold any of your personal data or wish to change the use to which any such data can be put, please let us know by contacting us.

deleteme is an online privacy startup, and it is composed of privacy advocates all around the world.

sending a notice contact us. To help us act efficiently, reports should include: (i) a clear explanation of why the content is unlawful, (ii) the exact URL/location of the content, (iii) the reporter's name and contact details (unless prohibited by law), and (iv) any supporting documentation. We will review reports promptly and may remove or restrict access to content where required or appropriate under applicable law. We may request additional information to verify the report.

**No Waiver of Rights.** Nothing in this section limits any statutory rights that cannot be excluded under applicable consumer protection, privacy, or other mandatory laws.

**FORCE MAJEURE**

**Force Majeure** deleteme shall not be liable for any delay, interruption, or failure to perform the Services where such delay or failure results from events beyond its reasonable control ("Force Majeure Event"). Force Majeure Events include, without limitation: internet or telecommunications outages; cloud infrastructure or hosting failures; cyberattacks, malware, ransomware, or security incidents; failures, shutdowns, or restrictions imposed by third-party platforms or APIs; actions or inactions of data brokers or external websites; changes in laws or regulatory requirements; government actions, sanctions, embargoes, or export controls; war, terrorism, civil unrest, or political instability; natural disasters; extreme weather; labor disputes; power failures; or other events outside deleteme's operational control.

During a Force Majeure Event, deleteme's obligations are suspended for the duration of the event and any reasonable recovery period. Deleteme will use commercially reasonable efforts to mitigate the impact and resume Services as soon as practicable.

A Force Majeure Event does not constitute a breach of this Agreement and does not create liability for damages, penalties, or service credits. Nothing in this clause limits rights that cannot be excluded under applicable consumer protection law. Where mandatory law requires, consumers retain any non-waivable statutory rights.

**GOVERNING LAW**

This Agreement shall be governed by and construed under the laws of Cyprus.

**HOW TO CONTACT US**

If you have any questions or concerns about the privacy policy for deleteme.com or its implementation, you may contact us.

If at any time you decide that we should no longer hold any of your personal data or wish to change the use to which any such data can be put, please let us know by contacting us.

deleteme is an online privacy startup, and it is composed of privacy advocates all around the world.

**Company**

Who We Are

Careers

Online Reviews

Partners

Submit Request

**Individual Online Scans**

Digital Footprint

OneSearch Dark Web Exposure

Search Engine

**Individual Removals**

Data Brokers

Search Engine

Data Breach

Custom Removals

**Legal**

Terms & Conditions

Privacy Policy

Cookie Policy

Refund and Chargeback Policy

Searches of Your Own Personal Data

Searches Relating to Third Parties

Trademark Transparency

Data Privacy Center

**Resources**

Account Dashboard

Opt-out Guides

Help Center

Case Studies

Blog

News

**Partner with us**

Ask for Partnership

Copyright deleteme™ All Rights Reserved.

| | |
|---|---|
| Document title: | Delete Your Personal Data Online \| Privacy Policy |
| Capture URL: | https://deleteme.com/privacy-policy |
| Page loaded at (UTC): | Tue, 18 Aug 2026 20:34:58 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 20:35:02 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 7 |
| Capture ID: | 9tHyL9YGDYvtS7qQJX2kW4 |
| Display Name: | tkraft |

ESX-L-005000-26 08/18/2026 6:28:46 PM Pg 44 of 79 Trans ID: LCV20262186693
Case 1:26-cv-10994-5IB Document 1-3 Filed 08/25/26 Page 297 of 332 PageID



# Privacy Policy

Effective Date: July 16, 2026

## INTRO

Your privacy is important to us. This policy explains our online information practices and the choices you can make about how your information is used at our websites deleteme.com, cyberdeleteme.com, cyber.deleteme.com, databrokers.deleteme.com, or any other website on the deleteme ecosystem hereafter described as deleteme
Nothing within this Privacy Policy shall be interpreted as restricting lawful processing of publicly available information protected under applicable constitutional principles relating to freedom of speech, freedom of information, or public access to government records. Deleteme processes information in good faith based upon information reasonably believed to have been lawfully obtained from third-party sources.

**Deleteme Is Not a Data Broker.** Deleteme does not maintain or commercially distribute databases of personal information. Searches are initiated **only at the customer's request** after the customer selects a specific product and provides the relevant search details. **Deleteme does not proactively search for individuals**. Reports are generated only after the customer voluntarily submits specific search parameters and expressly requests that the search be performed.
Deleteme is not a Consumer Reporting Agency as defined by the Fair Credit Reporting Act (15 U.S.C. §1681a(f)). Reports may not be used for employment decisions, tenant screening, insurance underwriting, credit eligibility, licensing, governmental benefits, or any other purpose governed by the Fair Credit Reporting Act or substantially similar state laws.
Deleteme has conducted and periodically reviews Legitimate Interest Assessments (LIAs) where processing relies upon Article 6(1)(f) GDPR.
Deleteme does not create, originate, publish, verify, modify, or certify the accuracy of third-party information. All information presented within Deleteme reports is retrieved or generated solely in response to a customer's specific search request from publicly available sources, licensed data providers, lawful cybersecurity intelligence sources, or other third-party repositories.
Deleteme neither controls nor has authority to alter government records, court records, statutory publications, or archival repositories.
Deleteme services may not be used to manufacture litigation, conduct speculative investigations, create mass claims, generate evidence without independent verification, or circumvent legal discovery procedures.
Customers acting on behalf of another individual represent and warrant that they possess valid authority, including any legally required power of attorney, written authorization, contractual authority, or statutory authorization necessary to request searches, reports, or removals concerning that individual.
Internet data ecosystems are dynamic and continuously changing. Deleteme does not warrant permanent removal, non-reappearance, or universal suppression of personal data.
Where reports reference information originating from public records or publicly available sources, such information remains subject to the legal status, availability, and publication practices of the originating authority.
At deleteme.com, we believe in empowering individuals and organizations by providing insights into data privacy and protection. By processing data responsibly and transparently, we aim to strike a balance between leveraging legitimate interests and respecting your rights.
Reports generated by Deleteme are informational and defensive in nature. They do not constitute legal advice, credit reports, investigative dossiers, or suitability determinations.
Deleteme is not a licensed private investigator and does not provide investigative services. Reports are informational privacy reports only.
As a third-party (Deleteme is not responsible for the practices of independent third-party websites, data brokers, search engines, or archival systems beyond its operational control.) Deleteme does not provide consumer reports for employment, credit, tenant screening, insurance underwriting, or eligibility decisions under the U.S. Fair Credit Reporting Act (FCRA), deleteme processes personal data for private and business purposes at the request of our clients. This report outlines the legitimate interest framework under which these checks are performed, ensuring compliance with the General Data Protection Regulation (GDPR) and NOTICE TO RESIDENTS OF CALIFORNIA, VIRGINIA, CONNECTICUT, UTAH, COLORADO, TEXAS, DELAWARE, MONTANA AND OREGON: Additional privacy policies, specifically developed and maintained for residents of California, Virginia, Connecticut, Utah, Colorado, Texas, Delaware, and Oregon, are found within this Privacy Policy. If you are a resident of these states, you may have additional rights regarding our use of your Personal Information. For more information, visit our privacy data centre and click this link.
Individuals submitting requests on behalf of others represent that they possess legal standing and authorization. Deleteme may require documentary evidence of such authority at any stage.
Deleteme acts strictly on documented instructions of its clients when operating as a processor. Clients remain independently responsible for the lawful basis of the data they submit. Nothing in this policy limits rights granted to data subjects under applicable law.
Artificial intelligence tools may assist in organizing, summarizing, or explaining retrieved information. AI-generated content is

Deleteme acts strictly on documented instructions of its clients when operating as a processor. Clients remain independently responsible for the lawful basis of the data they submit. Nothing in this policy limits rights granted to data subjects under applicable law.

Artificial intelligence tools may assist in organizing, summarizing, or explaining retrieved information. AI-generated content is intended solely to assist users and should not be interpreted as legal advice, factual certification, or professional opinion. Users remain solely responsible for independently verifying all information before relying upon any report.

deleteme is a data controller that processes the directly collected data from the client when subscribing to its services.

WHY AND HOW IS DELETEME PROCESSING YOUR PERSONAL DATA?

We process your personal data for the following purposes: (i) providing the services, including registration on the Website, providing demos, establishing contractual relationships, and concluding contracts; (ii) enhancing our services; (iii) ensuring information security of the services and preventing frauds; (iv) lead generation, sending newsletters and other direct marketing communications; (v) providing customer support, providing information on service updates; (vi) organizing webinars, events; and(vii) analysis of business performance and managerial decision making.

We do not carry out automated decision-making or profiling based solely on automated processing of your personal data as described by Article 22 GDPR.

We use cookies and similar technologies to collect and process data on our website. We ask for your consent and to confirm your preferred setting to use these technologies when you first access our website. We will reconfirm your consent on a yearly basis or in case of any changes to this Privacy Policy. You have the right to withdraw your consent or delete cookies at any time by following the instructions provided in your browser settings. For detailed information about cookies and how they are used on our website, see our Cookie Policy.

**CATEGORIES OF PERSONAL DATA PROCESSED BY DELETEME**

**– Data required in order to create the account:**

- Personal data provided by you, more precisely contact details: Name, surname, phone number, email address
- Legal bases: contractual- since the data subject purchases a service from the controller and, through the delivery of that product or service, the controller needs to process the individual's personal data.

Retention period: 3 years, which is based on the applicable limitation period for enforcing legal claims and the statutory retention period for accounting documents.

**Data required for the enhancement of the services (eg: software update)**

- Categories of personal data: Personal data provided by you, for example, contact details, information necessary to create an account, information related to the usage of the services, communication-related to the services, and data collected via cookies.
- Legal basis: Our legitimate interest is in improving the existing features of our services and developing new features in order to remain competitive. This ground for processing can be used where the data subject is a client or in the service of the controller. Data subjects have the right to object to the use of their data.
- Retention period: 3 years after you cancelled your account at the Website or if you do not have an account, from the last interaction with you.

**Ensuring information security of the services and preventing fraud**

- Categories of personal data: Personal data provided by you and personal data that we collect from other sources, in particular, contact details, information related to the usage of the services, data collected via cookies, and public database information. As for the sources of the categories of personal data not provided by you, we use publicly available open source information.
- We may process publicly accessible information, breach intelligence datasets, and cybersecurity threat intelligence obtained from lawful sources. These sources are used exclusively for defensive privacy and exposure reporting purposes
- Legal basis: Our legitimate interest in providing our services securely for our customers and detecting and avoiding fraudulent use of our services. Recital 49 specifically identifies processing personal data strictly necessary and proportionate to ensure network and information security as constituting a legitimate interest. This ground for processing can be used where the data subject is a client or in the service of the controller. Data subjects have the right to object to the use of their data.
- Retention period: 3 years after the fraud check query is completed.

**Sending newsletters and other direct marketing communications**

- Legal basis: Data Subject's Consent and Legitimate Interest: Consent will be freely given with a clear possibility of opting out at any time; processing based on legitimate interest pursues raising awareness about our services and improving user engagement.
- Categories of personal data: Personal data provided by you and personal data we collected from other sources, in particular, contact details, information necessary to create an account, data collected via cookies, public database information. Sources of the categories of personal data not provided by you (indirect data)- Webinar organizing partners, business listing pages, social media providers, company email address databases, marketing lead contact search engines, and other business partners.
- Retention period: According to the applicable limitation period for enforcing legal claims, 3 years or until your consent is revoked.
- Suppose you no longer wish to receive our newsletter and promotional communications. In that case, you may opt out of receiving them by following the instructions included in each newsletter or communication or by visiting our Privacy

engines, and other business partners.
- Retention period: According to the applicable limitation period for enforcing legal claims, 3 years or until your consent is revoked.
- Suppose you no longer wish to receive our newsletter and promotional communications. In that case, you may opt out of receiving them by following the instructions included in each newsletter or communication or by visiting our **Privacy Centre here**.

**Providing customer support, providing information on service updates**
**Legal basis:** Our legitimate interest is in helping our customers fix bugs or unintended functioning of the services in an efficient and timely way to increase our customers' loyalty and retain our customers.
**Categories of personal data:** Personal data provided by the client, for example, contact details, information necessary to create an account, information related to the usage of the services, and communication-related to the services.

**PUBLICLY AVAILABLE INFORMATION**
In addition to the Personal Information scanned by deleteme.com that has been detailed above, we also collect Publicly Available Information or Public Data from various databases, government entities, commercial data providers, and websites to create our reports and provide the products and services available on our Site. Publicly Available Information includes information that is lawfully made available from federal, state, or local government records, the dark web, and information that we reasonably believe is made available to the general public, for example, by widely distributed media.
We acquire and aggregate this information about the U.S. and data from other countries' residents, which will include users and non-users. We do not, however, include any personal information, including user data and traffic data, that we collect directly from site users in the reports and products and services we provide.

**LINKED SITES**
Deleteme.com contains links to other sites that are not owned or controlled by Deleteme Europe Ltd. Please be aware that we, deleteme.com, are not responsible for the privacy practices of such other sites. We encourage you to be aware when you leave the Site and to read the privacy statements of each and every Website that collects personally identifiable information. This privacy statement applies only to information collected by the Site.

**FRAUDULENT REQUESTS**
deleteme.com takes consumer and business requests seriously and endeavors to protect your privacy and comply with your requests. However, if deleteme.com has a good-faith, reasonable, and documented belief that a consumer request is fraudulent, deleteme.com may deny such a request. This basis for denial applies to all consumer requests and may be subject to the limitations and requirements of applicable state privacy laws with which deleteme.com will always comply.
Examples of fraudulent requests include, but are not limited to:
Impersonating another person. If you make a request, you must do so in your own name or as an authorized agent of another person. If you are an authorized agent of another person, you must disclose that fact and provide proof of the consumer's authorization. Impersonating another person not only violates our Terms of Use, but it is also fraud.
Obscuring your identity as a consumer making a request. Knowing who is making a request about their information is foundational to the process of completing those requests. It also is against our Terms of Conditions for users to disguise the identity or origin of any message sent to deleteme.com.
Examples of this include forging headers, using a virtual private network (VPN) to obscure your IP address, or otherwise obscuring or anonymizing your email or IP address. deleteme.com is happy to comply with your request, but it is essential that we know you are a real person and that you are who you claim to be. We may require additional identity verification where requests cannot be reasonably authenticated.
Using automated means to send multiple unverified requests or requests without proof of authorization.
deleteme.com is happy to work with third-party authorized agents to process bulk consumer requests and does so successfully with a number of agents. Using automated means to submit multiple or bulk unverified requests, or requests without any proof of authorization, deleteme.com is against our Terms of Conditions puts a disproportionate load on our systems, and interferes with our processing of legitimate consumer requests

**DATA TRANSFERS**
deleteme safeguards personal data stored on the servers in the United States. We are committed to protecting such GDPR Personal Data in accordance with our obligations under applicable law, such as GDPR Articles 45 to 50, and the Principles of Notice, Choice, Accountability for Onward Transfer, Security, Data Integrity and Purpose Limitation, Access, and Recourse, Enforcement and Liability.
deleteme relies on EU-U.S. Data Privacy Framework (EU-U.S. DPF) for its servers located in the USA. deleteme also relies on EU-U.S. Data Privacy Framework for data transfers to data brokers processors located in the U.S.
In all cases where deleteme transfers personal data to a third party acting as an agent (processor for GDPR purposes), deleteme will: (i) transfer such data only for limited and specified purposes; (ii) ascertain that the agent is obligated to provide at least the same level of privacy protection as is required by the Principles; (iii) take reasonable and appropriate steps to ensure that the agent effectively processes the personal information transferred in a manner consistent with the organization's obligations under the Principles; (iv) require the agent to notify deleteme if it makes a determination that it can no longer meet its obligation to provide the same level of protection as is required by the Principles; (v) upon notice, including under (iv), take reasonable and appropriate steps to stop and remediate unauthorized processing;

steps to ensure that the agent effectively processes the personal information transferred in a manner consistent with the organization's obligations under the Principles; (iv) require the agent to notify deleteme if it makes a determination that it can no longer meet its obligation to provide the same level of protection as is required by the Principles; (v) upon notice, including under (iv), take reasonable and appropriate steps to stop and remediate unauthorized processing;

**HOW DO WE SHARE YOUR PERSONAL DATA?**

Your personal data will be primarily processed by the employees at deleteme for the purposes listed above.

We may share your personal data with the following categories of business partners for the above listed purposes: cloud providers, integration tool providers, invoicing tool providers, video conferencing tool providers, webinar partners, contact search engines, and business listing pages.

We do NOT sell your data.

We do not sell personal information in exchange for monetary compensation. However, certain data sharing activities with service providers, analytics partners, or advertising partners may be considered a "sale" or "sharing" under applicable U.S. privacy laws. Users may exercise opt-out rights as described below

We use non-personally identifiable information to analyze site usage (such as aggregated information on the pages visited by our users), which allows us to improve the design and content of our Site.

In the ordinary course, we use the personally identifiable information you provide solely to respond to your inquiry or process an application form you have completed on various sections of our Web site.

Any data gathered will be shared, if appropriate, with any of the offices or associate companies of deleteme.com throughout the world, including the United States and any third parties who provide services on our behalf. Personal information that users in the European Union provide to us may be transferred to other countries (including the United States), the data protection laws of which may differ from those of the European Union. You expressly agree with such transfer.

**OUR COMMITMENT TO SECURITY**

The security of your personal information is important to us. If you enter sensitive information, such as credit card numbers, social security numbers, or identification cards on our registration or order forms, we encrypt that information using secure socket layer technology (SSL). Deleteme.com is committed to handling your customer information with high standards of information security.

1. We store the personal information that we collect and that you provide is and contained behind a "firewall" and only accessible by those who need to know that information and who have special access rights to our production systems. We maintain physical, electronic, and procedural safeguards that comply with the law to guard your non-public personal information.
2. We will make all reasonable business efforts to protect your information, but no system can prevent all malicious attacks against our system or commonly used internet protocols or software (e.g., SSL). Please see our technical pages for more information about the security systems used.
3. The security of your deleteme.com account also relies on protecting your deleteme.com password. You are responsible for maintaining the security of your password. You are solely responsible for any and all activities that occur under your account. You should not share your deleteme.com password with anyone.
4. deleteme.com will never ask you to send your password or other sensitive information to us in an email, though we may ask you to enter this type of information on the Site, which will always have a URL beginning with deleteme.com. If you receive an email that asks you for your log in information or password, it is not from us, and you should not respond.
5. Any email or other communication requesting your password, asking you to provide sensitive account information via email, or linking to a website with a URL that does not begin with deleteme.com should be treated as unauthorized and suspicious and should be reported to deleteme.com, immediately by emailing support@deleteme.com.
6. If you do share your deleteme.com password with a third party for any reason, the third party will have access to your account and your personal information, and you may be responsible for actions taken using your password.
7. If you believe someone else has accessed your password, please change it immediately by logging in to your account at com and changing your Profile settings. If you believe that unauthorized access has already occurred, please report it immediately by emailing support@deleteme.com
8. com may have access to your password and may use such password to access your account for debugging, quality assurance, or other internal purposes.
9. Deleteme reserves the right to suspend, refuse, terminate, or permanently block accounts engaging in abusive, excessive, automated, speculative, litigation-driven, or unauthorized searches.

We employ security measures to prevent unauthorized access to information that we collect online. However, we cannot guarantee the security of your personal information.

**YOUR RIGHTS**

You have the following rights regarding the processing of your personal data carried out by us:

Right to information and access

Under Article 13 of the Regulation, data subjects have the right to be provided with certain pieces of information that describe their relationship with the controller. You also have the right to request access to your personal data and obtain information from us regarding (among others): the purpose of processing (the Regulation's right of access set out in Article 15 is in a sense the active counterpart to the more passive right of information in Articles 13 and 14); what categories of personal data are processed; to whom we transfer or disclose your personal data; for what period we process your personal data; your rights in connection with data processing carried out by us regarding your personal data; your right to lodge a complaint

their relationship with the controller. You also have the right to request access to your personal data and obtain information from us regarding (among others): the purpose of processing (the Regulation's right of access set out in Article 15 is in a sense the active counterpart to the more passive right of information in Articles 13 and 14); what categories of personal data are processed; to whom we transfer or disclose your personal data; for what period we process your personal data; your rights in connection with data processing carried out by us regarding your personal data; your right to lodge a complaint with a supervisory authority regarding the processing; in case we collect your personal data from other sources than from you, any available information as to the source; the existence of automated decision-making and related information, including the logic involved, as well as the significance and the envisaged consequences of such processing for you; whether your personal data is transferred outside the EEA and regarding the conditions of these transfers. We will provide you with a copy of your personal data at any time in case you require us to do so.

Right to rectification

You have the right to request us to rectify your inaccurate personal data and to request us to complete your incomplete personal data by means of providing us with a supplementary statement.

Right to erasure

According to article 17 of the Regulation at any time, in writing or verbally,

We erase any of your personal data if you request us to do so in the event of the following:

• your personal data is no longer necessary for the purpose concerned.
• you withdraw your consent and there is no other legal basis for the processing.
• you object to the processing and there are no overriding legitimate grounds for the processing (or, in case of direct marketing, you simply object to the processing);
• your personal data has been processed unlawfully.
• your personal data has to be erased according to relevant laws.

Please note that we are entitled to not erase your personal data if it is necessary – inter alia – for exercising the right of freedom of expression and information, for compliance with legal obligations, and for the establishment, exercise or defense of legal claims.

Right to restriction of processing

As per article 18 of the Regulation, you have the right to obtain a restriction of processing from us where one of the following applies:

• you have contested the accuracy of your personal data, in which case you will obtain restriction for a period enabling us to verify the accuracy of your personal data.
• the processing is unlawful, and you oppose the erasure of your personal data and request the restriction of their use instead.
• we no longer need your personal data for the purposes of the processing, but they are required by you for the establishment, exercise or defense of legal claims; or
• you objected to the processing and the verification is pending whether our legitimate grounds override yours.

Where processing has been restricted, personal data shall, with the exception of storage, only be processed with your consent or for the establishment, exercise or defense of legal claims, or for the protection of the rights of another natural or legal person, or for reasons of important public interest of the European Union or of an EU member state.

Right to object to processing

According to art. 21, you have the right to object to the processing of personal data on grounds relating to your particular situation, where the legal basis of the processing activity is our legitimate interest (or the legitimate interest of a third party). We will no longer process the personal data unless we demonstrate compelling legitimate grounds, which override your interests, rights, and freedoms or for the establishment, exercise or defense of legal claims.

You do not need to ascertain grounds relating to your particular situation if your personal data is processed for direct marketing purposes, and we will no longer process personal data if you object to the processing.

Right to data portability

As per Article 20, if certain conditions are met, you have the right to receive your personal data, which you have provided to us, in a structured, commonly used, and machine-readable format and have the right to transmit that data to another controller without hindrance from us. You also have the right to have your personal data transmitted directly from us to another controller, where technically feasible.

Right to withdraw your consent.

For the processing operations based on consent, you have the right to withdraw it at any time, without affecting the lawfulness of processing based on your consent before its withdrawal.

**OUR ACTIONS**

If you wish to exercise any of your rights, please contact us at the email contact details indicated in this Privacy Notice. We will provide information on the actions taken on your request without undue delay and in any event within one month of receipt of your request. This period may be extended with a reasonable notification to you by two months where necessary, taking into account the complexity and number of requests. We will take the necessary actions free of charge except when your request is manifestly unfounded or excessive. In case we have reasonable doubts as to the identity of the natural person making the request, we may request additional information necessary to confirm your identity.

In case we do not take any action regarding your request, we will inform you within one month of receipt of your request as to the reasons for and the possibility of lodging a complaint with a data protection supervisory authority and seeking a judicial remedy.

To the maximum extent permitted by law, Deleteme shall not be liable for indirect, incidental, consequential, or punitive

controller without hindrance from us. You also have the right to have your personal data transmitted directly from us to another controller, where technically feasible.

Right to withdraw your consent.

For the processing operations based on consent, you have the right to withdraw it at any time, without affecting the lawfulness of processing based on your consent before its withdrawal.

**OUR ACTIONS**

If you wish to exercise any of your rights, please contact us at the email contact details indicated in this Privacy Notice. We will provide information on the actions taken on your request without undue delay and in any event within one month of receipt of your request. This period may be extended with a reasonable notification to you by two months where necessary, taking into account the complexity and number of requests. We will take the necessary actions free of charge except when your request is manifestly unfounded or excessive. In case we have reasonable doubts as to the identity of the natural person making the request, we may request additional information necessary to confirm your identity.

In case we do not take any action regarding your request, we will inform you within one month of receipt of your request as to the reasons for and the possibility of lodging a complaint with a data protection supervisory authority and seeking a judicial remedy.

To the maximum extent permitted by law, Deleteme shall not be liable for indirect, incidental, consequential, or punitive damage arising from internet data persistence beyond our operational control.

If you have any questions or concerns about the privacy policy for deleteme.com or its implementation, you may **contact us.**

Or visit our privacy portal.

**REMEDIES**

In case you do not agree with our response or action, or if you consider that your rights have been infringed, you may lodge a complaint with the data protection supervisory authority in Cyprus or the EU Member State of your habitual residence or place of the alleged infringement, in particular, with the following data protection supervisory authorities:

Please see EU authorities at https://ec.europa.eu/justice/article-29/structure/data protectionauthorities/index_en.htm



Copyright deleteme™ All Rights Reserved.

# EXHIBIT D

# Business Name Search

Required Fields [ * ]

## Search Criteria

**Business Name ***

deleteme

Use "%" as a wildcard

Search

Cancel

| Business Name | Entity Id | Type |
|---|---|---|
| No Results Found | | |

### Support

Division of Revenue & Enterprise Services Web Site
Help

### Policies & Procedures

Privacy Policy
Accessibility Policy
Security Policy

Department of the Treasury
P.O. Box 450
Trenton, NJ (New Jersey) 08646-0303

# EXHIBIT E

| | |
|---|---|
| Document title: | Division of Corporations - Filing |
| Capture URL: | https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx |
| Page loaded at (UTC): | Tue, 18 Aug 2026 21:01:41 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 21:01:44 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 2 |
| Capture ID: | s4mvRWBjrdwaujx9WkcRqM |
| Display Name: | tkraft |




**Department of State: Division of Corporations**

Allowable Characters

HOME

Frequently Asked Questions

To retrieve information on a Delaware entity, Key in the name of the entity you are searching. The search results will return both active and inactive entities from our database. This is not an indication of the current status of an entity. The information provided in this application is real time and reflects the information on our database as of the date of the search. When the list of names is returned click the name and the information page will be returned.

The entity information provided on this website, free of charge, consists of the entity name, file number, incorporation/formation date, registered agent name, address, phone number and residency.

However, additional information can be obtained for a fee.

To order a Certificate of Status, or a Certified Copy or Plain copy of a filed document, contact a Delaware online agent or submit a request using the Document Filing and Certificate Request Service.

For more information please read the Frequently Asked Questions page.

General Information Name Search

* Required Field

* Entity Name: DeleteMe or * File Number:

[This field is not case sensitive.]
[For exact searches use quotation marks.]

Search

| FILE NUMBER | ENTITY NAME |
|---|---|
| 7242015 | DELETEME, INC. |
| 10327890 | DELETEME USA, LLC |

The intent of this tool is to provide general entity details. The Division of Corporations strictly prohibits mining data. Excessive and repeated searches that may have a negative impact on our systems and customer experience are also prohibited. Use of automated tools in any form may result in the suspension of your access to utilize this service.

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

Page Vault

| | |
|---|---|
| Document title: | Division of Corporations - Filing |
| Capture URL: | https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx |
| Page loaded at (UTC): | Tue, 18 Aug 2026 21:03:05 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 21:03:09 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 2 |
| Capture ID: | cAeKQkoBQCgZQ1wKKt2yeC |
| Display Name: | tkraft |




Department of State: Division of Corporations

Allowable Characters

HOME

Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **10327890** | Incorporation Date / Formation Date: | **9/10/2025** (mm/dd/yyyy) |
| Entity Name: | **DELETEME USA, LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **LEGALINC CORPORATE SERVICES INC.** | | |
| Address: | **131 CONTINENTAL DRIVE SUITE 305** | | |
| City: | **NEWARK** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19713** |
| Phone: | **302-894-8922** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

Submit

New Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

# EXHIBIT F

Page Vault

| | |
|---|---|
| Document title: | Search Results |
| Capture URL: | https://efiling.drcor.mcit.gov.cy/DrcorPublic/SearchResults.aspx?name=Deleteme&number=%25&searchtype=optStartMatch&index=1&tname=%25&sc=0 |
| Page loaded at (UTC): | Tue, 18 Aug 2026 22:03:10 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 22:03:14 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 2 |
| Capture ID: | 1sZmwxwpfeY3SXsvMr666X |
| Display Name: | tkraft |

Τμήμα Εφόρου Εταιρειών και Διανοητικής Ιδιοκτησίας

Services Search Study File Annual Company Fee Workspace Confirmation of Authenticity Results of Name Examination Electronic Filing

Ελληνικά | Türkçe Login

## Search Results

New Search

### Search Criteria

(•) With all these words ( ) With any of these words [ ] Sound Like

Name: Deleteme

Reg. Number:

Go

The results are presented sorted based on the Name.

Found 5 Last Updated 18/08/2026

| Name | | Reg. Number | Type | Name Status | Organisation Status |
|---|---|---|---|---|---|
| C.T. DELETEME LTD | | | | Name Application | |
| DELETEME | EE | 37860 | Business Name | Current Name | Active |
| DELETEME EUROPE LTD | HE | 378944 | Limited Company | Current Name | Reminder letter sent |
| DELETEME TECH LTD | | | | Name Application | |
| DELETEME TECH LTD | HE | 488694 | Limited Company | Current Name | Active |

1 of 1

STRUCTURAL FUNDS
our ideas, actions for development

W3C WAI-AA WCAG 2.0

The project is co-financed by the European Regional Development Fund
The Website is best viewed with screen resolution 1024 with 768 pixels
©2005 - 2011 Republic of Cyprus, Ministry of Commerce, Industry and Tourism
Department of Companies and Intellectual Property

EUROPEAN UNION

Home Page| Disclaimer| Webmaster | Companies Section

Page Vault

| | |
|---|---|
| Document title: | Organization Details |
| Capture URL: | https://efiling.drcor.mcit.gov.cy/DrcorPublic/SearchResults.aspx?name=deleteme&number=%25&searchtype=optStartMatch&index=1&tname=%25&sc=0 |
| Page loaded at (UTC): | Tue, 18 Aug 2026 21:05:23 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 21:05:27 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 2 |
| Capture ID: | bJLHMUhnhb3oFbjamQrhMg |
| Display Name: | tkraft |

PDF REFERENCE #: iDueJGKhZeH4EWuPSQNyVj

Τμήμα Εφόρου Εταιρειών και Διανοητικής Ιδιοκτησίας

Services Search Study File Annual Company Fee Workspace Confirmation of Authenticity Results of Name Examination Electronic Filing

Ελληνικά | Türkçe Login

Return To Search Results New Search

**Organisation Details** | **Preview File Documents**

**Current Details**

| | |
|---|---|
| **Name** | DELETEME EUROPE LTD |
| **Reg. Number** | HE 378944 |
| **Type** | Limited Company |
| **SubType** | Private |
| **Name Status** | Current Name |
| **Registration Date** | 19/01/2018 |
| **Organisation Status** | Reminder letter sent |
| **Status Date** | 09/02/2026 |

**Last Annual Return Date** 20/07/2020

**File Status** | **Directors & Secretaries** | **Registered Office** | **HE32 Archive**

**File Status**

**File Last Update** 25/04/2024
**Pending Services** 3

| Service Description | Order Date | Order Number | Order Service Number |
|---|---|---|---|
| Certificate of Shareholders | 11/01/2018 | 2227935 | 5 |
| Filing of Annual Return of private company with share capital | 23/04/2024 | 3780746 | 1 |
| Filing of Annual Return of private company with share capital | 02/07/2024 | 3827071 | 1 |

1 of 1

STRUCTURAL FUNDS
our ideas, actions for development

W3C WAI-AA WCAG 2.0

The project is co-financed by the European Regional Development Fund
The Website is best viewed with screen resolution: 1024 with 768 pixels
©2005 - 2011 Republic of Cyprus, Ministry of Commerce, Industry and Tourism
Department of Companies and Intellectual Property

EUROPEAN UNION

Home Page | Disclaimer | Webmaster | Companies Section

Page Vault

| | |
|---|---|
| Document title: | Organization Details |
| Capture URL: | https://efiling.drcor.mcit.gov.cy/DrcorPublic/SearchResults.aspx?name=deleteme&number=%25&searchtype=optStartMatch&index=1&tname=%25&sc=0 |
| Page loaded at (UTC): | Tue, 18 Aug 2026 21:07:25 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 21:07:30 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 2 |
| Capture ID: | xh35Drg3vQsjpTfH8vVQ9s |
| Display Name: | tkraft |

PDF REFERENCE #: jrz7GUKgLFYJ1Ymxkp1Dpw

Τμήμα Εφόρου Εταιρειών και Διανοητικής Ιδιοκτησίας

Services | Search | Study File | Annual Company Fee | Workspace | Confirmation of Authenticity | Results of Name Examination | Electronic Filing

Ελληνικά | Türkçe    Login

Return To Search Results    New Search

**Organisation Details** | **Preview File Documents**

**Current Details**

| | |
|---|---|
| **Name** | DELETEME EUROPE LTD |
| **Reg. Number** | HE 378944 |
| **Type** | Limited Company |
| **SubType** | Private |
| **Name Status** | Current Name |
| **Registration Date** | 19/01/2018 |
| **Organisation Status** | Reminder letter sent |
| **Status Date** | 09/02/2026 |

**Last Annual Return Date** 20/07/2020

**File Status** | **Directors & Secretaries** | **Registered Office** | **HE32 Archive**

**Directors & Secretaries**

| Name | |
|---|---|
| ΚΡΙΤΩΝΑΣ ΤΟΡΝΑΡΙΤΗΣ | Director |
| ΚΡΙΤΩΝΑΣ ΤΟΡΝΑΡΙΤΗΣ | Secretary |

STRUCTURAL FUNDS
our ideas, actions for development

W3C WAI-AA WCAG 2.0

The project is co-financed by the European Regional Development Fund
The Website is best viewed with screen resolution: 1024 with 768 pixels
©2005 - 2011 Republic of Cyprus, Ministry of Commerce, Industry and Tourism
Department of Companies and Intellectual Property

EUROPEAN UNION

Home Page | Disclaimer | Webmaster | Companies Section

Page Vault

| | |
|---|---|
| Document title: | Organization Details |
| Capture URL: | https://efiling.drcor.mcit.gov.cy/DrcorPublic/SearchResults.aspx?name=deleteme&number=%25&searchtype=optStartMatch&index=1&tname=%25&sc=0 |
| Page loaded at (UTC): | Tue, 18 Aug 2026 21:06:49 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 21:06:53 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 2 |
| Capture ID: | e5kWkmNsW7YDeuS2VAjvky |
| Display Name: | tkraft |

PDF REFERENCE #: gFmsMd9KWPEcFUafcSnqo3

Τμήμα Εφόρου Εταιρειών και Διανοητικής Ιδιοκτησίας

Services Search Study File Annual Company Fee Workspace Confirmation of Authenticity Results of Name Examination Electronic Filing

Ελληνικά | Türkçe Login

Return To Search Results New Search

Organisation Details | Preview File Documents

**Current Details**

| | |
|---|---|
| Name | DELETEME EUROPE LTD |
| Reg. Number | HE 378944 |
| Type | Limited Company |
| SubType | Private |
| Name Status | Current Name |
| Registration Date | 19/01/2018 |
| Organisation Status | Reminder letter sent |
| Status Date | 09/02/2026 |

Last Annual Return Date 20/07/2020

File Status | Directors & Secretaries | Registered Office | HE32 Archive

**Registered Office**

Στασικράτους, 16,
Floor 7, Flat/Office 701
1065, Λευκωσία, Κύπρος

STRUCTURAL FUNDS
our ideas, actions for development

W3C WAI-AA WCAG 2.0

The project is co-financed by the European Regional Development Fund
The Website is best viewed with screen resolution 1024 with 768 pixels
©2005 - 2011 Republic of Cyprus, Ministry of Commerce, Industry and Tourism
Department of Companies and Intellectual Property

EUROPEAN UNION

Home Page | Disclaimer | Webmaster | Companies Section

# EXHIBIT G

| | |
|---|---|
| Document title: | Trademark search |
| Capture URL: | https://tmsearch.uspto.gov/search/search-results/88264427 |
| Page loaded at (UTC): | Tue, 18 Aug 2026 22:19:45 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 22:19:47 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 4 |
| Capture ID: | aiMBe2ySUHhffJ77yamVZ9 |
| Display Name: | tkraft |

uspto Patents Trademarks Fees and payment Contact Us MyUSPTO Sign in

**Trademark search**

Home > Search results > Details Help

Wordmark deleteme

**Result 1 of 2** for deleteme

Search results Print/Save

View in TSDR

**Trademark**

DeleteMe

**Wordmark**
DELETEME

**Serial number**
88264427

**Filing date**
2019-01-16

**Registration number**
5820872

**Registration date**
2019-07-30

**Status**
LIVE REGISTERED

**Status date**
2025-03-18

**Registration type**
PRINCIPAL

**Case status**
A Sections 8 and 15 combined declaration has been accepted and acknowledged.

**Publication date**
2019-05-14

**Class**
035

**TM5 Status**

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

## Related Properties Information

N/A

## Goods and services

IC 035: Data management subscription services for use in removing individuals' names and personal information from data brokers. | **First Use Anywhere:** *July 13, 2010* | **First Use in Commerce:** *July 13, 2010*

## Current owner

**Name**
Abine, Inc.

**Address**
1 Marina Park Drive
Suite 1410
Boston Massachusetts 02210
United States

**Entity type**
CORPORATION

**Organized**
DELAWARE

**Ownership transitions**
1 assignments

## Mark information

**Mark literal element**
DELETEME

Need help? Ask the USPTO Virtual Assistant!

Feedback

## Mark information

**Mark literal element**
DELETEME

**Standard character claim**
Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark type**
SERVICE MARK

**Mark drawing code**
(4) Standard character drawing

**Description**
N/A

**Translation**
N/A

**Transliteration**
N/A

**Disclaimer**
N/A

**Design codes**

## Basis information

**Filed**
1(a)

**Currently**
1(a)

## Attorney information

**Name**
Kathleen E. Brennan

**Address**
The Brennan Law Group, LLC
P.O. Box 5341
River Forest Illinois 60305
United States

**Primary email**
kbrennan@thebrennanlawgroup.com

**Docket number**
13591-6)

## Correspondence information

**Name**
Kathleen E. Brennan

**Address**
The Brennan Law Group, LLC
P.O. Box 5341
River Forest Illinois 60305
United States

**Email**
kbrennan@thebrennanlawgroup.com

## Prosecution history and documents

Documents only

| Date ↓ | Description | Document | Proceeding |
|---|---|---|---|
| 2025-03-18 | NOTICE OF ACCEPTANCE OF SEC. 8 & 15 - E-MAILED | | |
| 2025-03-18 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | | |
| 2025-03-18 | Notice of Acceptance Ack - Email | Notice of Acceptance Ack - Email | |
| 2025-03-17 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | | |

Need help? Ask the USPTO Virtual Assistant!

## Prosecution history and documents

Documents only

| Date ↓ | Description | Document | Proceeding |
|---|---|---|---|
| 2025-03-18 | NOTICE OF ACCEPTANCE OF SEC. 8 & 15 - E-MAILED | | |
| 2025-03-18 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | | |
| 2025-03-18 | Notice of Acceptance Ack - Email | Notice of Acceptance Ack - Email | |
| 2025-03-17 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | | |
| 2024-11-19 | TEAS SECTION 8 & 15 RECEIVED | | |

Items per page: 5 1 – 5 of 29

## Proceedings

N/A

## International registration (Section 66a)

N/A

## Foreign information

N/A

## Maintenance information

**Declaration**
§8 (6 year) - Accepted

**Declaration of incontestability**
§15 - Acknowledged

**Process status**
N/A

**Office action**
N/A

**Next form to file**
§8 Declaration and §9 Application for Renewal

**Earliest renewal date**
2028-07-30

**Latest renewal date without additional fee**
2029-07-30

**Latest renewal date with additional fee**
2030-01-30

Feedback

About the USPTO · Search for patents · Search for trademarks

US Department of Commerce
Accessibility
Privacy Policy
Terms of Use
Financial and Performance Data
Freedom of Information Act
Inspector General
NoFEAR Act
USA.gov

Receive updates from the USPTO
Enter your email to subscribe or update your preferences
your@email.com Subscribe

uspto UNITED STATES PATENT AND TRADEMARK OFFICE
Follow us
Need help? Ask the USPTO Virtual Assistant!

# EXHIBIT H

Page Vault

| | |
|---|---|
| Document title: | Trademark search |
| Capture URL: | https://tmsearch.uspto.gov/search/search-results/87921449 |
| Page loaded at (UTC): | Tue, 18 Aug 2026 22:20:47 GMT |
| Capture timestamp (UTC): | Tue, 18 Aug 2026 22:20:49 GMT |
| Capture tool: | 11.2.8 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.2.8 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.0) |
| PDF length: | 5 |
| Capture ID: | 9ckTdHCEBoqFLFuKu9Zanv |
| Display Name: | tkraft |

PDF REFERENCE #: 67aQrVdgsEyhxgr3c9NLR6

**Trademark**

# DELETEME

**Wordmark**
DELETEME

**Serial number**
87921449

**Filing date**
2018-05-15

**Registration number**
5647581

**Registration date**
2019-01-08

**Status**
LIVE REGISTERED

**Status date**
2025-10-14

**Registration type**
PRINCIPAL

**Case status**
A partial Section 8 declaration has been accepted.

**Publication date**
2018-10-23

**Class**
036, 038, 045

**TM5 Status**

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

## Related Properties Information

N/A

## Goods and services

IC 036: Financial advice and consultancy services; Financial information.

IC 038: [ [ Internet service provider services ] ].

IC 045: Legal services.

## Current owner

**Name**
CRITON TORNARITIS

**Address**
16 STASIKRATOUS 6TH FLOOR
NICOSIA
CYPRUS

**Entity type**
INDIVIDUAL

**Organized**
CYPRUS

**Ownership transitions**
No assignments

## Mark information

**Mark literal element**

Need help? Ask the USPTO Virtual Assistant!

Feedback

No assignments

## Mark information

**Mark literal element**
DELETEME

**Standard character claim**
Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark type**
SERVICE MARK

**Mark drawing code**
(4) Standard character drawing

**Description**
N/A

**Translation**
N/A

**Transliteration**
N/A

**Disclaimer**
N/A

**Design codes**

## Basis information

**Filed**
44(d)

44(e)

**Currently**
44(e)

## Attorney information

**Name**
Jasmine B. Gratton

**Address**
LegalForce RAPC Worldwide, P.C.
446 E Southern Ave
Tempe Arizona 85282
United States

**Primary email**
docketing@trademarkia.com

**Docket number**
2064311

## Correspondence information

**Name**
Jasmine B. Gratton

**Address**
LegalForce RAPC Worldwide, P.C.
446 E Southern Ave
Tempe Arizona 85282
United States

**Email**
docketing@trademarkia.com

## Prosecution history and documents

Documents only

| Date ↓ | Description | Document | Proceeding |
|---|---|---|---|
| 2025-10-14 | NOTICE OF ACCEPTANCE OF SEC. 8 - E-MAILED | | |
| 2025-10-14 | REGISTERED - PARTIAL SEC. 8 (6-YR) ACCEPTED | | |
| 2025-10-14 | Notice of Acceptance - Email | Notice of Acceptance - Email | |

Need help? Ask the USPTO Virtual Assistant!

Feedback

| | | |
|---|---|---|
| 2025-10-14 | NOTICE OF ACCEPTANCE OF SEC. 8 E-MAILED | |
| 2025-10-14 | REGISTERED - PARTIAL SEC. 8 (6-YR) ACCEPTED | |
| 2025-10-14 | Notice of Acceptance - Email | Notice of Acceptance - Email |
| 2025-10-07 | TEAS RESPONSE TO OFFICE ACTION-POST REG RECEIVED | |
| 2025-10-07 | PR-Teas-Response to Post Reg Office Act | PR-TEAS Resp to OA |

Items per page: 5 1 - 5 of 43

## Proceedings

N/A

## International registration (Section 66a)

N/A

## Foreign information

**Priority claimed**
Yes

**Foreign application number**
017647124

**Foreign application filing date**
2017-12-30

**Foreign registration number**
017647124

**Foreign registration date**
2018-04-23

**Foreign country name**
EUROPEAN UNION

**Foreign expiration date**
2027-12-30

**Foreign registration renewal date**
N/A

**Foreign renewal expiration date**
N/A

Feedback

## Maintenance information

**Declaration**
§8 (6 year) - Accepted

**Declaration of incontestability**
N/A

**Process status**
N/A

**Office action**
N/A

**Next form to file**
§8 Declaration and §9 Application for Renewal

**Earliest renewal date**
2028-01-08

**Latest renewal date without additional fee**
2029-01-08

**Latest renewal date with additional fee**
2029-07-09

About the USPTO · Search for patents · Search for trademarks

US Department of Commerce
Accessibility
Privacy Policy
Terms of Use
Financial and Performance Data

Freedom of Information Act
Inspector General
NoFEAR Act
USA.gov

**Receive updates from the USPTO**

Enter your email to subscribe or update your preferences

your@email.com

Need help? Ask the USPTO Virtual Assistant!

| | | |
|---|---|---|
| 2025-10-07 | TEAS RESPONSE TO OFFICE ACTION-POST REG RECEIVED | |
| 2025-10-07 | PR-Teas-Response to Post Reg Office Act | PR-TEAS Resp to OA |

Items per page: 5 1 – 5 of 43

## Proceedings

N/A

## International registration (Section 66a)

N/A

## Foreign information

**Priority claimed**
Yes

**Foreign application number**
017647124

**Foreign application filing date**
2017-12-30

**Foreign registration number**
017647124

**Foreign registration date**
2018-04-23

**Foreign country name**
EUROPEAN UNION

**Foreign expiration date**
2027-12-30

**Foreign registration renewal date**
N/A

**Foreign renewal expiration date**
N/A

## Maintenance information

**Declaration**
§8 (6 year) - Accepted

**Declaration of incontestability**
N/A

**Process status**
N/A

**Office action**
N/A

**Next form to file**
§8 Declaration and §9 Application for Renewal

**Earliest renewal date**
2028-01-08

**Latest renewal date without additional fee**
2029-01-08

**Latest renewal date with additional fee**
2029-07-09

About the USPTO • Search for patents • Search for trademarks

US Department of Commerce
Accessibility
Privacy Policy
Terms of Use
Financial and Performance Data
Freedom of Information Act
Inspector General
NoFEAR Act
USA.gov

Receive updates from the USPTO
Enter your email to subscribe or update your preferences
your@email.com
Subscribe

uspto UNITED STATES PATENT AND TRADEMARK OFFICE
Follow us
Need help? Ask the USPTO Virtual Assistant!

# EXHIBIT I

**PACER Service Center** 08/18/2026 16:28:32

| | |
|---|---|
| **User** | thomaskraft |
| **Client Code** | 01005.00002 |
| **Description** | All Court Types Party Search |
| | All Courts; Name deleteme; All Courts |
| **Results** | The search returned no results. |
| **Billable Pages** | 1 ($0.10) |

**PACER Service Center** 08/18/2026 16:28:55

| | |
|---|---|
| **User** | thomaskraft |
| **Client Code** | 01005.00002 |
| **Description** | All Court Types Party Search |
| | All Courts; Name Tornaritis; All Courts |
| **Results** | The search returned no results. |
| **Billable Pages** | 1 ($0.10) |