# EXHIBIT B

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Kathleen Barnett Einhorn, Esq. (040161992)
Jessica A. Merejo, Esq. (288592020)
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Scott Maloney, Justyna Maloney, and Patrick Colligan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>Plaintiffs,<br><br>v.<br><br>DELETEME USA, LLC, DELETEME EUROPE LTD, CRITON TORNARITIS, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, ESSEX COUNTY<br>DOCKET NO.: ESX-L-________-26<br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as the assignee of individuals who are Covered Persons under Daniel's Law, along with Scott Maloney, Justyna Maloney, and Patrick Colligan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1. In these tumultuous times, it is critical that the most sensitive personal information of current and former public servants be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, prosecutors—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2. This Complaint seeks to protect those important rights against companies brokering data while choosing profit and commercial gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering home addresses and unpublished home telephone numbers without sufficient regard for the risks and consequences imposed upon individuals who serve (and have served) critical judicial and law enforcement roles. Even worse are companies like the defendants here who claim to protect the privacy and safety of individuals, but who actually aggregate and sell dossiers on those individuals who have lawfully requested that their information not be published or disclosed.

3. The Legislature and Governor unanimously agree that the basic safety of those who serve—and their families—must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of these public servants. Our judges, law enforcement officers, and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4. With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory scheme, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5. In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was murdered by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just 20 years old and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect them. By the time his mother, a Judge, came to the door to check on what happened, the killer had fled. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6. During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and he went to her home that day intending to kill her. Investigators eventually connected this attack with the same perpetrator's shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to the case that was pending before Daniel's mother.

7. Critically, the gunman was able to find the home addresses of his murder victims through the various people finder resources available on the Internet,[1] the same kind of data broker services at issue in this case.

**New Jersey Passes Daniel's Law in 2020**

8. In response to Daniel's murder, New Jersey swiftly enacted Daniel's Law in November 2020. P.L. 2020, c. 125 codified in N.J.S.A. 47:1A-1, et seq., N.J.S.A. 56:8-166.1, et seq., and N.J.S.A. 2C:20-31.1 Daniel's Law allows current and former public servants—including judges, law enforcement officers, and prosecutors—and their eligible family members (*i.e.*, "covered persons") to send written nondisclosure requests to data brokers. Once a ten-business day period following such a request has passed, the data broker is prohibited from disclosing or otherwise making available the name and home address or unpublished home telephone number of the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of judges and prosecutors.

9. Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." N.J.S.A. 56:8-166.1(a)(1), (d).

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

10. Data brokers must cease disclosure of this protected information within ten business days of receiving a written nondisclosure request from a covered person.

11. To facilitate the enforcement of Daniel's Law, the New Jersey Legislature expressly provided that an enforcement action could be brought by a covered person or by the covered person's assignee. N.J.S.A. 56:8-166.1(b).

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

12. U.S. Supreme Court Chief Justice John G. Roberts Jr. supported the adoption of a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety . . . [a] judicial system cannot and should not live in fear."[2]

13. The federal bill, which had broad bipartisan support in both the House and Senate, protected certain sensitive personal information of judges and their immediate family from disclosure by data brokers. It also allowed federal judges to redact their personal information displayed on federal government websites.

14. In December 2022, the U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

15. Despite these efforts, violence against judges, law enforcement officers, and prosecutors remains a continuing and serious threat. These public servants put their lives on the

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.

[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.

[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.

line every day, which is clearly exhibited by the numerous horrific stories of violence beyond the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers while they were inside with their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5] On the contrary, the officers were targeted specifically because they chose to go into public service and protect their community.

16. In yet another targeted attack, a disgruntled litigant hunted down and killed a Maryland Judge at his home, after an adverse child custody ruling.[6] This killing followed a similar tragedy in Wisconsin in 2022, where the perpetrator killed a retired Wisconsin Circuit Court Judge out of spite for his handling of a criminal case in 2005.[7]

17. More recently, on June 14, 2025, a masked gunman posing as a law enforcement officer killed a Minnesota state lawmaker, her husband and their dog in their own home. It was later revealed that this gunman had visited four different lawmakers' homes on the night of the murders. Following an arrest, the FBI recovered several notebooks from the individual alleged to be the gunman. One of the notebooks contained a page titled "Finding People" and a list of data broker websites that allow users to search for home addresses, phone numbers, and other personal

---

[5] https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-on-home-of-new-jersey-police-officers-in-targeted-attack-chief-says/.

[6] https://www.cnn.com/2023/10/20/us/maryland-judge-killing-investigation-andrew-wilkinson/.

[7] https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/.

information.[8] Another notebook contained the names and personal information of 45 state and federal public officials residing in Minnesota.[9]

18. These violent incidents demonstrate the risk to public servants and their families resulting from the open sale and dissemination of their most personal information, including their home addresses and/or unpublished home telephone numbers. These incidents also demonstrate the risk to the broader community should public officials be denied their statutory privacy rights. The risk that one might be violently targeted at their home may disincentivize individuals from pursuing a career in public service. This undermines the public interest—as the State and federal governments have recognized in passing Daniel's Law and its federal counterpart.

## THE PARTIES

### The Individual Plaintiffs

19. Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source

---

[8] Affidavit of FBI Special Agent Terry Getsch, United States v. Boelter, No. 25-00376 (D. Minn. filed June 15, 2025) at 11. Each of the 14 data brokers mentioned in the alleged gunman's notebook had been sued by Atlas in February 2024 for violations of Daniel's Law. Despite now having been in Court for almost 2 years and being aware of their involvement in the murders in Minnesota, several of these data brokers remain noncompliant with Daniel's Law as of this filing.

[9] Id.

of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

20. The resulting video footage was selectively edited and posted to YouTube and TikTok. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

21. One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

22. Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police.

Responding officers arrested two men—who were armed—for unlawful possession of a firearm. Video surveillance captured by nearby houses showed the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were home at the time.

23. Plaintiff Detective PATRICK COLLIGAN ("Detective Colligan") is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. From June 2014 to April 2024, Detective Colligan served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

**Plaintiff Atlas and its Assignors**

24. Plaintiff ATLAS DATA PRIVACY CORPORATION ("Atlas") is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

25. As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 6,626 individuals who are all "Covered Persons" under Daniel's Law (together, the "Covered Persons" and each a "Covered Person"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

26. Each Covered Person is an (a) active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator in the Division of Child Protection and

Permanency, or prosecutor, as those terms are defined in N.J.S.A. 47:1A-1.1; or (b) immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, or prosecutor. Thus, each individual meets the definition of "covered person" set forth in both N.J.S.A. 56:8-166.1 and N.J.S.A. 2C:20-31.1.

27. Each Covered Person resides, works, previously resided or worked in New Jersey, or is a family member residing at the same address as such as a person, and has a claim or claims against Defendants for failing to comply with Daniel's Law.

28. As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or redisclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29. Defendants have not complied with the law by negligently, willfully, or recklessly continuing to disclose or redisclose on the Internet or the otherwise making available of protected information in violation of Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs).

30. In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas, in writing, as permitted under the statute. Such assignments expressly and "irrevocably assign to Atlas or a designated affiliate of Atlas (the 'Assignee') the exclusive right to civil enforcement of all claims" under Daniel's Law.

31. Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other Covered Persons. Atlas works with and

provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, has been to increase the safety and well-being of their members and their members' families by helping those members understand and assert the rights provided to them by the law.

32. Upon signing up for Atlas, a Covered Person is asked a series of questions to collect required personal information and qualify his or her eligibility under Daniel's Law. Once eligibility is confirmed, the Covered Person is shown a page explaining how the Atlas platform works:



33. AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each Covered Person receives his or her own AtlasMail account, with a unique inbox address (*e.g.*, john.doe23@atlasmail.com) for personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:




34. Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the Covered Person is then presented with a page on which he or she can review his or her home addresses and unpublished home telephone numbers, a nondisclosure request template, and a recommended list of data brokers to send notices to. On this page the Covered Person can choose whether or not to send nondisclosure requests. If the Covered Person chooses not to send a nondisclosure request to the recommended list, they can select individual

recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a nondisclosure request.




35. Any reply or response back from a data broker to the Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully-featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

AtlasMail

Compose

Search in Mail

ALL MAIL | INBOX | SENT | ASSIGNMENT CONFIRMATIONS

| | | |
|---|---|---|
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:40 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |

< 1 2 3 4 5 ... 16 >

**Redaction/Nondisclosure Request Confirmation**

| | |
|---|---|
| **To** | john.doe23@atlasmail.com |
| **From** | privacy@exampledatabroker.com |
| **Date** | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply Forward

36. With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.

37. Because this lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight, Atlas has not included the Covered Persons' personal information in this public filing. However, Atlas will work with the Court and Defendants to implement an appropriate protective order and then provide Defendants with the written

assignments and relevant information for each of the Covered Persons. Our courts have already approved this privacy-protecting approach.[10]

38. In order to facilitate the provision of the Covered Persons' relevant information to Defendants pursuant to an appropriate protective order, Plaintiffs will provide Defendants with a proposed Discovery Confidentiality Order/Protective Order following service of this Complaint and Defendants' entry of an appearance.

**Defendants**

39. Defendant DELETEME USA, LLC ("DeleteMe USA") is a Delaware corporation that has a registered agent, LEGALINC CORPORATE SERVICES INC., at 131 Continental Drive Suite 305, Newark, Delaware 19713 and transacts business within the State of New Jersey. DeleteMe USA discloses or rediscloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

40. Defendant DELETEME EUROPE LTD ("DeleteMe EU") is a private limited company in Cyprus that has a registered office address at Stasikratous 16, Nicosia 1065, Cyprus and transacts business within the State of New Jersey. DeleteMe EU discloses or rediscloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

41. Defendant CRITON TORNARITIS is the founder, direct and/or indirect owner and Chief Executive Officer of DeleteMe USA and DeleteMe EU (collectively, "DeleteMe").

---

[10] For example, the Court recently held in another Daniel's Law action that allegations similar to those asserted here pleaded "sufficient facts to show that the assignors are covered persons under Daniel's Law," and "in fact have standing," noting the anticipated production of Covered Persons' information pursuant to an appropriate protective order. Atlas Data Privacy Corp., v. Attom Data Solutions, LLC, et al., Docket No.: MER-L-273-24 (Law Div., June 20, 2024) (denying motion to dismiss).

42. Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by Defendants to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

43. Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. These websites include deleteme.com and cyberdeleteme.com and may include additional domains or subdomains (collectively, the "Defendants' Website")

44. In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons). The following is a redacted example of the detailed information provided by Defendants,[11] in violation of Daniel's Law:

[11] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.




**Defendants' Deliberate Attempt To Hide Behind the Legitimate Business 'DeleteMe'**

45. Neither DeleteMe nor Tornaritis nor any other Defendant is affiliated in any way with Abine, Inc., the company known colloquially as 'DeleteMe' in the United States with a website located at joindeleteme.com. Abine Inc. is a legitimate privacy services company that is focused on assisting individuals, including judges, prosecutors, law enforcement and the public, in suppressing their personal information from data broker sites through subscription services offered through its website, joindeleteme.com.

46. Upon information and belief, Defendants have attempted to exploit the positive public reputation and good will of Abine, Inc. and the services it offers via joindeleteme.com through customer confusion and deception, where Defendants make it appear as though they are the company offering the services offered by Abine Inc., while in reality Defendants function as a

data broker that purposefully disregards individual privacy rights and laws requiring the suppression or redaction of personal information.

**Defendant Tornaritis**

47. In addition to owning the DeleteMe entities, upon information and belief, Tornaritis is personally involved in DeleteMe's business and operations (including DeleteMe's email accounts, the Defendants' Websites, and marketing efforts) and intermingles his personal work with business work to an extent that there is little separation between the two.

48. As detailed below, Tornaritis was and is personally aware of the nondisclosure requests transmitted to DeleteMe by the Covered Persons identified herein. And Tornaritis personally willfully or reckless disclosed or redisclosed on the Internet or otherwise made available the protected information of the Covered Persons beyond the time period required for suppression by Daniel's Law by not only negligently or purposefully failing to act, but also in controlling and facilitating the operation of Defendants' Website as a site that purposefully violates a myriad of privacy laws including Daniel's Law.

49. Tornaritis was, at all times relevant to this matter, aware of the potential exposure to harassment, intimidation or risk to life or property that public servants such as the Covered Persons could face when their personal information, including home address or phone number, is available online through websites such as Defendants' Websites

50. In addition, Tornaritis owns, in his personal capacity, a US service mark for "DELETEME" (US Serial Number 87921449; US Registration Number 5647581) and a European Union mark for "DELETEME" (Filing Number 017647124) (together, the "DeleteMe Marks").

51. Despite this personal ownership, Tornaritis has used the same address as DeleteMe EU (Stasikratous 16, Nicosia 1065, Cyprus) as an address for service of official documents and records related to the DeleteMe Marks.

52. As part of his operational control over DeleteMe and Defendants' Websites, Tornaritis provided DeleteMe with use of the DeleteMe Marks to facilitate and further Defendants' efforts to misrepresent their data brokering activities and disregard of privacy laws, including Daniel's Law, by falsely making it appear as though Defendants' Websites offer privacy protection services to the public.

53. Indeed, Tornaritis has and continues to use the DeleteMe Marks to facilitate, promote, and lend credibility to Defendants duplicitous data brokering site. By leveraging these marks on Defendants' Websites for DeleteMe, Tornaritis has, upon information and belief, attempted to make Defendants appear legitimate, while personally and directly supporting and furthering the unlawful disclosure of home addresses and unpublished home telephone numbers of the Individual Plaintiffs and Covered Persons. Tornaritis's personal control over the DeleteMe Marks was not merely passive or incidental but was instrumental in the execution and perpetuation of unlawful disclosures.

54. In addition, Tornaritis has claimed in filings with the United States Patent and Trademark Office that the DeleteMe Marks are used in connection with providing "financial advice", "internet service" and "legal services" focused on assisting consumers remove their personal information from internet sites, when they do not. In fact, in such filings Tornaritis did not disclose that the DeleteMe Marks are actually used to provide open source intelligence and other data brokering services in violation of a number of privacy laws, including Daniel's Law.

55. Moreover, Tornaritis personally advertises Defendants' data brokering capabilities in providing access to individuals' personal information such as phone numbers.

56. For example, in March 2026 in response to a post titled "How I Investigate a Phone Number in Minutes" on the X social media platform (formerly known as Twitter), Tornaritis directed viewers to the Defendants' Website noting that users of the site have access to phone numbers and other aggregated data about those they are seeking information about. A true and correct screenshot of this post, last accessed on April 1, 2026, located at https://x.com/kritonis/status/2037035819081388169, is included on the left side of the following page.

57. In another social media post, Tornaritis responded to an Open Source Intelligence Newsletter identifying Internet tools used to find information on individuals by boasting that the Defendant Websites are the only ones that aggregate data from leaks to social media and more. A true and correct screenshot of this post, last accessed on April 1, 2026, located at https://x.com/kritonis/status/2037036207335457223, is included on the right side of the following page.

**The OSINT Newsletter**
@osintnewsletter

We've added 6 new tools to the OSINT Tools Library 🔍

@ipinfo - IP lookup (location, ISP, ownership)
@whoisxmlapi - domain ownership + config data
IntelligenceX - breached data & historical records search
@fofabot - discover exposed systems & services
Phishtank - verified phishing database
@wikimapia - user-driven global mapping

Explore them 👇




> **The OSINT Newsletter** @osintnewsletter · Mar 18
>
> 🚨 Launching: The OSINT Tools Library
>
> A curated, investigator-first directory of tools used in real cases.
>
> → Tools.OSINTNewsletter.com
>
> We're building the largest and best maintained OSINT tools resource and need your help.
>
> Reply and tag a tool we should add 👇




3 · 21 · 141 · Mar 25, 2026 · **8.2K** Views

**Criton Tornaritis** @kritonis · Mar 26
I suggest looking at cyberdeleteme.com the only aggregate data in one report with ai analysis from the simple leak up to social media and more
0 · 0 · 1

**CyberSudo**
@Cyber_Sudo

How I Investigate a Phone Number in Minutes 📱🔎

Most people jump straight to paid tools,
but the smartest OSINT approach actually starts with something simple: Google search.

When I'm investigating a phone number, the first thing I do is generate **all possible number formats** so search engines can surface every trace tied to it.

Of course, it won't always give results,

but sometimes it reveals *more than you ever expected* ⚡

One of my favorite tools for this is a phone variant generator that creates multiple versions of the same number instantly.

Real case:
I once analyzed a suspicious contact number
After generating variants and searching them, I uncovered forum posts, a marketplace listing, and a linked account that revealed the identity behind it 🧠

My quick method:
🔎 Search the number on Google first
📁 Try all format variations
💾 Save each version different formats reveal different results

Best tool for generating variants → no-nonsense-intel.com/phone-variant-...

In the next post, I'll show you the next steps to investigate a phone number and what to do after the initial search 📱

———

P.S. ♻️ Repost if you found this helpful.

If you liked this post and would like to learn more methods and techniques to discover information about people, check out my OSINT Mastery course cybersudo.org/osint-mastery




2 · 31 · 216 · Mar 24, 2026 · **10.5K** Views

**Criton Tornaritis** @kritonis · Mar 26
Try cyberdeleteme.com you get aggregate data connected with the number and more
0 · 0 · 0

58. In addition, it appears that, through publicly sourced material, Tornaritis is responsible for certain social media and marketing efforts of DeleteMe and he does so from his personal Android device. This belief is grounded in the following publicly available information:

a. Tornaritis has an account on the X social media platform (formerly known as Twitter) with the handle @kritonis, which he had 'verified' since May 2023, and which at times has noted verified access via the Cyprus Android mobile application.

b. Deleteme also has an account on the X social media platform (formerly known as Twitter) since May 2023 with the handle @deletemeco, which was 'verified' since June 2024, and which at times has noted verified access via the Cyprus Android mobile application.

c. While this would normally be unremarkable, Tornaritis has often almost immediately reposted tweets from Delete Me, which forms Plaintiffs' belief that he operates these social media accounts from a single device.

59. Tornaritis is well aware of the data broker activities of the Defendant Websites that he owns and/or controls, and which he markets through his personal social media page and through other means.

60. Tornaritis is also equally and personally responsible for Defendants' refusals to comply with Daniel's Law by continuing to disclose or otherwise make available Covered Persons' Protected Information after receipt of the nondisclosure requests.

61. Upon information and belief, Tornaritis received written nondisclosure requests from Covered Persons using AtlasMail to email accounts of Defendants that he has access and control over.

62. Rather than use his ownership and authority to ensure Defendants' compliance with Daniel's Law, Tornaritis took no action to comply with the requests, and/or purposefully ignored same.

63. In fact, instead of complying with those nondisclosure requests, Tornaritis sent an inquiry from his personal email account to Atlas seeking information about how he can obtain access to Atlas's privacy services.

64. Despite being an attorney in the Republic of Cyprus, Tornaritis never identified himself to Atlas, nor did he identify his ownership or control of DeleteMe.

65. Instead, Tornaritis transmitted this purposefully deceptive communication in an attempt to obtain access to the Atlas platform to fraudulently obtain more information about the nondisclosure requests he received from Covered Persons through the email accounts he controls or has access to with Defendants.

66. This attempt by Defendants (including Tornaritis) to infiltrate the business operations of Atlas was done purposefully.

67. And despite not being provided with such access and having received written nondisclosure requests from the Covered Persons, and being acutely aware of the risk of harm to life or property of the Covered Persons, Tornaritis took no actions to cease disclosure of their Protected Information.

68. Similarly, DeleteMe failed to suppress Covered Persons' Protected Information.

69. Defendants' failures in this regard were purposeful or reckless as to the rights of the Individual Plaintiffs and Covered Persons as well as the risks of harm or probability of an increase of risk of such harms to them.

**JURISDICTION AND VENUE**

70. This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

71. Defendants have purposefully directed their business activities towards New Jersey. Defendants have purposefully availed themselves of the privilege of conducting activities within New Jersey.

72. Daniel's Law was enacted to safeguard New Jersey residents who serve as public servants and their families (including Covered Persons) from the disclosure of their Protected Information by entities, like Defendants.

73. Defendants knowingly and intentionally disclosed or redisclosed on the Internet, or otherwise made available, Protected Information of New Jersey residents, such as the home addresses and unpublished home telephone numbers of Covered Persons, through affirmative acts and decisions regarding data handling, storage, and dissemination.

74. The disclosure of New Jersey residents' home addresses and unpublished home telephone numbers resulted from Defendants' intentional conduct, including decisions to transmit, publish, or otherwise make that information available, rather than from an inadvertent or purely accidental occurrence.

75. Defendants expressly aimed their conduct at New Jersey by disclosing the home addresses and unpublished home telephone numbers of New Jersey residents, knowing that the affected Covered Persons were located in New Jersey.

76. Defendants knew that the disclosed Protected Information specifically identified New Jersey residents, including their New Jersey home addresses, and that the disclosure would directly impact individuals within New Jersey.

77. Defendants' conduct was directed at New Jersey because the disclosed Protected Information enabled direct contact with, and intrusion into the privacy of, New Jersey residents at their homes and personal telephone numbers. The disclosure of Protected Information was targeted specifically to New Jersey, including New Jersey residential locations, and was not a generalized or untargeted release of anonymized data.

78. Defendants knew, or reasonably should have known, that the primary and foreseeable effects of disclosing New Jersey residents' home addresses and unpublished home telephone numbers would be felt in New Jersey, where those individuals reside.

79. Defendants understood that their disclosure would expose New Jersey residents to unwanted contact, harassment, safety risks, and invasion of privacy within New Jersey.

80. Defendants knew that any resulting emotional distress, privacy injury, and risk of physical or economic harm would be concentrated in New Jersey, where the affected individuals live.

81. Upon information and belief, Defendants also purposefully collected sensitive personal information and other data concerning residents of New Jersey from New Jersey public records; from New Jersey residents themselves; and from devices and browsers located in New Jersey that interacted with Defendants' websites, online services, and mobile applications, and businesses that operate within the State of New Jersey.

82. Accordingly, Plaintiffs' claims arise directly out of and relate to Defendants' forum-directed conduct.

83. Indeed, upon information and belief, in 2024, 2025, and 2026, Defendants have generated material revenue from sales to customers located in New Jersey and/or from the sale of personal information and other data of New Jersey residents to customers both inside and outside of New Jersey.

84. Daniel's Law was passed to protect public servants and their families from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

85. Accordingly, venue is proper pursuant to R. 4:3-2, in that Essex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

86. As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 codified as N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1, et seq.).

87. Daniel's Law prohibits data brokers from disclosing or redisclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

88. Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or redisclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

89. This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver,

transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

90. Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

91. Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

92. As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[12]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
> > (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
> >
> > (2) punitive damages upon proof of willful or reckless disregard of the law;
> >
> > (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
> >
> > (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d. For the purposes of this section:
>
> > . . . "Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include

[12] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

> making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed.

93. Starting on or about July 24, 2025, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

94. For example, a true and correct copy of the email directly from Plaintiff Officer Maloney (with personal information redacted) appears below:

**From** [redacted]@atlasmail.com
**To** support@deleteme.com
**Date** Wed, Jul 30, 2025 6:21 AM
**Subject** Data Subject Request - Redaction/nondisclosure Request

DeleteMe
2025-07-30

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Full Name: Justyna Maloney

Other Names or Variants (by which I am known or may be identified):
[redacted]

Home Phone Number:
[redacted]

Sincerely,
Justyna Maloney

95. Defendants negligently, willfully, or recklessly continue to disclose or redisclose on the Internet or otherwise make available the protected information of the Covered Persons beyond the time period required by Daniel's Law. Thus, Defendants' disclosure or redisclosure of protected information of the Covered Persons following the statutory period of ten (10) business days violates Daniel's Law.

96. Defendants, including DeleteMe, Tornaritis and those currently pled as Richard Roes 1-10 or ABC Company 1-10, are equally responsible for the negligent, purposeful and reckless acts and omissions alleged herein, particularly because they have not maintained separation and Tornaritis or others have dominance and control over DeleteMe, or they operate as alter egos in their operations and functions.

97. Indeed, even as of times recent to the date of this filing, Defendants negligently, purposefully or recklessly still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

98. All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs, who assert their claims directly in this action) have assigned in writing their claims against Defendants to Atlas. All of the assignments were completed in writing before the date of the filing of the initial Complaint.

99. Following the entry of a protective order filed in this Court and identification of any individuals with whom confidential information will be shared, Plaintiffs will provide under a confidential designation a full and complete list of the following:

a. Names of each of the 6,626 assignors referenced in paragraph 25; and

b. The factual basis for the person to be considered a "Covered Person" as defined in N.J.S.A. 56:8-166.1(d), that is, a judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, as those terms are identified in N.J.S.A. 47:1A-1.1 or prosecutor and any immediate family member residing in the household of individuals in these categories.

100. The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

**COUNT ONE**

**(Violation of Daniel's Law, N.J.S.A. 56:8-166.1)**

101. The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

102. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or redisclosure on the Internet or wherever Defendants otherwise made it available.

103. Defendants had an obligation under Daniel's Law to comply with the nondisclosure request within ten business days.

104. Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

105. Defendants negligently, willfully, or recklessly continue to disclose or redisclose on the Internet or otherwise make available information in violation of Daniel's Law, and in doing so each constitutes a separate violation under the law.

106. Defendants' continued disclosure in violation of Daniel's Law, despite having received notice as required under the statute, constitutes negligent, willful, or reckless disregard of the law.

107. As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered against Defendants and/or the Website as follows:

A. Ordering that Defendants and/or the Website immediately comply with Daniel's Law, and cease the disclosure of the Individual Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or redisclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants and/or the Website comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants and/or the Website to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants and/or the Website prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants and/or the Website as the Court deems equitable and just.

**COUNT TWO**

**(Violation of Daniel's Law, N.J.S.A. 2C:20-31.1)**

108. The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

109. The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or redisclosure on the Internet or wherever Defendants otherwise made it available.

110. Tornaritis received those requests and was aware of them as demonstrated by his attempt to obtain access to Atlas's privacy platform.

111. Defendants had an obligation under N.J.S.A. 2C:20-31.1(b) to comply with the nondisclosure request within ten business days.

112. Defendants knew that not complying with the nondisclosure requests exposed the Covered Persons to harassment or risk of harm to life or property.

113. In fact, Defendants publicly (and falsely claim) that their services act as a "digital shield" and allows users to prevent fraud and theft or other harms to property proactively.

114. These inaccurate claims have also been forwarded by Tornaritis in his submissions to the Government related to the DeleteMe Marks.

115. Simply stated, Defendants have a variety of public pronouncements and statements on the Websites, the DeleteMe Marks applications, on social media and through other efforts that demonstrate that they are individually and collectively aware of the significant risks to life or property that result from accessibility to the home address or home phone number of individuals and that removal of such information from public or commercially available sources (like the Defendant Websites) mitigates such risk and reduces the probability of such harm occurring.

116. Tornaritis, DeleteMe USA, DeleteMe EU, Richard Roes 1-10 and ABC Companies 1-10 function together as an enterprise as defined under Chapter 20 of Title 2C of the New Jersey Statutes through, among other things, the use of the Websites (and domain names) and DeleteMe Marks.

117. Defendants' common purpose is to profit through the illicit and licit trade of personal information, while skirting their obligations under a myriad of privacy laws, including but not limited to Daniel's Law.

118. More specifically, Defendants are an identifiable association or entity, that work together for the common purpose of making individuals believe they are a privacy company when they in-fact are a data broker as set forth herein.

119. For example, Defendants falsely claim that they do not sell or misuse personal information, despite Tornaritis's direct encouragement online for people to utilize DeleteMe for such services.

120. Defendants' failure to suppress the Individual Plaintiffs' and Covered Persons' protected information is not only negligent but reckless, purposeful or willful.

121. Indeed, even as of the time recently preceding the date of this filing, Defendants still refuse to fully comply with N.J.S.A. 2C:20-31.1 and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, redisclosed or otherwise made available, despite Defendants' receipt of nondisclosure requests more than ten business days ago.

122. The unlawful activity of Defendants' enterprise occurs through a variety of interests including the Websites and DeleteMe Marks.

123. As a result of Defendants' failures to comply with the law, Plaintiffs have and continue to have risk of harm to person or property, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered pursuant to N.J.S.A. 2C:20-21(a) against Defendants and/or the Website as follows:

A. Entering a permanent injunction prohibiting DeleteMe, Tornaritis and any other Defendants' violations of N.J.S.A. 2C:20-31.1, and any actions in furtherance thereof, including, posting, reposting, publishing or republishing on the Internet, or otherwise making available the Protected Information of the Individual Plaintiffs and the Covered Persons wherever disclosed or otherwise made available;

B. Ordering a divestment by Defendants from interests, including assets or resources that perpetuate their enterprise in violation of N.J.S.A. 2C:20-31.1, including but not limited to the Website domains and DeleteMe Marks.

C. Ordering the dissolution or reorganization of Defendants' enterprise.

D. Ordering the forfeiture of Defendants' corporate charters or revocation of any certificate of authority in the public interest.

E. Imposing temporary orders, including restraints and prohibitions, in the interest of justice.

F. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

G. Awarding such other and further relief against Defendants, the DeleteMe Marks and/or the Websites as the Court deems equitable and just.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn, Esq.
Jessica A. Merejo, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

**DESIGNATION OF TRIAL COUNSEL**

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiff in this matter.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

**CERTIFICATION PURSUANT TO RULE 4:5-1**

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH

**CERTIFICATION PURSUANT TO RULE 1:38-7(b)**

Pursuant to R. 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: June 23, 2026

By: */s/ Rajiv D. Parikh*
RAJIV D. PARIKH